Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 11/21/2023 11:52 AM
Envelope: 4376805
Reviewer: Lindsay Z.

Case 1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 1 of 430 PageID #: 195

## IN THE UNITED STATES DISTRICT COURT
## FOR RHODE ISLAND

**ARTHUR OF THE FAMILY WITTENBERG,**
    **Plaintiff,**

    **v.**                                       **Civil Action No. 23-490**

**FLAGSTAR BANK, N.A., and**
**JAMES K. CIROLI**
    **Defendants.**

### NOTICE OF REMOVAL

TO:    THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF WEST VIRGINIA:

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant Flagstar Bank, N.A.[1] ("Flagstar"), and Defendant James K. Ciroli ("Ciroli," collectively as "Defendants"), by counsel, hereby remove this action from the Superior Court of Rhode Island, Kent Division to the United States District Court for Rhode Island. Removal is proper because this Court has subject matter jurisdiction over the action by way of diversity jurisdiction. *See* 28 U.S.C. § 1332. Accordingly, Defendants remove this action to this Court, and in support of its Notice of Removal states the following:

### Procedural Background

1.        On or about May 3, 2023, Plaintiff Arthur of the Family Wittenberg ("Plaintiff") filed an amended complaint (the "Complaint") against Defendants as well as Catherine Eastwood, John McNicholas, and Korde & Associates, P.C. (collectively, the "Law Firm Defendants") in the Superior Court of Rhode Island, Kent Division, Civil Action No. KC-2023-0303.

---

[1] Plaintiff filed this action against Flagstar Bank, FSB. However, Flagstar's entity name has changed from Flagstar Bank, FSB to Flagstar Bank, N.A.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 11/21/2023 11:52 AM
Envelope: 4376805
Reviewer: Lindsay Z.

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 2 of 430 PageID #: 196

2.          The Complaint involved state law claims stemming from the foreclosure sale of real estate property owned by Rafael Montanez ("Borrower" or "Decedent").  Copies of the state court pleadings are collectively attached hereto as **Exhibit A**.  The allegations are frivolous and made without any legal or factual basis.

3.          On or about May 1, 2023, Plaintiff mailed the Complaint to Flagstar's corporate headquarters in Troy, Michigan.

4.          Upon information and belief, the Law Firm Defendants are all citizens of the Commonwealth of Massachusetts and complete diversity of citizenship existed in this matter for the purpose of federal jurisdiction.

5.          In mid-May 2023, counsel for the Defendants placed a phone call with Co-Defendant John McNicholas and requested the consent of the Law Firm Defendants to remove the matter to federal court.  During the phone call, Co-Defendant John McNicholas rejected the request citing that he preferred state court for its expedience.

6.          Likewise, on May 24, 2023, Defendants requested the consent for removal of Law Firm Defendant's from Co-Defendant Catherine Eastwood.  Co-Defendant Catherine Eastwood never provided her consent to remove the matter to federal court.

7.          Because Defendants did not have the consent of all the Law Firm Defendants, on May 26, 2023, Defendants filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Rhode Island Rules of Civil Procedure and filed a Motion for Sanctions against Plaintiff pursuant to Rule 11 of the Rhode Island Rules of Civil Procedure before the Superior Court of Rhode Island, Kent Division.

8.          On the same date, the Law Firm Defendants also filed a Motion to Dismiss.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 11/21/2023 11:52 AM
Envelope: 4376805
Reviewer: Lindsay Z.

Cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 3 of 430 PageID #: 197

9.      On July 7, 2023, Defendants filed a Motion for Preliminary Injunction against the Plaintiff from seizing or otherwise occupying the subject real estate property.

10.     On September 11, 2023, the Superior Court of Rhode Island, Kent County Division granted Defendants' Motion for Preliminary Injunction citing a strong likelihood that Defendants will prevail on the merits.

11.     On October 23, 2023, the Court heard oral arguments regarding Defendants Motion to Dismiss and the Law Firm Defendants Motion to Dismiss. The Court granted the Law Firm Defendants' Motion to Dismiss dismissing the Law Firm Defendants and all non-consenting defendants from the civil action.

12.     However, it denied the Defendants' Motion to Dismiss citing the very low pleading standard in Rhode Island state courts.

13.     On October 27, 2023, Defendants received Law Firm Defendants Proposed Order Granting their Motion to Dismiss from the hearing held on October 23, 2023. Accordingly, this proposed order is the first "order or other paper" Defendants could ascertain that the matter is removable.

14.     On November 1, 2023, Associate Justice Kevin F. McHugh entered a formal order dismissing the Law Firm Defendants from the matter. Order attached as **Exhibit B**.

15.     This notice has been filed within thirty days of receipt of the transcript, order, and hearing and therefore is timely pursuant to 28 U.S.C. § 1446(b)(3).

## Removal Based on Diversity Jurisdiction

16.     Pursuant to 28 U.S.C. §§ 1332, 1348, 1367, 1441, and 1446, and this Court's diversity jurisdiction, removal of Plaintiffs' State Court Civil Action to this Court is appropriate.

### *Diversity Jurisdiction*

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 11/21/2023 11:52 AM
Envelope: 4376805
Reviewer: Lindsay Z.

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 4 of 430 PageID #: 198

17.     This Court has original diversity jurisdiction over Plaintiffs' State Court Civil Action under 28 U.S.C. § 1332.

18.     Section 1332 provides, in pertinent part, that the "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different states." 28 U.S.C. § 1332(a)(1).

19.     Pursuant to 28 U.S.C. § 1446(b)(2)(A), all current defendants have joined and consented to this removal.

20.     Here, the requirements for original diversity jurisdiction under 28 U.S.C. § 1332 are satisfied.

21.     Complete diversity exists between Plaintiff and properly joined Defendants, thus satisfying the diversity requirement of 28 U.S.C. § 1332(a)(1).

22.     Plaintiff's Complaint gives rise to diversity jurisdiction because the citizenship of Plaintiff and Defendants are completely diverse, and the amount in controversy exceeds $75,000.

A.      **Diversity of Citizenship**

23.     Plaintiff is and at the time of the filing of the Complaint domiciled in New Orleans, Louisiana. (*See* Comp. at 1). Accordingly, for purposes of determining diversity of citizenship, Plaintiff is a citizen of Louisiana.

24.     Flagstar is incorporated in the State of Michigan with its principal place of business located in Troy, Michigan. Flagstar is a citizen of Michigan.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 11/21/2023 11:52 AM
Envelope: 4376805
Reviewer: Lindsay Z.

25.      Upon information and belief, Defendant Tom Ciroli is at the time of the filing

of the Complaint domiciled in Michigan.  Accordingly, for the purposes of determining diversity

of citizenship, Defendant Tom Ciroli is a citizen of Michigan.

26.      Accordingly, there is complete diversity between Plaintiff and Defendants and

no consenting Defendant is a citizen of either Rhode Island or Louisiana.

**B.**      **Jurisdictional Amount**

27.      Diversity jurisdiction requires an amount in controversy of greater than

$75,000.00, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(a).

28.      "[A]s specified in §1446(a), a defendant's notice of removal need include only

a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.

Evidence establishing the amount is required by §1446(c)(2)(B) only when the plaintiff contests,

or the court questions, the defendant's allegation." *Dart Cherokee Basin Operating Co., LLC v.*

*Owens*, 574 U.S. 81, 90, 135 S. Ct. 547, 554, 190 L.Ed.2d 495 (2014).

29.      "In calculating the amount in controversy, a federal court must examine

relevant state law to determine the nature and extent of the damages which may be awarded."

*Lucas v. Ultima Framingham LLC*, 973 F.Supp.2d 98, 101 (D. Mass. 2013).  Plaintiff's likelihood

of success on the merits of their claims is irrelevant for purposes of this inquiry because "the

pertinent question is what is *in controversy* in the case, not how much the plaintiffs are ultimately

likely to recover." *Manson v. GMAC Mortg., LLC*, 602 F.Supp.2d 289, 293 n.6 (D. Mass. 2009)

(emphasis in original).

30.      Plaintiff seeks to vacate a lawful foreclosure sale of the subject property, 24

Ninigret Street, Warwick, Rhode Island.  The subject property is a 1080-square-foot residential

real estate property located in Warwick, Rhode Island.  It has an estimated fair market value of

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 11/21/2023 11:52 AM
Envelope: 4376805
Reviewer: Lindsay Z.

$391,000.00. The original lien amount was $234,500.00. If Plaintiff were somehow successful in his allegations, Flagstar would lose its lien which has a value of well-over $75,000.00.

31.      Thus, assuming the allegations in the Complaint are true, which Defendants do solely for the limited purpose of removal, the value of the property or lien can reasonably be expected to exceed $75,000.00. Accordingly, Defendants have more than established that the amount-in-controversy is satisfied pursuant to 28 U.S.C. §§ 1332(d)(2) & 1332(d)(6).

## C.    Consent of All Properly Joined and Served Defendants

32.      Section 1446 requires that "all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A).

33.      At the time of the initial filing, the Law Firm Defendants did not consent to removal. Co-Defendant John McNicholas cited his preference for state court. Co-Defendant Catherine Eastwood never provided her consent.

34.      Accordingly, the case stated by the initial pleading was not removable as it did not comply with § 1446(b)(2)(A).

35.      Section 1446(b)(3) provides that "if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant through service or otherwise, of a copy of an amended pleading, motion, **order or other paper** from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3) (emphasis added).

36.      Here, on October 23, 2023, the Superior Court of Rhode Island, Kent Division granted the Law Firm Defendants' Motion to Dismiss, dismissing the Law Firm Defendants from the civil action.

37.     October 27, 2023, Defendants received the Law Firm Defendants' Proposed Order Granting Motion to Dismiss, constituting an "order or other paper." It was on this date that Defendants could first ascertain that all remaining Defendants consent to removal and therefore first ascertained the case is one which has become removable.

38.     A First Circuit Court ruled on this precise issue in *Parker v. County of Oxford*, 224 F. Supp. 2d 292 (D. Me 2002). In *Parker*, the District of Maine denied a Motion to Remand because "Defendants first 'ascertained' that th[e] case was fully removable when they received the 'other paper' – the Stipulation of Dismissal – by which they learned that the nonconsenting Defendant was no longer a party to the case." No other First Circuit Court has ruled otherwise regarding this issue. *See also*, *Interstate Roofing, Inc. v. Valley Forge insurance Co.*, 2007 WL4385490, (D. Ore. Dec. 11, 2007) (finding federal jurisdiction after removal of nonconsenting parties); *Love v. John Does 1-9, et al.*, 2017 WL 5717792 (D. N.J. Nov. 28, 2017) (same); *Beckstrom v. Acuity*, 2018 WL 6262927 (N. D. Ga. Jan. 29, 2018) (same).

39.     Accordingly, Defendants filed this Notice of Removal within 30 days which they first ascertained that the matter was removable.

40.     Furthermore, the former Chief Financial Officer of Flagstar Bank was not a "properly joined and served" Defendant. Plaintiff's Complaint admits that service was not completed to him personally but was mailed to Flagstar's headquarters. Accordingly, his consent is not required pursuant to 28 U.S.C. § 1446(b)(2)(A).

41.     Accordingly, all Defendants properly joined and served Defendants consent to removal.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 11/21/2023 11:52 AM
Envelope: 4376805
Reviewer: Lindsay Z.

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 8 of 430 PageID #: 202

### III.    <u>VENUE</u>

42.    Venue is proper in this Court because this district and division encompass the Superior Court of Rhode Island, Kent Division, the forum from which this case has been removed.

### IV.    <u>NOTICE</u>

43.    Concurrent with the filing of this Notice of Removal, Defendants will file a Notice of Filing Notice of Removal with the Clerk of the Superior Court and will attach a copy of this Notice of Removal thereto.  A copy of the Notice of Filing of Notice of Removal, excluding exhibits, is attached hereto as **<u>Exhibit C</u>**.

44.    Defendants reserve the right to amend their Notice of Removal and/or oppose any amendment of Plaintiffs' Complaint that would add any non-diverse defendant(s), destroying this Court's diversity jurisdiction.

45.    If any questions arise as to the propriety of the removal of this action, Defendants request the opportunity to present a brief and argument in support of their position that this case is removable.

### V.    <u>CONCLUSION</u>

WHEREFORE, Defendant Flagstar Bank, FSB ("Flagstar"), and Defendant James K. Ciroli ("Ciroli,") (collectively as "Defendants"), hereby remove this action to this Court and seek all other relief as this Court deems equitable and just.

Dated: November 21, 2023

Respectfully submitted,
**FLAGSTAR BANK, FSB and
JAMES K. CIROLI**

By:/s/Thomas W. Lyons
Thomas W. Lyons
STRAUSS, FACTOR, LAING & LYONS
One Davol Square, Suite 305
Providence, RI  02903
(401) 456-0700

8

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 11/21/2023 11:52 AM
Envelope: 4376805
Reviewer: Lindsay Z.

Case 1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 9 of 430 PageID #: 203

tlyons@straussfactor.com

David M. Asbury
(Motion for Pro Hac Vice Forthcoming)
TROUTMAN PEPPER
HAMILTON SANDERS LLP
222 Central Park Avenue,
Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7757
Facsimile: (757) 687-7500
david.asbury@troutman.com

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 11/21/2023 11:52 AM
Envelope: 4376805
Reviewer: Lindsay Z.

1:23-cv-00490-MSM-PAS   Document 5   Filed 11/21/23   Page 10 of 430 PageID #:
204

## IN THE SUPERIOR COURT OF RHODE ISLAND
### Kent Division

**ARTHUR OF THE FAMILY WITTENBERG,**
        **Plaintiff,**
        v.                                          **CIVIL ACTION NO. KC-2023-0303**

**CATHERINE V. EASTWOOD et al.,**
        **Defendants.**

### NOTICE OF FILING OF NOTICE OF REMOVAL

PLEASE TAKE NOTICE that a Notice of Removal of this Action from the Superior

Court of Rhode Island, Kent Division, to the United States District Court for Rhode Island was

filed on November 21, 2023 in the United States District Court for Rhode Island (a copy,

excluding exhibits, of which is attached hereto as **Exhibit 1**), thereby effecting removal of this

Action, and pursuant to 28 U.S.C. § 1446(d) this Court shall proceed no further.


Dated: November 21, 2023                    Respectfully submitted,

                                            **FLAGSTAR BANK, FSB and**
                                            **JAMES K. CIROLI**
                                            By:*/s/ Thomas W. Lyons*
                                            Thomas W. Lyons
                                            STRAUSS, FACTOR, LAING & LYONS
                                            One Davol Square, Suite 305
                                            Providence, RI  02903
                                            (401) 456-0700
                                            tlyons@straussfactor.com


                                            David M. Asbury (Pro Hac Vice Pending)
                                            TROUTMAN PEPPER
                                            HAMILTON SANDERS LLP
                                            222 Central Park Avenue,
                                            Suite 2000
                                            Virginia Beach, Virginia 23462
                                            Telephone: (757) 687-7757
                                            Facsimile: (757) 687-7500
                                            david.asbury@troutman.com

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 11/21/2023 11:52 AM
Envelope: 4376805
Reviewer: Lindsay Z.

Case 1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 11 of 430 PageID #: 205

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 21st day of November, 2023, a true and correct copy of the foregoing Notice of Filing of Notice of Removal was sent via regular Federal Express, postage prepaid, to the following:

> Arthur of the Family Wittenberg
> 701 Loyola Avenue, Unit 57867
> New Orleans, LA 70113

Dated: November 21, 2023                Respectfully submitted,

**FLAGSTAR BANK, FSB and
JAMES K. CIROLI**

By:*/s/ Thomas W. Lyons*

Thomas W. Lyons
STRAUSS, FACTOR, LAING & LYONS
One Davol Square, Suite 305
Providence, RI 02903
(401) 456-0700
tlyons@straussfactor.com

David M. Asbury (Pro Hac Vice Pending)
TROUTMAN PEPPER
HAMILTON SANDERS LLP
222 Central Park Avenue,
Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7757
Facsimile: (757) 687-7500
david.asbury@troutman.com

2

# SC Docket Sheet
## Case No. KC-2023-0303

| | | |
|---|---|---|
| Arthur of the Wittenberg Family<br>v.<br>CATERINE EASTWOOD et al. | §<br>§<br>§<br>§<br>§ | Location: **Kent County Superior Court**<br>Filed on: **05/02/2023**<br>US District Court Case **1:23-cv-00490**<br>Number: |

---

### CASE INFORMATION

**Statistical Closures**
11/21/2023    Closed-Non Trial-Unassigned-Removed to Federal Court

Case Type: **Civil Action**

Case Status: **11/21/2023    Closed**

---

| DATE | CASE ASSIGNMENT |
|---|---|
| | **Current Case Assignment**<br>Case Number              KC-2023-0303<br>Court                         Kent County Superior Court<br>Date Assigned             05/02/2023 |

---

### PARTY INFORMATION

| | | |
|---|---|---|
| **Plaintiff** | **Arthur of the Wittenberg Family** | **Pro Se** |
| **Defendant** | **CIROLI, CFO, JAMES** | **LYONS, THOMAS W., III**<br>*Retained*<br>4014560700(W) |
| | **EASTWOOD, CATERINE** | **MCNICHOLAS, JOHN S**<br>*Retained*<br>9782442803(W) |
| | **KORDE & ASSOCIATES, P.C.** | **MCNICHOLAS, JOHN S**<br>*Retained*<br>9782442803(W) |
| | **MCNICHOLES, JOHN** | **MCNICHOLAS, JOHN S**<br>*Retained*<br>9782442803(W) |
| | **New York Community Bancorp, INC d/b/a Flagstar Bank** | **LYONS, THOMAS W., III**<br>*Retained*<br>4014560700(W) |

---

| DATE | EVENTS & ORDERS OF THE COURT |
|---|---|
| 11/21/2023 | Closed-Non Trial-Unassigned-Removed to Federal Court |
| 11/21/2023 | Case Removed to US District Court |
| 11/21/2023 | Notice of Removal<br>*Flagstar Bank's Notice of Removal* |
| 11/09/2023 | Letter Filed<br>*RETURNED*<br>Party: Plaintiff Arthur of the Wittenberg Family |
| 11/01/2023 | Order Entered Motion to Dismiss (Judicial Officer: McHugh, Associate Justice Kevin F. )<br>*DEFENDANTS' CATHERINE EASTWOOD, JOHN MCNICHOLS*<br>*AND KORDE & ASSOCIATES, P.C.'S MOTION TO DISMISS COMPLAINT* |

*Printed on 11/21/2023 at 12:32 PM*

# SC DOCKET SHEET
## CASE NO. KC-2023-0303

| | |
|---|---|
| 10/23/2023 | **Hearing on Motion** (2:00 PM) (Judicial Officer: McHugh, Associate Justice Kevin F. ;Location: Kent Courtroom 4B)<br>*In-Person - Plaintiff's Motion for Equal access*<br>    *09/25/2023    Reset by Court to 10/23/2023*<br>    *10/23/2023    Reset by Court to 10/23/2023*<br>*Heard and Denied* |
| 10/23/2023 | **Hearing on Motion to Dismiss** (2:00 PM) (Judicial Officer: McHugh, Associate Justice Kevin F. ;Location: Kent Courtroom 4B)<br>*In-Person - MOTION OF DEFENDANTS, KORDE & ASSOCIATES, P.C., CATHERINE V. EASTWOOD AND JOHN S. MCNICHOLAS TO DISMISS AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED*<br>    *09/25/2023    Reset by Court to 09/25/2023*<br>    *09/25/2023    Reset by Court to 10/23/2023*<br>    *10/23/2023    Reset by Court to 10/23/2023*<br>*Heard and Granted* |
| 10/23/2023 | **Hearing on Motion to Dismiss** (2:00 PM) (Judicial Officer: McHugh, Associate Justice Kevin F. ;Location: Kent Courtroom 4B)<br>*In-Person at 2:00 pm - MOTION TO DISMISS OF DEFENDANTS FLAGSTAR BANK FSB AND JAMES K. CIROLI - obj filed*<br>    *09/25/2023    Reset by Court to 09/25/2023*<br>    *09/25/2023    Reset by Court to 10/23/2023*<br>    *10/23/2023    Reset by Court to 10/23/2023*<br>*Heard and Denied* |
| 09/27/2023 | Order Entered/Case Assigned to Judge (Judicial Officer: Van Couyghen, Associate Justice Brian )<br>*Change of Judical Justice* |
| 09/27/2023 | Order Motion for Preliminary Injunction (Judicial Officer: Van Couyghen, Associate Justice Brian ) |
| 09/11/2023 | Order Motion for Preliminary Injunction (Judicial Officer: McBurney, Associate Justice Joseph J ) |
| 09/08/2023 | Notice<br>*of Hearing sent on 9/8/23 to all parties and via certified mail* |
| 09/06/2023 | Order Not Entered<br>*8/3/23 PPI Order* |
| 08/31/2023 | **Preliminary Injunction** (10:30 AM) (Judicial Officer: McBurney, Associate Justice Joseph J ;Location: Kent Courtroom 4A)<br>*In-Person - All documents must be filed by 8/10/23*<br>*Heard and Granted* |
| 08/31/2023 | Exhibits List Filed (Judicial Officer: McBurney, Associate Justice Joseph J ) |
| 08/31/2023 | Exhibits Filed in Case<br>*and hard copies in Kent County Sup. Ct. Vault* |
| 08/25/2023 | Objection to Motion<br>*Objection to Motion for Recusal* |
| 08/10/2023 | Memorandum in Support of Motion to Dismiss<br>*Defendants Flagstar and Ciroli's Reply in Support of Motion to Dismiss and for Preliminary Injunction* |
| 08/08/2023 | Miscellaneous Motion Filed<br>*Notice of Claim agst. J. Brian Van Couyghen*<br>Party: Plaintiff Arthur of the Wittenberg Family |
| 08/08/2023 | Motion to Recuse |

# SC DOCKET SHEET
## CASE NO. KC-2023-0303

| | |
|---|---|
| | *Plf, Motion to Recuse J. Brian Couyghen and Objection to Order re: TRO*<br>Party: Plaintiff Arthur of the Wittenberg Family |
| 08/08/2023 | Response to Motion Filed<br>*Plf, Response to Def, Preliminary Injunction*<br>Party: Plaintiff Arthur of the Wittenberg Family |
| 08/03/2023 | **Hearing on Motion for Continuance** (10:00 AM) (Judicial Officer: Van Couyghen, Associate Justice Brian ;Location: Kent Courtroom 4A)<br>*In-Person:*<br>*Heard and Granted* |
| 08/03/2023 | **Hearing on Motion** (10:00 AM) (Judicial Officer: Van Couyghen, Associate Justice Brian ;Location: Kent Courtroom 4A)<br>*In-Person - Equal Access In-Person - sent notice to all parties via regular mail on 7/24/23*<br>*Continued* |
| 08/03/2023 | **Hearing on Motion for Restraining Order** (10:00 AM) (Judicial Officer: Van Couyghen, Associate Justice Brian ;Location: Kent Courtroom 4A)<br>*In-Person - sent notice to all parties via regular mail on 7/24/23*<br>*Granted/Denied in Part* |
| 08/02/2023 | Motion for Continuance<br>Party: Plaintiff Arthur of the Wittenberg Family |
| 08/01/2023 | Order - Petition for Admission Pro Hac Vice Granted (Judicial Officer: Van Couyghen, Associate Justice Brian )<br>*David M. Asbury, Esq.* |
| 07/24/2023 | **Hearing on Motion to Appear Pro Hac Vice** (2:00 PM) (Judicial Officer: Van Couyghen, Associate Justice Brian ;Location: Kent Courtroom 4A)<br>*In-Person - Def. Motion for Pro Hac Vice - David Asbury*<br>*Heard and Granted* |
| 07/24/2023 | Omnibus Form<br>*Omnibus Form Scheduling Hearing on Motion for Temporary Restraining Order* |
| 07/14/2023 | Motion to Appear Pro Hac Vice<br>*Flagstar Bank's Motion for David Asbury to Appear Pro Hac Vice* |
| 07/13/2023 | Memorandum Filed<br>*Defendants' Memorandum in Support of Motion for Temporary Restraining Order and Preliminary Injunction* |
| 07/13/2023 | Motion for Temporary Restraining Order<br>*Defendants' Motion for Temporary Restraining Oder and Preliminary Injunction* |
| 07/13/2023 | Miscellaneous Motion Filed<br>*Plntf Motion for Equal Access* |
| 06/20/2023 | Entry of Appearance<br>*Notice of Appearance of John S. McNicholas* |
| 06/20/2023 | Entry of Appearance<br>*Notice of Appearance of Catherine V. Eastwood* |
| 06/16/2023 | Objection Filed<br>*Objection to Motion to Dismiss and Amended Response* |
| 06/15/2023 | Motion Not Scheduled<br>*Plf, Objection to hearing date set by def, and notice of hearing - no court sessions on 6/22 and not a scheduled civil calendar date -* |
| 06/02/2023 | Motion to Strike<br>*By Plaintiff: Strick J McNicholas "appearance and pleadings"* |

# SC DOCKET SHEET
## CASE NO. KC-2023-0303

| | |
|---|---|
| 06/02/2023 | Objection Filed |
| | *By Pliaintiff: Obj to hearing dateof Motion to Dismiss and requests date of June 22* |
| 06/02/2023 | Objection to Motion to Dismiss Filed |
| | *Response and Obj to Motion to Dismiss by Plaintiff* |
| 05/30/2023 | Entry of Appearance |
| 05/26/2023 | Attachment Filed |
| | *Exhibits to Defendants Flagstar Bank FSB's and Ciroli's Motion to Dismiss* |
| 05/26/2023 | Memorandum Filed |
| | *MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANTS, KORDE & ASSOCIATES, P.C., CATHERINE V. EASTWOOD AND JOHN S. MCNICHOLAS TO DISMISS AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED* |
| 05/26/2023 | Motion |
| | *MOTION OF DEFENDANTS, KORDE & ASSOCIATES, P.C., CATHERINE V. EASTWOOD AND JOHN S. MCNICHOLAS TO DISMISS AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED* |
| 05/26/2023 | Omnibus Form |
| | *Omnibus Form- Motion to Dismiss* |
| 05/26/2023 | Omnibus Form |
| | *Omnibus Calendar Assignment Form Setting Hearing Date* |
| 05/26/2023 | Memorandum in Support of Motion to Dismiss |
| | *Memorandum in Support of Defendants Flagstar Bank FSB's and James K. Ciroli's Motion to Dismiss* |
| 05/26/2023 | Motion to Dismiss |
| | *Motion to Dismiss of Defendants Flagstar Bank FSB and James K. Ciroli* |
| 05/26/2023 | Entry of Appearance |
| | *Thomas Lyons' Entry of Appearance for Defendants Flagstar Bank and James Ciroli* |
| 05/03/2023 | Summons |
| 05/03/2023 | Amended Complaint Filed |
| 05/02/2023 | Exhibits Filed |
| 05/02/2023 | Complaint Filed |
| 05/02/2023 | Summons |



## STATE OF RHODE ISLAND
## AND PROVIDENCE PLANTATIONS

### CLERK'S CERTIFICATE AND TRANSMITTAL OF THE RECORD

| Case Information |
| --- |

Case Caption: **Wittenberg** vs. **Flagstar Bank, N.A., et al**

Federal Court Case No. **1:23-cv-00490**   State Court Case No. **KC-2023-0303**

| Record Information |
| --- |

Confidential:    Yes ☐    No ☑    Description: _____

Sealed documents:    Yes ☐    No ☑    Description: _____

| Certification |
| --- |

I, **Lindsay Zuercher** , Clerk of the Rhode Island Superior Court for the County of
**Kent** do certify that the attached documents are all the documents
included in the record in the above referenced case.

Date: Nov/21/2023

Clerk:
/s/ **Danielle Keegan**

Prepared by:
/s/ **Lindsay Zuercher**

**SENDER: *COMPLETE THIS SECTION***

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Arthur Wittenberg
701 loyola Ave
Unit 5M867
New Orleans. LA 70113

9590 9402 8037 2349 9928 91

2. Article Number *(Transfer from service label)*

7022 0410 0002 8983 0491

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X

☐ Agent
☐ Addressee

B. Received by *(Printed Name)*          C. Date of Delivery

D. Is delivery address different from Item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053          Domestic Return Receipt

**USPS TRACKING #**

9590 9402 8037 2349 9928 91

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

Kent County Superior Court
ATTN: Danielle Keagan
222 Quaker lane
Warwick, RI 02886

r: Arthur Wittenberg
KC-2023-0303



STATE OF RHODE ISLAND
Superior Court
*Case Scheduling Office - Kent*
Noel Judicial Complex
222 Quaker Lane
Warwick, Rhode Island 02886

7022 0410 0002 8983 0491

FIRST-CLASS

UNCLAIMED

9/18
9'

NIXIE        788    DE 1

RETURN TO
UNCLAI
UNABLE T(

SC: 02886018699

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**CERTIFIED MAIL®**

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 10/26/2023 3:28 PM
Envelope: 4342517
Reviewer: Lindsay Z.

1:23-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 21 of 430 PageID #:
215

## STATE OF RHODE ISLAND

**KENT, SS**                                             **SUPERIOR COURT**

**ARTHUR OF THE FAMILY WITTENBERG,**
**PLAINTIFF**

                                                   **CASE No. KC2023-0303**

**V.**

**CATHERINE V. EASTWOOD,**
**JOHN MCNICHOLAS, KORDE &**
**ASSOCIATES, P.C, NEW YORK**
**COMMUNITY BANKCORP, INC., D/B/A**
**FLAGSTAR BANK, AND JAMES K. CIROLI,**
**DEFENDANTS,**

## ORDER GRANTING DEFENDANTS' CATHERINE EASTWOOD, JOHN MCNICHOLS AND KORDE & ASSOCIATES, P.C.'S MOTION TO DISMISS COMPLAINT

The Motion to Dismiss Complaint of Defendants, Catherine Eastwood, John McNicholas and Korde & Associates, P.C. came on regularly for hearing on the Dispositive Calendar for October 23, 2023, the Honorable Kevin F. McHugh, Associate Justice, presiding. The Court having read and considered the pleadings and arguments of the Defendants, Catherine Eastwood, John McNicholas and Korde & Associates, P.C., good cause appearing and for the reasons stated on the record, the Motion to Dismiss Complaint as to Defendants Catherine Eastwood, John McNicholas and Korde & Associates, P.C. is hereby GRANTED.

SO ORDERED:                              ENTERED:       /s/ Brittany Moreau
                                                         Deputy Clerk
/s/ Kevin F. McHugh                                      November 1, 2023
Associate Justice

Kevin F. McHugh, Associate Justice          Clerk of Court

Dated: _____, 2023

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 10/26/2023 3:28 PM
Envelope: 4342517
Reviewer: Lindsay Z.

Submitted by:

Catherine Eastwood, John McNicholas
and Korde & Associates, P.C.
By their attorney,
/s/ Catherine Eastwood
Catherine Eastwood
Korde & Associates, P.C.
900 Chelmsford Street, Suite 3102
Lowell, MA 01851
ceastwood@kordeassociates.com

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 10/26/2023 3:28 PM
Envelope: 4342517
Reviewer: Lindsay Z.

1:23-CV-00490-MSM-PAS     Document 5     Filed 11/21/23     Page 23 of 430 PageID #: 217

## CERTIFICATE OF SERVICE

I, Catherine Eastwood, hereby certify that on October 26, 2023 the Order Granting Defendants Motion to Dismiss was filed through the electronic filing system with electronic service completed on all parties registered therein to receive notice and that any non-registered attorneys or parties have been served in accordance with the Rules of Civil Procedure.

tlyons@straussfactor.com

*The document electronically filed and served is available for viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.*

I also caused these documents to be mailed to the defendant via regular mail and email as follows:

Arthur of the Family Wittenburg

701 Loyola Avenue Unit 57867

New Orleans, LA 70113

witt@wittenbergfamily-trust.com

/s/ Catherine V. Eastwood

Catherine Eastwood, Esq. RI# 6406

STATE OF RHODE ISLAND                               SUPERIOR
COURT

Kent, SC


Arthur Wittenberg a/k/a                    :

Arthur of the Wittenberg Family            :

       Plaintiff                           :       C.A. No. KC-2023-0303

V.                                         :

Catherine Eastwood, et al                  :

       Defendant


## ORDER

    This case is hereby assigned to Associate Justice Kevin McHugh. Plaintiff has alleged that he has filed a lawsuit against Associate Justice Brian Van Couyghen in Federal District Court.


Enter:                                             Per Order:


Judge          9.21.23                             Clerk      9.27.23

**Certification**

I hereby certify that on September _27_ , 2023, I filed and served this document through the electronic filing system on all persons who have entered an appearance, Catherine Eastwood, Esq., ceastwood@kordeassociates.com, John McNicholas, Esq., jmcnicholas@kordeassociates.com, Thomas Lyons, Esq., TLYONS@STRAUSSFACTOR.COM; David Ashbury, Esq. , and by regular mail to Arthur Wittenberg, 701 Loyola Avenue, Unit 57867, New Orleans, LA 70113.  The document electronically filed and served is available for Viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.

/s/ Dayna Beretta

Case Number KC-2023-0303
Filed in Kent County Superior Court
Submitted: 9/12/2023 5:31 PM
Envelope: 4271124
Reviewer: Lindsay Z.

cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 26 of 430 PageID #: 220

**STATE OF RHODE ISLAND**                                    **SUPERIOR COURT**
**KENT, SC.**

**ARTHUR OF THE FAMILY WITTENBERG,**
      **Plaintiff,**

   **v.**                                              **C.A. NO. KC-2023-0303**

**CATHERINE V. EASTWOOD et al.,**
      **Defendants.**

**ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION**

The motion of Defendants Flagstar Bank, N.A., and James K. Ciroli (collectively "Defendants") for preliminary injunction against Plaintiff, having come before Associate Justice Brian Van Couyghen on August 3, 2023, it is hereby

ORDERED

1. The motion is granted and a preliminary injunction is in effect until further order of the Court.

2. Plaintiff and anyone associated with Plaintiff, shall not reside at or occupy the property located at 24 Ninigret Street, Warwick, Rhode Island, 02889 ("the Property").

3. Plaintiff shall not remove any items from the Property or cause any waste or destruction of the Property.

4. Defendants may change the locks on and may enter the Property.

5. Defendants may maintain the property.

6. The matter is continued for further hearing at Plaintiff's request to be held before the Court on August 31, 2023 at 10:00, at which time the parties will be allowed to present additional evidence pertaining to this injunction.

Case Number KC-2028-0903
Filed in Kent County Superior Court
Submitted: 9/12/2023 5:31 PM
Envelope: 4271124
Reviewer: Lindsay Z.

Case 1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 27 of 430 PageID #: 221

7. Any documentary evidence to be presented at the hearing on August 31, 2023, shall be

filed with the court no later than August 10, 2023.

By Order:                                    Enter:

Date:   9·27·23                              9·27·23

Prepared by:

/s/ Meghan Barry
Meghan Barry, #8437
Strauss, Factor, Laing & Lyons
One Davol Square, Suite 305
Providence, RI 02903
(401) 456-0700
mbarry@straussfactor.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2023, I filed and served this document through the electronic filing system on all persons who have entered an appearance, Catherine Eastwood, ceastwood@kordeassociates.com, John McNicholas, jmcnicholas@kordeassociates.com, and by regular mail and email to Arthur Wittenberg, 701 Loyola Avenue, Unit 57867, New Orleans, LA 70113, and witt@wittenbergfamily-trust.com.  The document electronically filed and served is available for Viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.

/s/ Meghan Barry
Meghan Barry

RHODE ISLAND JUDICIARY

RHODE ISLAND SUPERIOR COURT
LICHT JUDICIAL COMPLEX
PROVIDENCE, RI 02903



### TRANSCRIPT INVOICE

DATE:    SEPTEMBER 13, 2023

Sara Z. Czartolomna
COURT REPORTER/ELECTRONIC COURT REPORTER

SOCIAL SECURITY NUMBER

CASE NAME:    Arthur of the Wittenberg Family vs. Caterine V. Eastwood, et al

CASE NO.:    KC-2023-0303

HEARING DATES:    August 31, 2023

HEARD BEFORE:    THE HONORABLE JOSEPH J. McBURNEY

COUNTY OF:    KENT

TYPE:    ☐    APPEAL (ORDERED/PAID BY PRIVATE ATTORNEY)

☒    ORDERED BY JUDGE

☐    APPEAL TRANSCRIPT AT STATE EXPENSE (Attach signed court order)

☐    NON-APPEAL TRANSCRIPT AT STATE EXPENSE (Attach signed court order)

*Van Cuy*
Approved by Judge

50    PAGES  AT $3.00 PER PAGE    150.00

_____    COPY PAGES AT $1.50 PER PAGE    _____

TOTAL AMOUNT DUE:  $150.00

*Sara Z. Czartolomna*
COURT REPORTER SIGNATURE

SUPERIOR COURT
SEP 13 2023
ADMINISTRATOR

APPROVED: _____    DATE: _____
COURT ADMINISTRATOR

TRANSCRIPT INVOICE NEW - 2-16-2009 - Copy/mm/9/13/2023

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 9/12/2023 5:31 PM
Envelope: 4271124
Reviewer: Lindsay Z.

1:23-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 29 of 430 PageID #:
223

**STATE OF RHODE ISLAND**                                **SUPERIOR COURT**
**KENT, SC.**

**ARTHUR OF THE FAMILY WITTENBERG,**
        **Plaintiff,**

**v.**                                                    **C.A. NO. KC-2023-0303**

**CATHERINE V. EASTWOOD et al.,**
        **Defendants.**

### ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION

The motion of Defendants Flagstar Bank, N.A., and James K. Ciroli (collectively "Defendants") for preliminary injunction against Plaintiff, having come before Associate Justice Brian Van Couyghen on August 3, 2023, it is hereby

ORDERED

1. The motion is granted and a preliminary injunction is in effect until further order of the Court.

2. Plaintiff and anyone associated with Plaintiff, shall not reside at or occupy the property located at 24 Ninigret Street, Warwick, Rhode Island, 02889 ("the Property").

3. Plaintiff shall not remove any items from the Property or cause any waste or destruction of the Property.

4. Defendants may change the locks on and may enter the Property.

5. Defendants may maintain the property.

6. The matter is continued for further hearing at Plaintiff's request to be held before the Court on August 31, 2023 at 10:00, at which time the parties will be allowed to present additional evidence pertaining to this injunction.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 9/12/2023 5:31 PM
Envelope: 4271124
Reviewer: Lindsay Z.

1:23-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 30 of 430 PageID #:
224

7. Any documentary evidence to be presented at the hearing on August 31, 2023, shall be

filed with the court no later than August 10, 2023.

By Order:                                        Enter:


_____        _____

Date:



Prepared by:

/s/ Meghan Barry
Meghan Barry, #8437
Strauss, Factor, Laing & Lyons
One Davol Square, Suite 305
Providence, RI 02903
(401) 456-0700
mbarry@straussfactor.com



## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2023, I filed and served this document through the electronic filing system on all persons who have entered an appearance, Catherine Eastwood, ceastwood@kordeassociates.com, John McNicholas, jmcnicholas@kordeassociates.com, and by regular mail and email to Arthur Wittenberg, 701 Loyola Avenue, Unit 57867, New Orleans, LA 70113, and witt@wittenbergfamily-trust.com. The document electronically filed and served is available for Viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.

*/s/ Meghan Barry*
Meghan Barry

## U.S. Postal Service
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

New Orleans, LA 70113 OFFICIAL USE

| Certified Mail Fee | $4.35 | | 0387 |
| | | | 66 |

Extra Services & Fees *(check box, add fee as appropriate)*
- ☐ Return Receipt (hardcopy) $ $0.00
- ☐ Return Receipt (electronic) $ $0.00
- ☐ Certified Mail Restricted Delivery $ $0.00
- ☐ Adult Signature Required $ $0.00
- ☐ Adult Signature Restricted Delivery $ $0.00

Postmark Here

WARWICK RI 029

8 2023

PONI UG ST

| Postage | $0.66 | |
| Total Postage and Fees | $8.56 | 09/08/2023 |

Sent To Arthur Wittenburg A/k/a Arthur Wittenberg
Street and Apt. No., or PO Box No. 701 LOYOLA Ave. UnIT 57867
City, State, ZIP+4® New Orleans, LA 70113

MSM-PAS - Document 5 - Filed 12-13 - Page 226

**...rtified Mail service provides the following benefits.**

- A receipt (this portion of the Certified Mail label).
- A unique identifier for your mailpiece.
- Electronic verification of delivery or attempted delivery.
- A record of delivery (including the recipient's signature) that is retained by the Postal Service™ for a specified period.

**Important Reminders:**

- You may purchase Certified Mail service with First-Class Mail®, First-Class Package Service®, or Priority Mail® service.
- Certified Mail service is *not* available for International mail.
- Insurance coverage is *not* available for purchase with Certified Mail service. However, the purchase of Certified Mail service does not change the insurance coverage automatically included with certain Priority Mail items.
- For an additional fee, and with a proper endorsement on the mailpiece, you may request the following services:
  - Return receipt service, which provides a record of delivery (including the recipient's signature). You can request a hardcopy return receipt or an electronic version. For a hardcopy return receipt, complete PS Form 3811, *Domestic Return Receipt*; attach PS Form 3811 to your mailpiece;

for an electronic return receipt, see a retail associate for assistance. To receive a duplicate return receipt for no additional fee, present this USPS®-postmarked Certified Mail receipt to the retail associate.
  - Restricted delivery service, which provides delivery to the addressee specified by name, or to the addressee's authorized agent.
  - Adult signature service, which requires the signee to be at least 21 years of age (not available at retail).
  - Adult signature restricted delivery service, which requires the signee to be at least 21 years of age and provides delivery to the addressee specified by name, or to the addressee's authorized agent (not available at retail).

- To ensure that your Certified Mail receipt is accepted as legal proof of mailing, it should bear a USPS postmark. If you would like a postmark on this Certified Mail receipt, please present your Certified Mail item at a Post Office™ for postmarking. If you don't need a postmark on this Certified Mail receipt, detach the barcoded portion of this label, affix it to the mailpiece, apply appropriate postage, and deposit the mailpiece.

**IMPORTANT: Save this receipt for your records.**



**STATE OF RHODE ISLAND JUDICIARY**

# SUPERIOR COURT
### NOTICE

JOHN S MCNICHOLAS
900 CHELMSFORD ST
STE 3102
LOWELL MA  01851

| Plaintiff | Civil Action Number |
|---|---|
| Arthur Wittenberg a/k/a Arthur of the Wittenberg Family | KC-2023-0303 |
| v. | Noel Judicial Complex |
| **Defendant** | Kent County |
| CATERINE EASTWOOD | 222 Quaker Lane |
| | Warwick RI  02886 |
| | *(401) 822-6900 |

This case has been scheduled in the court location listed above on **10/23/2023**.  All parties should report to Associate Justice Brian Van Couyghen at **2:00 PM** in Kent Courtroom 4A for **Hearing on Motion to Dismiss– Defendants, Korde & Associates, P.C., Catherine V. Eastwood and John McNicholas' Motion to Dismiss.**


If you have any questions regarding this procedure, please contact the Scheduling Office at (401) 822-6923.

**Please note:  Failure to appear may result in the case being dismissed or the party being defaulted.**

| This Notice was generated on 9/8/2023. | /s/ Dayna Beretta |
|---|---|
| | Scheduling Office |

If you need language assistance, please contact the Office of Court Interpreters at (401) 222-8710 or by email at interpreterfeedback@courts.ri.gov before your court appearance.

* If an accommodation for a disability is necessary, please contact the Superior Court Clerk's Office at the telephone number listed above as soon as possible.  TTY users can contact the Superior Court through Rhode Island Relay at 7-1-1 or 1-800-745-5555 (TTY) to voice number.



**STATE OF RHODE ISLAND JUDICIARY**

**SUPERIOR COURT**

NOTICE

JOHN S MCNICHOLAS
900 CHELMSFORD ST
STE 3102
LOWELL MA  01851

| Plaintiff | Civil Action Number |
|---|---|
| Arthur Wittenberg a/k/a Arthur of the Wittenberg Family | KC-2023-0303 |
| v. | Noel Judicial Complex |
| **Defendant** | Kent County |
| CATERINE EASTWOOD | 222 Quaker Lane |
| | Warwick RI  02886 |
| | *(401) 822-6900 |

This case has been scheduled in the court location listed above on **10/23/2023**.  All parties should report to Associate Justice Brian Van Couyghen at **2:00 PM** in Kent Courtroom 4A for **Hearing on Motion to Dismis. – Defendants' Flagstar FSB and James K. Ciroli's Motion to Dismiss.**

If you have any questions regarding this procedure, please contact the Scheduling Office at (401) 822-6923.

**Please note:  Failure to appear may result in the case being dismissed or the party being defaulted.**

| This Notice was generated on 9/8/2023. | /s/ Dayna Beretta |
|---|---|
| | Scheduling Office |

If you need language assistance, please contact the Office of Court Interpreters at (401) 222-8710 or by email at interpreterfeedback@courts.ri.gov before your court appearance.

* If an accommodation for a disability is necessary, please contact the Superior Court Clerk's Office at the telephone number listed above as soon as possible.  TTY users can contact the Superior Court through Rhode Island Relay at 7-1-1 or 1-800-745-5555 (TTY) to voice number.



**STATE OF RHODE ISLAND JUDICIARY**

## SUPERIOR COURT
### NOTICE

Arthur Wittenberg a/k/a Arthur of the Wittenberg Family
701 LOYOLA AVE UNIT 57867
NEW ORLEANS LA  70113

| Plaintiff | Civil Action Number |
|---|---|
| Arthur Wittenberg a/k/a Arthur of the Wittenberg Family | KC-2023-0303 |
|     v. | Noel Judicial Complex |
| | Kent County |
| **Defendant** | 222 Quaker Lane |
| CATERINE EASTWOOD | Warwick RI  02886 |
| | *(401) 822-6900 |

    This case has been scheduled in the court location listed above on **10/23/2023.**  All parties should report to Associate Justice Brian Van Couyghen at **2:00 PM** in Kent Courtroom 4A for **Hearing on Motion to Dismiss – Defendants, Korde & Associates, P.C., Catherine V. Eastwood and John McNicholas' Motion to Dismiss.**


    If you have any questions regarding this procedure, please contact the Scheduling Office at (401) 822-6923.

    **Please note:  Failure to appear may result in the case being dismissed or the party being defaulted.**

| This Notice was generated on 9/8/2023. | /s/ Dayna Beretta |
|---|---|
| | Scheduling Office |

    If you need language assistance, please contact the Office of Court Interpreters at (401) 222-8710 or by email at interpreterfeedback@courts.ri.gov before your court appearance.

    * If an accommodation for a disability is necessary, please contact the Superior Court Clerk's Office at the telephone number listed above as soon as possible.  TTY users can contact the Superior Court through Rhode Island Relay at 7-1-1 or 1-800-745-5555 (TTY) to voice number.



**STATE OF RHODE ISLAND JUDICIARY**

# SUPERIOR COURT
## NOTICE

JOHN S MCNICHOLAS
900 CHELMSFORD ST
STE 3102
LOWELL MA 01851

| Plaintiff | Civil Action Number |
|---|---|
| Arthur Wittenberg a/k/a Arthur of the Wittenberg Family | KC-2023-0303 |
| v. | Noel Judicial Complex |
| **Defendant** | Kent County |
| CATERINE EASTWOOD | 222 Quaker Lane |
|  | Warwick RI  02886 |
|  | *(401) 822-6900 |

This case has been scheduled in the court location listed above on **10/23/2023.**  All parties should report to Associate Justice Brian Van Couyghen at **2:00 PM** in Kent Courtroom 4A for **Hearing on Motion – Plaintiff's Motion for Equal Access.**

If you have any questions regarding this procedure, please contact the Scheduling Office at (401) 822-6923.

**Please note:  Failure to appear may result in the case being dismissed or the party being defaulted.**

| This Notice was generated on 9/8/2023. | /s/ Dayna Beretta |
|---|---|
|  | Scheduling Office |

If you need language assistance, please contact the Office of Court Interpreters at (401) 222-8710 or by email at interpreterfeedback@courts.ri.gov before your court appearance.

* If an accommodation for a disability is necessary, please contact the Superior Court Clerk's Office at the telephone number listed above as soon as possible.  TTY users can contact the Superior Court through Rhode Island Relay at 7-1-1 or 1-800-745-5555 (TTY) to voice number.



**STATE OF RHODE ISLAND JUDICIARY**

## SUPERIOR COURT
### NOTICE

THOMAS W. LYONS III
ONE DAVOL SQUARE
STE 305
PROVIDENCE RI  02903

| **Plaintiff** | **Civil Action Number** |
|---|---|
| Arthur Wittenberg a/k/a Arthur of the Wittenberg Family | KC-2023-0303 |
| v. | Noel Judicial Complex |
| **Defendant** | Kent County |
| CATERINE EASTWOOD | 222 Quaker Lane |
| | Warwick RI  02886 |
| | *(401) 822-6900 |

This case has been scheduled in the court location listed above on **10/23/2023**.  All parties should report to Associate Justice Brian Van Couyghen at **2:00 PM** in Kent Courtroom 4A for **Hearing on Motion to Dismiss – Defendants' Flagstar FSB and James K. Ciroli's Motion to Dismiss.**

If you have any questions regarding this procedure, please contact the Scheduling Office at (401) 822-6923.

**Please note:  Failure to appear may result in the case being dismissed or the party being defaulted.**

| This Notice was generated on 9/8/2023. | /s/ Dayna Beretta |
|---|---|
| | Scheduling Office |

If you need language assistance, please contact the Office of Court Interpreters at (401) 222-8710 or by email at interpreterfeedback@courts.ri.gov before your court appearance.

* If an accommodation for a disability is necessary, please contact the Superior Court Clerk's Office at the telephone number listed above as soon as possible.  TTY users can contact the Superior Court through Rhode Island Relay at 7-1-1 or 1-800-745-5555 (TTY) to voice number.



**STATE OF RHODE ISLAND JUDICIARY**

## SUPERIOR COURT
### NOTICE

THOMAS W. LYONS III
ONE DAVOL SQUARE
STE 305
PROVIDENCE RI  02903

| **Plaintiff**<br>Arthur Wittenberg a/k/a Arthur of the Wittenberg Family<br>v.<br>**Defendant**<br>CATERINE EASTWOOD | **Civil Action Number**<br>KC-2023-0303<br>Noel Judicial Complex<br>Kent County<br>222 Quaker Lane<br>Warwick RI  02886<br>*(401) 822-6900 |
| --- | --- |

This case has been scheduled in the court location listed above on **10/23/2023**.  All parties should report to Associate Justice Brian Van Couyghen at **2:00 PM** in Kent Courtroom 4A for **Hearing on Motion to Dismiss – Defendants, Korde & Associates, P.C., Catherine V. Eastwood and John McNicholas' Motion to Dismiss.**

If you have any questions regarding this procedure, please contact the Scheduling Office at (401) 822-6923.

**Please note:  Failure to appear may result in the case being dismissed or the party being defaulted.**

| This Notice was generated on 9/8/2023. | /s/ Dayna Beretta<br>Scheduling Office |
| --- | --- |

If you need language assistance, please contact the Office of Court Interpreters at (401) 222-8710 or by email at interpreterfeedback@courts.ri.gov before your court appearance.

* If an accommodation for a disability is necessary, please contact the Superior Court Clerk's Office at the telephone number listed above as soon as possible.  TTY users can contact the Superior Court through Rhode Island Relay at 7-1-1 or 1-800-745-5555 (TTY) to voice number.



**STATE OF RHODE ISLAND JUDICIARY**

## SUPERIOR COURT
### NOTICE

THOMAS W. LYONS III
ONE DAVOL SQUARE
STE 305
PROVIDENCE RI  02903

| Plaintiff | Civil Action Number |
|---|---|
| Arthur Wittenberg a/k/a Arthur of the Wittenberg Family | KC-2023-0303 |
| v. | Noel Judicial Complex |
| **Defendant** | Kent County |
| CATERINE EASTWOOD | 222 Quaker Lane |
| | Warwick RI  02886 |
| | *(401) 822-6900 |

This case has been scheduled in the court location listed above on **10/23/2023.**  All parties should report to Associate Justice Brian Van Couyghen at **2:00 PM** in Kent Courtroom 4A for **Hearing on Motion -  Plaintiff's Motion for Equal Access.**

If you have any questions regarding this procedure, please contact the Scheduling Office at (401) 822-6923.

**Please note:  Failure to appear may result in the case being dismissed or the party being defaulted.**

| This Notice was generated on 9/8/2023. | /s/ Dayna Beretta |
|---|---|
| | Scheduling Office |

If you need language assistance, please contact the Office of Court Interpreters at (401) 222-8710 or by email at interpreterfeedback@courts.ri.gov before your court appearance.

* If an accommodation for a disability is necessary, please contact the Superior Court Clerk's Office at the telephone number listed above as soon as possible.  TTY users can contact the Superior Court through Rhode Island Relay at 7-1-1 or 1-800-745-5555 (TTY) to voice number.



**STATE OF RHODE ISLAND JUDICIARY**

# SUPERIOR COURT
### NOTICE

David Ashbury
Troutman Pepper  Hamilton Sanders LLP
222 Central Park Ave
Suite 2000
Virginia Beach VA  23462

| **Plaintiff** | **Civil Action Number** |
|---|---|
| Arthur Wittenberg a/k/a Arthur of the Wittenberg Family | KC-2023-0303 |
| v. | Noel Judicial Complex |
| **Defendant** | Kent County |
| CATERINE EASTWOOD | 222 Quaker Lane |
| | Warwick RI  02886 |
| | *(401) 822-6900 |

This case has been scheduled in the court location listed above on **10/23/2023**.  All parties should report to Associate Justice Brian Van Couyghen at **2:00 PM** in Kent Courtroom 4A for **Hearing on Motion to Dismiss – Defendants, Korde & Associates, P.C., Catherine V. Eastwood and John McNicholas' Motion to Dismiss.**

If you have any questions regarding this procedure, please contact the Scheduling Office at (401) 822-6923.

**Please note:  Failure to appear may result in the case being dismissed or the party being defaulted.**

| This Notice was generated on 9/8/2023. | /s/ Dayna Beretta |
|---|---|
| | Scheduling Office |

If you need language assistance, please contact the Office of Court Interpreters at (401) 222-8710 or by email at interpreterfeedback@courts.ri.gov before your court appearance.

* If an accommodation for a disability is necessary, please contact the Superior Court Clerk's Office at the telephone number listed above as soon as possible.  TTY users can contact the Superior Court through Rhode Island Relay at 7-1-1 or 1-800-745-5555 (TTY) to voice number.



**STATE OF RHODE ISLAND JUDICIARY**

## SUPERIOR COURT
### NOTICE

David Ashbury
Troutman Pepper  Hamilton Sanders LLP
222 Central Park Ave
Suite 2000
Virginia Beach VA  23462

| **Plaintiff** | **Civil Action Number** |
|---|---|
| Arthur Wittenberg a/k/a Arthur of the Wittenberg Family | KC-2023-0303 |
| v. | Noel Judicial Complex |
| **Defendant** | Kent County |
| CATERINE EASTWOOD | 222 Quaker Lane |
| | Warwick RI  02886 |
| | *(401) 822-6900 |

This case has been scheduled in the court location listed above on **10/23/2023.**  All parties should report to Associate Justice Brian Van Couyghen at **2:00 PM** in Kent Courtroom 4A for **Hearing on Motion – Plaintiff's Motion for Equal Access.**

If you have any questions regarding this procedure, please contact the Scheduling Office at (401) 822-6923.

**Please note:  Failure to appear may result in the case being dismissed or the party being defaulted.**

| This Notice was generated on 9/8/2023. | /s/ Dayna Beretta |
|---|---|
| | Scheduling Office |

If you need language assistance, please contact the Office of Court Interpreters at (401) 222-8710 or by email at interpreterfeedback@courts.ri.gov before your court appearance.

* If an accommodation for a disability is necessary, please contact the Superior Court Clerk's Office at the telephone number listed above as soon as possible.  TTY users can contact the Superior Court through Rhode Island Relay at 7-1-1 or 1-800-745-5555 (TTY) to voice number.



**STATE OF RHODE ISLAND JUDICIARY**

# SUPERIOR COURT
### NOTICE

David Ashbury
Troutman Pepper  Hamilton Sanders LLP
222 Central Park Ave
Suite 2000
Virginia Beach VA  23462

| **Plaintiff** | **Civil Action Number** |
|---|---|
| Arthur Wittenberg a/k/a Arthur of the Wittenberg Family | KC-2023-0303 |
| v. | Noel Judicial Complex |
| **Defendant** | Kent County |
| CATERINE EASTWOOD | 222 Quaker Lane |
| | Warwick RI  02886 |
| | *(401) 822-6900 |

This case has been scheduled in the court location listed above on **10/23/2023.**  All parties should report to Associate Justice Brian Van Couyghen at **2:00 PM** in Kent Courtroom 4A for **Hearing on Motion to Dismiss – Defendants' Flagstar FSB and James K. Ciroli's Motion to Dismiss.**

If you have any questions regarding this procedure, please contact the Scheduling Office at (401) 822-6923.

**Please note:  Failure to appear may result in the case being dismissed or the party being defaulted.**

| This Notice was generated on 9/8/2023. | /s/ Dayna Beretta |
|---|---|
| | Scheduling Office |

If you need language assistance, please contact the Office of Court Interpreters at (401) 222-8710 or by email at interpreterfeedback@courts.ri.gov before your court appearance.

* If an accommodation for a disability is necessary, please contact the Superior Court Clerk's Office at the telephone number listed above as soon as possible.  TTY users can contact the Superior Court through Rhode Island Relay at 7-1-1 or 1-800-745-5555 (TTY) to voice number.



**STATE OF RHODE ISLAND JUDICIARY**

**SUPERIOR COURT**
NOTICE

Arthur Wittenberg a/k/a Arthur of the Wittenberg Family
701 LOYOLA AVE UNIT 57867
NEW ORLEANS LA  70113

| **Plaintiff** | **Civil Action Number** |
|---|---|
| Arthur Wittenberg a/k/a Arthur of the Wittenberg Family | KC-2023-0303 |
| v. | Noel Judicial Complex |
| **Defendant** | Kent County |
| CATERINE EASTWOOD | 222 Quaker Lane |
| | Warwick RI  02886 |
| | *(401) 822-6900 |

This case has been scheduled in the court location listed above on **10/23/2023.**  All parties should report to Associate Justice Brian Van Couyghen at **2:00 PM** in Kent Courtroom 4A for **Hearing on Motion to Dismiss – Defendants' Flagstar FSB and James K. Ciroli's Motion to Dismiss.**


If you have any questions regarding this procedure, please contact the Scheduling Office at (401) 822-6923.

**Please note:  Failure to appear may result in the case being dismissed or the party being defaulted.**

| This Notice was generated on 9/8/2023. | /s/ Dayna Beretta |
| | Scheduling Office |

If you need language assistance, please contact the Office of Court Interpreters at (401) 222-8710 or by email at interpreterfeedback@courts.ri.gov before your court appearance.

\* If an accommodation for a disability is necessary, please contact the Superior Court Clerk's Office at the telephone number listed above as soon as possible.  TTY users can contact the Superior Court through Rhode Island Relay at 7-1-1 or 1-800-745-5555 (TTY) to voice number.



**STATE OF RHODE ISLAND JUDICIARY**

**SUPERIOR COURT**
NOTICE

Arthur Wittenberg a/k/a Arthur of the Wittenberg Family
701 LOYOLA AVE UNIT 57867
NEW ORLEANS LA  70113

| **Plaintiff** | **Civil Action Number** |
|---|---|
| Arthur Wittenberg a/k/a Arthur of the Wittenberg Family | KC-2023-0303 |
|  v. | Noel Judicial Complex |
| **Defendant** | Kent County |
| CATERINE EASTWOOD | 222 Quaker Lane |
|  | Warwick RI  02886 |
|  | *(401) 822-6900 |

This case has been scheduled in the court location listed above on **10/23/2023.**  All parties should report to Associate Justice Brian Van Couyghen at **2:00 PM** in Kent Courtroom 4A for **Hearing on Motion  – Plaintiff's Motion for Equal Access.**

If you have any questions regarding this procedure, please contact the Scheduling Office at (401) 822-6923.

**Please note:  Failure to appear may result in the case being dismissed or the party being defaulted.**

| This Notice was generated on 9/8/2023. | /s/ Dayna Beretta |
|---|---|
|  | Scheduling Office |

If you need language assistance, please contact the Office of Court Interpreters at (401) 222-8710 or by email at interpreterfeedback@courts.ri.gov before your court appearance.

* If an accommodation for a disability is necessary, please contact the Superior Court Clerk's Office at the telephone number listed above as soon as possible.  TTY users can contact the Superior Court through Rhode Island Relay at 7-1-1 or 1-800-745-5555 (TTY) to voice number.

STATE OF RHODE ISLAND                         SUPERIOR COURT
KENT, SC.

**ARTHUR OF THE FAMILY WITTENBERG,**
      **Plaintiff,**

**v.**                                         **C.A. NO. KC-2023-0303**

**CATHERINE V. EASTWOOD et al.,**
      **Defendants.**

### ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION

The motion of Defendants Flagstar Bank, N.A., and James K. Ciroli (collectively "Defendants") for preliminary injunction against Plaintiff, having come before Associate Justice Joseph A. McBurney on August 31, 2023, and it is hereby

**ORDERED:**

1.      The motion is granted and a preliminary injunction is in effect until further order of the Court.

2.      Plaintiff and anyone associated with Plaintiff, shall not reside at, occupy, or enter the property located at 24 Ninigret Street, Warwick, Rhode Island, 02889 ("the Property").

3.      Plaintiff shall not remove any items from the Property or cause any waste or destruction of the Property.

4.      Defendants may change the locks and may enter the Property.

5.      Defendants may maintain and winterize the property.

6.      This Court shall hear oral arguments regarding Defendants' Motion to Dismiss on September 25, 2023 at 2:00 PM.

By Order: /s/ Joseph J. McBurney          Enter:  /s/ Victoria Reakes-Higgins
      Associate Justice                            Deputy Clerk
_____                     September 11, 2023
                                          _____

Date:

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 9/1/2023 4:46 PM
Envelope: 4258476
Reviewer: Lindsay Z.

1:23-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 46 of 430 PageID #: 240

Prepared by:

/s/ David M. Asbury
David M. Asbury (Admitted Pro Hoc Vice)
Troutman Pepper Hamilton Sanders
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia
(757) 687-7757
david.asbury@troutman.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2023, I filed and served this document through the electronic filing system on all persons who have entered an appearance, Catherine Eastwood, ceastwood@kordeassociates.com, John McNicholas, jmcnicholas@kordeassociates.com, and by regular mail and email to Arthur Wittenberg, 701 Loyola Avenue, Unit 57867, New Orleans, LA 70113, and witt@wittenbergfamily-trust.com.  The document electronically filed and served is available for Viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.

/s/ Thomas W. Lyons
Thomas W. Lyons



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

### EXHIBIT LIST

| Arthur of the Wittenberg Family v. CATERINE EASTWOOD et al. | KC-2023-0303 |
|---|---|
|  |  |

| PPI - Hearing 8/31/23 | 001 | Warranty Deed | Plaintiff | Full |
|---|---|---|---|---|
| PPI - Hearing 8/31/23 | 002 | Warwick Utility Billing | Plaintiff | Full |
| PPI - Hearing 8/31/23 | 003 | Record of Property Assessment of 24 Ninigret Street | Plaintiff | Full |
| PPI - hearing 8/31/23 | A | Letter 3/18/19 to Flagstar Bank | Defendant | Full |
| PPI - hearing 8/31/23 | B | Signature page of Rafael Montanez | Defendant | Full |
| PPI - hearing 8/31/23 | C | Signature page of Rafael Montanez | Defendant | Full |
| PPI - hearing 8/31/23 | D | Signature Page of Rafael Montanez | Defendant | Full |

SC-CMS-45 (revised November 2022)

Case Number: KC-2021-0303
Filed in Kent County Superior Court
Submitted: 2/24/2021 4:29 PM
Envelope: 2977600
Reviewer: Danielle T.

Case Number: KC-2021-0303
Filed in Kent County Superior Court
Submitted: 2/24/2021 4:29 PM
Envelope: 2977600
Reviewer: Lindsay Z.

Case 1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 48 of 430 PageID #: 242

# EXHIBIT

# 1

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 2/24/2021 4:29 PM
Envelope: 2977600
Reviewer: Lindsay Z.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 2/24/2021 4:29 PM
Envelope: 2977600
Reviewer: Lindsay Z.

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 49 of 430 PageID #: 243

Allonge to Note

Loan Number: ██████

Borrower(s):  Rafael A. Montanez

Address:  24 Ninigret Street
Warwick, RI 02889

Note Date:  11/15/2017

Loan Amount:  $234,500.00

PAY TO THE ORDER OF
FLAGSTAR BANK, FSB
WITHOUT RECOURSE

Company Name:  Homestar Mortgage, Inc.

By:  _Pamela J. DiLorenzo_

Printed Name:  Pamela J. DiLorenzo

Title:  Vice President

III. Forms and Disclosures                1 of 1                Document #3679
Return to Top                                                    10/27/2014

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 2/24/2021 4:29 PM
Envelope: 2977600
Reviewer: Lindsay Z.

Case 1:23-cv-00490-MSM-PAS   Document 5   Filed 11/21/23   Page 50 of 430 PageID #: 244

NOTE



MONTANTE
Loan #.
MIN:
Case #:

# NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

NOVEMBER 15, 2017             EAST GREENWICH,              RHODE ISLAND
[Date]                       [City]                       [State]

24 NINIGRET STREET, WARWICK, RI 02889
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $234,500.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is HOMESTAR MORTGAGE INC.. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 3.750%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on JANUARY 1, 2018. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on DECEMBER 1, 2047, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 220 SMITH STREET, PROVIDENCE, RI 02908 or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $1,086.01.

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I

MULTISTATE FIXED RATE NOTE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
⬧ 58.44                              Page 1 of 4                   Form 3200   1/01 Modified for VA

Case Number: KC-2023-0302
Filed in Kent County Superior Court
Submitted: 2/24/2021 4:29 PM
Envelope: 2977600
Reviewer: Lindsay Z.

Case Number: KC-2021-0081
Filed in Kent County Superior Court
Submitted: 2/24/2021 4:29 PM
Envelope: 2977600
Reviewer: Lindsay Z.

cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 51 of 430 PageID #: 245

may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. A partial Prepayment must be in an amount not less than the next monthly principal payment or $100, whichever is less. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. A full Prepayment will be credited on the date received by the Note Holder and no interest will be charged after that date. A partial Prepayment will be credited by the next payment due date or 30 days after the Prepayment is received by the Note Holder, whichever is earlier. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 4.000% of my overdue payment, unless such amount exceeds the maximum amount allowed by applicable state law, in which case the Lender may collect the maximum amount allowed by such law. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if

MULTISTATE FIXED RATE NOTE–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
58.44                                 Page 2 of 4                        Form 3200    1/01 Modified for VA

:cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 52 of 430 PageID #: 246

I am given a notice of that different address.



## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

- BORROWER -   - RAFAEL A MONTANEZ -   DATE -

[Sign Original Only]

MULTISTATE FIXED RATE NOTE–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
58.44                                     Page 3 of 4                    Form 3200  1/01 Modified for VA

Case: _KC - 2023·0303_

Exhibit # _____ _D_

Date: _____ _8·31·23_

Superior Court-Newport County

Dayna Beretta

Deputy Clerk 1

INST: 00017046 Bk: 8942 Pg: 327

insurance of the indebtedness created by this instrument.

IN WITNESS WHEREOF, Borrower(s) has executed this V.A. Guaranteed Loan and Assumption Policy Rider.

- BORROWER -   RAFAEL A MONTANEZ - DATE -

VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER
53.22                                    Page 3 of 3

Case: KC-2023-0303

Exhibit #_____ C

Date:_____ 8-31-23

Superior Court-Newport County

Dayna Beretta

Deputy Clerk I

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 12/26/2021-9161
Envelope: Kent County Superior Court
Reviewed: 2/26/2021 4:29 PM
Envelope: 2977600
Reviewer: Lindsay Z.

Case 1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 56 of 430 PageID #: 250

INST: 00017046 Bk: 8942 Ps: 322

homestead in the Property, Borrower hereby agrees, to the greatest extent permitted by Applicable Law, that such homestead estate is subordinated in all respects to this Security Instrument and the amount due under the Note and to all renewals, extensions and modifications of this Security Instrument or the Note, and that said homestead estate is subject to all of the rights of Lender under this Security Instrument and the Note and all renewals, extensions and modifications of this Security Instrument and the Note, and is subordinate to the lien evidenced by this Security Instrument, and all renewals, extensions and modifications of this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____  11/15/17
- BORROWER - RAFAEL A MONTANEZ - DATE -

[Space Below This Line For Acknowledgment]

**STATE OF RHODE ISLAND**

**COUNTY OF KENT**

On this 15TH day of NOVEMBER, 2017, before me, the undersigned notary public, personally appeared RAFAEL A MONTANEZ, SINGLE MAN, personally known to the notary or proved to the notary through satisfactory evidence of identification, which was _____, to be the person whose name is signed on the preceding or attached document, and acknowledged to the notary that (he) (she) (they) signed it voluntarily for its stated purpose.

_____
Notary Public

(Printed Name)

My Commission Expires: _____

CARMINE J. D'ELLENA
NOTARY PUBLIC
State of Rhode Island
My Commission Expires
July 4, 2021

RHODE ISLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
348.34                            Page 14 of 15                        Form 3040 1/01 (rev. 10/16)
                                                                        Modified for VA

Case: _KC-2023-6303_

Exhibit # _B_

Date: _8-31-23_

Superior Court-Newport County

Dayna Beretta

Deputy Clerk 1

Full



Rafael A. Montanez
24 Ninigret Street
Warwick, RI 02889


April 18, 2019

FLAGSTAR BANK
James K. Ciroli, CFO.
1515 Corporate Dr.
Troy, MI 48098


Re: LOAN #: *1709EM021429*


Property Address: 24 Ninigret Street , Warwick, RI  02889

Dear Sirs,


Please be advised that I intend to transfer title to the above referenced property into a revocable, Intervivos Trust that will be named 24 NINIGRET TRUST. The trustee's name is Arthur of the family Wittenberg, whose address is 201 International Circle, suite 230, Hunt Valley, Maryland 21030. Please send all further notices regarding this loan to said address.

As I am sure you are aware, such a transfer is a permissible exception to a "due-on-sale" violation pursuant to the Garn-St.Germain Depositary Institutions Act of 1982 (12 U.S.C. Sec. 1701(d)).


Sincerely,

Rafael A. Montanez

Case: Kc · 2023- 0303
Exhibit # A
Date: 8·31·23
Superior Court-Newport County
Dayna Beretta
Deputy Clerk 1/

Foll

Ex A
Foll

RECEIVED

## 24 NINIGRET ST

AUG 0 3 2023

ASSESSOR'S OFFICE

| | | | |
|---|---|---|---|
| **Location** | 24 NINIGRET ST | **Parcel ID** | 319/ 0079/ 0000/ |
| **Account #** | 45656 | **Owner** | MONANTEZ, RAFAEL A |
| **Assessment** | $287,900 | **Internal PID** | 16023 |
| **Building Count** | 1 | | |

### Current Value

| Assessment | |
|---|---|
| **Valuation Year** | **Total** |
| 2023 | $287,900 |

### Parcel Addresses

| Additional Addresses |
|---|
| No Additional Addresses available for this parcel |

### Owner of Record

| | | | |
|---|---|---|---|
| **Owner** | MONANTEZ, RAFAEL A | **Sale Price** | $234,500 |
| **Co-Owner** | | **Book & Page** | 8942/0307 |
| **Care Of** | | **Sale Date** | 11/15/2017 |
| **Address** | 24 NINIGRET ST | **Instrument** | 00 |
| | WARWICK, RI 02889 | **Qualified** | Q |

### Ownership History

| Ownership History | | | | |
|---|---|---|---|---|
| **Owner** | **Sale Price** | **Book & Page** | **Instrument** | **Sale Date** |
| MONANTEZ, RAFAEL A | $234,500 | 8942/0307 | 00 | 11/15/2017 |
| VINHATEIRO CYNTHIA A LIFE ESTATE | $0 | 8400/0172 | 04 | 07/02/2015 |
| VINHATEIRO, ANTHONY F | $0 | 0000/0000 | | 01/01/1900 |

### Building Information

#### Building 1 : Section 1

**Year Built:**            1950

Case: KC · 2023 · 0303
Exhibit # 3
Date: 8·31·23
Superior Court-Newport County
Dayna Beretta
Deputy Clerk 1

**Warwick Utility Billing**
P.O. Box 981076
BOSTON, MA 02298-1076
Payment information:    (401) 738-2002
Water usage questions:   (401) 738-2008
Sewer usage questions:   (401) 739-4949

**UTILITY BILL**
Customer Copy
Keep this portion for your records

| Customer Name | Service Address | ParcelNumber |
|---|---|---|
| MONTANEZ, RAFAEL A | 24 NINIGRET ST | 319-0079-0000 |

| Bill Number | Bill Date | Account Number - Customer Number | Current Billing Due Date |
|---|---|---|---|
| 1261260 | 06/02/2023 | 12200528500 - 75027 | 08/02/2023 |

| Description | Meter | Previous Read Date | Current Read Date | Previous Meter Reading | Current Meter Reading | Read Code | Usage | Charge |
|---|---|---|---|---|---|---|---|---|
| CONSUMPTION 5/8" METER | 1486390966 | 12/05/2022 | 03/02/2023 | 43100 | 43100 | A | | |
| CUSTOMER CHARGE 5/8" METER | | | | | | | | 17.60 |
| PRCH WATER RATE - 5/8 METER | | | | | | | | |
| RI DWPA - .0748/100 CF | | | | | | | | |
| RI WSIC - .1437/100 CF | | | | | | | | |
| SEWER USAGE - R | | | | | | | | |
| SWR SVC CHG - R | | | | | | | | 31.72 |
| RENEWAL & REPLACEMENT CHG | | | | | | | | |

| HISTORY PERIOD | BILLED USAGE |
|---|---|
| CURR | 0 |
| 12/22 | 0 |
| 09/22 | 0 |
| 06/22 | 0 |
| 03/22 | 0 |
| 12/21 | 0 |
| 09/21 | 0 |
| 06/21 | 0 |
| 04/21 | 0 |
| 12/20 | 0 |
| 09/20 | 0 |
| 06/20 | 0 |
| 03/20 | 0 |

*1 cu. ft. equals 7.48 gallons*

THIS BILL REFLECTS PAYMENTS POSTED THROUGH 5/29/23.

READ CODE:
A = Actual
E = Estimate
F = Final

| | |
|---|---|
| Previous Balance | 394.56 |
| Less Payments Received | 0.00 |
| Interest | 45.38 |
| Adjustments | 0.00 |
| Total Current Billing | 49.32 |
| Total Amount Due | $489.26 |

Case: KC-2023-0303
Exhibit # 2
Date: 8-31-23
Superior Court-Newport County
Dayna Beretta
Deputy Clerk 1

※ Detach and return the portion below with your payment ✄

**Warwick Utility Billing**
P.O. Box 981076
BOSTON, MA 02298-1076

**UTILITY BILL**
**REMIT PORTION**
Please write your Bill Number on your check
and enclose this portion of bill with your payment.

| Parcel Number | Bill Date | Bill Number |
|---|---|---|
| 319-0079-0000 | 06/02/2023 | 1261260 |

| Service Address | Account No. - Customer No. | Current Billing Due Date | Amount Due |
|---|---|---|---|
| 24 NINIGRET ST | 12200528500 - 75027 | 08/02/2023 | $489.26 |

22485

AmountRemitted:

MONTANEZ, RAFAEL A
24 NINIGRET ST
WARWICK RI 02889-1522

0000604202300126126020000048926D

## BILLING INFORMATION

1. The **CONSUMPTION CHARGE** reflects the costs of operating, capital and infrastructure programs. The **PURCHASE WATER RATE** portion reflects the cost of water purchased from the Providence Water Supply Board. The cubic foot rate can be calculated by dividing the charge amount by the usage in cubic feet. The **WATER SERVICE CHARGE** reflects the cost of generating customer bills and is based on meter size. The State of Rhode Island Water Protection Charge is imposed for the purpose of protecting the quality and safety of the public water supply. On the front of the bill, this is shown as **RI DWPA** (Rhode Island Drinking Water Protection Act) for $.000748 per cubic foot and **RI WSIC** (Rhode Island Water Supply Improvement Charge) for $.001437 per cubic foot. The **SEWER USAGE CHARGE** portion reflects the cost of collecting and treating wastewater and maintenance of the system. The **SEWER SERVICE CHARGE** pays for debt service and administrative costs, and is a per unit charge for residential usage and based on meter size for commercial usage. The **RENEWAL AND REPLACEMENT CHARGE** pays for necessary capital improvements to the city's existing wastewater treatment infrastructure. Sewer Rate information can be found at www.warwicksewerauthority.com.

2. PAYMENTS:

   Can be made in person between the hours of 8:30AM and 4:30PM, Monday through Friday at:

   **OFFICE OF THE TAX COLLECTOR**
   **Municipal Annex**
   **65 Centerville Road**
   **Warwick, RI 02886**

   Payments by mail should be sent to:

   **Warwick Utility Billing**
   **PO Box 981076**
   **Boston MA 02298-1076**

   Please make checks or money orders to: Warwick Utility Billing. If mailing your payment, please use the enclosed envelope and allow sufficient time for the payment to arrive by the due date on the front of the bill.

   Credit card payments can be made:
   Online at www.citizenselfservice.com.

3. DELINQUENT ACCOUNT INFORMATION: If there is an outstanding balance, all payments will be applied to the delinquent balances first. Interest accrues monthly on delinquent balances.

4. Under Read Code, the codes are as follows;  A = Actual Read,  E = Estimated Read.

5. SENIOR EXEMPTION FOR PROPERTY OWNERS:

   a)  At least 65 years old on the billing date and
   b)  The owner of record of the residence is listed in the Tax Assessors Office of the City of Warwick.
   c)  Purchase the water for your personal consumption. Leased or rental property is not eligible for and exemption.
   d)  Application for a water utility senior exemption must be made at the Warwick Water Division. The senior exemption discounts the state charges RI DWPA and RI WSIC.

6. All address changes must be sent in writing to, or presented in person by the legal property owner at the **Warwick Water Division, 935 Sandy Lane, Warwick RI 02889.**

INST: 00017045 Bk: 8942 Ps: 307

ECEIVED

AUG 03 2023

ASSESSOR'S OFFICE

## WARRANTY DEED

I, **CYNTHIA A. VINHATEIRO**, of 64 Barrows Street, North Attleboro, Massachusetts, for consideration paid in the amount of Two Hundred Thirty Four Thousand Five Hundred ($234,500.00) Dollars, hereby convey any and all of my interest in the following described property, to **RAFAEL A. MONANTEZ**, of 24 Ninigret Street, Warwick, Rhode Island, as **SOLE TENANT**, with **WARRANTY COVENANTS**, the following described property:

SEE THAT PROPERTY DESCRIBED ON THE ATTACHED EXHIBIT A

The property described on the attached Exhibit A has a street address of 24 Ninigret Street, Warwick, Rhode Island and is also known Tax Assessor's Plat 319 Lot 79.

I, Cynthia A. Vinhateiro, covenant that I am a resident of the State of Rhode Island in accordance with RIGL 44-30-71.3.

I, Cynthia A. Vinhateiro, hereby certify that I have complied with the Rhode Island State Fire Code.

This Deed is being signed pursuant to R.I.G.L. 34-4-2.1.

WITNESS MY HAND and SEAL this _15_ day of _November_ 2017

_____
Cynthia A. Vinhateiro

STATE OF RHODE ISLAND
COUNTY OF ~~PROVIDENCE~~

In _E. Green._, on the _15th_ day of _November_, 2017, before me personally appeared Cynthia A. Vinhateiro to me known and known by me to be the person executing the foregoing instrument and she acknowledged said instrument by her executed to be her free act and deed.

_____
Notary Public
My Commission Expires: _6-23-21_

PAUL A BAU

INST: 00017045  Bk: 8942 Pg: 308

EXHIBIT "A"

That certain tract or parcel of land, with all the buildings and improvements thereon, situated on the southerly side of Ninigret Street, in the City of Warwick, in the State of Rhode Island, comprising the whole of lot 65 (sixty-five) and the westerly twenty-six (26) feet in width by the entire depth of lot 64 (sixty-four) on that plat entitled "Ralph M. Hoxsie Plat Warwick, R.I. Owned by Ralph M. Hoxsie Walter J. Grady, Engr. August, 1928" which plat is recorded in the office of the City Clerk in said City of Warwick in Plat Book 9 at page 20 and on Plat Card 366.

PROPERTY ADDRESS:
(FOR REFERENCE PURPOSES ONLY)
24 Ninigret Street
Warwick, RI
Plat 319, Lot 79

RECORDED
Nov 15,2017 10:57A
Judy Wild, City Clerk
City of Warwick, RI

Case: _Kc·2023-0303_____
**Exhibit #**_____ | _____
**Date:**_____ 8·31·23_____
Superior Court-Newport County
Dayna Beretta
Deputy Clerk 1

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/25/2023 5:03 PM
Envelope: 4249538
Reviewer: Andrew D.

1:23-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 67 of 430 PageID #: 261

STATE OF RHODE ISLAND                                    SUPERIOR COURT
KENT, SC.

ARTHUR OF THE FAMILY WITTENBERG,
      Plaintiff,

v.                                                       C.A. NO. KC-2023-0303

CATHERINE V. EASTWOOD et al.,
      Defendants.

**DEFENDANTS FLAGSTAR BANK, FSB and JAMES K. CIROLI'S
OBJECTION TO PLAINTIFF'S MOTION FOR RECUSAL
AND NOTICE OF CLAIM AGAINST JUDGE VAN COUYGHEN**

      Defendant Flagstar Bank, FSB ("Flagstar"), and Defendant James K. Ciroli ("Ciroli," collectively as "Defendants"), by counsel, Plaintiff's Motion for Recusal. Plaintiff has not shown any grounds for recusal or a claim against the Court, and his Motions should be denied.

      The Supreme Court Rules of Judicial Conduct Rule 2.11 provides that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned" and includes a list of circumstances, including personal bias, the judge knowing a person involved or the spouse of a person involved in the proceeding, the judge or a close relative has an economic interest in the proceeding, the judge made public statements appearing to commit to a certain result, the judge served as an attorney or governmental employee in the matter in controversy, the judge was a material witness regarding the controversy, or the judge previously presided as a judge over the matter in another court.

      The Court has repeatedly held that "a party alleging judicial bias carries a substantial burden of proof." In re Jermaine H., 9 A.3d 1227 (R.I. 2010). The Court has stated that "before a judge is required to recuse in order to avoid the appearance of impropriety, facts must be elicited indicating that it is reasonable for members of the public or a litigant or counsel to question the

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/25/2023 5:03 PM
Envelope: 4249538
Reviewer: Andrew D.

1:23-CV-00490-MSM-PAS     Document 5     Filed 11/21/23     Page 68 of 430 PageID #:
262

trial justice's impartiality." <u>State v. Clarke</u>, 423 A.2d 1151, 1158 (R.I. 1980), see also <u>In re Jermaine H.</u>, and <u>Diluglio v. Petrarca</u>, 1997 WL 839874 (R.I. Super 1997). In fact, "a judge has as great an obligation not to disqualify himself when there is no occasion to do so as he has to do so when the occasion does arise." <u>Id.</u> The Court further explained that "[f]eelings of a criminal defendant, which may well be subjective, cannot without more constitute the test for the disqualification of a trial judge." <u>Id.</u> "Mere accusation" that is "unsupported by substantial fact" is not enough to merit recusal. <u>Id.</u> In <u>Clarke</u>, the request for recusal was based on the acquaintanceship between the trial justice and the prosecutor, and because the trial justice made certain rulings against the party requesting recusal, and objections to the jury charge. The Court found that these were not grounds for recusal.

Here, Plaintiff simply disagrees with this Court's ruling. There is no appearance of impropriety and no grounds for recusal. Plaintiff's mere accusation that the Court has acted improperly by ruling against him, is not enough for disqualification of a judge. Plaintiff's subjective feeling that the Court should have ruled otherwise is not grounds for recusal. As stated in <u>Clarke</u>, the judge has a duty not to disqualify himself when there is no occasion to do so. Plaintiff also alleges the Court has unlawfully granted a preliminary injunction. There is no basis to support this conclusion. There is no basis for disqualification, and the Motions should be denied.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/25/2023 5:03 PM
Envelope: 4249538
Reviewer: Andrew D.

CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 69 of 430 PageID #: 263

Dated: August 25, 2023                      Respectfully submitted,

                                            **FLAGSTAR BANK, FSB and**
                                            **JAMES K. CIROLI**
                                            By:*/s/ Thomas W. Lyons*

                                            Thomas W. Lyons, #2946
                                            STRAUSS, FACTOR, LAING & LYONS
                                            One Davol Square, Suite 305
                                            Providence, RI 02903
                                            (401) 456-0700
                                            tlyons@straussfactor.com

                                            David M. Asbury (Admitted Pro Hac Vice)
                                            TROUTMAN PEPPER
                                            HAMILTON SANDERS LLP
                                            222 Central Park Avenue,
                                            Suite 2000
                                            Virginia Beach, Virginia 23462
                                            Telephone: (757) 687-7757
                                            Facsimile: (757) 687-7500
                                            david.asbury@troutman.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2023, I filed and served this document through the electronic filing system on all persons who have entered an appearance, Catherine Eastwood, ceastwood@kordeassociates.com, John McNicholas, jmcnicholas@kordeassociates.com, and by regular mail and email to Arthur Wittenberg, 701 Loyola Avenue, Unit 57867, New Orleans, LA 70113, and witt@wittenbergfamily-trust.com. The document electronically filed and served is available for Viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.

                                            */s/ Meghan Barry*
                                            Meghan Barry

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 70 of 430 PageID #: 264

INST: 00012794 Bk:10205 Ps: 316

## STATE OF RHODE ISLAND

KENT, SS.                                           SUPERIOR COURT
                                                   CASE NO. KC-2021-0181

Flagstar Bank, FSB,

    Plaintiff,

v.

Annette Montanez a/k/a Annette Montanez
Gonzalez as Heir of the Estate of Rafael A.
Montanez; Ashley Montanez as Heir of the
Estate of Rafael A. Montanez; Alexandria
Montanez as Heir of the Estate of Rafael A.
Montanez; Anthony Santapaola and all unknown
heirs or legal representatives of the Estate of
Rafael A. Montanez,

    Defendants.

## JUDGMENT

After consideration of (a) the Stipulation of the Parties Consenting to Entry of Judgment
for Plaintiff signed by counsel for the Plaintiff, Flagstar Bank, FSB, and signed and
acknowledged by the pro se Defendants, Annette Montanez a/k/a Annette Montanez Gonzalez
and Anthony Santapaola and (b) the Plaintiff's Motion for Entry of Default Judgment as to the
remaining Defendants, Ashley Montanez, Alexandria Montanez and All Unknown Heirs or
Legal Representatives of the Estate of Rafael A. Montanez, the Court enters Judgment as
follows:

    (a) Pursuant to R.I Gen. Laws §§ 9-30-1 and 9-30-4(1) the Court hereby declares that
        Annette Montanez a/k/a Annette Montanez Gonzalez, Ashley Montanez, and
        Alexandria Montanez are the sole heirs at law of the late Rafael A. Montanez and the
        sole owners of the right of redemption under the mortgage given by said Rafael A.

TRUE COPY ATTEST

*Danielle Keegan*

DANIELLE KEEGAN, CLERK
KENT COUNTY SUPERIOR COURT

Case 1:23-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 71 of 430 PageID #: 265

INST: 00012794 Bk:10205 Pg: 317

Montanez to Mortgage Electronic Registration Systems, Inc. as Nominee for Homestar Mortgage, Inc. in the original principal amount of $234,500.00 dated November 15, 2017 and recorded with the City of Warwick Land Evidence Records in Book 8942, Page 309 (the "Mortgage"). The Mortgage encumbers the real property known as 24 Ninigret Street, Warwick, Rhode Island (the "Property"). The Defendant, Anthony Santapaoloa is not an heir at law of the late Rafael A. Montanez;

(b) Pursuant to R.I. Gen. Laws § 9-30-1, the Court declares that a default has occurred by the Borrower named in the Mortgage for failure to make monthly payments as required under the terms of the Mortgage and under the promissory note secured by the Mortgage; and

(c) Pursuant to R.I. Gen. Laws § 9-30-1, the Court declares that the Plaintiff, Flagstar Bank, FSB, is the holder of the Mortgage and of the promissory note secured by the Mortgage and entitled to exercise the default remedies provided for in the Mortgage, including exercise of the Statutory Power of Sale as provided for in paragraph no. 22 of the Mortgage.

Date: 8-16-22

So Ordered,

Hon. Brian Van Couyghen
Associate Justice

ORDER
ENTERED BY:

Clerk of Court    8-16-22

TRUE COPY ATTEST

DANIELLE KEEGAN, CLERK
KENT COUNTY SUPERIOR COURT

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

Case 1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 72 of 430 PageID #: 266

Case Number: KC-2021-0181
Filed in Kent County Superior Court
Submitted: 7/1/2022 2:51 PM
Envelope: 3694583
Reviewer: Elizabeth M.

INST# 00012794 Bk#10205 Pg: 318

Prepared by:

/s/ Catherine V. Eastwood
Catherine V. Eastwood, Esq.
RI# 6406
Korde & Associates, P.C.
900 Chelmsford Street, Suite 3102
Lowell, MA 01851.
(978)-256-1500 (ext. 26222)
ceastwood@kordeassociates.com

## CERTIFICATE OF SERVICE

I, Catherine V. Eastwood, Esq., hereby certify that on July 1, 2022, I caused the aforementioned Judgment to be filed through the electronic filing system with electronic service completed on all parties registered therein to receive notice in this case.

The document electronically filed and served is available for viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.

I also caused these documents to be mailed to the following via first class mail:

Annette Montanez
1042 Greenturf Road,
Spring Hill, FL 34608

Alexandria Montanez
7243 67th Street, Apt. 1L
Glendale, NY 11385

Anthony Santapaola
262 Park Avenue
Williston Park, NY 11596

Ashley Montanez
723 Hudson Avenue
Peekskill, NY 10566

/s/ Catherine V. Eastwood
Catherine V. Eastwood, Esq., RIB # 6406

RECORDED
Sep 06, 2022 01:14P
Lynn D'Abrosca
City Clerk
City of Warwick, RI

TRUE COPY ATTEST

DANIELLE KEEGAN, CLERK
KENT COUNTY SUPERIOR COURT

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 73 of 430 PageID #: 267

**STATE OF RHODE ISLAND**                                    **SUPERIOR COURT**
**KENT, SC.**

**ARTHUR OF THE FAMILY WITTENBERG,**
        **Plaintiff,**

    **v.**                                                    **C.A. NO. KC-2023-0303**

**CATHERINE V. EASTWOOD et al.,**
        **Defendants.**

### DEFENDANTS FLAGSTAR BANK, FSB and JAMES K. CIROLI'S REPLY IN SUPPORT OF MOTIONS TO DISMISS AND FOR PRELIMINARY INJUNCTION

Defendant Flagstar Bank, FSB ("Flagstar"), and Defendant James K. Ciroli ("Ciroli," collectively as "Defendants"), by counsel, submit this Reply in support of its Motion for Judgment to Dismiss and Motion for Preliminary Injunction (the "Motions") and in opposition to Response filed by Plaintiff Arthur of the Family Wittenberg ("Plaintiff") on August 8, 2023 (the "Opposition"). The Opposition stated new arguments and allegations which are not contained in any of his prior pleadings. For the reasons set forth below, Flagstar's Motions should be granted, the Court should enjoin Plaintiff and Plaintiff's Complaint should be dismissed with prejudice.

## INTRODUCTION

The entirety of Plaintiff's Complaint and Opposition is based on pseudolaw "sovereign citizen" or "redemptionist" theories. However, the Opposition has "moved the goal posts" by presenting brand new allegations not found in the Complaint. Regardless, these new allegations are meritless and even if true, they fail to state a claim upon which relief can be granted.

Specifically, Plaintiff alleges for the first time that the Borrower transferred title to a trust for which he is the trustee. However, there is no evidence that title to the Property transferred to the "24 Ninigret Trust." If it had, that would not have satisfied the mortgage debt. Indeed, it would have triggered an automatic default and right to foreclose. Further, there is no evidence

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 74 of 430 PageID #:
268

whatsoever that the Borrower held any "death benefit" for mortgage insurance.  The Borrower did not have any such policy.  The Plaintiff's story has changed multiple times and his past actions indicate that he is a very unreliable witness.[1]  The Court should reject his arguments outright, grant Defendants' Motion for a Preliminary Injunction, and dismiss the Plaintiff's action with prejudice.

## <u>ARGUMENT</u>

**I.  Defendants Will Prevail on the Merits.**

    a.  <u>Plaintiffs' New Arguments and Allegations Should Be Rejected</u>.

Plaintiff has "moved the goalposts" and now presents multiple new theories as to how he (or the 24 Ninigret Trust?) is the rightful owner of the subject Property.  None of these arguments were contained in his Amended Complaint and therefore should not be considered when the Court considers the Defendants' Motion to Dismiss for Failure to State a Claim.  However, each argument is meritless, and the Court should reject each argument outright.

First, he argues that "Mortgage insurance that was on the property **would** have paid said loan in full."  (Opp. at 12) (emphasis added).  However, the Plaintiff has no evidence whatsoever that the Borrower ever had any such policy.  Defendants have found no evidence such a policy exists.  No insurance company or other entity has ever made any payment to pay the mortgage loan in full.  As Plaintiff has presented no evidence of this insertion, it should be rejected outright.  This Court

---

[1] Plaintiff and the "Wittenberg Family Trust" have been ordered by the Maryland Office of the Attorney General to cease and desist from fraudulent activities and violating the Maryland Consumer Protection Act because they collected hundreds of thousands of dollars from consumers to consolidate and pay off outstanding consumer debt but did not provide the promised services. Order attached as **<u>Exhibit A</u>**.  As an action involving moral turpitude, this Court may consider it when weighing the Plaintiff's credibility pursuant to R.I. R. Evid. 609.  Upon information and belief, Defendants suspect the Borrower could have been a victim of the Plaintiff's fraudulent debt consolidation conspiracy and recommend the local authorities conduct an investigation.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 75 of 430 PageID #: 269

has ruled that pursuant to R.I. Gen. Laws § 9-30-1, that a "default has occurred by the Borrower named in the Mortgage for failure to make monthly payments as required under the terms of the Mortgage and under the promissory note secured by the Mortgage." Order, July 1, 2022 attached as **Exhibit B**. Therefore, this argument has no merit. Even if such a policy did exist—which it does not—the Plaintiff would lack standing under such a policy as he is not a party or intended beneficiary to the policy.

Next, the Opposition argues that the Property was "placed" into a trust called the "24 NINIGRET TRUST" for which Plaintiff is a trustee. (Opp. at 6) (emphasis original). As evidence, Plaintiff provides a single correspondence to Flagstar purportedly mailed on April 18, 2019. (Opp. Ex. A).[2] The single correspondence supposedly from the Borrower claims that he intended to transfer title to the Plaintiff's trust. *Id.* ("I **intend** to transfer title to the above referenced property into a revocable trust"). However, no transfer of title was ever recorded and the letter which purports to "intend" to transfer title at a later date is insufficient to transfer title as a matter of law. If it were, it would trigger the "due-on-sale" provision under the Mortgage.[3] *See* (Def.'s Motion to Dismiss, Ex. 2 ¶ 18). If title had transferred, Defendants would be expressly able to accelerate and foreclose on the Property. *Id.* ("If all or any part of the Property or any Interest in the Property is sold or transferred…Lender may require immediate payment…If Borrower fails to pay these

---

[2] Plaintiff's exhibit contains a purported signature of the Borrower, Rafael A. Montanez. However, this signature does not match the signatures found in either the Note or Mortgage provided as Defendants' Exhibits 1 and 2 to their Motion to Dismiss. The signature in the Plaintiff's exhibit is an obvious forgery.

[3] The Exhibit claims that transfer is a permissible exception to the "due-on-sale" provision pursuant to 12 U.S.C. § 1701(d). However, no such exception has ever applied here and Congress repealed the cited statute in 2012.

3

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 76 of 430 PageID #: 270

sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument…").  But there is no actual evidence whatsoever that title transferred to the Plaintiff or the Plaintiff's trust.  Plaintiff's Opposition does not dispute that there is any recording in the state of Rhode Island that transfers the property to him or the trust.  Until the closing of the foreclosure sale, the estate of the Borrower still holds title to the Property.  Accordingly, these new arguments must be rejected by the Court.

      b.  <u>Plaintiff's Opposition Does Not Dispute the Arguments in Defendants' Motion to Dismiss</u>.

Plaintiff's Opposition does not dispute Defendant's argument regarding the "check" and silver coins.  Indeed, the Opposition double downs on these frivolous allegations claiming that the debt was paid merely because he mailed silver coins and a worthless "check" to Flagstar. However, his arguments are frivolous and have no basis in law.  With respect to the silver coins, his Opposition argues that they were "only the Special Deposit to seal the transaction of the acquisition for the PROMISSORY NOTE…"  (Opp. at 6) (emphasis original).  He later argues that "Plaintiff is a Private American, and as such, can only conduct acquisitions in Silver or Gold." (Opp. at 12).  Therefore, this argument confirms Plaintiff believes in the erroneous "unlawful money" theory that only gold and silver coin can be accepted as legal tender.

Accordingly, the Plaintiff's Opposition confirms that he believes the check was not lawful money but "vapor money."  *See* Def's Motion to Dismiss at 7-8.  Indeed, Plaintiff's Opposition does not dispute the check was not lawful tender and does not instruct any payment to Flagstar. The check is not a payment to Flagstar because he crossed out "pay to the order to" and replaced it with "credit only" and wrote "Deposit only for credit on account."  This was his attempt to distinguish what he perceives to be "legal tender" (i.e. gold and silver coins) and attempt to create

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 77 of 430 PageID #: 271

"vapor money" to satisfy the Loan. He claims this document satisfies the debt as a matter of law. It does not. This argument to self-satisfy a debt by drafted papers which say so congruently with silver coins has no basis in law. Just as many courts have across the country have, this legal theory should be rejected here. Plaintiff has failed to state a claim that he is entitled to judgment under such "sovereign citizen" theories. The Opposition does not dispute or address this argument at all.

The Opposition vaguely argues that the failure to return the coins and check may have created a new contract which transfers title to him and voids the debt. (Opp. at 7). This argument is meritless. If the check and coins could be construed as an "offer" then Flagstar did not and could not accept such an offer. Silence in response to an offer to enter into a contract does not constitute an acceptance of the offer. *McGurn v. Bell Microproducts*, 284 F.3d 86, 90, 2002 U.S. App. LEXIS 4855, *9 (1st Cir. 2002); *see also* Restatement (Second) of Contracts § 69 cmt. a ("Acceptance by silence is exceptional."). Here, Flagstar's silence cannot be interpreted as acceptance because Flagstar lacks the ability to transfer title of the Property from the Borrower to any other party without a foreclosure sale pursuant to ¶ 22 of the Mortgage. Def.'s <u>Ex 2</u>. Title to the Property still rests with the estate of Raphael Montanez unless and until the foreclosure sale closes and is completed. Accordingly, the Opposition's arguments are meritless. Defendants have proven a reasonable likelihood of success on the merits and this Court should grant its Motion for a Preliminary Injunction. Further, this Court should dismiss the Plaintiff's frivolous lawsuit.

## II.    The Other Factors Weigh in Favor of Granting a Motion for Preliminary Injunction.

The Opposition argues that his illegal occupation of the Property does not harm Defendants. It does, but due to the reasonably likelihood of success on the merits, irreparable harm need only be minimal. *Fund for Community Progress*, 695 A.2d at 521; *but see Town of North Kingstown v. International Association of Firefighters, Local 1651, AFL-CIO*, 65 A.3d 480, 482

5

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 78 of 430 PageID #:
272

(R.I. 2013) (holding that where a strong showing is made on likelihood of success on the merits, the moving party "need not make as strong a showing of irreparable harm"). Here, Plaintiff has admitted to replacing the locks to the Property purchased by Defendants, visiting the Property, and placing his own signs on the Property. (Opp. at 9). All of this of course, without a shred of any documentation to support his claim of ownership. The Opposition further admits his actions clouds the title to the Property jeopardizing the closing of the foreclosure sale which has taken place. In contrast, the Plaintiff does not live at the Property and therefore will not be unhoused if Defendants retain possession of the Property. Accordingly, the three factors including, (1) irreparable harm, (2) balancing of the equities, and (3) preserving the status quo all weigh in Defendants' favor in support of a granting its request for a preliminary injunction.

## **CONCLUSION**

In conclusion, Plaintiff's Opposition is meritless, and the entire lawsuit is frivolous. Defendants have shown a strong reasonable likelihood of success on the merits. Further, the other three factors of irreparable harm, the balancing of the equities, and the status quo, dilatate that a preliminary injunction is appropriate. Plaintiff and any other potential occupiers should be enjoined from altering the Property and instructed to vacate the Property immediately.

Accordingly, we request the Court to (i) hold an emergency hearing which consolidates this Motion with Defendants' previously filed Motion to Dismiss, (ii) grant this motion to enjoin Plaintiff from occupying the Property and cease and desist from altering the Property in anyway; (iii) void any potential recordings Plaintiff or his trust may have recorded regarding the Property (iv) dismiss this action with prejudice, (v) sanction Plaintiff for his frivolous and vexatious lawsuit; (vi) award Defendants with their attorney fees in costs and (vii) such further relief the Court deems necessary.

6

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.
1:23-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 79 of 430 PageID #:
273

Dated: August 10, 2023                 Respectfully submitted,

**FLAGSTAR BANK, FSB and**
**JAMES K. CIROLI**

By:*/s/ Thomas W. Lyons*

Thomas W. Lyons, #2946
STRAUSS, FACTOR, LAING & LYONS
One Davol Square, Suite 305
Providence, RI 02903
(401) 456-0700
tlyons@straussfactor.com

David M. Asbury (Admitted Pro Hac Vice)
TROUTMAN PEPPER
HAMILTON SANDERS LLP
222 Central Park Avenue,
Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7757
Facsimile: (757) 687-7500
david.asbury@troutman.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2023, I filed and served this document through the electronic filing system on all persons who have entered an appearance, Catherine Eastwood, ceastwood@kordeassociates.com, John McNicholas, jmcnicholas@kordeassociates.com, and by regular mail and email to Arthur Wittenberg, 701 Loyola Avenue, Unit 57867, New Orleans, LA 70113, and witt@wittenbergfamily-trust.com. The document electronically filed and served is available for Viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.

*/s/ Meghan Barry*
Meghan Barry



Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 80 of 430 PageID #: 274



CONSUMER PROTECTION DIVISION    *    IN THE CONSUMER

OFFICE OF THE ATTORNEY GENERAL

STATE OF MARYLAND    *    PROTECTION DIVISION

     Proponent,    *    OFFICE OF THE ATTORNEY

v.    *    GENERAL

MARCIA BAILEY, *et al.*    *    CPD Case No.: 21-010-337449

     Respondents.    *    OAH Case No.: OAG-CPD-04-21-12386

*   *   *   *   *   *   *   *   *   *   *   *

## FINAL ORDER (REVISED)[1]

The Consumer Protection Division of the Office of the Attorney General hereby orders Respondents Marcia Bailey ("Bailey"), Marcia Bailey, Inc. trading as Signature Accounting ("Signature Accounting"), Arthur Wittenberg, individually ("Wittenberg"), and Arthur Wittenberg as Trustee for the Wittenberg Family Trust ("Wittenberg Family Trust") (collectively the "Respondents") to cease and desist from violating the Consumer Protection Act ("CPA"), Md. Code Ann., Com. Law §§ 13-101 through 13-501, the Maryland Mortgage Assistance Relief Services Act ("MARS"), Md. Code Ann., Real Prop. §§ 7-501 through 7-511, the Maryland Credit Services Business Act ("MCSBA"), Md. Code Ann., Com Law §§ 14-1901 through 14-1916, and the Maryland Debt Management Services Act (MDMSA) Md. Code Ann., Fin. Inst. §§12-901 through 12-931and to take affirmative action pursuant to § 13-403(b)(1) of the Consumer Protection Act as described herein.

---

[1] The Final Order has been revised to correct the cross-references noted in the August 17, 2022 letter from the Proponent. This Final Order supersedes the Final Order dated August 15, 2022.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 81 of 430 PageID #:
275

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1.    The Agency[2] hereby adopts and incorporates the Findings of Fact and Conclusions of Law that are attached hereto and incorporated as if fully set forth herein, which include the modifications set forth in the Agency's Ruling on the Proponent's Exceptions and correction of typographical errors set forth in Proponent's Exhibit A, attached to the Ruling on Exceptions.

## DEFINITIONS

2.    The term "bill payer service" shall mean the service of receiving funds from an obligor for the purpose of paying the obligor's bills, invoices, mortgages, or accounts.

3.    The term "credit services businesses" shall mean any person who, with respect to the extension of credit by others, sells, provides, or performs, or represents that such person can or will sell, provide or perform, in return for the payment of money or other valuable consideration, services designed to improve a consumer's credit record, history, or rating or establishing a new credit file or record, or providing advice or assistance to a consumer with regard to improving the consumer's credit record, history, or rating or establishing a new credit file or record.

4.    The term "debt management services" shall mean receiving funds periodically from a consumer under an agreement with the consumer for the purpose of distributing the funds among the consumer's creditors in full or partial payment of the consumer's debts.

5.    The term "debt management services provider" shall mean a person that provides or offers to provide debt management services to a consumer.

---

[2] The Consumer Protection Division acting in its capacity as a quasi-judicial agency is referred to herein as the "Agency," while the Consumer Protection Division acting as the Proponent in the instant matter is referred to as "Proponent."

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 82 of 430 PageID #:
276

6.      The term "debt resolution service" shall mean any service the purpose of which is
to assist a consumer in resolving their outstanding debts and shall include debt management
services, mortgage assistance relief services, and the services provided by a credit services
business.

7.      The term "money transmission services" shall mean the business of selling or
issuing payment instruments or stored value devices, or receiving money or monetary value, for
transmission to a location within or outside the United States by any means, including
electronically or through the Internet. The term "money transmission" shall include: (i) a bill payer
service; (ii) an accelerated mortgage payment service; and (iii) any informal money transfer system
engaged in as a business for, or network of persons who engage as a business in, facilitating the
transfer of money outside the conventional financial institutions system to a location within or
outside the United States.

8.      The term "mortgage assistance relief services" shall mean any service, plan, or
program, offered or provided to the consumer in exchange for consideration, that is represented,
expressly or by implication, to assist or attempt to assist the consumer with negotiating, obtaining,
or arranging a modification of any term of a dwelling loan, including a reduction in the amount of
interest, principal balance, monthly payments, or fees.

9.      The term "mortgage assistance relief service provider" shall mean any person that
provides, offers to provide, or arranges for others to provide, any mortgage assistance relief
service.

10.     The term "licensed services" shall mean any services which require an individual
or entity offering, selling, or providing services to a consumer to possess a valid license or

3

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 83 of 430 PageID #: 277

registration issued by a federal, state, or local governmental agency including, without limitation, the Office of the Commissioner of Financial Regulation in the Maryland Department of Labor.

## APPLICATION

11.    The provisions of this Final Order shall apply to:

(a)    Marcia L. Bailey, individually, and all fictitious trade names under which Marcia L. Bailey does or may do business, including, without limitation, Marcia Bailey, Inc. trading as Signature Accounting, and to her agents, employees and assigns, and any partnership, corporation, or entity in which she either currently, or in the future, has an ownership interest, has authority to control, or has the authority to establish policy;

(b)    Marcia Bailey, Inc., and its officers, employees, agents, assignees, affiliates, merged or acquired entities, parent or controlling entities, and wholly owned subsidiaries.

(c)    The Wittenberg Family Trust and all its current and future trustees; and

(d)    Arthur Wittenberg, individually, and all fictitious trade names under which he does or may do business, including, without limitation, The Wittenberg Family Trust, and to his agents, employees and assigns, and any partnership, corporation, or entity in which he either currently, or in the future, has an ownership interest, has authority to control, or has the authority to establish policy.

12.    The provisions of this Final Order shall apply to the Respondents' offer and sale of consumer goods, consumer services, or consumer realty to consumers residing in Maryland and to the Respondents' offer and sale of consumer goods, consumer services, or consumer realty when conducting business in Maryland with a consumer residing in another state or country.

4

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 84 of 430 PageID #: 278

## CEASE AND DESIST PROVISIONS

13.     The Respondents shall not offer or sell any goods or services to consumers to assist them in the payment of their debts, including debt resolution services, unless they are lawfully able to provide the goods or services and, in fact, provide the promised goods or services.

14.     The Respondents shall not offer any goods or services to consumers without first obtaining all required licenses, registrations, and certifications.

15.     The Respondents shall not offer or sell legal services to consumers unless they are a member, in good standing, of the Maryland bar and are otherwise lawfully able to perform the offered legal services.

16.     The Respondents shall not offer or sell certified public accounting services to consumers unless they hold the required license and registration issued by the State Board of Public Accountancy and are otherwise lawfully able to perform the offered certified public accounting services.

17.     The Respondents shall not represent to consumers that they are acting as a trustee, or otherwise acting for the benefit of consumers, unless the Respondents act solely for the benefit of consumers and do not take actions that are contrary to their representations or any fiduciary responsibilities that they owe consumers as a trustee.

18.     The Respondents shall maintain all payments received from consumers for the performance of any future service, including any debt resolution service, in an escrow account maintained by a financial institution licensed to do business in Maryland consistent with the following requirements:

(a)     each consumer's payments shall be maintained in a separate escrow account;

5

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 85 of 430 PageID #: 279

(b)     each escrow account shall be set up in each consumer's name and provide the consumer with the right to deposit funds, withdraw funds, and close or transfer the account without any limitation or interference by the Respondents;

(c)     the Respondents shall ensure the financial institution in which the escrow accounts are maintained provides monthly statements to each consumer reflecting all account activities and transactions for the prior month; and

(d)     the Respondents shall not make any withdrawals or disbursements from the account(s) other than:

(i)     to pay themselves any fees explicitly authorized by the Maryland Mortgage Assistance Relief Services Act, the Maryland Credit Services Business Act, the Maryland Money Transmission Act, and the Maryland Debt Management Services Act; and

(ii)     to make payments on behalf of consumers in connection with the provision of any mortgage assistance relief services, credit services, money transmission services or debt management services as authorized by Maryland law.

19.     The Respondents shall immediately cease and desist from engaging in unlawful mortgage assistance relief services in violation of the Maryland Mortgage Assistance Relief Services Act and the Maryland Consumer Protection Act.

20.     The Respondents shall not violate Real Prop. § 7-502 or 12 CFR § 1015.3(a) by representing to consumers in connection with the performance of mortgage assistance relief services that consumers cannot and should not contact or communicate with their lenders.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

CV-00490-MSM-PAS     Document 5     Filed 11/21/23     Page 86 of 430 PageID #: 280

21.    The Respondents shall not violate Real Prop. § 7-502 or 12 CFR § 1015.3(b) by misrepresenting material aspects of the mortgage assistance relief services they offer to provide, including but not limited to:

(a)    the likelihood of negotiating, obtaining, or arranging any represented services or result;

(b)    the amount of time it will take to accomplish any represented services or result;

(c)    that the mortgage assistance relief provider has completed a represented service, or has a right to receive payment;

(d)    that the consumer will receive legal representation; and

(e)    the amount of money that a consumer may save using their services.

22.    The Respondents shall not violate Real Prop. § 7-502 and 12 CFR § 1015.3(c) by making any representation, expressly or by implication, about the benefits, performance, or efficacy of their services that is not based on competent and reliable evidence.

23.    The Respondents shall comply with Real Prop. §7-502 and 12 CFR §1015.4 by providing the specific disclosures regarding consumer rights in general and consumer-specific commercial communications to consumers.

24.    The Respondents shall not violate Real Prop. §7-502 and 12 CFR §1015.5(a) by receiving or requesting fees or payments prior to the execution of a written agreement between the consumer and the consumer's dwelling loan holder or servicer that incorporates the offered mortgage assistance relief services.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 87 of 430 PageID #:
281

25.     The Respondents shall immediately cease and desist from engaging in unlicensed and unlawful credit services in violation of the Maryland Credit Services Businesses Act and the Consumer Protection Act.

26.     The Respondents shall not offer or sell credit services to consumers without being licensed by the Office of the Commissioner of Financial Regulation as required by Com. Law §14-1903(b).

27.     The Respondents shall not collect money from consumers for credit services without being licensed by the Office of the Commissioner of Financial Regulation as required by Com. Law §14-1902(1).

28.     The Respondents shall not operate a credit services business without having obtained a surety bond as required by Com. Law §14-1908.

29.     The Respondents shall not make false and misleading representations to consumers in the offer or sale of credit services in violation of Com. Law §14-1902(4) by promising to improve a consumer's credit if the Respondents are unwilling or unable to do so.

30.     The Respondents shall not engage, directly or indirectly, in acts, practices, or a course of business which operates as a fraud or deception on consumers in connection with the offer or sale of credit services in violation of Com. Law §14-1902(5).

31.     The Respondents shall not charge or receive money from consumers prior to fully and completely performing promised credit services as required by Com. Law §§ 14-1902(6).

32.     The Respondents shall provide consumers with the necessary information statements prior to entering into contracts with Maryland consumers to provide credit services as required by Com. Law §§ 14-1904 and 14-1905.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

...-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 88 of 430 PageID #: 282

33.    The Respondents shall not receive money from consumers or execute contracts with consumers prior to providing consumers with a written information statement as required by Com. Law § 14-1904(b) and § 14-1905.

34.    The Respondents shall include the specific contract provisions and notices required by Com. Law §14-1906 in any contracts offered to Maryland consumers.

35.    The Respondents shall immediately cease and desist from engaging in unlicensed and unlawful money transmission services in violation of the Maryland Money Transmission Act.

36.    The Respondents shall not offer or sell money transmission services to consumers without being licensed by the Office of the Commissioner of Financial Regulation as required by Fin. Inst. § 12-405(a), obtaining the surety bond required by Fin. Inst. § 12-412(b), and complying with all other requirements set forth in the Maryland Money Transmission Act, as amended from time to time.

37.    The Respondents shall immediately cease and desist from engaging in unlicensed and unlawful debt management services in violation of the Maryland Debt Management Services Act.

38.    The Respondents shall not offer or sell debt management services to consumers without being licensed by the Office of the Commissioner of Financial Regulation as required by Fin. Inst. § 12-906(a), obtaining the surety bond required by Fin. Inst. § 12-914, and complying with all other requirements set forth in the Maryland Debt Management Services Act, including, but not limited to:

(a)    providing consumers with a written debt management services agreement that, among other things, discloses the existence of a surety bond, Fin. Inst. § 12-916(b);

9

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 89 of 430 PageID #: 283

(b)      providing consumers with a consumer education program, a written summary of debt counseling options and strategies, a financial analysis with an initial budget plan, disclosures, notices, and other specific contract provisions, Fin Inst. § 12-916;

(c)      not charging consumers any fee or receiving any payments from a consumer until after the execution of a debt management services agreement, Fin. Inst. § 12-918(a)(1);

(d)      not imposing or collecting a consultation fee that exceeds $50, Fin. Int. § 12-918(a)(2);

(e)      not imposing or collecting a monthly maintenance fee that exceeds $8 for each creditor of a consumer that is listed in the debt management services agreement, Fin Inst. § 12-918(b)(1);

(f)      not imposing or collecting a total monthly maintenance fee that exceeds $40 per month, Fin. Inst. § 12-918(c);

(g)      returning to the consumer any unauthorized fees, charges, funds, or payments collected from consumers, Fin. Inst. § 12-918(i)(2);

(h)      depositing in a trust account established for the benefit of consumers, within two (2) days after receipt, any money received by or on behalf of consumers for disbursement to the consumers' creditors, Fin. Inst. § 12-917(a), and disbursing the money to consumers' creditors within eight (8) business days from receipt, Fin. Inst. § 12-917(b)(2);

(i)      not commingling money received for the purpose of disbursement to consumers' creditors with the Respondents' operating, business, personal, or any other accounts, Fin. Inst. § 12-917(c); and

10

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

-CV-00490-MSM-PAS   Document 5   Filed 11/21/23   Page 90 of 430 PageID #: 284

(j)     not purchasing any debt or obligation of a consumer, obtaining a mortgage in property owned by a consumer, or compromising any debt of a consumer (without the prior written approval of the consumer), or otherwise violating any provision of state law governing debt management or other related services. Fin. Inst. § 12-920.

39.     The Respondents shall not make any false, misleading, or deceptive representations or omissions of information in connection with the offer, sale, or performance of any service. Fin. Inst. § 12-920(a)(6).

40.     The Respondents shall immediately cease and desist from engaging in any unfair, abusive, or deceptive trade practices in violation of the Consumer Protection Act.

41.     The Respondents shall not make any false or misleading oral or written statements or other representations of any kind that have the capacity, tendency, or effect of deceiving or misleading consumers, including, but not limited to:

(a)     representing, explicitly or implicitly, to consumers that they hold the licenses and have obtained the surety bond required by the Maryland Credit Services Businesses Act, Maryland Money Transmission Act, and the Maryland Debt Management Services Act to offer, sell, and provide credit services, money transmission services, and debt management services, when, in fact, they do not hold such licenses, have not obtained the surety bond, and therefore, cannot lawfully offer, sell, or provide those services;

(b)     representing, explicitly or implicitly, to consumers the benefits, performance, or efficacy of the services they offer and sell unless they are willing and able to perform the represented services;

(c)     representing, explicitly or implicitly, their services will reduce or eliminate

11

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 91 of 430 PageID #: 285

consumers' debts and save consumers money, unless the Respondents are willing and able to provide the promised debt resolution services;

(d)      representing, explicitly or implicitly, that and they will complete the services in a specified time frame unless the Respondents are willing and able to perform the promised services within that specified time frame;

(c)      representing, explicitly or implicitly, that they can collect advance payments in connection with the offer or sale of mortgage assistance relief services, credit services, or debt management services, when the collection of such payments is prohibited by the Maryland Mortgage Assistance Relief Services Act, the Maryland Credit Services Businesses Act, and the Maryland Debt Management Services Act unless and until specified conditions are met;

(d)      representing, explicitly or implicitly, they have performed promised mortgage assistance relief services, credit services, money transmission services, and debt management services that have not been performed or are not in compliance with the Maryland statutes that govern the promised services;

(e)      representing, expressly or implicitly, that they can assist consumers with legal matters when they are unable to lawfully do so;

(f)      representing, expressly or implicitly, that they can provide certified public accounting services when they are unable to lawfully do so;

(g)      misrepresenting the status of a consumer's account or debt that the Respondents have been asked to resolve;

(h)      representing, expressly or implicitly, that they have resolved or are resolving a debt

12

on behalf of a consumer when that debt remains either unpaid or delinquent; and

(i)      misrepresenting, expressly or implicitly, the amount of money held in any escrow account on behalf of consumers in connection with an agreement for promised mortgage assistance relief services, credit services, money transmission services, or debt management services, including providing any false or misleading information about account balances, account transactions, or the use of escrowed monies.

42.      The Respondents shall not make representations that they have a sponsorship, approval, status, affiliation, or connection which they do not have including, but not limited to:

(a)      misrepresenting the Wittenberg Respondents' wealth and education;

(b)      mispresenting that the Respondents are licensed by the Office of the Commissioner of Financial Regulation to offer, sell, or provide credit services, money transmission services, and debt management services;

(c)      misrepresenting that Bailey and Signature Accounting are licensed and able to offer, sell, or perform certified public accounting services; and

(d)      misrepresenting that the Respondents are licensed and able to offer, sell, or perform legal services.

43.      The Respondents shall not fail to state any material fact, the omission of which would deceive or tend to deceive consumers, including, but not limited to:

(a)      failing to disclose that they are either unwilling or unable to provide the mortgage assistance relief services, credit services, money transmission services, and debt management services that they offer and sell to consumers;

(b)      failing to disclose that they are not licensed as required by the Maryland Credit

13

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 93 of 430 PageID #: 287

Services Businesses Act, the Maryland Money Transmission Act, and the Maryland Debt Management Services Act, and therefore, cannot lawfully provide such services to consumers;

(c)     failing to disclose they did not forward consumers' money to consumers' creditors as promised;

(d)     failing to inform consumers of the status of their debts or accounts, including that they are in default; and

(e)     failing to provide consumers required disclosures and notices, including statements about consumer rights as required by the Maryland Mortgage Assistance Relief Services Act, the Maryland Credit Services Businesses Act, and the Maryland Debt Management Services Act.

44.     The Respondents shall not engage in any deception, fraud, false pretense, false premise, make any misrepresentation, or knowingly conceal, suppress, or omit any material fact with the intent that a consumer rely on the same in connection with the promotion or sale of any consumer goods, consumer realty, or consumer services.

45.     The Respondents shall not take any payments, deposits, or other consideration from consumers in advance of providing an offered good or service unless each of the Respondents first provides the Proponent with a surety bond (the "Bond") in a form acceptable to the Proponent in the amount of Five Hundred Thousand Dollars ($500,000.00), and that meets the following conditions:

(a)     The Bond shall be issued by a surety licensed to do business in Maryland (the "Surety") and shall provide that the Respondents and the Surety are held and firmly bound

14

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

CV-00490-MSM-PAS     Document 5     Filed 11/21/23     Page 94 of 430 PageID #:
288

to consumers who suffer any damage or loss in connection with any of the Respondents'
failure to provide any purchased good or service.

(b)      The Bond shall permit any consumer who suffers any damage or loss in connection
with any of the Respondents' failure to provide any purchased good or service to file a
claim for the consumer's damage or loss with the Surety and, if the claim is not paid, to
bring an action based on the Bond in a court of competent jurisdiction and to recover
against the Surety any damage or loss suffered by the consumer in connection with any of
the Respondents' failure to provide any purchased good or service, as well as the costs of
the legal action.

(c)      The Bond shall also permit the Proponent to file a claim with the Surety for any
damage or loss suffered by a consumer in connection with any of the Respondents' failure
to provide any purchased good or service and, if the claim is not paid, to bring an action
based on the Bond in a court of competent jurisdiction and to recover against the Surety
any damage or loss suffered by a consumer in connection with any of the Respondents'
failure to provide any purchased good or service, as well as the costs of the legal action.

(d)      The Bond shall also permit the Proponent to file a claim with the Surety for costs
and expenses it incurs in connection with its enforcement of this Final Order and, if the
claim is not paid, to bring an action based on the Bond in a court of competent jurisdiction
for the costs and expenses incurred by the Proponent in connection with its enforcement of
this Final Order.

(e)      The Bond posted by the Respondents pursuant to this paragraph shall remain in
effect until five (5) years from the date the last claim is made, or if no claims are made,

15

five (5) years from the date it is first posted.

(f)     The Respondents shall each provide the Proponent with a copy of the Bond and shall maintain accurate records of all premium payments made on it and claims and payments made from it. Commencing ninety (90) days from the date of the entry of this Final Order and annually thereafter for the duration of the Bond, the Respondents shall provide the Proponent with copies of all such records they maintain concerning the Bond.

(g)     If a claim is filed with a Surety by the Proponent, notice shall be given by mailing a copy of the claim to the Respondents. Any notice to the Respondents that is made under this or any other subparagraph shall be made consistent with paragraphs 47 and 48.

46.     The Respondents shall include in any contract or other agreement they enter with consumers for any good or service the following information:

(a)     a notice informing consumers of the name, address and telephone number of the surety that provides the bond required under paragraph 45 and informing consumers of their ability to file claims with the surety if they suffer any damage or loss in connection with any of the Respondents' failure to provide any purchased any good or service; and

(b)     a notice informing consumers that if they have any complaint concerning any of the Respondents' failure to provide any purchased any good or service, they may contact the Consumer Protection Division at 200 St. Paul Place, 16th Floor, Baltimore, MD 21202; (410) 576-6300 or toll-free: (888) 743-0023.

47.     Any notice required hereunder that must be provided by the Consumer Protection Division to the Bailey Respondents shall be delivered by first-class mail, postage prepaid, to, Granville    Templeton,    Esq.,    Templeton    Law    Firm,    729    Pratt    Street,    Ste.    560

16

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-CV-00490-MSM-PAS   Document 5   Filed 11/21/23   Page 96 of 430 PageID #: 290

Baltimore, MD 21202, or such other address that may be designated in writing by the Bailey Respondents.

48.     Any notice required hereunder that must be provided by the Consumer Protection Division to the Wittenberg Respondents shall be delivered by first-class mail, postage prepaid, to, Arthur Wittenberg, individually, and as trustee for the Wittenberg Family Trust, 201 Saint Charles Avenue, Suite 2500, New Orleans, LA 70170, 201 International Circle, Suite 230, Hunt Valley, MD 21030, or such other address that may be designated in writing by the Wittenberg Respondents.

## RESTITUTION

49.     The Agency finds that the Respondents, jointly and severally, unlawfully collected significant upfront fees and monthly payments from consumers for promised mortgage assistance relief services, credit services, money transmission services, and debt management services that they could not legally perform, representing they would reduce or eliminate consumers' debts and increase consumers' credit scores but the Respondents failed to perform the promised services, refused to refund the consumers' payments, and misappropriated the fees and payments received from consumers for the Respondents' personal use. As a result, consumers defaulted on their loans and faced foreclosures and repossessions and had their credit scores drop.

50.     Within thirty (30) days of the entry of this Final Order, the Respondents, jointly and severally, shall pay restitution to the Agency equal to the sum of all monies they received from consumers for the mortgage assistance relief services, credit services, money transmission services, and debt management services that the Respondents illegally offered and sold to consumers and failed to provide, less any amounts that the Respondents can sufficiently document

17

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 97 of 430 PageID #: 291

were either refunded to consumers or transmitted to the consumers' creditors (the "Restitution Amount"). The Restitution Amount that the Respondents shall pay shall be at least $772,939.66, and the following amounts shall be distributed to the following consumers from the Restitution Amount:

| | |
|---|---|
| Douglas Anania | $106,518.47 |
| Enochia Anderson | $78,458.11 |
| Irvin and Patricia Betch | $81,734.65 |
| Eugene Harris | $296,358.48 |
| Felipe Hernandez | $65,197.39 |
| Brian Hockaday | $11,972.56 |
| Redeemed Christian Church of God, River of Life - Pastor David Ijeh | $115,000 |
| Gerard P. McGovern | $17,700 |
| **Total** | **$772,939.66** |

51.     For consumers harmed by the Respondents' practices who are not listed in paragraph 53 above, the Respondents shall pay the Agency restitution equal to the amount of all funds that the Respondents received from consumers related to the Respondents' offer and sale of mortgage assistance relief services, credit services, money transmission services, and debt management services that have not already been refunded to consumers or that were not transmitted to consumers' creditors. The restitution amounts to be paid to the Agency under this paragraph shall be determined by the claims procedure set forth below.

52.     Within thirty (30) days of the date of the entry of this Final Order, the Respondents shall provide the Proponent with the following information concerning each consumer from whom the Respondents received payments related to the Respondents' offer and sale of mortgage assistance relief services, credit services, money transmission services, and debt management services (the "Consumer List"):

18

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 98 of 430 PageID #: 292

(a)    For each consumer whose name is contained on the Consumer List, the

Respondents shall provide the following contact information:

> (i)     the consumer's first name;
> (ii)    the consumer's last name;
> (iii)   the consumer's address;
> (iv)    the consumer's telephone number;
> (v)     the consumer's email address; and
> (vi)    Social Security number (if available)

(b)    For each consumer whose name is contained on the Consumer List, the

Respondents shall provide the following information concerning the payments they

collected from the consumer:

> (i)     the date(s) the Respondents sold the mortgage assistance relief services, credit services, money transmission services, or debt management services to the consumer;
> (ii)    the total of all payments including but not limited to upfront fees, monthly payments, and all other fees and payments the consumer paid to the Respondents for the mortgage assistance relief services, credit services, money transmission services, or debt management services;
> (iii)   the total amount, if any, the Respondents paid to the consumers' creditors including the date of the payment, the name of the creditor, and the amount of the payment; and
> (iv)    any amount the Respondents have refunded to the consumer.

The Respondents shall provide the Consumer List data in an Excel spreadsheet or any other format

approved by the Proponent.

53.    The Respondents shall provide the Proponent with all canceled checks, financial

account statements, invoices, bills, and other business records that confirm any payment they claim

they made that is listed in the Consumer List pursuant to subparagraph 52(b)(iii) and (iv). The

Proponent shall not credit against the Restitution Amount payments listed in the Consumer List

pursuant to subparagraph 52(b)(iii) and (iv) unless sufficient documentation of the payment has

19

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 99 of 430 PageID #: 293

been provided to the Proponent pursuant to this paragraph.

54.     The Agency shall place the Restitution Amount it receives into an account to be maintained by the Agency that shall be used to pay restitution to consumers (the "Restitution Account).

55.     The Agency shall use the Restitution Amount it receives from the Respondents to pay restitution to consumers harmed by the Respondents' unfair, abusive, and deceptive trade practices found herein.

56.     The Proponent shall perform a claims process that will be conducted by a person or persons appointed by the Agency (hereinafter the "Claims Administrator"). The Claims Administrator may be an employee of the Agency or an independent claims processor.

57.     The claims process shall consist of identifying and locating each consumer who is eligible to receive restitution pursuant to this Final Order, gathering all information necessary to determine the amounts of restitution due to each consumer who is eligible to receive restitution, and the mailing by the Claims Administrator of restitution payments to all such consumers and any other mailings that assist the claims process.

58.     If it is possible to determine a consumer's entitlement to relief from sources other than the consumer and the records provided by the Respondents, that relief shall be provided to the consumer without the necessity of the consumer submitting information in the claims process.

59.     The Claims Administrator shall perform tasks to ensure a thorough and efficient determination of consumers' claims pursuant to the terms of this Final Order.

60.     The Claims Administrator shall perform the above duties under the supervision and control of the Proponent.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 100 of 430 PageID #: 294

61.     The Respondents shall give the Claims Administrator complete access to all records, data, and personnel necessary for the Claims Administrator to complete the Claims Administrator's duties.

62.     The Respondents shall be liable for the costs of conducting the claims process, including the payment provided for under paragraph 76 of this Final Order. The Claims Administrator shall notify the parties of all costs incurred in connection with the claims process.

63.     If, at any stage of the claims process, it is determined that the Restitution Account will require additional payments to satisfy all restitution due under this Final Order and pay the costs of the claims process, the Respondents shall deposit additional money in the amount specified by the Proponent within thirty (30) days of being notified by the Proponent of the additional amount.

64.     If there are insufficient funds received by the Agency to cover full restitution for consumers and the civil penalty and costs due hereunder, the funds received shall be credited first toward restitution and shall only be credited toward the civil penalty and costs after all restitution claims are satisfied.

65.     If there are insufficient funds collected to provide full restitution to each victim, restitution shall be distributed to consumers on a pro rata basis.

## CIVIL PENALTIES

66.     The Administrative Law Judge found that the Respondents unlawfully collected $813,914.01 in payments, over the course of 114 transactions with 8 consumers, and engaged in their unfair, abusive, and deceptive trade practices from January 2018 through May 2021, which the Agency calculates to be a period of 1,246 days. These are likely only some of the consumers

21

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-cv-00490-MSM-PAS     Document 5     Filed 11/21/23     Page 101 of 430 PageID
#: 295

who were harmed by the Respondents' unfair, abusive, and deceptive trade practices. The consumer testimony and documentary evidence admitted in this matter show a disturbing pattern of unfair, abusive, and deceptive conduct by the Respondents throughout their dealings with the consumers who testified at the hearing of this matter. From the moment the Respondents first met with consumers they misled consumers. The Respondents falsely represented that the WFT program was a "Private Banking Debt Liquidation Program," for which the Wittenberg Family Trust served as "trustee" and, without basis, misled consumers into believing that by joining the WFT program and paying substantial upfront fees and monthly payments they would ultimately save hundreds of thousands of dollars, their accounts would "reflect closed with a zero balance" in a shorter timeframe than the original loan terms, and they would improve their credit scores. The Respondents lied to consumers in their advertising and marketing practices, in their direct solicitation of consumers, in the documents they required consumers to sign, and in their direct dealings with consumers, about their ability and willingness to provide the offered mortgage assistance relief services, the credit services, the money transmission services, and the debt management services. The Respondents' entire business scheme was to deceive and mislead consumers, who were in good standing with their creditors, into paying them large sums of money for assistance in resolving consumers' debts and instead of providing the promised services, the Respondents misappropriated consumers' payments while hiding their misconduct, leaving consumers without cars, facing foreclosure, and in financial chaos. These findings have been incorporated into this Final Order.

67.     Pursuant to Md. Code Ann., Com. Law § 13-410, the factors to be considered by the Agency in setting the amount of a civil penalty are:

22

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 102 of 430 PageID
#: 296

(i)     The severity of the violation for which the penalty is assessed;
(ii)    The good faith of the violator;
(iii)   Any history of prior violations;
(iv)    Whether the amount of the penalty will achieve the desired deterrent purpose; and
(v)     Whether the issuance of a cease-and-desist order, including restitution, is insufficient for the protection of consumers.

Each of these factors is considered below.

68.     The Respondents' violations were severe. The ALJ found "[b]ecause the Respondents did not have a legitimate program, the debt savings were completely fabricated, not based in reality, and fraudulent." Prop. Dec. at 57. The ALJ also concluded that "the Respondents' illegal offer or sale of mortgage assistance relief services, credit services, money transmission services, and debt management services and failure to perform the offered services substantially harmed consumers, who relied on the Respondents to consolidate their debts, when instead the Respondents took payments and converted payments to their own personal use, and a [sic] result consumers lost their vehicles, homes and sustained decreases in credit scores." *See* Prop. Dec. at 78.

The consumers who testified in this matter suffered serious financial harm and are owed at least $772,939.66. In addition to the money consumers paid to the Respondents, which the Respondents converted to their own personal use, because of the Respondents' misrepresentations and failure to provide the promised services some consumers lost their vehicles to repossessing creditors and faced the foreclosure of their homes. These harms were particularly severe because the consumers the Respondents preyed upon were not having difficulty paying their debts and did not need the Respondents' assistance. Further, these consumers represent only a portion of the consumers who were likely harmed by the Respondents. Indeed, the Wittenberg Respondents

23

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 103 of 430 PageID #: 297

failed and refused to produce any documents in response to Proponent's Request for Documents, even after the ALJ sanctioned him, including documents that would have identified additional consumers harmed by the Respondents practices. *See* September 27, 2021 Ruling on Motion for Sanctions.

69.     The Respondents also acted in bad faith. The ALJ found that although the Respondents lacked licenses to offer, sell, and provide credit services, money transmission services, and debt management services, facts that were material fact to the consumers and not disclosed, the Respondents, nevertheless offered these services to consumers at great cost. *See* Prop. Dec. at 52-53, 75, 77. The Respondents also repeatedly lied to consumers in their advertising, marketing, and solicitation of consumers to join their so-called debt dissolution program. To overcome consumer concerns, the Respondents knowingly misrepresented Respondent Wittenberg's wealth and status, promoting him as a millionaire philanthropist when, in fact, Respondent Wittenberg was a recently incarcerated felon of limited means. Respondent Bailey took advantage of her close and trusting friends, convincing them to purchase debt resolution services that they did not need and ultimately left them without their vehicles and with their homes threatened. The Respondents also misled consumers by promising prompt debt resolution while they were knowingly converting consumers' payments for their own personal uses while hiding from consumers that their loans that went unpaid by the Respondents were in default, repossession, or foreclosure. The Respondents lied to consumers about Bailey's status as an accountant, Wittenberg's ability to provide legal services, and used documents that lacked required disclosures, notices, and other information that would have informed consumers about their rights.

The ALJ also specifically found that Respondent Bailey "never paid creditors on behalf of

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 104 of 430 PageID
#: 298

consumers, instead she paid her personal expenses," Prop. Dec. at 13, and that Respondent
Wittenberg misled consumers concerning his ability to repay their debts when he sent "bogus"
tenders and legal documents to creditors. *See also* Prop. Dec. at 52, 58.

After consumers learned that the Respondents had failed to provide the promised services,
which resulted in their homes being foreclosed upon, their vehicles repossessed, and their credit
scores to drop precipitously, "the Respondents provided phony legal documents to be mailed to
creditors or filed in state or federal court….the evidence shows that the Respondents provided the
documents with [sic] consumers via email and provided instructions on filing the documents in
court. In addition, Respondent Wittenberg filed frivolous legal claims that did nothing to assist
consumers preserve property or prevent foreclosure." Prop. Dec. at 52. Significantly, despite their
failure to provide promised services, when consumers requested that the Respondents refund their
payments, the Respondents refused.

In sum, as the ALJ found, "the evidence is overwhelming that the Respondent
misrepresented the debt dissolution program and promised debt savings that were not possible…."
Prop. Dec. at 57. Although the Respondents did not appear at the hearing and the Wittenberg
Respondents failed to cooperate in the investigation, the evidence presented by the Proponent
convincingly demonstrates that the Respondents acted in bad faith.

70.    The Respondents have no known prior history of violating the Consumer Protection
Act, but their violations shown in this case have lasted for years. Notably, the Respondents began
unlawfully offering and selling mortgage assistance relief services, credit services, money
transmission services, and debt management services to consumers as well as collecting illegal
upfront fees and monthly payments from consumers and converting those funds to their person use

25

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 105 of 430 PageID
#: 299

in January 2018 while Respondent Wittenberg was serving time in prison because of his felony theft conviction; the Respondents' unlawful trade practices have continued even though Mr. Wittenberg remains on probation for that conviction until June 11, 2022. Moreover, even after being enjoined by the Circuit Court for Baltimore County around the time of the commencement of this action from providing mortgage assistance relief services, credit services, money transmission services, and debt management services, the Wittenberg Respondents continued to do so to the detriment of consumers. *See, e.g.*, CPD Ex. 121B.

71.    Injunctive provisions and an order to pay restitution alone will likely not deter the Respondents from continuing the same course of illegal conduct. A significant penalty is necessary to deter the Respondents and those similarly situated from engaging in this or a similar type of illegal conduct in the future.

72.    Section 13-410(a) of the Consumer Protection Act provides that a merchant who engages in a violation of the Act is subject to a fine of not more than $1,000 for each violation committed prior to October 1, 2018, and a fine not exceeding $10,000 for each violation after that date.

73.    Following consideration of the evidence of this case, and the findings of the Administrative Law Judge that have been incorporated herein, as modified by the Agency's Ruling on the Proponent's Exceptions, the Agency has determined that the Respondents committed at least one violation of the Consumer Protection Act for each day they did business between January 1, 2018 through May 31, 2021, for a total of at least 1,246 violations of the Consumer Protection Act.

74.    Following consideration of the number of violations committed by the Respondents

26

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 106 of 430 PageID #: 300

and the factors set forth in Md. Code Ann., Com. Law, § 13-410(d), the Agency has determined that, within thirty (30) days of the entry of this Final Order, the Bailey Respondents and the Wittenberg Respondents should be jointly and severally liable for payment of a civil penalty of $1,000 for each violation found herein for civil penalties totaling one million, two hundred forty-six thousand dollars ($1,246,000).

## COSTS

75.    Within thirty (30) days from the date of this Final Order, the Respondents shall pay the Agency One Hundred Thirteen Thousand One Hundred Forty-Four Dollars and Thirty-Eight Cents ($113,144.38) for the Proponent's costs incurred investigating and prosecuting this matter.

76.    Within thirty (30) days from the date of this Final Order the Respondents shall pay the Agency Twenty Thousand Dollars ($20,000.00), which shall be used by the Agency to pay for the claims procedure provided under this Final Order.

## RESOLUTION OF DISPUTES

77.    The Chief of the Agency or his designee shall resolve any disputes regarding this Final Order and enter any supplemental orders needed to effectuate its purpose.

## NOTICE TO RESPONDENTS

78.    Pursuant to Md. Code Ann., Com. Law § 13-403(b)(iii), the Respondents are hereby notified that if the Agency determines that they have failed to comply with this Final Order within thirty (30) days following service of this Final Order, the Consumer Protection Division may proceed with enforcement of the Final Order pursuant to Subtitle 4 of Title 13 of the Commercial Law Article.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-Cv-00490-MSM-PAS     Document 5     Filed 11/21/23     Page 107 of 430 PageID
#: 301

## APPEAL RIGHTS

79.    A party aggrieved by the Findings of Fact and Conclusions of Law or any provision

of this Final Order is entitled to judicial review of the decision as provided by § 10-222 of the State

Government Article of the Annotated Code of Maryland.  Generally, a petition for judicial review

must be filed within thirty (30) days after the date of the order from which relief is sought.  The

time for filing a petition is regulated by Rule 7-203 of the Maryland Rules and the rules regulating

judicial review of administrative agency decisions as set forth in Rules 7-201 to 7-210 of the

Maryland Rules.

COSUMER PROTECTION DIVISION
OFFICE OF THE ATTORNEY GENERAL

Date:  August 19, 2022                    By:

Steven M. Sakamoto-Wengel
Consumer   Protection   Counsel   for   Regulation,
Legislation and Policy and Chief's Designee

**Copies Mailed To:**

Marcia L. Bailey
400 Sherwood Road
Cockeysville, MD 21030

Granville Templeton, III, Esquire
Law Office
729 East Pratt Street #560
Baltimore, MD 21202

Arthur Wittenberg
202 Woodgreen Circle
Ft. Washington, MD 20744

Arthur Wittenberg
201 International Circle, Suite 230
Hunt Valley, MD 21030

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

Case 1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 108 of 430 PageID #: 302

Wittenberg
201 Saint Charles Avenue, Suite 2500
New Orleans, LA 70170

Arthur Wittenberg
As a Trustee for the Wittenberg Family Trust
202 Woodgreen Circle
Ft. Washington, MD 20744

Jessica Kaufman
Kira Wilpone-Welborn
Assistant Attorney Generals
Office of the Attorney General
Consumer Protection Division
200 St. Paul Place, 16th Floor
Baltimore, MD 21202

CONSUMER PROTECTION DIVISION  \*  IN THE CONSUMER

OFFICE OF THE ATTORNEY GENERAL

STATE OF MARYLAND  \*  PROTECTION DIVISION

Proponent,  \*  OFFICE OF THE

v.  \*  ATTORNEY GENERAL

MARCIA BAILEY, *et. al*  \*  CPD Case No. 21-010-33744

Respondents.  \*  OAH No. OAG-CPD-04-21-12386

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

*ADMINISTRATIVE HEARING PROCESS*

**FILED AUG 15 2022**

*Office of the Attorney General*
*Consumer Protection Division*

## **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

STATEMENT OF THE CASE
ISSUES
SUMMARY OF THE EVIDENCE
FINDINGS OF FACT
DISCUSSION
CONCLUSIONS OF LAW

## **STATEMENT OF THE CASE**

On May 19, 2021, the Consumer Protection Division (CPD) of the Maryland Office of

the Attorney General[1], filed a Statement of Charges against Marcia L. Bailey and Marcia Bailey,

Inc., T/A Signature Accounting, (Respondent Bailey) and Arthur Wittenberg and Arthur

Wittenberg as a Trustee for the Wittenberg Family Trust (Respondent Wittenberg) proposing the

imposition of a civil penalty for allegedly engaging in unfair, deceptive, and abusive trade

practices in the course of offering and selling consumer and credit services.  Md. Code Ann.,

Com. Law. §§ 13-301 through 13-501, and 14-1901 through 14-1916 (2013 & Supp. 2021); Md.

---

[1] The Consumer Protection Division in its capacity as the Proponent in this matter shall be referred to as the "Proponent" or the "OAG"; the Consumer Protection Division in its capacity as an administrative agency authorized to hear contested cases shall be referred to as the "Agency".

Code Ann., Fin. Inst. §§ 12-401 through 12-431 and 12-901 through 12-931 (2020 & Supp. 2021)[2]; Md. Code Ann., Real Prop. §§ 7-501 through 7-511 (2015 & Supp. 2021)[3].

This case was referred to the Office of Administrative Hearings (OAH) on May 20, 2021. The delegation of authority is to issue proposed Findings of Fact and Conclusions of Law. Code of Maryland Regulations (COMAR) 02.01.02.04B, *see also* COMAR 28.02.01.25C. The matter was heard by Administrative Law Judge Syeetah Hampton-EL (ALJ).

On June 21, 2021, the Proponent filed a motion to compel against both sets of Respondents. The Respondents failed to respond to the motion within the allowed time. COMAR 28.02.01.12B(3). Thereafter, Respondent Bailey agreed to provide requested documentation by Monday, July 19, 2021. On July 29, 2021, the ALJ's administrative aide emailed the Proponent to learn if it intended to withdraw the motion to compel against Respondent Bailey. The Proponent replied via email that Respondent Bailey complied and it withdrew the motion to compel against Respondent Bailey only.

On July 12, 2021, the ALJ held a telephone prehearing conference (Conference) in the captioned case. Assistant Attorneys General Niki M. McCormally and Jessica B. Kaufman represented the Proponent, and Granville Templeton, III, Esquire, represented Respondent Bailey. Respondent Wittenberg did not appear for the Conference, nor did anyone authorized to represent Respondent Wittenberg appear.

On July 29, 2021, the ALJ granted the motion to compel and ordered Respondent Wittenberg to fully produce responsive documents within five days, or by Tuesday, August 3, 2021. Respondent Wittenberg failed to produce the documents.

---

[2] Although the charges arise from conduct before 2020, citations are to the current volume and supplement to fully capture any intervening changes.
[3] Unless otherwise noted, all references hereinafter are to these versions.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

Case 1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 111 of 430 PageID #: 305

On August 10, 2021, the Proponent filed a motion for sanctions against Respondent Wittenberg. Respondent Wittenberg had fifteen days to respond, or by August 30, 2021. COMAR 28.02.01.12B(3). Respondent Wittenberg failed to respond.

On August 27, 2021, the OAH received returned mail for Respondent Wittenberg from the Woodgreen Circle[4] address. The United States Postal Service (USPS) noted: "Return to Sender, not deliverable as addressed, unable to forward." On the envelope in all capital letters, someone wrote: "PERSON DOES NOT LIVE HERE."

On September 27, 2021, the ALJ issued a ruling on the motion for sanctions, in which she granted the motion for sanctions in part and denied it in part. On October 12, 2021, the Proponent[5] filed a Motion for Reconsideration (Motion). Respondent Wittenberg had fifteen days to respond or by November 2, 2021. Respondent Wittenberg failed to respond. On November 24, 2021, the ALJ denied the motion.

On November 16, 2021, the ALJ held a telephone status conference via the Webex videoconferencing platform (Webex). COMAR 28.02.01.20B. The Proponent and Counsel for Respondent Bailey appeared. Respondent Wittenberg failed to appear. The Proponent and Counsel for Respondent Bailey selected remote hearing dates of January 25 through January 27, 2022. COMAR 28.02.01.20B. Each agreed to exchange exhibits and witnesses lists by January 14, 2022.

On January 25, 2022 and January 26, 2022, the ALJ held a hearing via Webex. Ms. Kaufman and Kira Wilpone-Welborn, Assistant Attorney General, represented the Proponent. The Respondents failed to appear and the ALJ waited the customary fifteen minutes for the Respondents to appear. After waiting fifteen minutes, the ALJ determined that both Respondent

---

[4] Respondent Wittenberg has three addresses on record with the OAH, including an address on Woodgreen Circle.
[5] The Proponent is now represented by Senior Assistant Attorney General Jessica B. Kaufman.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 112 of 430 PageID
#: 306

Bailey and Respondent Wittenberg failed to appear.  Mr. Templeton also failed to appear on

behalf of Respondent Bailey.  Mr. Templeton failed to contact the OAH to explain his absence or

that of his client.  Further, Mr. Templeton did not contact the OAH to request a postponement.

COMAR 28.02.01.16.  The notice of hearing mailed to Respondent Bailey and counsel were not

returned.  On December 7, 2021, the USPS returned the notice of hearing mailed to Respondent

Wittenberg to the Woodgreen Circle address.  The USPS did not return the notice of hearing

mailed to the other addresses.

On February 25, 2022, the Proponent filed Proposed Findings of Fact and Conclusions of

Law and a Memorandum of Law in Support of the Proponent's Proposed Findings of Fact and

Conclusions of Law.

On March 28, 2022, the USPS returned the status conference report and scheduling order,

Notice of Remote Status Conference, and Ruling on Motion for Reconsideration mailed to

Respondent Wittenberg at the Saint Charles Avenue address in New Orleans, Louisiana.

On April 20, 2022, the ALJ issued a Proposed Decision. On May 20, 2022, the Proponent

filed Exceptions to the Proposed Decision with the Agency, together with a Request for Entry of

Final Order and a Proposed Final Order.  None of the Respondents filed exceptions, nor did they

respond to the Proponent's Exceptions and Request for Entry of Final Order.

## ISSUES

The issues presented are:

Deceptive Trade Practices

1.  Whether the Respondents made false or misleading oral or written statements or other

    representations, that have the capacity, tendency, or effect of deceiving or misleading

    consumers and constitute deceptive trade practices identified in sections 13-301(1)

4

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 113 of 430 PageID #: 307

and 13-303 of the Commercial Law Article by:

    a.   Representing, indicating, or implying that they will perform mortgage assistance relief services, money transmission services, and debt management services for consumers when, in fact, Respondents failed to provide such services;

    b.   Representing that their services would reduce the consumers' debts and save consumers money, when in fact, the Respondents failed to reduce debts or save money;

    c.   Representing that they would reduce the consumers' debts in a matter of years, when in fact, the Respondents failed to reduce debts within the promised time period;

    d.   Implicitly or explicitly representing to consumers that they can lawfully provide credit services, money transmission services, and debt management services to consumers, when in fact, the Respondents cannot legally offer, sell, or provide those services as the Respondents do not hold, and have never held, the licenses required by the MCSBA,[6] the MMTA,[7] or the MDMSA[8] to provide the services;

    e.   Representing, indicating, or implying that they can collect advance payments from consumers in connection with the offer or sale of mortgage assistance relief services, credit services, money transmission services, and debt management services, when in fact, the collection of advance payments is

---

[6] The Maryland Credit Services Business Act.
[7] The Maryland Money Transmission Act.
[8] The Maryland Debt Management Services Act.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

Case 1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 114 of 430 PageID #: 308

prohibited by MARS,[9] the MCSBA, and the MDMSA unless and until the specified conditions are met;

f.  Expressly and impliedly misrepresenting to consumers that the monthly payments Respondents collect from consumers will be used to pay consumers' debts, when, in fact, Respondents retain the monthly payments for their own personal use; and

g.  Expressly and impliedly misrepresenting to consumers who inquire about or challenge the Respondents' actions leading to the filing of foreclosure actions and car repossessions, that such setbacks are normal and to be expected in the course of mortgage assistance relief services, credit services, money transmission services, and debt management services, and that consumers should continue making their monthly payments to Respondents?

2.  Whether the Respondents engaged in deceptive trade practices prohibited by section 13-303 of the Commercial Law Article, as defined in section 13-301(2)(ii) of the Commercial Law Article, by representing that they have a sponsorship, approval, status, affiliation, or connection, which they do not have by:

a.  Misrepresenting the Respondent Wittenberg's wealth and education; and misrepresenting the licensure of Respondent Bailey; and

b.  Impliedly representing that the Respondents were licensed under the MCSBA, the MMTA, and the MDMSA and could lawfully provide credit services, money transmission services, and debt management services to consumers, when in fact, the Respondents have never been licensed as required by the MCSBA, the MMTA, and the MDMSA?

---

[9] The Maryland Mortgage Assistance Relief Services Act.

3. Whether the Respondents engaged in deceptive trade practices prohibited by section 13-303 of the Commercial Law Article, as defined in section 13-301(3) of the Commercial Law Article, by failing to state material facts that deceived or tended to deceive Maryland consumers by:

    a. Failing to disclose that they were unwilling and unable to provide mortgage assistance relief services, credit services, money transmission services, and debt management services;

    b. Failing to disclose that Respondent Bailey lacked a license from the Maryland Board of Accountancy;

    c. Failing to disclose that they were not licensed as required by the MCSBA, the MMTA, and the MDMSA, and failing to disclose they did not hold a surety bond and therefore, could not lawfully provide services to consumers;

    d. Failing to disclose to consumers that did not forward consumers' money to the creditors as promised, resulting in consumers unknowingly defaulting on loans, vehicle repossession, and experiencing foreclosure; and

    e. Failing to provide consumers with required disclosures and notices, including statements regarding consumer rights, as required by MARS, the MCSBA, and the MDMSA;

    f. Failing to disclose that they did not employ attorneys and therefore could not provide legal services?

4. Whether the Respondents engaged in deceptive trade practices as prohibited by section 13-303 of the Commercial Law Article, as defined in section 13-301(9)(i) of the Commercial Law Article, by making misrepresentations and omissions of

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 116 of 430 PageID #: 310

material fact concerning the provision of the promised services, with the intent that consumers relied on the same, in connection with the promotion of sale of consumer services?

5.  Whether the Respondents' statutory violations of MARS constitute unfair or deceptive trade practices prohibited by section 13-303 of the Commercial Law Article and pursuant to section 7-510(1) of the Real Property Article?

6.  Whether the Respondents' statutory violations of MCSBA constitute unfair and deceptive trade practices prohibited by section 13-303 of the Commercial Law Article and pursuant to section 14-1914(a) of the Commercial Law Article?

Unfair Trade Practices

7.  Whether the Respondents engaged in unfair trade practices prohibited by section 13-303 of the Commercial Law Article by offering or selling mortgage assistance relief services, credit services, money transmissions services and debt management to consumers?

8.  Whether the Respondents' illegal offer or sale of mortgage assistance relief services, credit services, money transmission services, and debt management services and failure to perform the offered services substantially harmed consumers, who relied on the Respondents to consolidate their debts, when instead the Respondents took payments and converted payments to their own personal use, and as a result consumers lost their vehicles, and had foreclosure actions filed, and sustained decreases in their credit scores?

9.  Whether the Respondents' failure to comply with the requirements of MARS, the MMTA, the MDMSA, and the MCSBA further harmed consumers by depriving them

8

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 117 of 430 PageID
#: 311

of the protections put in place by the Maryland General Assembly to shield
consumers from financial injury?

10. Whether consumers can reasonably avoid being injured by the Respondents' unfair
    trade practices because they had no way of knowing that Respondents were unwilling
    and unable to provide the services they offer and sell, would not pay their creditors,
    and would not comply with Maryland law?

11. Whether the Respondents' collection of payments from consumers to purportedly
    assist them in paying off debts and then wrongfully using such payments for their
    own personal use, and their illegal offer and sale of mortgage assistance relief
    services, credit services, money transmission services, and debt management services
    is conduct that is not outweighed by any countervailing benefits to consumers or
    competition?

Abusive Trade Practices

12. Whether the Respondents engaged in abusive trade practices as prohibited by section
    13-303 of the Commercial Law Article?

13. Whether the Respondents materially interfered with the ability of the consumers to
    understand the terms and conditions of the consumer financial services the
    Respondents purportedly offered by the Respondents' barrage of misrepresentations,
    including, but not limited to, blatant lies about the efficacy of the program, fabricated
    calculations to demonstrate alleged program savings, false press releases and lies
    about their backgrounds and status; providing incomprehensible documents;
    collecting consumer money under the guise of saving money without performing any
    service of value whatsoever; and claiming car repossessions and foreclosure actions

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 118 of 430 PageID #: 312

are a normal and expected part of the program and are not events that should concern the consumers?

14. Whether the Respondents took unreasonable advantage of the consumers' lack of understanding regarding the financial services they offer and sell by:

    a. Among other things, providing incomprehensible documents purportedly outlining the terms and conditions of the program and by manipulating consumers who question the Respondents' practices;

    b. Preventing consumers from protecting their own interests given the Respondents' deceptions regarding the financial services they offer and sell and their interference with consumers communications with their creditors; and

    c. Providing blatant misrepresentations to consumers who reasonably relied on the Respondents to act in the consumers' interest?

15. Whether the Respondents are jointly and severally liable for their unfair, deceptive, and abusive trade practices by promoting and engaging consumers in mortgage assistance relief services, credit services, money transmission services, and debt management services?

## **SUMMARY OF THE EVIDENCE**

Exhibits

A complete list of the exhibits is attached to this decision as an appendix.

The ALJ did not admit any exhibits on behalf of Respondent Bailey or Respondent Wittenberg, as both failed to appear for the hearing and did not submit any documents.

Testimony

The following witnesses testified on behalf of the Proponent:

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 119 of 430 PageID #: 313

- Jedd Bellman, Assistant Commissioner for Non-Depository Supervision, Office of the Commissioner of Financial Regulation (OCFR)

- Enochia Anderson, Consumer

- David Ijeh, Pastor of Redeemed Christian Church of God, Consumer

- Momodou A. Njai, Consumer

- Dr. Douglas Anania, Consumer

- Felipe Hernandez[10], Consumer

- Joshua Schafer, OAG CPD Investigator

The Respondents failed to appear and therefore presented no testimony or witnesses.

## **FINDINGS OF FACT**

The Agency finds the following facts by a preponderance of the evidence:

**Marcia L. Bailey, Marcia Bailey, Inc., trading as Signature Accounting**

1.  Since January 2015, Respondent Bailey has maintained a bank account at Bank of America, account number #4314.  (CPD Ex. 128).

2.  Marcia L. Bailey is a graduate of the United States Naval Academy (Naval Academy).  She attended the Naval Academy with Enochia T. Anderson.  Respondent Bailey prepared taxes for Ms. Anderson and her family through 2019.

3.  From January 2018 through May 2021, Signature Accounting offered and sold consumers mortgage assistance relief services, credit services, money transmission services, and debt management services.  Before January 2018, Respondent Bailey prepared taxes and provided bookkeeping services for numerous clients including Dr. Anania and Enochia Anderson.

---

[10] Mr. Hernandez appeared with counsel, Gene Policastri, Esquire.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 120 of 430 PageID #: 314

4.    Marcia L. Bailey is the sole owner and operator of Marcia Bailey, Inc., trading as Signature Accounting, a Maryland corporation formed on or about October 17, 2013. (CPD Ex. 107, p. 2, CPD Ex. 107). She registered the name "Signature Accounting" on or about June 18, 2014. Marcia L. Bailey is also the Resident Agent for Signature Accounting and Marcia Bailey, Inc. (CPD Ex. 107). Signature Accounting maintains a website and lists the business address as 201 International Circle, Suite 230, Hunt Valley, Maryland. (CPD Ex. 106). Respondent Bailey has no employees.

5.    Marcia L. Bailey is not a licensed by the Maryland Board of Public Accountancy as a certified public accountant. (CPD Ex. 109). Respondent Bailey is not licensed to offer consumers mortgage assistance relief services, credit services, money transmission services, and debt management services. Respondent Bailey is not exempt from the licensing requirements by the OCFR.

6.    From 2018 through 2021, Respondent Bailey along with Respondent Wittenberg offered and sold unlicensed mortgage assistance relief services, money transmission services, debt management services, and credit services.

7.    In 2018, an NBC-affiliate interviewed Respondent Bailey about her client, Respondent Wittenberg, and his intention to purchase the Carolina Panthers, a pro-football team. (CPD Ex. 118).

8.    On April 29, 2019, Respondent Wittenberg paid Respondent Bailey $1,490.30. (CPD Ex. 128, p. 1777).

9.    In July 2019, an NBC-affiliate interviewed Respondent Bailey about her client, Respondent Wittenberg and his program to assist those in danger of foreclosure. (CPD Ex. 117).

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

Case 1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 121 of 430 PageID #: 315

10. Respondent Bailey is an agent of Respondent Wittenberg, as she accepted $309,590.56 from consumers: Enochia Anderson, Irvin and Patricia Betch, Eugene Harris, Felipe Hernandez, and Brian Hockaday, transferred $47,075.00 of those funds to Respondent Wittenberg, notarized documents, and met with consumers on behalf of Respondent Wittenberg. (CPD Ex. 129). Respondent Bailey drafted letters and program documents on her company letterhead noting the International Circle address shared with Respondent Wittenberg.

11. The Respondents received money from consumers and transferred money to and from each other. Respondent Bailey received $11,174.21 from Respondent Wittenberg. Respondent Bailey transferred $47,075.00 to Respondent Wittenberg. (CPD Ex. 130). Respondent Bailey did not maintain a separate trust account for the consumers' funds and commingled business funds and personal funds.

12. Respondent Bailey never paid creditors on behalf of the consumers, instead she paid her personal expenses.

**Arthur Wittenberg and the Wittenberg Family Trust**

13. Arthur Wittenberg maintained a website for Home Magic Decorating Inside and Out, focused on decorating and design. (CPD Ex. 112).

14. Beginning in January 2018, Arthur Wittenberg is a trustee and agent of the Wittenberg Family Trust. Respondent Wittenberg offered and sold consumers unlicensed mortgage assistance relief services, credit services, money transmission services, and debt management services.

15. Respondent Wittenberg has never been licensed to offer or sell consumers mortgage assistance relief services, credit services, money transmission services, and debt

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-CV-00490-MSM-PAS     Document 5     Filed 11/21/23     Page 122 of 430 PageID
#: 316

management services.  Respondent Wittenberg is not exempt from the licensing requirements by the OCFR.

16.  Respondent Wittenberg is not connected to the U.S. Department of the Treasury, but represented to consumers he had a connection.

17. Respondent Wittenberg never attended New Orleans Baptist Theological Seminary but swore under oath in the Circuit Court for Baltimore County to having a doctorate in Theology.  (CPD Ex. 2 and CPD Ex. 115).

18. Respondent Wittenberg never obtained a doctoral degree from Wittenberg University located in Ohio but swore under oath in the Circuit Court for Baltimore County to having a Ph.D. in Mathematics.  (CPD Ex. 2, and CPD Ex. 116).

19. Arthur Wittenberg was convicted on May 19, 2015 of a theft scheme over $10,000 by the Circuit Court for Montgomery County, Maryland. On December 21, 2015, the circuit court sentenced Respondent Wittenberg to serve fifteen years' incarceration in the Maryland Department of Corrections with credit for time served beginning October 8, 2015; consequently, Respondent Wittenberg was incarcerated from October 8, 2015 through June 11, 2019. At a hearing held on June 11, 2019 to reconsider Respondent Wittenberg's sentence, the circuit court sentenced Respondent Wittenberg to serve fifteen years' incarceration suspending all but 1,342 days with credit for 1,342 days' time served and upon his June 11, 2019 release ordered Respondent Wittenberg to serve three (3) years of unsupervised probation (through June 11, 2022) with conditions. On December 24, 2015, the Circuit Court for Montgomery County entered a $17,000.00 judgment against Mr. Wittenberg.  (CPD Ex. 4).

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 123 of 430 PageID
#: 317

20. On June 12, 2019, upon release from the state prison, Maryland Correctional Institution-Hagerstown issued Mr. Wittenberg a check for $500.00. Respondent Bailey deposited the check into her account, #4314. (CPD Ex. 128, p. 1889).

21. On July 29, 2019, Respondent Wittenberg updated a bank account with Capital One, N.A., account number 8649. The account title changed from Wittenberg Family Trust, Yong Min Cho Trustee to Wittenberg Family Trust, Yong Min Cho Trustee or Arthur Wittenberg Trustee. (CPD Ex. 128, p. 1990).

22. Since November 2019, Mr. Wittenberg maintained a bank account with Bank of America, account number 9721. (CPD Ex. 128, p. 1947). Respondent Wittenberg did not maintain a separate trust account for the consumers' funds, and commingled business funds and personal funds.

23. On June 11, 2021, Respondent Wittenberg appeared before the Circuit Court for Baltimore County (Court) for a preliminary injunction hearing initiated by the CPD. (CPD Ex. 2). Judge Battista ordered a preliminary injunction as to the Respondents. (CPD Ex. 3).

24. At the June 11, 2021 preliminary injunction hearing, Mr. Wittenberg testified that neither he nor the Wittenberg Family Trust had a license from the OCFR to transmit money, or to offer debt management services, credit services, and mortgage assistance relief services. Respondent Wittenberg admitted to serving as a trustee for consumers for a fee. (CPD Ex. 2).

25. Pursuant to agreements discussed below, Respondent Wittenberg received a total of $504,323.45 from consumers Douglas Anania, Irvin and Patricia Betch, Eugene Harris, Pastor David Ijeh, and Gerard McGovern. (CPD Ex. 129).

26. Respondent Wittenberg paid $50,974.35 to creditors on behalf of consumer Douglas Anania, and $10,000.00 on behalf of consumer Eugene Harris. Respondent

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-cv-00490-MSM-PAS     Document 5     Filed 11/21/23     Page 124 of 430 PageID #: 318

Wittenberg made no other payments to creditors on behalf of other consumers. (CPD Ex. 129).

27. The Respondents received money from consumers and transferred money to and from each other. Respondent Bailey transferred $47,075.00 to Respondent Wittenberg. Respondent Wittenberg transferred $11,174.21 to Respondent Bailey. (CPD Ex. 130).

**Respondents**

28. Respondent Bailey met Respondent Wittenberg when he was incarcerated with Respondent Bailey's brother.

29. The Respondents provided unlicensed mortgage assistance relief services, credit services, money transmission services, and debt management services to consumers.

30. The Respondents failed to obtain a surety bond.

31. The Respondents did not maintain trust accounts.

32. The Respondents demanded and received upfront payments for unlicensed mortgage assistance relief services, credit services, money transmission services, and debt management services.

33. The Respondents failed to provide consumer disclosures, education, and copies of documents.

34. The Respondents are not licensed attorneys and provided faulty legal documents and improper legal advice.

**Enochia Anderson**

35. Ms. Anderson maintained a secret security clearance as a requirement of employment. The security clearance required Ms. Anderson to maintain good credit.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 125 of 430 PageID #: 319

36. Respondent Bailey prepared taxes and reviewed financial documents for Ms. Anderson.

37. Ms. Anderson resided in Florida and had debt totaling approximately $450,000.00 including a home mortgage with M&T bank, an auto loan with Navy Federal Credit Union (NFCU) for a 2016 Chevy Traverse, and several credit cards with NFCU and Synchrony Bank. Ms. Anderson was not in default and had a credit score of 674. (CPD Ex. 7).

38. On January 17, 2019, Ms. Anderson signed a Letter of Intent to join the "Private Banking Debt Liquidation Program" to dissolve $446,234.04 in debt. Ms. Bailey signed the document, on Signature Accounting letterhead, as the agent of Respondent Wittenberg. (CPD Ex. 7, pp. 7-12). Ms. Anderson paid an initial fee of $46,123.40 and agreed to make monthly payments in the amount of $2,074.61 for fifteen years. The fees were made payable to Respondent Bailey via a wire transfer from Ms. Anderson. (CPD Ex. 7, p. 10).

39. Ms. Anderson paid the upfront fee in the amount of $46,123.40 to Respondent Bailey and the monthly payments $2,074.61 to Respondent Bailey via electronic transfers. (CPD Exs. 14-15, and 128)

40. On February 12, 2019, Ms. Anderson mailed a letter to all creditors notifying them of the Respondent Wittenberg Trust and to only communicate with Respondent Wittenberg. (CPD Ex. 13, pp. 1-8).

41. As of May 2019, Ms. Anderson's credit score dropped by 167 points to 507. The FICO score decreased from 735 to 585. (CPD Ex. 18, pp. 21-22).

42. On June 23, 2019, Synchrony Bank charged off the Empire credit account in the amount of $7,704.40 and the HOME credit account in the amount of $7,344.13. (CPD Ex. 18, p. 33).

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 126 of 430 PageID #: 320

43. On August 3, 2019, NFCU repossessed Ms. Anderson's 2016 Chevy Traverse due to a past due amount of $1,675.00. (CPD Ex. 20, p. 5). As a result, Ms. Anderson rented a vehicle for approximately five months.

44. On August 8, 2019, Respondent Bailey emailed Ms. Anderson a Certificate of Existence and Registration from the State of Minnesota in the name of Ms. Anderson. Ms. Anderson did not give permission for her name to be registered as an entity in the State of Minnesota or any other state. (CPD Ex. 21, p. 15).

45. On August 8, 2019, Respondent Bailey emailed Ms. Anderson copies of "tenders" provided and signed by Respondent Wittenberg to NFCU in the amount $3.00. The "tenders" included a letter signed by Mr. Wittenberg as Attorney in Fact, a folded dollar bill, a silver coin, a stamp signed by Respondent Wittenberg, and a copy of a default letter or payoff statement, purporting to be full payment for the amount of $15,556.42. (CPD Ex. 21, pp. 19-31).

46. On the same date Ms. Anderson's 2016 Chevy Traverse was repossessed by NFCU, the Respondents told Ms. Anderson to report the vehicle as stolen and offered to send a replacement vehicle. Ms. Anderson paid $1,575.00 to Respondent Wittenberg for delivery of a new vehicle. Ms. Anderson never received a replacement vehicle.

47. On September 28, 2019, Ms. Anderson learned of a case management conference regarding foreclosure of her home as Lakeview Loan Servicing, LLC had not received payment since February 2019. M&T Bank sold the mortgage to Lakeview Loan Servicing, LLC.

48. Respondent Bailey provided legal documents to Ms. Anderson on October 3, 2019 to file in the U.S. District Court for the Middle District of Florida in the pending action

against Navy Federal Credit Union related to the repossession of Ms. Anderson's vehicle. (CPD Ex. 19 at 156-157; CPD Ex. 27).

49. On December 2, 2019, Respondent Bailey communicated with Ms. Anderson via text message about the pending foreclosure process. Respondent Bailey told Ms. Anderson going to court was not in her best interest. (CPD Ex. 19, p. 197).

50. On December 4, 2019, Ms. Anderson appeared at the case management conference and learned her home was in foreclosure.

51. On December 4, 2019, Respondent Bailey emailed Ms. Anderson copies of the "tenders" provided and signed by Respondent Wittenberg to M&T in the amount of $3.00. The "tenders" included a letter signed by Mr. Wittenberg as Attorney in Fact, a folded dollar bill, a silver coin, and a stamp signed by Respondent Wittenberg and delivered in July 2019. The Respondents offered the "tenders" as full payment for mortgage debt in the amount of $382.012.16. (CPD Ex. 37, pp. 83-100). M&T rejected the "tenders" on August 15, 2019 and notified the Respondents. (CPD Ex. 37, p. 3).

52. On January 1, 2020, Respondent Wittenberg told Ms. Anderson to send monthly payments to his bank account. (CPD Ex. 40, p. 2).

53. On January 21, 2020, Ms. Anderson emailed the Respondents because the promised replacement vehicle had not arrived. Ms. Anderson requested a refund of $1,850.00 in delivery fees.

54. On March 23, 2020, Ms. Anderson paid Respondent Wittenberg $1,500.00. (CPD Ex. 128, p. 2130).

55. In total, Ms. Anderson paid $78,458.11 to Respondent Bailey. Ms. Anderson never received a refund of any monies paid. (CPD Ex. 129). The Respondents failed to

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 128 of 430 PageID
#: 322

make payments to Ms. Anderson's creditors and instead mailed the creditors "tenders" totaling $6.00.

56. On April 3, 2020, Ms. Anderson filed a complaint in court against the Respondents. (CPD Ex. 39, pp. 1-4).

**Pastor David Ijeh**

57. Pastor David Ijeh is the Pastor of The Redeemed Christian Church of God, River of Life (Church) located in Riverdale, Maryland. The Church had a mortgage with Foundation Capital Resource, Incorporated (Foundation Capital).

58. On April 6, 2019, Pastor Ijeh received a solicitation letter from Respondent Bailey identifying herself as a licensed real estate agent, accountant, and business owner affiliated with Respondent Wittenberg. (CPD Ex. 42, p.1).

59. On February 13, 2020, the Church filed for bankruptcy in the United States District Court for Maryland in Greenbelt. (CPD Ex. 43, pp. 1-17).

60. On March 25, 2020, Pastor Ijeh agreed to join the "Jubilee Program" after speaking to Respondent Wittenberg. Respondent Wittenberg promised that the mortgage would be written off in seven years. (CPD Ex. 44, pp. 1-4).

61. On June 2, 2020, the Church agreed to pay Foundation Capital $7,000.00 a month toward the outstanding mortgage and Foundation Capital agreed to an option to purchase. (CPD Ex. 45).

62. On June 11, 2020, Pastor Ijeh entered into the "Real Property Trust Agreement" with Respondent Wittenberg. Pastor Ijeh also signed a "Promissory Note" noting the principal amount at $4,775,619.00 owed to be paid to Wittenberg Family Trust listed as the lender. (CPD Ex. 46, pp. 1-8; CPD Ex. 48, pp. 1-5).

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

Case 1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 129 of 430 PageID #: 323

63. Respondent Wittenberg mailed "tenders" in the amount of $3.00 as full payment for the Church's $4,802,953.26 mortgage to Foundation Capital, which received the tenders on September 4 and 22, 2020. (CPD Ex. 50, pp. 8-10).

64. On September 18, 2020, Pastor Ijeh paid Respondent Wittenberg $70,000.00. (CPD Ex. 128, p. 2167).

65. On December 19, 2020, Respondent Wittenberg filed a civil action against Foundation Capital in the Circuit Court for Prince George's County. On September 2, 2021, the court dismissed the case. (CPD Ex. 51).

66. On January 13, 2021, Pastor Ijeh paid Respondent Wittenberg $5,000.00 to expedite the court proceedings. (CPD Ex. 50; CPD Ex. 129).

67. On May 25, 2021, the Church paid Respondent Wittenberg $10,000.00 to expedite the court proceedings. (CPD Ex. 50; CPD Ex. 129).

68. On June 9, 2021, the Church again filed for bankruptcy in the United States District Court of Maryland in Greenbelt. (CPD Ex. 53, pp. 1-7).

69. Pastor Ijeh and the Church paid Respondent Wittenberg $115,000.00. (CPD Ex. 129).

70. Respondent Wittenberg never made any monthly mortgage payments to Foundation Capital or dissolved the Church debt. Respondent Wittenberg refused to return the monies paid by the Church.

**Momodou A. Njai**

71. In September 2019, Momodou A. Njai lived in Silver Spring, Maryland with his wife and financed a 2014 Mercedes S Class 550 with NFCU. He made monthly payments to NFCU and owed $44,000.00.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 130 of 430 PageID
#: 324

72.  Mr. Njai met Respondent Wittenberg at a car repair shop.  Respondent Wittenberg shared information about the Wittenberg Family Trust because Mr. Njai had to sell his vehicle before returning to Africa in December 2019.  Mr. Wittenberg offered to pay off the car debt and dissolve the debt.

73.  In 2019, Respondent Wittenberg put Njai in touch with Respondent Bailey, whom Respondent Wittenberg identified as his assistant, so Njai could meet with her and sign various documents to participate in the WFT program. (CPD Ex. 58, CPD Ex. 59, CPD Ex. 60, Njai testimony).

74.  On September 5, 2019, Mr. Njai signed an "Agreement to Dissolve Debt" document with Wittenberg Family Trust to dissolve the NFCU vehicle debt of $44,262.13. (CPD Ex. 58, pp. 1-2).

75.  On October 5, 2019, Mr. Njai signed a "Property Trust Agreement" with Respondent Wittenberg.  Respondent Bailey notarized the document.  (CPD Ex. 59, pp. 1-17).

76.  In November 2019, Respondent Wittenberg mailed NFCU "tenders" including $42.00 in cash and stamps signed by Mr. Wittenberg as full payment for the auto loan debt. (CPD. Ex. 61, pp. 1-3).

77.  On November 21, 2019, NFCU notified Mr. Njai of the $42.00 in cash and coins received from Respondent Wittenberg.  NFCU returned the $21.00 in postage and requested the past due amount of $1,709.92.  (CPD Ex. 61, pp. 1-3).

78.  Mr. Njai ultimately sold the vehicle for $20,000.00 and owed NFCU $24,000.00. He did not pay the Respondents any money.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 131 of 430 PageID #: 325

**Dr. Douglas Anania**

79. From 2004 through 2019, Respondent Bailey served as the accountant and tax preparer for Dr. Douglas Anania.

80. In 2007, Dr. Anania moved from Baltimore, Maryland to Georgia.

81. Dr. Anania believed Respondent Bailey to be licensed to provide accounting services in both Maryland and Georgia.

82. Dr. Anania is an optometrist and owner of two optometry offices – Parkway Family Eye Clinic, Inc., a/k/a Parkway Family Eye Care, Inc., and Brookleigh Family Eyecare, Inc. – located in Georgia. Dr. Anania also owns an entity known as 20/20 Eyeworks.

83. Dr. Anania expressed interest in selling Parkway, and Respondent Bailey introduced Dr. Anania to Respondent Wittenberg.

84. Dr. Anania had $678,129.99 in personal debt including a 2017 Jaguar car loan with Bank of America, a 2013 Honda Accord car loan with Chase Bank, a first mortgage with SunTrust Bank, a second mortgage with Brand Bank, and a student loan with Great Lakes Bank. Dr. Anania signed release authorizations for all accounts giving Respondent Wittenberg access to the account information. (CPD Ex. 65 and Ex. 67).

85. Dr. Anania had $562,218.01 in business debt including two loans with Vision One Credit Union, one loan with Byline Financial, and one loan with Funding Circle. Dr. Anania personally guaranteed the two loans from Vision One Credit Union and was personally responsible to repay those loans. (CPD Ex. 63).

86. Respondent Bailey flew to Georgia to meet with Dr. Anania to sign the documents. On January 16, 2018, Dr. Anania signed an "Offer to Purchase Agreement" and the "Real Property Trust Agreement," with Respondent Bailey and Yong Cho on behalf of

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-CV-00490-MSM-PAS     Document 5     Filed 11/21/23     Page 132 of 430 PageID #: 326

Respondent Wittenberg. (CPD Ex. 63, pp. 1-3, CPD Ex. 64, pp. 1-11). Dr. Anania never received copies of fully executed documents.

87. On January 16, 2018, Dr. Anania signed a "Bill of Sale" with the Wittenberg Family Trust to place the two vehicles into a trust. (CPD Ex. 66).

88. In addition, to purchasing the business, Respondent Wittenberg offered to dissolve the personal and business debts of Dr. Anania. Dr. Anania paid $76,500.00 as an upfront fee and agreed to pay $5,651.00 per month for eighty-four months. (CPD Ex. 128 and CPD Ex. 129).

89. Dr. Anania paid $36,500 via check or a wire transfer. Dr. Anania granted the Respondents access to his Parkway business bank account to get the $40,000.00 balance.

90. Yong Min Cho, the Wittenberg Family Trust's named trustee, made monthly payments to Dr. Anania's personal creditors that totaled $50,974.35 from March 2018 through February 2019. (CPD Ex. 69 and Ex. 129).

91. The Respondents never paid Dr. Anania's business creditors.

92. On September 12, 2018, Dr. Anania learned the Respondents had failed to pay to Vision One Credit Union the $2,317.35 loan payment on account xxx3654-00 that was due on September 1, 2018. (CPD Ex. 71, p. 1).

93. On November 13, 2018, Respondent Bailey emailed Vision One regarding the transition of the loans to the trust. (CPD Ex. 71, p. 11).

94. On December 6, 2018, Vision One sent Dr. Anania a default letter and sought full payment of $387,877.87. (CPD Ex. 71, p. 15-18).

95. The Respondents did not make payments to Renasant Bank (second mortgage), risking foreclosure, or to Nelnet (student loans), causing default.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 133 of 430 PageID
#: 327

96.  In February 2019, Dr. Anania met with Respondent Bailey to complete tax preparation and to discuss the debt issues.

97.  In March, April, and May 2019, the Respondents sent "tenders" including a letter, folded dollar bill, a silver coin, and a stamp signed by Respondent Wittenberg, to Dr. Anania's creditors Vision One Credit Union, Bank of America, and Chase Auto, respectively. Respondent Wittenberg also sent "tenders" on unspecified dates to Dr. Anania's creditors SunTrust Bank, Renasant Corporation, and Nelnet, Inc. (CPD Ex. 75, CPD Ex. 76). The various creditors returned the "tenders" to Respondent Wittenberg.

98.  In July 2019, Respondent Wittenberg showed Dr. Anania the certificate that he caused to be issued in Minnesota in Dr. Anania's name to make him a private citizen.  Dr. Anania did not give his permission for the creation of an entity in his name.

99.  In July 2019, Dr. Anania withdrew money from his 401(k) account to prevent foreclosure on his home.

100. On July 25, 2019, Respondent Bailey emailed a "First Amendment Petition for Abatement" to Dr. Anania to be filed in court.  (CPD Ex. 79, pp. 1-4).  Dr. Anania did not file the document.

101. On June 18, 2020, Dr. Anania hired legal counsel and filed a civil complaint against the Respondents.  (CPD Ex. 82, pp. 1-29).

102. In total, Dr. Anania paid the Respondents $137,492.82 and withdrew $20,000.00 from the Parkway Eye Clinic account which was transferred to the Respondents.  (CPD Ex. 129).  The Respondents did not dissolve Dr. Anania's debts.  Respondent Wittenberg paid $50,974.35 toward Dr. Anania's creditors.  (CPD Ex. 129).  Dr. Anania's credit score decreased from 780 to 500.  The Respondents have not returned any monies collected.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 134 of 430 PageID
#: 328

**Felipe Hernandez**

103. Mr. Hernandez owns a handyman business and first met Respondent Bailey in
2018 and Respondent Wittenberg in 2019.

104. Respondent Bailey offered to help Mr. Hernandez buy and flip houses, by
providing the money needed to complete the transactions.

105. In 2018, Mr. Hernandez owned a home in Manassas, Virginia with a mortgage of
$275,000.00 with Mr. Cooper dba Nationstar Mortgage; a 2014 Toyota Tundra with a loan of
$7,000.00 with TD Finance; and a Silver Spring, Maryland residence with a mortgage of
$200,000.00 with Mr. Cooper dba Nationstar Mortgage.  Mr. Hernandez was not in default.

106. Respondent Bailey offered to liquidate Mr. Hernandez's debt into the Wittenberg
Trust with Respondent Wittenberg.  The down payment was an estimated amount of
$49,446.96 and monthly payments of $2,254.49 per month for fifteen years.  (CPD Ex. 83, pp.
8-12).

107. On October 11, 2018, Respondent Wittenberg and Respondent Bailey sent Mr.
Hernandez a letter regarding their debt acquisition program.  Respondent Bailey signed the
letter.  (CPD Ex. 84, pp. 1-2).

108. On October 15, 2018, Respondent Bailey issued a revised letter with a monthly
payment of $2,113.89.  (CPD Ex. 85, pp. 1-2).

109. On May 10, 2019, Respondent Bailey provided Mr. Hernandez the "Private
Banking Debt Liquidation Program" details and bank wire instructions to pay the upfront fee
in the final amount of $49,415.96 and monthly payments of $2,254.49.  The Respondents
promised Mr. Hernandez he would save $207,052.44 using their program.  (CPD Ex. 87 and
CPD Ex. 89).

110. On May 30, 2019 and June 3, 2019, Mr. Hernandez signed an "Agreement to Dissolve Debt," "Real Property Trust Agreement," and "Bill of Sale" with Respondent Wittenberg. Respondent Bailey notarized the documents. (CPD Ex. 83, pp. 10-53).

111. Mr. Hernandez also signed letters to his creditors explaining that he had transferred the title to his two homes and his vehicle to Respondent Wittenberg and requesting the creditors stop direct communication with him. (CPD Ex. 83, pp. 55-57 and CPD Ex. 93).

112. On May 31, 2019, Mr. Hernandez wired $49,415.96 to Respondent Bailey. (CPD Ex. 128 and 129).

113. On July 2, 2019, Mr. Hernandez paid Respondent Bailey $2,254.49. (CPD Ex. 95).

114. On July 11, 2019, Mr. Hernandez learned that payments to TD Auto Finance for the Toyota Tundra were thirty days past due. (CPD Ex. 96).

115. On August 31, 2019, Respondent Wittenberg mailed Mr. Cooper "tenders" in the amount of $21.00 in folded one-dollar bills, twenty-one silver coins, and twenty-one stamps, as payment for the outstanding balance of $257,211.60, signed by Respondent Wittenberg. (CPD Ex. 97, pp. 1-7).

116. In August 2019, Respondent Wittenberg mailed documents to TD Finance as payment on the auto loan.

117. On September 10, 2019, TD Auto Finance notified Respondent Wittenberg that the items received on August 31, 2019 were fraudulent and of no legal significance pursuant to USC Title 18514: Fictitious Obligations. (CPD Ex. 96, p. 5).

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 136 of 430 PageID
#: 330

118. In October 2019, Mr. Hernandez learned that Mr. Cooper dba Nationstar Mortgage LLC had not received mortgage payments and planned to foreclose on the property. (CPD Ex. 96, pp. 7-11).

119. On November 26, 2019, Mr. Hernandez paid Respondent Wittenberg $400.00 to file a Bill in Equity in federal court in Virginia. (CPD Ex. 98, pp. 1-2).

120. On December 4, 2019, Respondent Bailey registered an entity in the name of Felipe Nicodemez Hernandez in the State of Minnesota. (CPD Ex. 101, pp. 1-8). Mr. Hernandez never agreed to use his name to create an entity.

121. On December 5, 2019, Respondent Wittenberg filed a Complaint for a Civil Case against Mr. Cooper dba Nationstar Mortgage LLC in the United States District Court for the Eastern District of Virginia. The court dismissed the complaint. The bank sold Mr. Hernandez's Manassas house at a foreclosure auction. (CPD Ex. 83, pp. 58-74).

122. On May 18, 2020, Mr. Hernandez filed a Civil Fraud case in the Circuit Court of Montgomery County against the Respondents. (CPD Ex. 102, pp. 1-63).

123. On March 26, 2021, the Circuit Court for Montgomery County found in favor of Mr. Hernandez in a claim against Respondent Wittenberg. The court awarded Mr. Hernandez $1,320,344.99. (CPD Ex. 83, pp. 75-76).

124. On May 20, 2021, Mr. Hernandez filed a claim in the Circuit Court for Prince William County in Virginia against the Professional Foreclosure Corporation in an attempt to save the home in Virginia from foreclosure. (CPD Ex. 103, pp. 1-17).

125. The Respondents never paid the creditors and TD Auto Finance repossessed the Toyota Tundra in 2019. Mr. Hernandez paid $500.00 in storage fees and $5,500.00 in back payments to get his truck back.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

Case 1:23-cv-00490-MSM-PAS   Document 5   Filed 11/21/23   Page 137 of 430 PageID #: 331

126. To stop the pending foreclosure of his home in Maryland, Mr. Hernandez paid $19,000.00 to Mr. Cooper dba Nationstar Mortgage LLC.

127. In total, Mr. Hernandez paid Respondent Bailey $65,197.39. The Respondents never refunded any monies paid.

**Other Agents and Consumers**

128. A "Personal Property Trust Agreement" dated September 13, 2016, that purportedly created the Wittenberg Family Trust, named Yong Min Cho as the sole Trustee. (CPD Ex. 119 at 1-7). An unsigned document titled "First Amendment to the Declaration of Trust Establishing the Wittenberg Family Trust" dated July 29, 2019 purported to amend the Personal Property Trust Agreement to add Arthur Wittenberg as Co-Trustee with individual Trustee powers. (CPD Ex. 119 at 8).

**Irvin and Patricia Betch**

129. In May 2019, Irvin Betch and Patricia Betch signed an "Agreement to Dissolve Debt" with the Respondents, including two mortgage loans, a line of credit, home improvement loan, and an auto loan. (CPD Ex. 120). Respondent Bailey notarized the documents. Mr. and Mrs. Betch paid Respondent Bailey $39,287.69 as the initial payment and monthly payments in the amount of $2,496.88. (CPD Ex. 128).

130. Respondent Bailey mailed letters to Mr. and Mrs. Betch that referenced each of their creditors and advised them that the Wittenberg Family Trust had issued in full "tender" to all accounts. (CPD Ex. 120 at 38-47). The creditors rejected the "tenders."

131. In 2020, Aberdeen Proving Ground Federal Credit Union (APGFCU) filed a civil Replevin[11] action against Mr. and Mrs. Betch in the District Court for Harford County to repossess an automobile. On August 6, 2021, the Replevin action proceeded before a District

---

[11] Md. Rule 12-601.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

Court judge. Respondent Wittenberg testified on behalf of Mr. and Mrs. Betch, as the trustee, purchaser of debts and notes, and regarding payments made to APGFCU. The District Court judge found for APGFCU. (CPD Ex. 121 and Ex. 121B).

132. In 2020, Truist Bank obtained a judgment against Mr. and Mrs. Betch in the amount of $14,711.50 in the Circuit Court for Baltimore County. (CPD Ex. 120, pp. 147-148).

133. In 2020, Mr. Cooper dba Nationstar Mortgage filed a foreclosure action against Mr. and Mrs. Betch in the Circuit Court for Harford County. (CPD Ex. 120, pp. 149-155).

134. Mr. and Mrs. Betch paid $81,734.65 to both Respondents; $51,772.09 to Respondent Bailey and $29,962.56 to Respondent Wittenberg. (CPD Ex. 128 and Ex. 129). The Respondents did not use the money to pay the creditors.

**William Franklin and Iesha Fields**

135. On July 16, 2019, Samuel I. White, P.C. obtained residential property previously owned by Mr. Franklin and Ms. Fields pursuant to a foreclosure sale. (CPD Ex. 122, pp. 31).

136. On August 22, 2019, William Franklin and Iesha Fields signed an "Agreement to Dissolve Debt," the debt being a residential mortgage, with Respondent Wittenberg and Yong Cho. (CPD Ex. 122, pp. 1-20).

**Eugene Harris and Tenekia Harris**

137. On September 24, 2018, Eugene Harris II and Tenekia Harris signed an "Agreement to Dissolve Debt," including a mortgage loan, two auto loans, two credit cards, and other unsecured loans, with Respondent Wittenberg and Yong Cho. (CPD Ex. 123, pp. 1-3).

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 139 of 430 PageID #: 333

138. Mr. Harris paid Respondent Bailey an initial payment in September 2018 of $12,582.83 and monthly payments of approximately $7,000.00 through January 2020, all totaling $102,190.41.  (CPD Ex. 123, pp. 45-71, CPD Ex. 128, and CPD Ex. 129).

139. Mr. Harris paid Respondent Wittenberg an initial payment in September 2018 of $118,892.27 and monthly payments of $6,977.58 from February 2020 through January 2021, all totaling $204,168.07.  (CPD Ex. 128 and CPD Ex. 129).

140. On December 12, 2018, Respondent Wittenberg paid $10,000.00 to USAA, a creditor for Mr. Harris.  (CPD Ex. 128 and CPD Ex. 129).

141. On March 25, 2019, Mr. and Mrs. Harris learned a foreclosure action had been filed against them; the Respondents provided them with a legal document entitled "Bill of Exceptions" to address the foreclosure action.  (CPD Ex. 123, pp. 118-121).

142. In September 2019, Respondent Wittenberg mailed "tenders," each in the amount of $3.00, to Infinity Financial Services/Infiniti Motor Company LTD, to Navy Federal Credit Union, and to Wells Fargo & Company to satisfy the outstanding debts. (CPD Ex. 123, pp.73-117).

143. On September 13, 2019, Nissan North America, Inc. notified Mr. Harris that the "tenders" totaling $3.00 were insufficient to satisfy the outstanding debt and were returned. (CPD Ex. 123, pp. 31-32).  Nissan sought to repossess the vehicles due to nonpayment.

**Brian Hockaday**

144. On August 5, 2019, Brian Hockaday signed an "Agreement to Dissolve Debt," a residential mortgage and other debt, and other documents with Respondent Wittenberg and Yong Cho.  (CPD Ex. 124, pp.1-23).  Respondent Bailey notarized the documents.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 140 of 430 PageID
#: 334

145. On August 5, 2019, Mr. Hockaday paid Respondent Bailey $11,972.56. (CPD
Ex. 128, p. 00089, and CPD Ex. 129).

**Gerard McGovern**

146. On October 7, 2020, Gerard McGovern paid Respondent Wittenberg $17,700.00
via a wire transfer to have the Respondents dissolve a mortgage loan. (CPD Ex. 125, pp. 1-9).

**Shunta Sims**

147. On August 2, 2019, Shunta Sims signed a Real Property Trust Agreement and
other documents with Respondent Wittenberg, Respondent Bailey, and Yong Cho. (CPD Ex.
126, pp. 1-58).

**Clint Walker**

148. On October 11, 2019, Clint Walker signed a Property Trust Agreement with
Respondent Wittenberg and Yong Cho. (CPD Ex. 128, pp. 1-10). Respondent Wittenberg
mailed "tenders" or twenty-one-dollar bills, silver coins, and signed stamps to NFCU.

**Additional Findings of Fact**

149. The Respondents marketed the WFT program to consumers on Signature
Accounting's website, by mailing solicitation letters to consumers, through press releases, by
directly targeting individual consumers, some of whom were Signature Accounting's clients
and Respondent Bailey's friends, and by providing some consumers a personalized letter of
intent on Signature Accounting letterhead detailing the terms of the services offered by the
Respondents along with a "Detail Sheet" on which the Respondents represented, without
basis, that by joining the WFT program consumers would ultimately save hundreds of
thousands of dollars, consumers' accounts would "reflect closed with a zero balance" in a
shorter timeframe than the original loan terms, and consumers would improve their credit

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 141 of 430 PageID #: 335

scores. *See* CPD Ex. 9; CPD Ex. 42; CPD Ex. 84; CPD Ex. 87; CPD Ex. 105; CPD Ex. 110; CPD Ex. 111; CPD Ex. 117; CPD Ex. 126 at 61; Anania, Anderson, Hernandez, Ijeh, and Njai testimony. The Respondents further represented to consumers that their debts and assets would be transferred to the Wittenberg Family Trust, which would pay off or "dissolve" the consumers' outstanding debts using the upfront fees and monthly installment payments consumers paid to the Respondents. *See* Anania, Anderson, Hernandez, Ijeh, and Njai testimony; *see also* CPD Ex. 7 ¶ 10; CPD Ex. 83 ¶ 9; CPD Ex. 49 at 2.

150. The Respondents presented consumers whom they persuaded to join the WFT program with myriad seemingly formal legal documents related to their offer of mortgage assistance relief services, credit services, money transmission services, and debt management services with titles such as: "Agreement to Dissolve Debt," *see* CPD Ex. 10; CPD Ex. 44; CPD Ex. 58; CPD Ex. 63; CPD Ex. 89; CPD Ex. 120 at 1-2; CPD Ex. 122 at 1-3; CPD Ex. 123 at 1-3; CPD Ex. 124 at 1-2; "Real Property Trust Agreement," "Property Trust Agreement," or "Deed of Trust/Terms and Conditions," *see* CPD Ex. 11 at 1-11; CPD Ex. 46 at 1-7; CPD Ex. 47; CPD Ex. 59 at 1-11; CPD Ex. 64 at 1-7; CPD Ex. 90 at 1-11; CPD Ex. 91 at 1-11; CPD Ex. 120 at 3-13; CPD Ex. 122 at 4-14; CPD Ex. 124 at 3-13; CPD Ex. 125 at 1-7; CPD Ex. 126 at 1-11; CPD Ex. 127 at 1-9; "Warranty Deed," *see* CPD Ex. 11 at 12-13, 18-19, 23-25, 30-31, 42-43; CPD Ex. 59 at 12-13; CPD Ex. 64 at 8; CPD Ex. 90 at 12-13; CPD Ex. 91 at 12-14, 21-22; CPD Ex. 122 at 15-16; CPD Ex. 124 at 14-15; CPD Ex. 126 at 12-13, 18-19, 24-25, 30-31, 36-37, 42-43, 48-49, 53-54; CPD Ex. 127 at 10-11; "Limited Power of Attorney," *see* CPD Ex. 11 at 14-15, 20-21, 26-27, 32-33, 36-39, 44-45; CPD Ex. 46 at 8; CPD Ex. 59 at 14-15; CPD Ex. 64 at 9; CPD Ex. 90 at 14-15, 23-24; CPD Ex. 91 at 15-16; CPD Ex. 122 at 17-18; CPD Ex. 124 at 16-17; CPD Ex. 126 at 14-15, 20-21, 26-27, 32-33,

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 142 of 430 PageID
#: 336

38-40, 44-45, 50-51, 55-56; CPD Ex. 127 at 12-13; and "Assignment of Beneficial Interest,"
*See* CPD Ex. 11 at 16-17, 22-23, 28-29, 34-35, 40-4, 46-47; CPD Ex. 59 at 16-17; CPD Ex.
64 at 11; CPD Ex. 90 at 17-18; CPD Ex. 91 at 19-20, 26-27; CPD Ex. 122 at 19-20; CPD Ex.
124 at 19-20; CPD Ex. 126 at 16-17, 22-23, 28-29, 34-35, 40-41, 46-47, 52, 57-58; CPD Ex.
127 at 14-16. These documents contained misrepresentations and omitted statutorily required
information such as disclosures, notices, and specific contract provisions. *See* Real Prop. § 7-
502 and 12 CFR § 1015.4, Com. Law §§ 14-1904, 14-1905, and 14-1906, and Fin. Inst. § 12-
916.

151. In some instances, the Respondents instructed consumers: (a) to file lawsuits
against the consumers' creditors in federal or state court using nonsensical "pleadings" and
other documents provided by the Respondents alleging that the dollar bills, silver coins, and
stamps they submitted to the consumers' creditors constituted legal "tender" in full and
complete satisfaction of their debts; or (b) to file nonsensical "Answers" to lawsuits brought
against consumers by the consumers' creditors alleging consumers' debts had been paid in full
by the submission of the so-called legal "tenders." *See, e.g.*, CPD Ex. 21; CPD Ex. 22; CPD
Ex. 23; CPD Ex. 27; CPD Ex. 31; CPD Ex. 32; CPD Ex. 38 at 4-5; CPD Ex. 78; CPD Ex. 79;
CPD Ex. 122 at 26-29.

152. In some instances, Respondent Wittenberg filed complaints, petitions to intervene,
and other motions and related filings in lawsuits, and appeared in court seeking to represent
consumers although Respondent Wittenberg, by his own admission, has never been licensed
as an attorney in any state. *See, e.g.*, CPD Ex. 2 at 78-79; CPD Ex. 51; CPD Ex. 52; CPD Ex.
83 at 3 ¶ 11; CPD Ex. 99; CPD Ex. 100; CPD Ex. 102 at 43-54; CPD Ex. 120 at 122-146;
CPD Ex. 121B.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 143 of 430 PageID
#: 337

153. The Respondents instructed consumers not to contact or communicate with consumers' creditors, representing that for the WFT program to work to dissolve consumers' debts the Respondents alone would be responsible for all contact and communications with and payments to consumers' creditors. *See* CPD Ex. 12; CPD Ex. 13; CPD Ex. 54 ¶ 4,CPD Ex. 60; CPD Ex. 71 at 26; CPD Ex. 74 at 2; CPD Ex. 81 at 3; CPD Ex. 90 at 16; CPD Ex. 91 at 17-18, 25; CPD Ex. 93; CPD Ex. 120 at 14; CPD Ex. 122 at 21; CPD Ex. 124 at 18; CPD Ex. 126 at 72-73, 78, 82, 84, 88, 90, 94, 96, 100, 102, 106, 110, 114, 116, 120; CPD Ex. 127 at 17.

154. The Respondents misrepresented to consumers that consumers' debts would be "dissolved" after Respondents mailed to the CFO of consumers' creditors so-called "tenders" consisting of a dollar bill, a silver dollar coin, and an endorsed dollar stamp three times along with a copy of a default letter or a payoff statement that the Respondents had received from consumers or consumers' creditors on which the Respondents stamped:

> ALL CONTRACTS ARE REPENTED AND RESCINDED. To any and all third[-]party debt collectors[:] Debt has been tendered by special deposit for credit on accounts with consideration pursuant to Article 1, §10 of the constitution [*sic*] of the united [*sic*] States of America[.] Refusal is DISCHARGE[.] [- "payment" amount].

*See, e.g.*, CPD Ex. 21 at 61; CPD Ex. 34 at 176; CPD Ex. 38 at 1; CPD Ex. 41; CPD Ex. 50 at 2; CPD Ex. 54 at 10; CPD Ex. 61; CPD Ex. 71 at 26; CPD Ex. 74 at 2-3; CPD Ex. 75; CPD Ex. 80 at 3-19; CPD Ex. 97; CPD Ex. 100; CPD Ex. 120 at 38-46, 49-56, 59-64, 76-84, 128-130; CPD Ex. 123 at 73-180; CPD Ex. 128 at 19-31; *see also* Anania, Anderson, Hernandez, Ijeh, and Njai testimony.

155.    The Respondents also misrepresented to consumers that Respondents would "dissolve" consumers' debts by "elevating" consumers to be recognized as "civilians" or "private

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 144 of 430 PageID
#: 338

citizens" by submitting applications titled "Assumed Name/Amendment to Assumed Name" to the State of Minnesota Secretary of State, and that this process would give consumers access to "special" accounts at the U.S. Department of Treasury. *See, e.g.*, CPD Ex. 27 at 1, 3-4; CPD Ex. 100 at 10, 17; CPD Ex. 101; CPD Ex. 123 at 10-29; Anania testimony.

156. The Respondents also misrepresented to consumers that Respondents would "dissolve" consumers' debts by running newspaper advertisements on three consecutive weeks announcing consumers' creditors are in default based on their failure to accept the "tenders" in satisfaction of the debts, *see* CPD Ex. 121B at 10:22 to 20:03, and subsequently filing lawsuits in federal or state courts against consumers' creditors alleging that the debts had been fully satisfied. *See, e.g.*, CPD Ex. 21; CPD Ex. 22; CPD Ex. 23; CPD Ex. 27; CPD Ex. 31; CPD Ex. 32; CPD Ex. 78; CPD Ex. 79; CPD Ex. 122 at 26-29.

157. The Respondents misrepresented to consumers that they were performing the promised mortgage assistance relief services, credit services, money transmission services, and debt management services when they were not doing so and, when consumers raised concerns about the status of their accounts after learning their accounts were in default, the Respondents repeatedly assured consumers that vehicle repossessions, foreclosure actions, and dropping credit scores are "normal" during the debt consolidation and dissolution process and advised consumers "not to worry about it." *See* CPD Ex. 7 ¶¶ 19, 25;  CPD Ex. 19 at 6, 46, 92-93; CPD Ex. 34 at 71, 76, 157; CPD Ex. 71 at 26; CPD Ex. 74 at 2; CPD Ex. 74 at 1; CPD Ex. 83 ¶¶ 10, 11; CPD Ex. 100; CPD Ex. 120; CPD Ex. 121B at 24:57 to 26:34, 27:30 to 29:10, 38:00 to 39:14; CPD Ex. 123 at 35-44; Anania, Anderson, and Hernandez testimony.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 145 of 430 PageID
#: 339

## DISCUSSION

The Relevant Law

The General Assembly enacted the Maryland Consumer Protection Act (CPA), Md. Code
Ann., Com. Law. §§ 13-301 through 13-501, the Maryland Mortgage Assistance Relief Services
Act (MARS), Md. Code Ann., Real Prop. §§ 7-501 through 7-511, the Maryland Credit Services
Business Act (MCSBA), Md. Code Ann., Com. Law. §§14-1901 through 14-1916, the Maryland
Money Transmission Act (MMTA), Md. Code Ann., Fin. Inst. §§ 12-401 through 12-431, and
the Maryland Debt Management Services Act (MDMSA) Md. Code Ann., Fin. Inst. §§12-901
through 12-931, to protect consumers engaged in financial transactions, including consumer and
credit services.

The CPA defines unfair, abusive, or deceptive practices to include any:

> (1) False, falsely disparaging, or misleading oral or written statement, visual
> description, or other representation of any kind which has the capacity, tendency,
> or effect of deceiving or misleading consumers;
> (2) Representation that:
> . . .
> (ii) A merchant has a sponsorship, approval, status, affiliation, or
> connection which he does not have;
> . . .
> (3) Failure to state a material fact if the failure deceives or tends to deceive;
> …
> (9) Deception, fraud, false pretense, false premise, misrepresentation, or knowing
> concealment, suppression, or omission of any material fact with the intent that a
> consumer rely on the same in connection with:
> (i) The promotion or sale of any consumer goods, consumer realty, or consumer
> service[.]

(Com. Law. §13-301).

Further, the CPA prohibits a person from engaging in unfair, abusive, or deceptive trade
practices in:

> (1) The sale, lease, rental, loan, or bailment of any consumer goods, consumer
> realty, or consumer services;

37

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 146 of 430 PageID #: 340

(2) The offer for sale, lease, rental, loan, or bailment of consumer goods, consumer realty, or consumer services;

(3) The offer for sale of course credit or other educational services;

(4) The extension of consumer credit;

(5) The collection of consumer debts; or

(6) The purchase or offer for purchase of consumer goods or consumer realty from a consumer by a merchant whose business includes paying off consumer debt in connection with the purchase of any consumer goods or consumer realty from a consumer.

(Com. Law §13-303).

The MARS, refers to 12 CFR[12] §§1015.1 through 1015.11 (2022)[13] and defines mortgage assistance relief service and a mortgage assistance relief provider in 12 CFR §1015.2. The CFR in turn defines mortgage assistance relief service as:

[A]ny service, plan, or program, offered or provided to the consumer in exchange for consideration, that is represented, expressly or by implication, to assist or attempt to assist the consumer with any of the following:

(1) Stopping, preventing, or postponing any mortgage or deed of trust foreclosure sale for the consumer's dwelling, any repossession of the consumer's dwelling, or otherwise saving the consumer's dwelling from foreclosure or repossession;

(2) Negotiating, obtaining, or arranging a modification of any term of a dwelling loan, including a reduction in the amount of interest, principal balance, monthly payments, or fees;

(3) Obtaining any forbearance or modification in the timing of payments from any dwelling loan holder or servicer on any dwelling loan;

(4) Negotiating, obtaining, or arranging any extension of the period of time within which the consumer may:

 (i) Cure his or her default on a dwelling loan,

 (ii) Reinstate his or her dwelling loan,

 (iii) Redeem a dwelling, or

 (iv) Exercise any right to reinstate a dwelling loan or redeem a dwelling;

(5) Obtaining any waiver of an acceleration clause or balloon payment contained in any promissory note or contract secured by any dwelling; or

(6) Negotiating, obtaining or arranging:

 (i) A short sale of a dwelling,

 (ii) A deed-in-lieu of foreclosure, or

 (iii) Any other disposition of a dwelling other than a sale to a third party who is not the dwelling loan holder.

---

[12] Code of Federal Regulations.

[13] Unless otherwise noted, all references hereinafter refer to this version.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 147 of 430 PageID
#: 341

(Real Property §7-501(d) and 12 CFR §1015.2).

The CFR defines "Mortgage Assistance Relief Service Provider or Provider" to mean:

[A]ny person that provides, offers to provide, or arranges for others to provide, any mortgage assistance relief service. This term does not include:
(1) The dwelling loan holder, or any agent or contractor of such individual or entity.
(2) The servicer of a dwelling loan, or any agent or contractor of such individual or entity.

(Real Property §7-501(e)(1) and 12 CFR §1015.2).

In turn, "person" means "any individual, group, unincorporated association, limited or general partnership, corporation, or other business entity, except to the extent that any person is specifically excluded from the Federal Trade Commission's jurisdiction pursuant to 15 U.S.C. 44 and 45(a)(2)."

(12 CFR §1015.2).

Further, a mortgage assistance relief provider is prohibited from the following specific conduct including:

(a) Representing, expressly or by implication, in connection with the advertising, marketing, promotion, offering for sale, sale, or performance of any mortgage assistance relief service, that a consumer cannot or should not contact or communicate with his or her lender or servicer.
(b) Misrepresenting, expressly or by implication, any material aspect of any mortgage assistance relief service, including but not limited to:
(1) The likelihood of negotiating, obtaining, or arranging any represented service or result, such as those set forth in the definition of Mortgage Assistance Relief Service in § 1015.2;
(2) The amount of time it will take the mortgage assistance relief service provider to accomplish any represented service or result, such as those set forth in the definition of Mortgage Assistance Relief Service in § 1015.2;
…
(7) That the mortgage assistance relief service provider has completed the represented services or has a right to claim, demand, charge, collect, or receive payment or other consideration;
(8) That the consumer will receive legal representation;
…

39

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 148 of 430 PageID
#: 342

(10) The amount of money or the percentage of the debt amount that a consumer may save by using the mortgage assistance relief service.

…

(c) Making a representation, expressly or by implication, about the benefits, performance, or efficacy of any mortgage assistance relief service unless, at the time such representation is made, the provider possesses and relies upon competent and reliable evidence that substantiates that the representation is true. For the purposes of this paragraph, competent and reliable evidence means tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that have been conducted and evaluated in an objective manner by individuals qualified to do so, using procedures generally accepted in the profession to yield accurate and reliable results.

(12 CFR §1015.).

In addition, the mortgage assistance relief provider is prohibited from collecting money in advance of contract performance and must include specific contract terms and disclosures to comply with MARS and the 12 CFR §§1015.4 and 1015.5.

The MCSBA defines "credit services business" as:

[A]ny person who, with respect to the extension of credit by others, sells, provides, or performs, or represents that such person can or will sell, provide, or perform, any of the following services in return for the payment of money or other valuable consideration:
    (i)    Improving a consumer's credit record, history, or rating or establishing a new credit file or record, or providing advice or assistance to a consumer with regard to improving the consumer's credit record, history, or rating or establishing a new credit file or record;

(Com. Law §14-1901(e)(1)(i).)

The MCSBA requires a credit services business to be licensed and prohibits a credit services business from engaging in conduct to include:

(1) Receiv[ing] any money or other valuable consideration from the consumer, unless the credit services business has secured from the Commissioner a license under Title 11, Subtitle 3 of the Financial Institutions Article;
(4) Mak[ing] or us[ing] any false or misleading representations in the offer or sale of the services of a credit services business;
(5) Engag[ing], directly or indirectly, in any act, practice, or course of business which operates as a fraud or deception on any person in connection with the offer or sale of the services of a credit services business;

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

Case 1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 149 of 430 PageID #: 343

(6) Charg[ing] or receiv[ing] any money or other valuable consideration prior to full and complete performance of the services that the credit services business has agreed to perform for or on behalf of the consumer[.]

(Com. Law §§14-1902(1), (4-6)).

Pursuant to the MCSBA, a credit service business must provide specific contract statements including a notice of cancellation form, terms and conditions of payment, complete description of services to be provided, consumer's rights. The notice of cancellation must be in ten-point bold type font and follow the statement outlined in section 14-1906. In addition, the credit service business must provide an executed copy of the agreement to the consumer. (Com. Law. §14-1906). In addition, a credit service business is required to obtain a surety bond. (Com. Law § 14-1908).

The MMTA defines "money transmission" as:

(1) . . . engaging in the business of selling or issuing payment instruments or prepaid access or receiving currency, funds, or other value that substitutes for currency and transferring currency, funds, or other value that substitutes for currency to another person or a location within or outside the United States by any means, including electronically, through the Internet, through a mobile application, through a network of persons, or through an informal value transfer system.
(2) . . . includes any other activity that the Commissioner identifies as money transmission by regulation.

(Fin. Inst. § 12-401(n)).

Further, the MMTA requires a person engaged in the business of money transmission to be licensed or exempt; stating that a person is prohibited from engaging in money transmission unless the person:

(1) Is licensed by the Commissioner;
(2) Is an authorized delegate of a licensee under whose name the business of money transmission occurs; or
(3) Is a person exempted from licensing under this subtitle.

(Fin. Inst. §12-405(a)).

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 150 of 430 PageID #: 344

The MDMSA defines debt management services as "receiving funds periodically from a consumer under an agreement with the consumer for the purpose of distributing the funds among the consumer's creditors in full or partial payment of the consumer's debts." (Fin. Inst. §12-901(i)). Similar to other statutes, the MDMSA requires a debt management services provider to be licensed by the Commissioner, obtain a required surety bond, maintain and manage a trust account. (Fin. Inst. §12-906(a), §12-917, and §12-914).

Burden of Proof

In this proceeding, the CPD, as the Proponent, bears the burden of proof, by a preponderance of the evidence, to demonstrate violations of those provisions of the law. COMAR 02.01.02.05. To prove something by a "preponderance of the evidence" means "to prove that something is more likely so than not so," when all of the evidence is considered. *Coleman v. Anne Arundel Cty. Police Dep't*, 369 Md. 108, 125 n.16 (2002); *see also Mathis v. Hargrove*, 166 Md. App. 286, 310 n.5 (2005).

Based on the evidence presented, the Agency finds that the CPD met its burden against both Respondent Bailey and Respondent Wittenberg.

The CPD presented the testimony of five consumers, an investigator, and an OCFR employee. Mr. Bellman testified in his capacity as the Assistant Commissioner for Non-Depository Supervision for the OCFR. He outlined the licensure requirements for an individual or business to offer or sell mortgage assistance relief services, debt management services, credit services, and money transmission services. He testified the Respondents lacked the licenses necessary to comply with MCSBA, MDMSA, and MMTA. In fact, the Respondents never applied for a license to offer or sell debt management services, credit services, and money transmission services. He explained licenses are key to protect consumers engaged with

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 151 of 430 PageID
#: 345

businesses providing regulated services. He explained that while a license is not required to comply with MARS, there are specific standards such as no upfront fees and required contract and disclosure provisions enforced by the OCFR.

Mr. Bellman further testified MARS statutorily permits an individual or business to offer mortgage assistance relief services, negotiate a loan modification or other related services for compensation, but does not permit upfront fees. In fact, Mr. Bellman explained a business can only seek payment once services are rendered.

Regarding the MCSBA, Mr. Bellman testified a licensed individual or business can sell or provide credit repair services for a fee, but the business must have a surety bond to protect consumers. In addition, the business shall only collect fees once services are rendered, not before.

Mr. Bellman explained the MMTA involves the selling of dollar-for-dollar payment instruments or providing bill payer services. Once again, he testified a properly licensed person or business may offer or sell these services, but he said the MMTA has stricter requirements to prevent money laundering. Like the MCSBA, the MMTA requires a surety bond.

Regarding the MDMSA, Mr. Bellman explained this act permits licensed individuals or businesses to collect money to pay debts for consumers. The MDMSA requires standards such as a surety bond, disclosures on the agreement, and consumer education. In addition, he stated it is prohibited to purchase a debt or compromise the debt.

Mr. Bellman explained that the Respondents lacked licensure and surety bonds to comply with the law and to protect consumers; he also testified generally that the MARS, the MCSBA, and the MDMSA require services providers to include specified provisions, disclosures, notices, and other information in written contracts and other documents. He further stated a trust is not

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-cv-00490-MSM-PAS     Document 5     Filed 11/21/23     Page 152 of 430 PageID #: 346

exempt from the licensure requirements, as entities can be licensed by OCFR. Mr. Bellman testified that Respondent Wittenberg did not have a license for the Wittenberg Family Trust.

The five consumers, each recounted similar interactions with the Respondents.

**Enochia Anderson**

Enochia Anderson testified she knew Respondent Marcia Bailey since they attended the Naval Academy together. Ms. Anderson described Ms. Bailey as a close friend and her "person." Because of this close relationship, Ms. Anderson allowed Respondent Bailey to prepare her taxes and assist in other financial decisions. Ms. Anderson testified she sought to refinance her home and use some of the equity to pay down debt in preparation for her children attending college. Ms. Anderson explained she must maintain good financial habits to maintain her job and security clearance. As a result, she paid all bills on time and had not been in default.

Ms. Anderson testified Respondent Bailey told her about a wealthy client, Respondent Wittenberg, who had a trust that would dissolve debt. Ms. Bailey told Ms. Anderson she met Respondent Arthur Wittenberg when he was incarcerated with her brother. Mr. Wittenberg claimed to have been released after the charges were dismissed and denied being a criminal. Respondent Bailey showed Ms. Anderson a television interview in which Respondent Bailey and Respondent Wittenberg discussed a foreclosure program to help five families. Ms. Anderson recalled the interview did not take place in Florida but in some other state.

Respondent Bailey told Ms. Anderson that her credit score would improve after an initial decrease. In addition, Respondent Bailey told Ms. Anderson that the trustee would get the instruments of debt and use them in banking transactions, as a result Ms. Anderson would save $400,000.00 in interest. Ms. Anderson learned that the program would take nine months to one year to dissolve the debts. In addition, Respondent Bailey told Ms. Anderson about an eye

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

Case 1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 153 of 430 PageID #: 347

doctor in Atlanta who had great success in the program. To further convince Ms. Anderson, Respondent Bailey said she and her family participated in the program. Ms. Anderson testified she later learned that neither Marcia Bailey nor her family participated in the program.

Ms. Anderson testified she continued to ask questions about the program, including how Respondent Bailey made money from the program. Respondent Bailey told Ms. Anderson that she earned passive income from finder's fees.

Ms. Anderson explained she questioned the idea of dissolving debt, but she trusted Respondent Bailey, so Ms. Anderson ultimately signed the agreement to join the program. In 2018, Ms. Anderson said her debt totaled approximately $450,000.00 and she was not in default. She owned her home in Florida, a Chevy Traverse, and had credit card debt.

Ms. Anderson joined the program on January 17, 2019 by signing the applicable documents. Next Ms. Anderson explained she received emails from Respondent Bailey to send cease and desist letters to creditors. Respondent Bailey told Ms. Anderson that the creditors should only communicate with the Respondents. Ms. Anderson testified she never received the fully executed documents. However, Ms. Anderson paid the upfront fee of $46,123.40 in separate payments due to a wire transfer issue. In addition, Ms. Anderson agreed to pay, and did pay, $2,074.61 per month. Ms. Anderson believed the trust would work with the CFOs of the various creditors to deal with the debt. Respondent Bailey told Ms. Anderson not to contact the creditors or it would cause the program to start over. Respondent Bailey told Ms. Anderson the eye doctor had to start over because he contacted his creditors, and the trust could have taken his property. Ms. Anderson said she believed this to be a threat.

Ms. Anderson testified she learned her accounts were in default and requested weekly updates from Respondent Bailey, who provided reassurance that the defaults were part of the

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 154 of 430 PageID #: 348

process, but things would improve. However, Ms. Anderson stated that the NFCU repossessed her Chevy Traverse in August 2019. Ms. Anderson testified the repossession occurred while shopping with her children. Ms. Anderson called Respondent Bailey, who also called Respondent Wittenberg for a three-way call about the repossession. Ms. Anderson testified the Respondents advised her to report the Chevy Traverse as stolen, which she did. Next, the Respondents advised her to file a lawsuit against NFCU because NFCU received "legal tender." Respondent Wittenberg advised her to pay the filing fee with only silver coins; Ms. Anderson testified she paid the filing fee with only silver coins. Ms. Anderson explained she received legal advice and documents from the Respondents to be used during the lawsuit, including specific verbiage such as "I am a civilian." and "I stand on the paperwork submitted" and "Legal tender was submitted via certified mail to the CFO and received in according to the United States Post Office System." (CPD Ex. 28, p. 8). Once the court dismissed the case, Ms. Anderson said the Respondents told her to file an appeal.

To deal with the vehicle repossession, Ms. Anderson testified Respondent Wittenberg offered to have a new vehicle delivered to her. Ms. Anderson testified she paid $1,850.00 in delivery fees to have a vehicle delivered, but it never came. Ms. Anderson explained she rented a vehicle with promises from Respondent Wittenberg of reimbursement, but she never received reimbursement.

After the vehicle repossession, Ms. Anderson learned that the bank filed for foreclosure on her home due to nonpayment. Again, Ms. Anderson said the Respondents told her the foreclosure action was a mistake because the bank received the "legal tenders." The Respondents also promised to send lawyers to Florida to represent her, but Ms. Anderson said the lawyers never came. Therefore, Ms. Anderson explained, she represented herself at a

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

Case 1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 155 of 430 PageID #: 349

foreclosure case management conference in state court. During the conference, she learned the house was in default since August 2019, the bank served the Respondents on December 31, 2019, and the judge would not accept copies of the "legal tenders." Based on what happened in court and the emails with Respondent Wittenberg, Ms. Anderson said she spoke to an attorney and did not file the paperwork sent by the Respondents.

Ms. Anderson with the help of an attorney filed a lawsuit against the Respondents. She learned that none of her creditors accepted the "tenders" and ultimately, she determined the process was a fraud. To correct all that occurred, Ms. Anderson had to contact her creditors and get everything out of collections and foreclosure. As a result, Ms. Anderson said her credit score decreased. Due to the drop in her credit score, Ms. Anderson's secret security clearance and job were in jeopardy. Ms. Anderson explained she never asked Respondent Bailey about licenses, as she believed Respondent Bailey ran a legitimate business and she initially had no reason to doubt Respondent Bailey.

Ms. Anderson emotionally testified that she contacted Respondent Bailey in January 2020 to ask for a refund, but Respondent Bailey denied the request, advised she would use the money to hire an attorney, and told Ms. Anderson to continue to make monthly payments.

**Pastor David Ijeh**

Next, the CPD presented the testimony of Pastor David Ijeh of The Redeemed Christian Church of God, River of Life (Church) located in Riverdale, Maryland. The Church had a mortgage with Foundation Capital Resource, Inc. Pastor Ijeh testified that the Church received a solicitation letter from Respondent Bailey and responded to the letter. He explained the Church had filed for bankruptcy in February 2020 due to a mortgage default caused by economic distress. He explained he and church members met with Respondent Wittenberg and Respondent

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 156 of 430 PageID #: 350

Wittenberg explained the "legal tender" would neutralize the debt. Pastor Ijeh said Respondent Wittenberg explained the dissolution debt process to include registering the Church as a trust and Respondent Wittenberg as the trustee, offering the legal tender three times, publishing the information in newspapers three times, and filing a lawsuit against the bank. Respondent Wittenberg told Pastor Ijeh not to tell the bankruptcy attorney about the dissolution process.

Pastor Ijeh testified he had "reservations" but ultimately signed the agreement and paid a total of $115,000.00 to Respondent Wittenberg including the upfront fee of $100,000.00 and an additional $15,000.00 to expedite the court process. After payment, Pastor Ijeh said he received the "legal tenders" from Respondent Wittenberg to be mailed to the bank. Respondent Wittenberg filed a lawsuit against Foundation Capital to "secure the note." Pastor Ijeh said the lawsuit changed nothing and the debt did not dissolve. Ultimately, Pastor Ijeh notified the bankruptcy attorney and filed again for bankruptcy. He learned that Respondent Wittenberg had made no payments to pay the mortgage and that the bank did not accept the "tenders."

Pastor Ijeh contacted Respondent Wittenberg to request a refund of the money paid, but Respondent Wittenberg refused. Pastor Ijeh explained he never discussed licensing because Respondent Wittenberg seemed legitimate. He also said he never met with Respondent Bailey but did speak with her by phone to schedule meetings with Respondent Wittenberg.

**Momodou Njai**

Momodou Njai testified from West Africa as he returned there to care for his parents. Before returning to West Africa, Mr. Njai lived in Montgomery County and was married with two kids. He explained he met Respondent Wittenberg in 2019 while they both were at the auto mechanic shop. Mr. Njai testified that while he was getting a tire repaired on his Mercedes S Class 550, he and Respondent Wittenberg were talking and Mr. Njai mentioned his desire to sell

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 157 of 430 PageID
#: 351

the Mercedes and return to Africa. Mr. Njai said he owed $44,000.00 to NFCU for the car, paid the loan monthly, and was not in default. Mr. Njai described Respondent Wittenberg as a man in his late fifties who wore glasses and drove an older-model Corvette.

Mr. Njai mentioned he planned to sell his Mercedes to pay NFCU and Respondent Wittenberg suggested the debt dissolution program to pay off the Mercedes. Mr. Njai listened to Respondent Wittenberg but remained unsure about the program. Once at home, Mr. Njai stated he discussed it with his wife and looked up Respondent Wittenberg on the internet. Based on what he found, Mr. Njai reached out to Respondent Bailey to make an appointment with Respondent Wittenberg. During the next meeting with Respondent Wittenberg, Mr. Njai said Respondent Wittenberg gave him two ways to deal with the Mercedes. First, Respondent Wittenberg would pay it off and Mr. Njai could keep the Mercedes. Secondly, Respondent Wittenberg would pay off the Mercedes and Respondent Wittenberg would keep it.

In September 2019, Mr. Njai had another meeting with Respondent Wittenberg, this time Respondent Wittenberg drove a Bentley and counted money in front of Mr. Njai. Respondent Wittenberg explained the process began by placing the Mercedes in a trust, then paying the loan, and Respondent Wittenberg would take the Mercedes. Respondent Wittenberg told Mr. Njai not to make the October 2019 payment to NFCU. At this point, Mr. Njai explained it sounded "too good to be true;" yet he met with Respondent Bailey to sign an "Agreement to Dissolve Debt" and related documents. Mr. Njai said he did not pay the $5,926.21 fee as the Respondents waived it. Instead of making a monthly payment to NFCU, Mr. Njai received a letter from NFCU and learned Respondent Wittenberg mailed NFCU $42.00 in stamps, coins, and folded dollar bills and NFCU rejected the stamps and requested the outstanding payment.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 158 of 430 PageID
#: 352

Ultimately, Mr. Njai called NFCU and told not to give the vehicle to Mr. Wittenberg and that his account was in default. He learned that the Respondents made no payments and that they just wanted the vehicle. Mr. Njai testified that he sold the vehicle to a car dealer and ended up owing NFCU $24,000.00. He never had further contact with Respondent Wittenberg and returned the $42.00. Mr. Njai explained he never discussed licensing with the Respondents.

**Dr. Douglas Anania**

Douglas Anania lives and works in Georgia. Since 2004, he has worked as an optometrist and is the owner of two optometry offices: Parkway Family Eye Clinic, Inc., also known as Parkway Family Eye Care, Inc., and Brookleigh Family Eyecare, Inc.

Dr. Anania testified he first met Respondent Bailey in 2004 when she served as his personal and professional accountant when living in Baltimore, Maryland, and once he moved to Georgia in 2007 Respondent Bailey continued as his accountant. He testified she served as his accountant from 2004 through 2019. He testified Respondent Bailey told him she was licensed in both Maryland and Georgia.

Dr. Anania told Respondent Bailey of his interest in selling Parkway and Respondent Bailey mentioned Respondent Wittenberg as a "wealthy benefactor" and potential buyer. After speaking with the Respondents, Dr. Anania learned the program details included: setting up two trusts, a trust to hold Parkway and a second trust for other business and personal assets; paying the $76,500.00 upfront fee; and paying $5,561.00 per month for eighty-four months. At the conclusion, Dr. Anania believed his debts would be dissolved. He admitted it "sounded too good to be true." He testified he asked questions about why the paper loans had a higher value and even researched the trust but received reassurances from his friend Respondent Bailey.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 159 of 430 PageID
#: 353

Dr. Anania's debts included $565,218.01 in business debt and $680,000.00 in personal debt, including two vehicle loans, two mortgages, and student loan debt. At the point of entry to the program, Dr. Anania testified his accounts were not in default. Even with the questions, Dr. Anania explained he signed the required documents and paid the Respondents $76,500.00: $36,500.00 via a wire transfer and $40,000.00 from the Parkway business account. He gave the Respondents access to the business account to cover the balance of the fee. In total, Dr. Anania paid the Respondents $160,000.00. As required by the signed documents, Dr. Anania made monthly payments to the Respondents and believed his creditors were being paid. He signed a letter to each creditor changing the point of contact to the Respondents. The Respondents told him to not make payments or communicate with the creditors as it would nullify the deal.

Dr. Anania explained that previously, the Vision One loan payment would be automatically deducted from his bank account each month, but once the program began, Respondent Bailey told him to close the bank account and open another account. Dr. Anania testified he complied since the Vision One loan was part of the business assets and debts in the program. Dr. Anania testified the Respondents initially made payments as agreed but he began to receive creditor phone calls and soon learned the Respondents stopped making payments. He also received emails from creditors advising that the accounts were in default and no payments were received.

After one year in the program, Dr. Anania said his debts were not dissolved as promised. On February 6, 2019, he called meeting with Respondent Bailey at his home in Georgia. As she did in previous years, Dr. Anania had Respondent Bailey prepare his taxes and they discussed the creditor defaults. He said she reassured him things were being taken care off and not to communicate with the creditors. In March 2019, Respondent Bailey emailed Dr. Anania to tell

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 160 of 430 PageID
#: 354

him to stop communicating with the creditors. He also recalled a three-way call with Respondent Wittenberg, who communicated the same advice. During the call, Respondent Wittenberg assured Dr. Anania that the "tenders" were submitted to the creditors. Ultimately, Dr. Anania received letters from the creditors and learned the creditors rejected the "tenders." Respondent Bailey reassured him and said the "tenders" must be sent three times.

In June 2019, the creditors began legal action against Dr. Anania. He explained the Respondents sent him emails with things to file and say, but never provided an attorney as they said they would. Dr. Anania testified he learned this entire program was a scam and said there was "not a chance" that he would have filed the documents provided by the Respondents. He described the verbiage as sovereign citizen rhetoric. Dr. Anania contacted Respondent Bailey after Respondent Wittenberg withdrew $30,000.00 from the Parkway account, but she also withdrew $10,000.00 by check on January 20, 2019.

In July 2019, Dr. Anania met with the Respondents at his home in Georgia. During the meeting, Respondent Wittenberg showed the certificate issued in Minnesota in Dr. Anania's name to make him a private citizen. Dr. Anania testified he never authorized this action by Respondent Wittenberg. Respondent Wittenberg told Dr. Anania that as a private citizen he only dealt in silver and gold. Yet, when Dr. Anania asked how the Respondents could accept a wire transfer, that is not silver and gold, they did not have an answer.

On July 10, 2019, Dr. Anania withdrew money from his 401(k) account to prevent repossession of his home. Respondent Wittenberg continued to give instructions on specific verbiage to write on checks. Dr. Anania said his credit score dropped from 780 to 500. He requested refunds and reimbursements, but the Respondents never returned the money. He hired

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-CV-00490-MSM-PAS     Document 5     Filed 11/21/23     Page 161 of 430 PageID
#: 355

an attorney and filed a civil action against the Respondents. Dr. Anania said the case is pending due to the pandemic and its impact on court scheduling.

### Felipe Hernandez

Felipe Hernandez owned a handyman company and met Respondent Bailey in 2018. He explained that at some point Respondent Bailey stopped calling and he began to work with Respondent Wittenberg. Regarding a license, Mr. Hernandez believed Respondent Bailey to be a licensed accountant and realtor since that is how she portrayed herself to him. He recalled meeting Respondent Bailey through a mutual friend. Respondent Bailey offered to help Mr. Hernandez by providing money to buy and flip houses.

In October 2018, Mr. Hernandez said he owned two homes, one in Silver Spring, Maryland and one in Manassas, Virginia, and a Toyota Tundra. He testified his debt totaled $480,000.00 and he was not in default. Respondent Bailey offered to dissolve his debt and he had to pay $49,415.96 as a down payment, and monthly payments of $2,254.49 for fifteen years. Mr. Hernandez testified he initially questioned the offer, but ultimately signed the documents and agreed to participate. He recalled Respondent Bailey notarized the documents. He also signed letters to be sent to his creditors changing the point of contact from him to the Respondents. Mr. Hernandez testified he made the first payment and believed the Respondents would pay his creditors. Instead, Mr. Hernandez explained he learned the Respondents had not paid any creditors when the bank repossessed the Tundra and the bank foreclosed on the home in Virginia. Mr. Hernandez said he contacted the Respondents who offered to get his vehicle returned, but Mr. Hernandez said they never told him it was in default.

Mr. Hernandez paid $5,500.00 to TD Auto Finance plus $500.00 in storage fees to get the Tundra back. He continued to work with Respondent Wittenberg to get the house in Virginia

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 162 of 430 PageID
#: 356

back, including suing the bank. As for the house in Maryland, Mr. Hernandez explained he paid $19,000.00 to reinstate the mortgage and not lose it in foreclosure.

In October 2019, Mr. Hernandez testified that Respondent Bailey stopped answering his calls and he primarily dealt with Respondent Wittenberg. Mr. Hernandez hired an attorney who told him this program was a scam. His attorney helped him file a lawsuit against the Respondents and to file a lawsuit in Virginia to try and get his home back. Mr. Hernandez said he paid the Respondents approximately $65,000.00 and they never returned it.

**OAG CPD Investigator**

Finally, the CPD presented the testimony of Joshua Schafer, OAG CPD Investigator. Since 2014, Mr. Schafer has served as an investigator for CPD. He explained his duties include: serving subpoenas, interviewing witnesses, collection of documents, and conducting internet research. In this case, he recalled finding a LinkedIn page for both Respondents and a Facebook page in which Respondent Bailey describes offering foreclosure help. Further, Respondent Bailey listed her business address as 201 International Circle, Ste. 230, Hunt Valley, Maryland. In addition, he reviewed the SDAT filings for Respondent Bailey and found a Tax Preparer Identification number. However, Mr. Schafer testified he did not find a license or permit for Respondent Bailey to perform accounting services.

Mr. Schafer testified about the Respondents, the consumers who testified during the hearing, and several other consumers he interviewed but who did not participate in the hearing. During his research, Mr. Schafer also reviewed solicitation letters from Respondent Bailey to various people with property in distress, offering to help.

While investigating Respondent Wittenberg, Mr. Schafer testified he contacted the MVA and obtained a certified driving record and photo. During a previous court appearance,

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 163 of 430 PageID
#: 357

Respondent Wittenberg testified under oath that he graduated from seminary school and also had a Ph.D. Mr. Schafer contacted both schools and learned Respondent Wittenberg never attended and did not have any degrees from the schools. Regarding the trust, Mr. Schafer reviewed a document that purports to create the trust in 2016; on July 29, 2019 a document purported to name Arthur Wittenberg as a co-trustee with Yong Min Cho.

Mr. Schafer learned of the Respondents' agreement with the Betchs, who are located in Harford County, Maryland. He reached out to the Betch family, but they declined to be interviewed. Mr. Schafer learned that on August 6, 2021, the Betchs appeared in the District Court for Harford County for a Replevin action and he obtained the audio court recording. During that hearing, Respondent Wittenberg testified about the participation of the Betchs in his program.

Mr. Schafer reviewed agreements between the Respondents and Mr. Franklin and Ms. Fields, but Mr. Franklin never made the upfront payment. Mr. Schafer also interviewed the Harrises, who signed the agreement and paid the Respondents. Mr. Schafer also reviewed an agreement between the Respondents and Mr. Hockaday. Mr. Hockday paid the Respondents $11,972.56. Mr. Schafer interviewed Mr. McGovern and learned he paid the Respondents $17,700.00 for the Respondents to purchase the commercial paper holding the debts. Mr. McGovern told Mr. Schafer that Respondent Wittenberg was persuasive. Mr. Schafer reviewed an agreement between the Respondents and Ms. Sims. Ms. Sims paid the Respondents $53,617.67.

Mr. Schafer interviewed Mr. Walker, who also signed an agreement with the Respondents. Mr. Walker spoke to the Respondents because he wanted to sell his vehicle to start a business. Respondent Wittenberg paid Mr. Walker $5,000.00 for the vehicle and agreed to

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-CV-00490-MSM-PAS     Document 5     Filed 11/21/23     Page 164 of 430 PageID
#: 358

make the payments to NFCU. However, Mr. Walker learned that the Respondent Wittenberg
had made no payments to NFCU, and the vehicle was never returned.

Mr. Schafer testified the Division subpoenaed bank records for the Respondents and the
consumers. As a result, he reviewed the bank records and found the Respondent Wittenberg
received $309,590.56 and Respondent Bailey received $504,323.45 from consumers. In total,
the Respondents paid $60,974.35 to creditors. In addition, to paying creditors, Mr. Schafer
testified the records show they transferred money to and from each other; Respondent Bailey
sent $47,075.00 to Respondent Wittenberg and Respondent Wittenberg sent $11,174.21 to
Respondent Bailey. (CPD Ex. 128).

Analysis

Respondent Wittenberg failed to appear at the Conferences and the hearing. However,
Respondent Bailey and counsel failed to appear at the hearing, but counsel did appear at the
Conferences. Pursuant to COMAR 02.01.02.17B and COMAR 28.02.01.23, the Proponent
could have requested a default order be issued as to the Respondents; however, the Proponent did
not make such a request. Therefore, the hearing proceeded in the absence of the Respondents
and their representation.

It is undisputed that the Respondents worked together as they offered and sold mortgage
assistance relief services, debt management services, money transmission services, and credit
services. The evidence shows that the Respondents worked together to solicit consumers,
provide documentation, and communicate with the consumers. The consumers who testified and
those interviewed by the CPD Investigator all shared similar stories of solicitation and
communication with the Respondents. Each consumer seemingly recounted the same practice of
either Respondent Bailey or Respondent Wittenberg promising debt dissolution in a short period

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 165 of 430 PageID
#: 359

of time after the consumer paid an upfront fee and monthly fees for multiple years. The consumers signed several documents and letters to creditors that were often notarized by Respondent Bailey. Within a few months, the consumers had property repossessed, homes placed in foreclosure, and debts in default. The consumers would contact the Respondents and the Respondents provided bogus legal documents and proof of payment of "legal tenders." The consumers who testified reported Respondent Wittenberg provided copies of the "tenders" he mailed to various creditors as full payment of the consumers' debts. In one instance, NFCU applied the money but returned the signed stamps. In another instance, another creditor refused to accept the tenders and returned the money and the signed stamps.

In addition, when the consumers were in legal jeopardy of losing their homes or other legal matters, the Respondents provided phony legal documents to be mailed to creditors or filed in state or federal court. While it is unclear who drafted the frivolous legal documents, the evidence shows that the Respondents provided the documents to consumers via email and provided instructions on filing the documents in court. In addition, Respondent Wittenberg also filed frivolous legal claims that did nothing to assist consumers preserve property or prevent foreclosure. Further, based on the evidence the Respondents are not licensed attorneys in Maryland or any other state.

In this case, the evidence overwhelmingly shows the Respondents did not have the authority or proper licenses to perform their range of services. Respondent Wittenberg admitted the same during the Preliminary Injunction hearing in the Circuit Court for Baltimore County and in the District Court for Harford County.

The evidence further shows that the Respondents lacked licenses to provide mortgage relief services, provide credit services, engage in the business of money transmission, and to

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 166 of 430 PageID #: 360

provide debt management services.  Mr. Bellman provided credible testimony regarding OCFR licensing process, licensing requirements, and that the Respondents are not and have never been authorized to provide mortgage assistance relief services, and/or licensed to provide debt management services, credit services, or money transmission services.  Further, Mr. Schafer testified Respondent Bailey is not, and has never been, licensed by the Maryland Board of Accountancy.

Although Respondent Wittenberg failed to appear at a hearing, he appeared and testified under oath in a preliminary injunction hearing in the Circuit Court for Baltimore County and in the District Court of Maryland for Harford County for a Replevin hearing.

On June 11, 2021, at the Preliminary Injunction hearing Respondent Wittenberg appeared, testified under oath, and identified Respondent Bailey as an agent of the trust.  He further stated, "I offer trustee services" to make sure bills are paid off for a fee of $10.00. Respondent Wittenberg admitted not having a license from the OCFR to conduct money transmission services, credit services, and debt management services.  At the Replevin hearing in the District Court of Maryland for Harford County, Respondent Wittenberg testified on behalf of Mr. and Mrs. Betch and acknowledged sending "tenders" to APGCU to purchase the auto loan note.

Unlike Respondent Wittenberg, Respondent Bailey never testified in the previous preliminary injunction hearing or any other hearing under oath.

**Mortgage Assistance Relief Services (MARS)**

I find that the Respondents offered and sold statutorily defined mortgage relief services to consumers in exchange for consideration while statutorily prohibited to provide such services. The evidence overwhelmingly supports that the Respondents engaged in fraudulent mortgage

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 167 of 430 PageID
#: 361

assistance relief services by offering and promising to dissolve mortgages, promising to save consumers money, instructing consumers to stop contacting mortgage lenders, providing phony legal documents to consumers in foreclosure, and filing frivolous lawsuits. The evidence shows that the Respondents received payment from several consumers including but not limited to Ms. Anderson, Dr. Anania, Mr. Hernandez, Pastor Ijeh, and Mr. and Mrs. Betch, as consideration for mortgage assistance relief services. Ms. Anderson testified that the Respondents provided legal documents and specific phrases she should say when appearing in state court.

Although nonsensical, I find that the Respondents used these documents to provide fraudulent mortgage assistance relief services as Ms. Anderson received instruction to have the documents notarized and filed in state court to stop the foreclosure. Dr. Anania testified he received the documents but refused to file them as he realized the Respondents were engaged in fraudulent activity. Ultimately, Dr. Anania explained he had to withdraw money from his 401(k) account to prevent foreclosure due to the unlicensed services performed by the Respondents.

The Respondents provided similar services to Pastor Ijeh to address the bankruptcy of the Church. Pastor Ijeh credibly testified he received a solicitation letter from Respondent Bailey, on behalf of Respondent Wittenberg, who offered assistance. Pastor Ijeh recalled meeting with Respondent Wittenberg, who offered mortgage relief assistance services and advised Pastor Ijeh to not share the offer with the Church's bankruptcy attorney. Respondent Wittenberg offered to cure the default in consideration for a substantial payment, the Respondents failed to cure the default. Ultimately, Pastor Ijeh paid the Respondents over $115,000.00, received no services, and had to file a second unsuccessful bankruptcy action. I find that Pastor Ijeh provided credible testimony about the Respondents' actions and the money he paid for their services. Like other

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 168 of 430 PageID
#: 362

consumers, Pastor Ijeh described the documents he signed all with the promise of debt dissolution for the Church.

Similarly, Mr. Hernandez relied on the Respondents' representations that they would pay his mortgage; instead, the Respondents did not pay the mortgage and he lost the Virginia house in foreclosure. Ms. Anderson learned her home was in foreclosure due to nonpayment by the Respondents. The Respondents emailed her phony legal documents and copies of the "tenders," that the court would not accept.

Pursuant to MARS, the Respondents provided prohibited mortgage assistance relief services to Ms. Anderson. The ALJ believed the testimony of Jedd Bellman of the OCFR that the Respondents provided statutorily prohibited mortgage assistance relief services because they requested upfront fees and failed to follow the standards as outlined in MARS and 12 CFR 1015.1 through 12 CFR 1015.11. Because the Agency finds MARS violations, the Agency further finds that the Respondents engaged in unfair trade practices, deceptive trade practices, and abusive trade practices in violation of the CPA. *See* Md. Code Ann., Real Prop. § 7-510 (violation of MARS is "[a]n unfair or deceptive trade practice within the meaning of Title 13 of the Commercial Law Article").

**Maryland Credit Services Businesses Act (MCSBA)**

The evidence shows that the Respondents operated a credit services business by offering to improve credit scores, save consumers money, dissolve debt, and provide related credit relief within a short period of time. The Respondents lacked the required surety bond. Further, the Respondents violated MCSBA by requiring large upfront payments and lengthy monthly payments before completion of the defined credit services. All consumers who testified at the hearing and those interviewed by Mr. Schafer described the same practices by the Respondents.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 169 of 430 PageID
#: 363

In addition, the evidence shows the Respondents made false and misleading representations to consumers during the offer and sale of credit services. Further, when things got bad for the consumers, the Respondents misled consumers, providing false reassurances.

Each consumer who testified provided detailed information about the debt dissolution program offered by the Respondents. Before paying the Respondents, the consumers testified they had good credit scores and no accounts were in default; however, after a few months in the program the credit scores dropped, and credit accounts were in default. Ms. Anderson testified that Respondent Bailey convinced her to not worry about the credit score drop and represented it would get better in a few months.

The Respondents engaged in a course of business designed to deceive consumers and required upfront payments before rendering services. In this case, the Respondents presented consumers with similar documents entitled "Private Banking Debt Liquidation Program" that outlined the debt, program fee, total program savings. In the case of Ms. Anderson, the Respondents promised to save her $431,343.65. (CPD Ex. 7). The Respondents also presented consumers with an "Agreement to Dissolve Debt." (CPD Ex. 7). The Respondents made similar promises to all of the consumers who either testified during the hearing or were interviewed by Mr. Schafer, as outlined in the documents on Respondent Bailey's letterhead. The Respondents promised to save consumers money but the representations were not based in reality. Moreover, the Respondents told consumers they could only take advantage of the savings if they made large upfront payments and monthly payments for years.

Pastor Ijeh paid $115,000.00 for the Respondents to save the Church, but the Respondents did nothing. The Church ended up in bankruptcy for the second time and was out $115,000.00. Mr. Hernandez paid $49,000.00 upfront and still lost his Virginia house. Dr.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 170 of 430 PageID #: 364

Anania paid $76,000.00 upfront and paid more money to ultimately prevent his home from being sold in foreclosure.

The evidence is overwhelming that the Respondents misrepresented the debt dissolution program and promised debt savings that were not possible. The Agency finds the Respondents failed to provide executed documents to the consumers. The ALJ found the consumer witnesses credible in their testimony that they requested document copies, but the Respondents failed to provide executed copies. Because the Respondents did not have a legitimate program, the debt savings were completely fabricated, not based in reality, and fraudulent. Further, in the ALJ's review of the hundreds of pages of exhibits, the ALJ found that the Respondents failed to provide the required notice of cancellation provision.

Pursuant to the MCSBA, the Respondents required a license from the OCFR to provide credit services business and both Respondents lacked the required license. The Respondents failed to obtain a license to collect money from consumers and failed to maintain a surety bond. The Respondents failed to provide document copies to consumers, and the agreements failed to include consumer rights and a cancellation provision. Further, the Respondents illegally charged upfront fees before providing credit services. The ALJ found Jedd Bellman of the OCFR credibly testified that the Respondents lacked a license to provide credit services. Because the Agency finds MCSBA violations, the Agency further finds that the Respondents engaged in unfair trade practices, deceptive trade practices, and abusive trade practices in violation of the CPA. *See* Md. Code Ann., Com. Law § 14-1914(a) ("Each sale of the services of a credit services business that violates any provision of this subtitle is an unfair or deceptive trade practice under [the CPA]").

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 171 of 430 PageID #: 365

**Maryland Money Transmission Act (MMTA)**

The evidence presented supports that the Respondents provided and sold unlicensed money transmission services by sending "tenders" to the various creditors across the United States. Respondent Wittenberg created "tenders" that consisted of folded dollar bills, silver dollar coins, and stamps with his signature and provided these as payment for auto loans, mortgages, and credit card payments. (See CPD Ex. 41). The Respondents provided and sold "tenders" as an instrument of monetary value to dissolve or payoff a debt. The "tenders" included dollar bills and silver coins for less than the amount due to pay off a debt. In addition, the Respondents misled the consumers to believe the money collected and the "tenders" would pay off the debts, but many creditors rejected the "tenders" completely. Respondent Wittenberg paid $10,000.00 to USAA for Mr. Harris but stopped paying any other creditors. The Wittenberg Family Trust paid $50,000.00 in bills for Dr. Anania, but the Wittenberg Family Trust discontinued paying the creditors. For example, to satisfy an auto loan at NFCU in the amount of $27,874.91 for Ms. Anderson, Respondent Wittenberg provided a folded dollar bill, one silver coin, and a signed postage stamp. (CPD Ex. 41). The evidence shows that Respondent Wittenberg provided similar "tenders" to other creditors for Ms. Anderson and other consumers. Respondent Wittenberg provided copies of the "tenders" to consumers as proof of payment to the creditors; however, several creditors returned the "tenders" as insufficient payment for the outstanding debt.

The Respondents engaged in a rather elaborate scheme as they used items of varying amounts and value to send payment to the creditors of consumers. The Agency finds this method of sending folded money to creditors is, by definition, money transmission, as the Respondents acted as a bill payer service or informal money transfer system between the

63

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 172 of 430 PageID
#: 366

consumer and the creditors. The Respondents, acting as a bill payer service, by definition, accepted payment from consumers to pay bills on their behalf.

Pursuant to MMTA, the Respondents required a license from the OCFR to provide money transmission services. The ALJ found Jedd Bellman provided credible testimony that the Respondents lacked a license to provide money transmission services and failed to file a surety bond as required. The Agency further finds the Respondents used "tenders" as an instrument of monetary value to pay bills as a bill payer. Because the Agency finds the Respondents committed multiple MMTA violations including operating without a required a license, the Agency further finds that the Respondents engaged in unfair trade practices, deceptive trade practices, and abusive trade practices in violation of the CPA. (Com. Law § 13-301(1), (2)(ii), (3), and (9)(i)).

**Maryland Debt Management Services Act (MDMSA)**

The Agency finds that the Respondents provided unlicensed debt management services as they received funds from consumers via an agreement made for the purposes of paying the debts of the consumers. The evidence shows that the Respondents had consumers sign agreements to make monthly payments of varying amounts to be used to pay the debt of the consumers. The evidence further shows that the Respondents promised to pay creditors if the consumers made a large initial upfront payment and monthly payments. Further, the agreements did not note a surety bond but did provide the wire transfer instructions to the personal accounts of Respondent Marcia Bailey and Respondent Arthur Wittenberg. The amounts paid varied between each consumer.

| EXHIBIT NO. | DATE | RECIPIENT | CONSUMER | AMOUNT |
|---|---|---|---|---|
| CPD Ex. 128 CPD NO. 00054 | 12/16/2019 | Signature Accounting | Anderson | $214.61 |
| CPD Ex. 128 CPD NO. 00061 | 11/25/2019 | Signature | Anderson | $2,074.61 |

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 173 of 430 PageID #: 367

| | | Accounting | | |
|---|---|---|---|---|
| CPD Ex. 128 CPD NO. 00071 | 10/10/2019 | Signature Accounting | Anderson | $2,900.00 |
| CPD Ex. 128 CPD NO. 00071 | 10/10/2019 | Signature Accounting | Anderson | $2,900.00 |
| CPD Ex. 128 CPD NO. 00072 | 10/25/2019 | Signature Accounting | Anderson | $2,074.61 |
| CPD Ex. 128 CPD NO. 00079 | 9/25/2019 | Signature Accounting | Anderson | $2,074.61 |
| CPD Ex. 128 CPD NO. 00089 | 8/26/2019 | Signature Accounting | Anderson | $2,074.61 |
| CPD Ex. 128 CPD NO. 00097 | 7/25/2019 | Signature Accounting | Anderson | $2,074.61 |
| CPD Ex. 128 CPD NO. 00109 | 6/25/2019 | Signature Accounting | Anderson | $2,074.61 |
| CPD Ex. 128 CPD NO. 00119 | 5/28/2019 | Signature Accounting | Anderson | $2,074.61 |
| CPD Ex. 128 CPD NO. 00129 | 4/25/2019 | Signature Accounting | Anderson | $2,074.61 |
| CPD Ex. 128 CPD No. 00137 | 3/4/2019 | Signature Accounting | Anderson | $2,074.61 |
| CPD Ex. 128 CPD NO. 00138 | 3/25/2019 | Signature Accounting | Anderson | $2,074.61 |
| CPD Ex. 128 CPD NO. 0146 | 2/21/2019 | Signature Accounting | Anderson | $13,500.00 |
| CPD Ex. 15 | 1/21/2019 | Signature Accounting | Anderson | $13,000.00 |
| CPD Ex. 14 | 1/17/2019 | Signature Accounting | Anderson | $25,197.40 |
| CPD Ex. 128 CPD NO. 00061 | 11/25/2019 | Signature Accounting | Betch | $2,496.88 |
| CPD Ex. 128 CPD NO. 00072 | 10/29/2019 | Signature Accounting | Betch | $2,496.88 |
| CPD Ex. 128 CPD NO. 00089 | 8/26/2019 | Signature Accounting | Betch | $2,496.88 |
| CPD Ex. 128 CPD NO. 00097 | 7/3/2019 | Signature Accounting | Betch | $2,496.88 |
| CPD Ex. 128 CPD NO. 00097 | 7/16/2019 | Signature Accounting | Betch | $2,496.88 |
| CPD Ex. 128 CPD NO. 00119 | 5/10/2019 | Signature Accounting | Betch | $39,287.69 |
| CPD Ex. 128 CPD NO. 00045 | 1/3/2020 | Signature Accounting | Harris | $6,977.58 |
| CPD Ex. 128 CPD NO. 00053 | 12/9/2019 | Signature Accounting | Harris | $7,000.00 |

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

Case 1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 174 of 430 PageID #: 368

| | | | | |
|---|---|---|---|---|
| CPD Ex. 128 CPD NO. 00061 | 11/8/2019 | Signature Accounting | Harris | $7,000.00 |
| CPD Ex. 128 CPD NO. 00071 | 10/7/2019 | Signature Accounting | Harris | $7,000.00 |
| CPD Ex. 128 CPD NO. 00071 | 10/15/2019 | Signature Accounting | Harris | $750.00 |
| CPD Ex. 128 CPD NO. 00079 | 9/5/2019 | Signature Accounting | Harris | $7,000.00 |
| CPD Ex. 128 CPD NO. 00097 | 7/3/2019 | Signature Accounting | Harris | $6,980.00 |
| CPD Ex. 128 CPD NO. 00097 | 7/29/2019 | Signature Accounting | Harris | $7,000.00 |
| CPD Ex. 128 CPD NO. 00109 | 6/4/2019 | Signature Accounting | Harris | $6,980.00 |
| CPD Ex. 128 CPD NO. 00119 | 5/2/2019 | Signature Accounting | Harris | $6,980.00 |
| CPD Ex. 128 CPD NO. 00129 | 4/1/2019 | Signature Accounting | Harris | $6,980.00 |
| CPD Ex. 128 CPD NO. 00137 | 3/4/2019 | Signature Accounting | Harris | $6,980.00 |
| CPD Ex. 128 CPD NO. 00137 | 3/13/2019 | Signature Accounting | Harris | $5,000.00 |
| CPD Ex. 128 CPD NO. 00145 | 2/8/2019 | Signature Accounting | Harris | $6,980.00 |
| CPD Ex. 123, p. 7 | 9/24/2018 | Signature Accounting | Harris | $12,582.83 |
| CPD Ex. 128 CPD NO. 00045 | 1/2/2020 | Signature Accounting | Hernandez | $2,254.49 |
| CPD Ex. 128 CPD NO. 00053 | 12/2/2019 | Signature Accounting | Hernandez | $2,254.49 |
| CPD Ex. 128 CPD NO. 00061 | 11/4/2019 | Signature Accounting | Hernandez | $2,254.49 |
| CPD Ex. 128 CPD NO. 00071 | 10/2/2019 | Signature Accounting | Hernandez | $2,254.49 |
| CPD Ex. 128 CPD NO. 00079 | 9/3/2019 | Signature Accounting | Hernandez | $2,254.49 |
| CPD Ex. 128 CPD NO. 00089 | 8/5/2019 | Signature Accounting | Hernandez | $2,254.49 |
| CPD Ex. 128 CPD NO. 00097 | 7/5/2019 | Signature Accounting | Hernandez | $2,254.49 |
| CPD Ex. 128 CPD NO. 00119 | 5/31/2019 | Signature Accounting | Hernandez | $49,415.96 |
| CPD Ex. 128 CPD NO. 00089 | 8/5/2019 | Signature Accounting | Hockaday | $11,972.56 |
| CPD Ex. 128 CPD NO. 02023 | 1/12/2018 | Wittenberg Family Trust | Anania | $18,500.00 |

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 175 of 430 PageID
#: 369

| CPD Ex. 128 CPD NO. 2023 | 1/12/2018 | Wittenberg Family Trust | Anania | $18,000.00 |
| CPD Ex. 128 CPD NO. 02027 | 3/7/2018 | Wittenberg Family Trust | Anania | $4,951.59 |
| CPD Ex. 128 CPD NO. 2029 | 3/8/2018 | Wittenberg Family Trust | Anania | $700.00 |
| CPD Ex. 128 CPD NO. 02031 | 4/5/2018 | Wittenberg Family Trust | Anania | $4,951.59 |
| CPD Ex. 128 CPD NO. 02031 | 4/5/2018 | Wittenberg Family Trust | Anania | $700.00 |
| CPD Ex. 128 CPD NO. 02035 | 5/4/2018 | Wittenberg Family Trust | Anania | $700.00 |
| CPD Ex. 128 CPD NO. 02035 | 5/4/2018 | Wittenberg Family Trust | Anania | $4,951.59 |
| CPD Ex. 128 CPD NO. 02039 | 6/6/2018 | Wittenberg Family Trust | Anania | $4,951.59 |
| CPD Ex. 128 CPD NO. 02039 | 6/6/2018 | Wittenberg Family Trust | Anania | $700.00 |
| CPD Ex. 128 CPD NO. 02043 | 7/6/2018 | Wittenberg Family Trust | Anania | $4,951.59 |
| CPD Ex. 128 CPD NO. 02043 | 7/6/2018 | Wittenberg Family Trust | Anania | $700.00 |
| CPD Ex. 128 CPD NO. 02047 | 8/6/2018 | Wittenberg Family Trust | Anania | $700.00 |
| CPD Ex. 128 CPD NO. 02047 | 8/7/2018 | Wittenberg Family Trust | Anania | $4,951.59 |
| CPD Ex. 128 CPD NO. 02052 | 9/6/2018 | Wittenberg Family Trust | Anania | $4,951.59 |
| CPD Ex. 128 CPD NO. 02052 | 9/7/2018 | Wittenberg Family Trust | Anania | $700.00 |
| CPD Ex. 128 CPD NO. 02055 | 10/3/2018 | Wittenberg Family Trust | Anania | $567.38 |
| CPD Ex. 128 CPD NO. 02056 | 10/4/2018 | Wittenberg Family Trust | Anania | $700.00 |
| CPD Ex. 128 CPD NO. 02056 | 10/5/2018 | Wittenberg Family Trust | Anania | $4,951.59 |
| CPD Ex. 128 CPD NO. 02057 | 11/6/2018 | Wittenberg Family Trust | Anania | $700.00 |
| CPD Ex. 128 CPD NO. 02057 | 11/7/2018 | Wittenberg Family Trust | Anania | $4,951.59 |
| CPD Ex. 128 CPD NO. 02063 | 12/5/2018 | Wittenberg Family Trust | Anania | $4,951.59 |
| CPD Ex. 128 CPD NO. 02063 | 12/6/2018 | Wittenberg Family Trust | Anania | $700.00 |
| CPD Ex. 128 CPD NO. 02067 | 1/7/2019 | Wittenberg Family Trust | Anania | $4,951.59 |

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 176 of 430 PageID
#: 370

| CPD Ex. 128 CPD NO. 02067 | 1/7/2019 | Wittenberg Family Trust | Anania | $700.00 |
|---|---|---|---|---|
| CPD Ex. 128 CPD NO. 02071 | 2/6/2019 | Wittenberg Family Trust | Anania | $4,951.59 |
| CPD Ex. 128 CPD NO. 02071 | 2/6/2019 | Wittenberg Family Trust | Anania | $700.00 |
| CPD Ex. 128 CPD NO. 02076 | 3/6/2019 | Wittenberg Family Trust | Anania | $4,951.59 |
| CPD Ex. 128 CPD NO. 02076 | 3/6/2019 | Wittenberg Family Trust | Anania | $700.00 |
| CPD Ex. 128 CPD NO. 02080 | 4/4/2019 | Wittenberg Family Trust | Anania | $700.00 |
| CPD Ex. 128 CPD NO. 02080 | 4/5/2019 | Wittenberg Family Trust | Anania | $4,951.59 |
| CPD Ex. 128 CPD NO. 02084 | 5/6/2019 | Wittenberg Family Trust | Anania | $700.00 |
| CPD Ex. 128 CPD NO. 02084 | 5/7/2019 | Wittenberg Family Trust | Anania | $4,951.59 |
| CPD Ex. 128 CPD NO. 02087 | 6/5/2019 | Wittenberg Family Trust | Anania | $4,951.59 |
| CPD Ex. 128 CPD NO. 02087 | 6/6/2019 | Wittenberg Family Trust | Anania | $700.00 |
| CPD Ex. 128 CPD NO. 02091 | 6/20/2019 | Wittenberg Family Trust | Anania | $10,000.00 |
| CPD Ex. 128 CPD NO. 02119 | 1/21/2020 | Wittenberg Family Trust | Betch | $2,496.88 |
| CPD Ex. 128 CPD NO. 02126 | 2/25/2020 | Wittenberg Family Trust | Betch | $2,496.88 |
| CPD Ex. 128 CPD NO. 02132 | 3/30/2020 | Wittenberg Family Trust | Betch | $2,496.88 |
| CPD Ex. 128 CPD NO. 02137 | 4/28/2020 | Wittenberg Family Trust | Betch | $2,496.88 |
| CPD Ex. 128 CPD NO. 02141 | 5/28/2020 | Wittenberg Family Trust | Betch | $2,496.88 |
| CPD Ex. 128 CPD NO. 02149 | 6/29/2020 | Wittenberg Family Trust | Betch | $2,496.88 |
| CPD Ex. 128 CPD NO. 02154 | 7/28/2020 | Wittenberg Family Trust | Betch | $2,496.88 |
| CPD Ex. 128 CPD NO. 02161 | 8/25/2020 | Wittenberg Family Trust | Betch | $2,496.88 |
| CPD Ex. 128 CPD NO. 02169 | 10/5/2020 | Wittenberg Family Trust | Betch | $2,496.88 |
| CPD Ex. 128 CPD NO. 02176 | 10/27/2020 | Wittenberg Family Trust | Betch | $2,496.88 |
| CPD Ex. 128 CPD NO. 02183 | 12/1/2020 | Wittenberg Family Trust | Betch | $2,496.88 |

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 177 of 430 PageID #: 371

| CPD Ex. 128 CPD NO. 02187 | 12/28/2020 | Wittenberg Family Trust | Betch | $2,496.88 |
| CPD Ex. 128 CPD NO. 02055 | 9/25/2018 | Wittenberg Family Trust | Harris | $118,892.27 |
| CPD Ex. 128 CPD NO. 02126 | 3/5/2020 | Wittenberg Family Trust | Harris | $7,000.00 |
| CPD Ex. 128 CPD NO. 02130 | 3/23/2020 | Wittenberg Family Trust | Harris | $1,500.00 |
| CPD Ex. 128 CPD NO. 02134 | 4/6/2020 | Wittenberg Family Trust | Harris | $6,977.58 |
| CPD Ex. 128 CPD NO. 02138 | 5/5/2020 | Wittenberg Family Trust | Harris | $6,977.58 |
| CPD Ex. 128 CPD NO. 02143 | 6/5/2020 | Wittenberg Family Trust | Harris | $6,977.58 |
| CPD Ex. 128 CPD NO. 02150 | 7/6/2020 | Wittenberg Family Trust | Harris | $6,977.58 |
| CPD Ex. 128 CPD NO. 02155 | 8/5/2020 | Wittenberg Family Trust | Harris | $6,977.58 |
| CPD Ex. 128 CPD NO. 02162 | 9/8/2020 | Wittenberg Family Trust | Harris | $6,977.58 |
| CPD Ex. 128 CPD NO. 02169 | 10/5/2020 | Wittenberg Family Trust | Harris | $6,977.58 |
| CPD Ex. 128 CPD NO. 02178 | 11/5/2020 | Wittenberg Family Trust | Harris | $6,977.58 |
| CPD Ex. 128 CPD NO. 02183 | 12/7/2020 | Wittenberg Family Trust | Harris | $6,977.58 |
| CPD Ex. 128 CPD NO.02188 | 1/5/2021 | Wittenberg Family Trust | Harris | $6,977.58 |
| CPD Ex. 128 CPD NO. 02121 | 2/5/2020 | Wittenberg Family Trust | Harris | $7,000.00 |
| CPD Ex. 128 CPD No. 02155, CPD Ex. 50, p.2 | 8/7/2020 | Wittenberg Family Trust | Ijeh | $15,000.00 |
| CPD Ex. 128 CPD NO. 02162, CPD Ex. 50, p. 3 | 9/1/2020 | Wittenberg Family Trust | Ijeh | $15,000.00 |
| CPD Ex. 128 CPD NO. 02167 | 9/18/2020 | Wittenberg Family Trust | Ijeh | $70,000.00 |
| CPD Ex. 50, p. 5 | 1/13/2021 | Wittenberg Family Trust | Ijeh | $5,000.00 |
| CPD Ex. 50, p. 6 | 5/25/2021 | Wittenberg Family Trust | Ijeh | $10,000.00 |
| CPD Ex. 128 CPD NO. 02169 | 10/7/2020 | Wittenberg Family Trust | McGovern | $17,700.00 |
| | | | **TOTAL** | **$813,914.01** |

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 178 of 430 PageID
#: 372

(CPD Ex. 129).[14]

The Agency finds the Respondents failed to make timely payments to creditors causing foreclosures and vehicle repossessions. Initially, the Respondents made monthly payments on behalf of Dr. Anania to his personal creditors but that stopped, causing serious defaults. They did not make payments to his business creditors. The Respondents made one payment of $10,000.00 on behalf of Mr. Harris. Although the Respondents did not collect an upfront payment from Mr. Njai, Respondent Wittenberg mailed "tenders" to NFCU and almost obtained a vehicle from Mr. Njai without proper payment.

Further, instead of having a separate trust account, the Respondents had funds directly deposited into the personal bank accounts of the individual Respondents and commingled business funds and personal funds. The Respondents had Ms. Anderson and Dr. Anania wire funds directly to each Respondent. The other consumers wired money between the two Respondents, but never to a separate account.

Pursuant to MDMSA, the Respondents required a license from the OCFR to provide debt management services. The ALJ found Jedd Bellman provided credible testimony that the Respondents lacked a license to provide debt management services and failed to file the required surety bond. In addition, the Respondents failed to comply with MDMSA because they failed to provide a consumer education program, failed to provide a written debt management agreement disclosing the existence of a surety bond, and inappropriately charged a fee before the execution of the debt management agreement. Further, the Respondents failed to establish a trust account to hold funds received by consumers for reimbursement purposes and they failed to pay creditors within eight days. Based on the facts and misrepresentations used to establish MDMSA violations, the Agency finds the same facts and misrepresentations show that the Respondents

---

[14] See Proponent's Proposed Finding of Facts Number 85(a).

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 179 of 430 PageID #: 373

engaged in unfair trade practices, deceptive trade practices, and abusive trade practices in violation of the CPA. (Com. Law., §§ 13-301 and 13-303; Fin. Inst. §12-920(a)(6)).

**Consumer Protection Act**

The Proponent presented testimony of several consumers, the OCFR representative and the OAG CPD investigator to show the Respondents, acting as merchants,[15] engaged in unfair, abusive, and deceptive practices. Each consumer recounted a similar account of the promise by the Respondents to dissolve debts, provide mortgage relief, debt assistance, and cancel debt with the mailing of "tenders." The ALJ found the testimony provided by the consumers to be credible and at some times quite emotional. During her testimony, Ms. Anderson became emotional as she detailed the actions of Respondent Marcia Bailey, who was a close friend. Ms. Anderson testified she did not quite understand the process, but Respondent Bailey promised to dissolve the debt with the assistance of her wealthy client, Respondent Wittenberg. Respondent Bailey intentionally misled Ms. Anderson from the beginning and Respondent Wittenberg continued the deceptive practices. Even after NFCU repossessed the Chevy Traverse, the Respondents continued to falsely claim NFCU had been paid; therefore, NFCU stole the vehicle. The Respondents continued the same false claims regarding the foreclosure action involving the home of Ms. Anderson.

Each consumer credibly testified about the deceptive practices of the Respondents. Like Ms. Anderson, Dr. Anania knew Respondent Bailey for many years and considered Ms. Bailey a friend. Yet that friendship did not discourage Respondent Bailey from falsely claiming a connection to a wealthy client, Respondent Wittenberg to purchase Dr. Anania's business. While Respondent Bailey has a connection to Respondent Wittenberg, she never disclosed that Respondent Wittenberg lacked the funds to support the debt dissolution program. In fact,

---

[15] Com. Law 13-101(g).

71

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 180 of 430 PageID
#: 374

Respondent Bailey misrepresented Respondent Wittenberg as a "wealthy" donor working to help families. This failure to disclose this information is a material fact, in that it would be important to consumers determining whether to entrust their own funds to the Respondents, and was intended to deceive Ms. Anderson, Pastor Ijeh, Dr. Anania, and Mr. Hernandez.

Once the consumers paid the upfront fee and signed documents to participate in the program, the Respondents instructed the consumers to sign documents to change the contact information to Respondent Wittenberg. However, the Respondents failed to disclose to the consumers that upfront payments or monthly payments collected would not be used to pay the creditors. Therefore, once the creditors failed to receive payment, the creditors would notify the Respondents and not the actual consumers. As a result, the consumers were not notified that their accounts were in default, pending foreclosure, or pending repossession. The Agency finds this fact to also be material as it was intended to deceive the consumers and the information would be important to consumers in determining their course of action. In *Green*[16], the Court of Appeals held "[a]n omission is material if a significant number of unsophisticated consumers would find that information important in determining a course of action." Based on the testimony, the deception worked as Ms. Anderson had no idea NFCU had not been paid and planned to repossess her vehicle or that the mortgage had not been paid and her home was in foreclosure. Sadly, Ms. Anderson learned of the vehicle when NFCU repossessed the vehicle while she was out with her children and learned of the foreclosure based on filings she received at home.

Dr. Anania and Mr. Hernandez also learned their accounts were in default when the creditors either directly contacted them or in the case of Mr. Hernandez, foreclosed on his home in Virginia. To further the deceptive practices, Respondent Wittenberg mailed "tenders" to

---

[16] See *Green v. H&R Block, Inc.*, 355 Md. 488 (1998).

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

Case 1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 181 of 430 PageID #: 375

various creditors as payment in full of the outstanding debt.  Using this method, Respondent Wittenberg misrepresented his connection with the creditor's CFOs and the U.S. Treasury. Respondent Wittenberg falsely alleged the creditors had three opportunities to accept the "tenders" and if not accepted the debt would be dissolved.  Ms. Anderson, Dr. Anania, Mr. Hernandez, Pastor Ijeh, and Mr. Njai all testified to this "tenders" process.  Pastor Ijeh testified that Respondent Wittenberg mailed "tenders" to Foundation Capital to try and pay for the church, but they were rejected.  Mr. Njai testified that Respondent Wittenberg promised to dissolve the NFCU vehicle debt with the "tenders," but NFCU accepted the $42.00 and returned the signed postage stamps because they lacked monetary value.  NFCU also noted that payments were outstanding and had not been received, although Respondent Wittenberg falsely represented, he made payments.

Because the Agency finds the Respondents violated MARS and MCSBA, the Agency also finds the Respondents violated the CPA.  (Real. Prop. §7-510, Com. Law §14-1914).  The Agency further finds that the Respondents violated MCSBA, MMTA, and MDMSA as they lacked the required license and surety bond.  (Com. Law. 13-301(1) and (2)).  A violation of the statue is also a violation of the CPA.[17]  Further, in *Consumer Protection Division v. Morgan*, 387 Md. 125, (2005), the Court of Appeals held the Proponent need not show scienter to prove a CPA violation, "the subsections require only a false or deceptive statement that has the capacity to mislead the consumer…" In this case, the Agency finds the Respondents violated MMTA and MDMSA by providing false and deceptive statements to consumers regarding the offer, sale, and performance of the debt dissolution program, the savings, legal advice, upfront collection of fees, payment to creditors, and the working relationship between the Respondents.  (Fin. Inst. §§ 12-414 and 12-920(a)(6)).

---

[17] Real. Prop. §7-510; Com. Law §14-1914.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 182 of 430 PageID
#: 376

**Deceptive Trade Practices**

The Agency finds the Respondents engaged in deceptive trade practices as they misled consumers to believe Respondent Wittenberg had extensive wealth to dissolve debts. Respondent Bailey misled consumers, including her friends Ms. Anderson and Dr. Anania, that she had an accounting license to provide accounting services. Respondent Bailey further misled consumers to believe Respondent Wittenberg had sufficient money and connections with the U.S. Department of the Treasury to dissolve debts with the use of legal "tenders." The deception continued as the debt dissolution program and legal documents lead consumers to make large upfront payments and monthly payments to the Respondents for services they could not render. The deceptive and misleading practices caused consumers to lose homes, vehicles, experience financial loss, defaults, and decreased credit scores. The ALJ found all the consumers who presented live testimony during the hearing to be credible. The ALJ further found the testimony of Mr. Schafer to be credible as he recounted the experiences of many other consumers. The bank records presented by the CPD show the money received from each consumer was deposited into the personal accounts of Respondent Bailey and Respondent Wittenberg. Further, the bank records show the two Respondents transferred money between each other for their own personal expenses. The Respondents never disclosed their actual intentions or lack of legal services.

Lastly, the Agency finds the Respondents lacked the appropriate licenses to lawfully operate under the MCSBA, MMTA, and the MDMSA. While the OCFR does not require a license to provide mortgage assistance relief services, the Agency further finds the Respondents engaged in prohibited conducted as identified by MARS and 12 CFR § 1015.3.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-cv-00490-MSM-PAS     Document 5     Filed 11/21/23     Page 183 of 430 PageID
#: 377

**Unfair Trade Practices**

The Agency finds the Respondents engaged in unfair trade practices by offering and selling mortgage assistance relief services, credit services, money transmission services, and debt management services to consumers. The Respondents each participated and offered the above-mentioned services with full knowledge they lacked the required licenses from the OCFR to comply with MMTA, MDMSA, and MCSBA. While the OCFR does not require a license to provide mortgage assistance relief services, the Agency further finds the Respondents engaged in prohibited conduct as identified by MARS and 12 CFR § 1015.3. The Agency finds the Respondents provided nonsensical documentation and agreements to support the ultimate intent to collect money from unsuspecting consumers. The promises to save consumers money were fictitious and the debt management services failed to comply with applicable law. Due to the unfair trade practices, the Respondents deprived the consumers of applicable protections such as a surety bond to seek refund or compensation for lose money. Due to the lack of information and honesty by the Respondents, the consumers could not avoid financial injury, foreclosure, defaults, and decreased credit scores.

**Abusive Trade Practices**

The Agency finds the Respondents engaged in abusive trade practices because they misled consumers into paying for bogus services as the Respondents provided fictitious documents containing blatant lies about debt dissolution, debt savings, and the length of the program. In addition, the Respondents failed to provide consumers with executed documentation or competent education to explain the program. The Respondents collected upfront fees and monthly payments, not to pay toward the consumers' debts but to use for personal purposes. This practice abused the consumers, as they lacked knowledge of the accounts in default causing

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 184 of 430 PageID
#: 378

repossessions and foreclosures. The repossessions and foreclosures occurred without the knowledge of the consumers, as they believed the Respondents paid the bills as agreed. The Respondents further provided frivolous legal documentation and legal advice to unsuspecting consumers who relied on the Respondents for financial assistance. Because the Respondents required the consumers to cease all communication with creditors, the consumers relied on the Respondents to their detriment.

Because the Agency finds violations of the above-mentioned statutes, each Respondent is personally liable, jointly and severally, as they worked together to mislead consumers. Respondent Bailey as the sole owner of Signature Accounting used her business letterhead and website, and shared a business address with Respondent Wittenberg to make misrepresentations to consumers. Along with Respondent Bailey, Respondent Wittenberg also operated as an agent of the Wittenberg Family Trust using the shared mailing address with Respondent Bailey to accept payments. Together and separately, the Respondents collected money from the consumers and also shared proceeds between each other.

For the reasons outlined above, the Agency finds Respondent Bailey and Respondent Wittenberg offered and sold mortgage assistance relief services, credit services, debt management services, and money transmission services without proper licensure in violation of MCSBA MMTA, and MDMSA. While the OCFR does not require a license to provide mortgage assistance relief services, the Agency further finds the Respondents engaged in prohibited conducted as identified by MARS and 12 CFR § 1015.3. Because the Agency finds violations of MARS, MCSBA, MMTA, and MDMSA the Agency finds the Respondents also violated the CPA by engaging in the unfair trade practices, deceptive trade practices, and abusive trade practices.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 185 of 430 PageID
#: 379

## CONCLUSIONS OF LAW

Based upon the above Findings of Fact and Discussion, the Agency makes the following

Conclusions of Law:

Maryland Mortgage Assistance Relief

1.  The Respondents offered and sold mortgage assistance relief services within the scope of MARS. Real Prop. § 7-502 (2015 & Supp. 2021) and 12 CFR § 1015.2 (2022).

2.  The Respondents violated MARS by requiring consumers to cease and decease communication with creditors in connection with the performance of the promised mortgage assistance relief services. Real Prop. § 7-502 (2015 & Supp. 2021) and 12 CFR § 1015.3(a) (2022).

3.  The Respondents violated MARS by misrepresenting material details of the mortgage relief assistance services offered. Real Prop. § 7-502 (2015 & Supp. 2021) and 12 CFR § 1015.3(b) (2022).

4.  The Respondents violated MARS by misrepresenting the benefits of the debt dissolution program. Real Prop. § 7-502 (2015 & Supp. 2021) and 12 CFR § 1015.3(c) (2022).

5.  The Respondents violated MARS by collecting advance payments before consumers signed a written agreement with the mortgage lender or servicer. Real Prop. § 7-502 (2015 & Supp. 2021) and 12 CFR § 1015.5(a) (2022).

6.  The Respondents violated MARS by misrepresenting to consumers that the Respondents would provide legal representation. Real Prop. § 7-502 (2015 & Supp. 2021) and 12 CFR § 1015.3(b)(8) (2022).

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 186 of 430 PageID #: 380

7.  The Respondents violated MARS by failing to provide required disclosures regarding consumer rights and other required disclosures.  Real Prop. § 7-502 (2015 & Supp. 2021) and 12 CFR § 1015.4 (2022).

8.  The MARS violations committed by the Respondents are unfair trade practices, deceptive trade practices, and abusive trade practices under the CPA.  Com. Law § 13-303 (2013 & Supp. 2021) and Real Prop. § 7-510 (2015 & Supp. 2021).

Maryland Credit Services Business Act

9.  The Respondents offered and sold credit services within the scope of MCSBA. Com. Law § 14-1901(e) (2013 & Supp. 2021).

10.  The Respondents violated MCSBA by offering and selling credit services in exchange for upfront payments and monthly payments, before completion of the services, and without a license from the Office of the Commissioner of Financial Regulation.  Com. Law § 14-1902(1), (6) (2013 & Supp. 2021).

11.  The Respondents violate MCSBA by offering and selling credit services without having a surety bond.  Com. Law § 14-1908 (2013 & Supp. 2021).

12.  The Respondents violated MCSBA by failing to provide consumers with consumers rights, notice of cancellation provision, and other required information.  Com. Law §§ 14-1905 and 14-1906 (2013 & Supp. 2021).

13.  The Respondents violated MCSBA by making false and misleading representations when they offered and sold credit services.  Com. Law § 14-1902(4) (2013 & Supp. 2021).

14.  The MCSBA violations committed by the Respondents are unfair trade practices, deceptive trade practices, and abusive trade practices under the CPA.  Com. Law

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 187 of 430 PageID
#: 381

§ 13-303 and § 14-1914 (2013 & Supp. 2021).

15.  Respondents violated the MCSBA, Com. Law §14-1902(5) by engaging, directly and indirectly, in acts, practices, and a course of business which operate as a fraud or deception on consumers in connection with the offer or sale of credit services.

16.  Respondents violated the MCSBA, Com. Law §14-1903(b) by operating a credit services business without a license.

17.  Respondents violated the MCSBA, Com. Law §14-1904(b) by receiving money from consumers and executing contracts with consumers prior to providing consumers with a written information statement containing the information required by Com. Law § 14-1905.

Deceptive Trade Practices:

18.  The Respondents violated the CPA by making false or misleading oral or written statements or other representations that have the capacity, tendency or effect of deceiving or misleading consumers and constitute deceptive trade practices identified in sections 13-301(1) and 13-303 of the Commercial Law Article by:

   a.  Representing, indicating, or implying that they will perform mortgage assistance relief services, money transmission services, and debt management services for consumers when, in fact, Respondents failed to provide such services;

   b.  Representing that their services would reduce the consumers' debts and save consumers money, when in fact, the Respondents failed to reduce debts and save money and instead the Respondents failed to make payments as agreed;

   c.  Representing that they would reduce the consumers' debts in a matter of

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

Case 1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 188 of 430 PageID #: 382

years, when in fact, the Respondents failed to reduce debts within the promised time period because the Respondents failed to make payments as agreed;

d.  Implicitly or explicitly representing to consumers that they can lawfully provide credit services, money transmission services, and debt management services to consumers, when in fact, the Respondents cannot legally offer, sell, or provide those services as the Respondents do not hold, and have never held, the licenses required by the MCSBA, the MMTA, or the MDMSA to provide the services;

e.  Representing, indicating, or implying that they can collect advance payments from consumers in connection with the offer or sale of mortgage assistance relief services, credit services, money transmission services, and debt management services, when in fact, the collection of advance payments is prohibited by MARS, the MCSBA, and the MDMSA unless and until the specified conditions are met; and

f.  Expressly and impliedly misrepresenting to consumers that the upfront fees and monthly payments were being used to pay down debts, when in fact the Respondents only paid $60,974.35 to creditors of the $813,914.01 collected;

g.  Expressly and impliedly misrepresenting to consumers who inquire about or challenge the Respondents' actions leading to the filing of foreclosure actions and car repossessions that such setbacks are normal and to be expected in the course of mortgage assistance relief services, credit services, money transmission services, and debt management services, and that consumers

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 189 of 430 PageID
#: 383

should continue making their monthly payments to Respondents.

19.    The Respondents engaged in deceptive trade practices prohibited by section 13-303 of the Commercial Law Article, as defined in section 13-301(2)(ii) of the Commercial Law Article by making representations that they have sponsorship, approval, status, affiliation, or connection, which they do not have by (a) misrepresenting the Respondent Wittenberg's wealth and education and Respondent Bailey's accounting license, and (b) impliedly representing that the Respondents were licensed under the MCSBA, the MMTA, and the MDMSA and could lawfully provide credit services, money transmission services, and debt management services to consumers, when in fact, the Respondents have never been licensed as required by the MCSBA, the MMTA, and the MDMSA.

20.    The Respondents engaged in deceptive trade practices prohibited by section 13-303 of the Commercial Law Article, as defined in section 13-301(3) of the Commercial Law Article, by failing to state material facts that deceived or tended to deceive Maryland consumers by:

a.    Failing to disclose that Respondent Bailey lacked a license in accounting from the Maryland Board of Public Accountancy;

b.    Failing to disclose that they were unwilling and/or unable to provide mortgage assistance relief services, credit services, money transmission services, and debt management services;

c.    Failing to disclose that they were not licensed as required by the MCSBA, the MMTA, and the MDMSA, and therefore, could not lawfully provide services to consumers;

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

Case 1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 190 of 430 PageID #: 384

d. Failing to hold a surety bond and failing to disclose they did not hold a surety bond;

e. Failing to disclose to consumers that they did not forward consumers' money to the creditors as promised, resulting in consumers unknowingly defaulting on loans, experiencing foreclosure, and vehicle repossession;

f. Failing to provide consumers with required disclosures and notices, including statements regarding consumer rights, as required by MARS, the MCSBA, and the MDMSA; and

g. Failing to disclose that the Respondents did not employ attorneys and therefore could not provide legal services.

21. The Respondents engaged in deceptive trade practices as prohibited by section 13-303 of the Commercial Law Article, as defined in section 13-301(9)(i) of the Commercial Law Article, by making misrepresentations and omissions of material fact concerning the provision of the promised services, with the intent that consumers rely on the same, in connection with the promotion or sale of consumer services.

22. The Respondents' statutory violations of MARS constitute unfair or deceptive trade practices prohibited by section 13-303 of the Commercial Law Article and pursuant to section 7-510(1) of the Real Property Article.

23. The Respondents' statutory violations of MCSBA constitute unfair and deceptive trade practices prohibited by section 13-303 of the Commercial Law Article and pursuant to section 14-1914(a) of the Commercial Law Article.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 191 of 430 PageID #: 385

Unfair Trade Practices

24.     The Respondents engaged in unfair trade practices prohibited by section 13-303 of the Commercial Law Article by offering or selling mortgage assistance relief services, credit services, money transmissions services and debt management services to consumers.

25.     The Respondents' illegal offer or sale of mortgage assistance relief services, credit services, money transmission services, and debt management services and failure to perform the offered services substantially harmed consumers, who relied on the Respondents to consolidate their debts, when instead the Respondents took payments and converted payments to their own personal use, and as a result consumers lost their vehicles, homes, and sustained decreases in credit scores.

26.     The Respondents' failure to comply with the requirements of MARS, the MMTA, the MDMSA, and the MCSBA further harmed consumers by depriving them of the protections put in place by the Maryland General Assembly to shield consumers from financial injury.

27.     The consumers could not reasonably avoid being injured by the Respondents' unfair trade practices because they had no way of knowing that Respondents were unwilling and unable to provide the services they offer and sell, would not pay their creditors, and would not comply with Maryland law.

28.     The Respondents' collection of payments from consumers to purportedly assist them in paying off debts and then wrongfully using such payments for their own personal use, and their illegal offer and sale of mortgage assistance relief

services, credit services, money transmission services, and debt management services is conduct that is not outweighed by any countervailing benefits to consumers or competition.

29.    The Respondents' statutory violations of MARS constitute unfair trade practices prohibited by section 13-303 of the Commercial Law Article and pursuant to section 7-510(1) of the Real Property Article.

30.    The Respondents statutory violations of MCSBA constitute unfair trade practices prohibited by section 13-303 of the Commercial Law Article and pursuant to section 14-1914(a) of the Commercial Law Article.

<u>Abusive Trade Practices</u>

31.    The Respondents engaged in abusive trade practices as prohibited by section 13-303 of the Commercial Law Article.

32.    The Respondents materially interfered with the ability of the consumers to understand the terms and conditions of the consumer financial services the Respondents purportedly offered by the Respondents' barrage of misrepresentations including, but not limited to, blatant lies about the efficacy of the program, fabricated calculations to demonstrate alleged program savings, false press releases and lies about their backgrounds and status; providing incomprehensible documents; collecting consumer money under the guise of saving money without performing any service of value whatsoever; and claiming car repossessions and foreclosure actions are a normal and expected part of the program and are not events that should concern the consumers.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

Case 1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 193 of 430 PageID
#: 387

33.  The Respondents took unreasonable advantage of the consumers' lack of understanding regarding the financial services they offer and sell by:

a.  Among other things, providing incomprehensible documents purportedly outlining the terms and conditions of the program and by manipulating consumers who question the Respondents' practices;

b.  Preventing consumers from protecting their own interests given the Respondents deceptions regarding the financial services they offer and sell and their interference with consumers' communications with their creditors; and

c.  Encouraging consumers to reasonably rely on the Respondents to act in the consumers interest based on the Respondents' blatant misrepresentations described above.

34.  Each time the Respondents received a payment from a consumer, the Respondents engaged in unfair, deceptive, trade practices in violation of the CPA. In total, the Respondents received $813,914.01 in payments from consumers, over the course of 114 transactions.

35.  The Respondents engaged in unfair, deceptive, and abusive trade practices during their activities from January 2018 through May 2021.

36.     Respondents Marcia Bailey, Marcia L. Bailey, Inc. T/A Signature Accounting, Arthur Wittenberg, and the Wittenberg Family Trust are, direct participants in the acts and therefore are jointly and severally liable for the unfair, deceptive, and abusive trade practices.

                                        CONSUMER PROTECTION DIVISION
                                        OFFICE OF THE ATTORNEY GENERAL

Date: August 15, 2022              By: _____
                                        Steven M. Sakamoto-Wengel
                                        Consumer Protection Counsel for Regulation,
                                        Legislation and Policy and Chief's Designee

86

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 195 of 430 PageID
#: 389

## APPENDIX: FILE EXHIBIT LIST

The following exhibits were admitted on behalf of the Consumer Protection Division:

| Exhibit No. | Description |
|---|---|
| 1 | Affidavit of Service (Statement of Charges) |
| 2 | 6.11.2021 CPD v. Marcia Bailey, et al., In the Cir. Ct. for Balto. Co., Case No. C-03-CV-21-001555: Preliminary Injunction Hearing Transcript |
| 3 | 6.11.2021 Order Granting Preliminary Injunction |
| 4 | State v. Arthur Wittenberg Cir. Ct. Mo. Co., Case No. 121842-C Certified Records |
| 5 | Bellman - Resume |
| 6 | Bellman - Affidavit |
| 7 | Anderson - Affidavit with Attached Exhibits |
| 8 | Anderson - 10.24.2018 to 1.18.2019 Emails |
| 9 | Anderson - 1.7.2019 Letter of Intent; Detail Sheet; Wire Instructions; and 1.17.2019 Email (executed signature page attached) |
| 10 | Anderson - 1.24.2019 Agreement to Dissolve Debt |
| 11 | Anderson - 1.24.2019 Program Documents |
| 12 | Anderson - 1.16.2019 Letters to Creditors Re: Intent to Transfer Title to Wittenberg Family Trust |
| 13 | Anderson - 2.14.2019 Email Re: Mailing Cease and Desist Letters to Creditors |
| 14 | Anderson - 1.17.2019 Signature Accounting One Time Payment Authorization Form: Visa $25,197.40 |
| 15 | Anderson - 2.21.2019 NFCU Check No. 100000 Anderson to Bailey $13,500 |
| 16 | Anderson - 3.4.2019 USAA Check No. 55001 Anderson to Bailey $2074.61 |
| 17 | Anderson - 4.25.2019 to 8.28.2019 Creditor Default Letters |
| 18 | Anderson - 2.6.2019 to 1.7.2020 Emails (accounts status) |

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-cv-00490-MSM-PAS   Document 5   Filed 11/21/23   Page 196 of 430 PageID
#: 390

| 19 | Anderson - 4.1.2019 to 1.22.2020 Text Messages (accounts status) |
| 20 | Anderson - 8.12.2019 to 10.8.2019 Emails (vehicle repossession) |
| 21 | Anderson - 8.8.2019 Email (draft pleadings for NFCU lawsuit) |
| 22 | Anderson - 8.8.2019 Email (instructions to file NFCU lawsuit) |
| 23 | Anderson - 8.9.2019 to 8.28.2019 Emails (docket updates) |
| 24 | Anderson - 8.28.2019 Email (acknowledging docket update) |
| 25 | Anderson - 9.11.2019 Email (court order to file amended complaint) |
| 26 | Anderson - 9.11.2019 Email (NFCU Notice of Appearance/Motion to Dismiss) |
| 27 | Anderson - 10.3.2019 Email (responses to Motion to Dismiss) |
| 28 | Anderson - 10.10.2019 to 10.21.2019 Emails (case management) |
| 29 | Anderson - 10.30.2019 Email (credit bureau letters, status of lawsuit) |
| 30 | Anderson - 11.22.2019 Email (lawsuit dismissal order) |
| 31 | Anderson - 12.4.2019 to 12.21.2019 Emails (Notice of Appeal/receipt from NFCU counsel) |
| 32 | Anderson - 12.21.2019 to 1.16.2020 Emails (Status of Appeal) |
| 33 | Anderson - 12.27.2019 Email (discussion points) |
| 34 | Anderson - 12.4.2019 to 1.23.2020 Text Messages (car) |
| 35 | Anderson - 1.21.2020 Email (car shipping refund) |
| 36 | Anderson - 9.6.2019 Lakeview Loan Servicing v. Anderson foreclosure complaint |
| 37 | Anderson - 8.28.2019 to 1.21.2020 Emails (Answer for foreclosure action) |
| 38 | Anderson - 1.13.2020 to 1.16.2020 Emails (foreclosure action) |
| 39 | Anderson - 4.3.2020 Third Party Complaint (foreclosure action) |
| 40 | Anderson - 1.7.2020 Email (wire instructions to Wittenberg Family Trust) |
| 41 | Anderson – Tenders |

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 197 of 430 PageID #: 391

| 42 | Ijeh - 4.6.2019 Solicitation Letter |
|----|------|
| 43 | Ijeh - Docket Sheet - Debtor: Redeemed Christian Church of God, River of Life, In the U.S. Bankruptcy Court District of Maryland, Case No. 20-11902 filed 2.13.2020 |
| 44 | Ijeh - 3.25.2020 Agreement to Transfer Property and Dissolve Debt |
| 45 | Ijeh - 6.2.2020 Mutual Settlement Agreement and Release of Claims |
| 46 | Ijeh - 6.1.2020 Program Documents |
| 47 | Ijeh - 6.11.2020 Deed of Trust |
| 48 | Ijeh - 6.11.2020 Promissory Note between River of Life Trust and Wittenberg Family Trust |
| 49 | Ijeh - 5.16.2020 to 9.17.2020 Wittenberg Family Trust Letters |
| 50 | Ijeh - Payments by Redeemed Christian Church of God, River of Life to Wittenberg Family Trust/Tenders Issued by Wittenberg Family Trust To Foundation Capital Resource |
| 51 | Ijeh - Docket Sheet *Arthur of the family Wittenberg v. Foundation Capital Resource, Inc.*, In the Cir. Ct. for PG Co., Case No. CAE20-20012 |
| 52 | Ijeh - *Arthur of the family Wittenberg v. Foundation Capital Resource, Inc.*, In the Cir. Ct. for PG Co., Case No. CAE20-20012, Motion to Set Aside Default Judgment filed 9.21.2020 |
| 53 | Ijeh - Docket Sheet for Debtor: The Redeemed Christian Church of God, River of Life Maryland, In the U.S. Bankruptcy Court District of Maryland, Case No. 21-14554 filed 7.9.2021 |
| 54 | Ijeh - Affidavit of David Ijeh |
| 55 | Ijeh - 12.2.2021 Bankruptcy Court Order |
| 56 | Njai - MVA Registration Certificate |
| 57 | Njai - 8.14.2019 to 9.13.2019 NFCU Statement |
| 58 | Njai - 9.5.2019 Agreement to Dissolve Debt |
| 59 | Njai - 10.5.2019 Program Documents |
| 60 | Njai - 10.5.2019 Letter to NFCU |

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 198 of 430 PageID #: 392

| 61 | Njai - 11.21.2019 Letter from NFCU, Receipt, and Stamps |
| 62 | Njai - 11.26.2019 Email (program withdrawal) |
| 63 | Anania - 1.16.2018 Offer: Agreement to Dissolve Debt and Transfer Parkway Family Eye Clinic |
| 64 | Anania - 1.16.2018 Program Documents |
| 65 | Anania - 1.16.2018 Authorizations To Release Loan Information/POA (personal debts) |
| 66 | Anania - 1.16.2018 Bill of Sale (cars) |
| 67 | Anania - 1.16.2018 Authorizations To Release Loan Information/POA (business debts) |
| 68 | Anania - 3.15.2018 Chase Bank Payoff Statement (Honda) |
| 69 | Anania - 3.2018 to 2.2019 Checks to Chase Automotive Finance (Honda) |
| 70 | Anania - 8.8.2018 Brandbank Email |
| 71 | Anania - 9.12.2018 to 3.21.2019 Vision One Emails |
| 72 | Anania - 12.28.2018 to 4.29.2019 Renasant Bank Emails |
| 73 | Anania - 2.18.2019 Nelnet Email |
| 74 | Anania - 3.21.2019 Email (Trust Account) |
| 75 | Anania - Tenders |
| 76 | Anania - 4.23.2019 to 6.25.2019 Creditor Default Letters |
| 77 | Anania - 7.1.2019 Email (summons docs) |
| 78 | Anania - 7.9.2019 Email (abatement attached) |
| 79 | Anania - 7.25.2019 Email (abatement for Vision One) with First Amendment Petition for Abatement attached |
| 80 | Anania - 7.30.2019 Email (Renasant Bank/New Correspondence from Wittenberg) with rejected Tenders attached |
| 81 | Anania - 8.25.21 Letter from Great Lakes Bank (student loan) with attachments |

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

3-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 199 of 430 PageID
#: 393

| 82 | Anania - Complaint Douglas A. Anania, et al. v. Arthur Wittenberg and Marcia Bailey, In the Superior Court of DeKalb County, GA, Civil Action No. 20CV4650 |
|---|---|
| 83 | Hernandez - Affidavit with attachments |
| 84 | Hernandez - 10.11.2018 Letter of Intent (909 Benson Terrace Trust) |
| 85 | Hernandez - 10.15.2018 Letter of Intent (11902 Molly Pitcher Circle Trust) |
| 86 | Hernandez - 11.1.2018 Recission Letter-Liquidation of Debt R1 |
| 87 | Hernandez - 5.2019 Private Banking Debt Liquidation Program Term Sheet and Wire Transfer Instructions |
| 88 | Hernandez - 5.2019 Loan Statements |
| 89 | Hernandez - 5.30.2019 Agreement to Dissolve Debt with Addendum |
| 90 | Hernandez - 6.3.2019 Program Documents (909 Benson Terrace Trust) |
| 91 | Hernandez - 6.3.2019 Program Documents (11902 Molly Pitcher Circle Trust) |
| 92 | Hernandez - 6.5.2019 Letters to Creditors (payoff statement request) |
| 93 | Hernandez - 6.10.2019 Letters to Creditors (cease and desist) |
| 94 | Hernandez - 6.15.2019 Second Letter Creditors-Payoff Statements |
| 95 | Hernandez - 7.2.2019 Check 151 to Signature Accounting; Bank of America Recurring Billing Statement |
| 96 | Hernandez - 7.11.2019 to 11.6.2019 Creditor Default Letters |
| 97 | Hernandez - Tenders |
| 98 | Hernandez - 11.26.2019 Check 179 to Arthur Wittenberg For: Bill In Equity |
| 99 | Hernandez - Wittenberg Family Trust v. Mr. Cooper US District Court Complaint |
| 100 | Hernandez - Texts (lawsuit) |
| 101 | Hernandez - Minnesota Certificate of Existence and Registration, Certificate of Assumed Name |
| 102 | Hernandez - Hernandez v. Arthur Wittenberg & Marcia Bailey, In the Cir. Ct. for |

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 200 of 430 PageID
#: 394

|     | Mo. Co., Case No. V482279 Complaint and Judgment |
| --- | --- |
| 103 | Hernandez - Praecipe to Set Hearing on Voluntary Non-Suit, In the Cir. Ct. for PW Co., VA, Case No. CL20-815 |
| 104 | Schafer - 3.29.2021 Screen Shot Marcia Bailey Linked-In Page |
| 105 | Schafer - 1.23.2020 Video Signature Accounting Website with WFT solicitation (on CD) |
| 106 | Schafer - Signature Accounting Website Screen Shots |
| 107 | Schafer - Marcia Bailey Inc. Articles of Incorporation, Resolution, Trade Name |
| 108 | Schafer - Marcia Bailey Department of Treasury Tax Preparer Identification Number Documents |
| 109 | Schafer - Affidavit of Christopher Dorsey, Director of Maryland Board of Public Accountancy |
| 110 | Schafer – Bullock Documents |
| 111 | Schafer - 4.6.2019 Solicitation Letter from Marcia Bailey to Mr. and Mrs. Paul Manafort |
| 112 | Schafer - 3.29.2021 Screen Shot Arthur Wittenberg Linked-In Page/Home Magic Decorating Website |
| 113 | Schafer - 7.29.2021 Arthur Wittenberg Parole and Probation Certificate/Order |
| 114 | Schafer - 8.18.2021 Arthur Wittenberg MVA Certified Driving Record Information |
| 115 | Schafer - Affidavit of Dr. Paul Gregoire, Registrar and Dean, New Orleans Baptist Theological Seminary |
| 116 | Schafer - 7.8.2021 Letter from Michele Williams, Interim Registrar, Wittenberg University with website screen shots attached |
| 117 | Schafer - Screen Shot 41NBC-WMGT Georgia Local News Story 7.19.2019 "Foundation seeks Georgia families to help avoid foreclosures" |
| 118 | Schafer - Screen Shot WWAY TV News Story 2.20.2018 "Accounting Firm says client wants to buy Carolina Panthers" |
| 119 | Schafer - Wittenberg Family Trust Formation Document/Amendment |
| 120 | Schafer - Irvin and Patricia Betch Documents |

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/10/2023 4:50 PM
Envelope: 4229649
Reviewer: Lindsay Z.

Case 1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 201 of 430 PageID #: 395

| 121 | Schafer - Irvin and Patricia Betch Replevin Hearing: (A) Certificate of Authenticity; (B) Recording (on CD) |
| 122 | Schafer - William Franklin and Iesha Fields Documents |
| 123 | Schafer - Eugene Harris Documents |
| 124 | Schafer - Brian Hockaday Documents |
| 125 | Schafer - Gerard P. McGovern Documents |
| 126 | Schafer - Shunta Sims Documents |
| 127 | Schafer - Clint Walker Documents |
| 128 | Schafer - Respondents Bank Records - Color Coded |
| 129 | Schafer - Consumer Payments Summary |
| 130 | Schafer - Signature Accounting and Wittenberg Family Trust Payment Summary |
| 131 | Schafer - 7.29.2019 to 1.8.202 Emails between Marcia Bailey and Arthur Wittenberg |

# IN THE SUPERIOR COURT KENT COUNTY
# STATE OF RHODE ISLAND

NO. KC-2023-0303                                          DIVISION:

**ARTHUR OF THE FAMILY WITTENBERG**
701 Loyola Avenue, Unit 57867
New Orleans, LA 70113
*PLANITIFF*

*V.*

**Caterine V. Eastwood**
**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**John McNicholas**
**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**NEW YORK COMMUNITY BANCORP, INC**
**102 Duffy Ave. Hicksville, NY 11801**
d/b/a
**FLAGSTAR BANK**
5151 Corporate Drive
Troy, MI 48098

**James K. Ciroli, CFO**
**FLAGSTAR BANK**
5151 Corporate Drive
Troy, MI 48098
*DEFENDANTS*

FILED: _____                    _____
                                                                    DEPUTY CLERK

KENT SUPERIOR COURT
FILED
CLERK'S OFFICE
23 AUG · 8  PM 12: 46

# NOTICE OF CLAIM AGAINST BRIAN VAN COUYGHEN, d/b/a, judge, FOR VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT OF 1946, OBSTRUCTION OF THE ADMINISTRATION OF JUSTICE, AND VIOLATION OF CONSTITUTIONAL RIGHT UNDER COLOR OF LAW

["Cujusque Rei Potissima Pars"][The Principle Part Of Everything Is In The Beginning]

I

NOW COMES, the Plaintiff who has formally introduce himself to this court, as the real man, Arthur of The Family Wittenberg, a Private American National/Non "U.S. citizen", Executor, Grantor, Settlor, Agent, and Beneficiary, of the Estate of ARTHUR WITTENBERG, one of we the people, and not the artificial entity known as ARTHUR WITTENBERG, who is not an attorney of the BAR, by special appearance, without waiving any rights, defenses, statutory or procedural, before this court to enter this NOTICE  OF  CLAIM. Brian Van Couyghen, d/b/a, judge, violated the "administrative Procedures Act of 1946, and obstructed the administration of justice. Brian Van Couyghen, d/b/a, judge, also violated the following criminal statutes in his judgment including but not limited to: 18 USC § 241, Conspiracy Against Rights; 18 USC § 242, Deprivation of Rights Under Color of Law; 18 USC § 1505, Obstruction of Justice; 18 USC § 371, Conspiracy to Commit Offense; 28 USC § 535(b) (1) when he took unlawful jurisdiction and granted the Defendants TRO even when he continued said MOTION til August 31, 2023, during a HEARING August 3, 2023, and when the Plaintiff expressed to Brian Van Couyghen, d/b/a, judge, of the underhanded, and deceptive practice of the Defendant the court ignored the plaintiff concerns. Notwithstanding, this court has ignored every motion filed by the plaintiff in this action, and when the Defendants failed or refused to respond to the Plaintiffs Complaint within the allowed time specified under the Rhode Island rule of civil procedures it was overlooked, and when the Defendants failed or refused to provide Plaintiff with a copy of the documents they are filing into court records, the Plaintiff have to fly to Rhode Island, because he is not allow excess to the online although Plaintiff is an out of state litigant, which in itself is a unfair advantage being granted to fellow BAR members, and prejudice against the Plaintiff, who filed a MOTION FOR EQUAL ACCESS, that have been ignored, buy this court, til this date, and at the last HEARING, the Plaintiff of asked if Brian Van Couyghen, d/b/a, judge, would HEAR the MOTION FOR EQUAL ACCESS, since he was in town, Brian Van Couyghen, d/b/a, judge, declined to do so.


## I. Introduction:

1.1 The docket sheet shows that Brian Van Couyghen, d/b/a, judge, fraudulent order that the Defendants MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION AND REQUEST FOR EMERGENCY HEARING, be continued til August 31, 2023, then GRANTED a TRO, in his ORDER to CONTINUE. **See Exhibit A**, a copy of the Judge's order.

1.2 The docket shows the Plaintiff's "MOTION FOR CONTINUANCE," was heard and GRANTED on August 3, 2023, and Brian Van Couyghen, d/b/a, judge, ignored his ORDER, and gave an unfair advantage to fellow BAR members, when he included the Defendants request within the ORDER to CONTINUE. see docket sheet Granting Defendants MOTION in part, which said MOTION was not being HEARD at this time. **Exhibit A**

### II. Plaintiff Challenges Brian Van Couyghen, d/b/a, judge, Jurisdiction:

2.1 The plaintiff did not sign or agree to allow jurisdiction to HEAR the Defendants MOTION for TRO. whereby Brian Van Couyghen, d/b/a, judge acted without Jurisdiction and his judgment is void.

2.2 The jurisdiction of a court over a hearing and more importantly subject matter has been said to be essential, necessary, indispensable and an elementary prerequisite to the exercise of judicial power. 21 C.J.S., "Courts," § 18, p. 25.

2.3 A departure by a court from those recognized and established requirements of law, however close apparent adherence to mere form in method of procedure, which has the effect of depriving one of a constitutional right, is an excess of jurisdiction." Wuest v. Wuest, 127 P2d 934, 937.

2.4 It is elementary that the jurisdiction of the court over the subject matter of the action is the most critical aspect of the court's authority to act. Without it the court lacks any power to proceed; therefore, a defense based upon this lack cannot be waived and may be asserted at any time.

2.5 "Once the impartiality of s judge is challenged, The law requires the automatic disqualification of Judge's under certain circumstances. In 1994, the U.S. Supreme Court held that "Disqualification is required if an objective observer would entertain reasonable questions about the judge's impartiality. If a judge's attitude or state of mind leads a detached observer to conclude that a fair and impartial hearing is unlikely, the judge must be disqualified.

### III. Failure to Respond:

3.1 If a Defendant fails to answer the complaint or file a motion to dismiss within the time limit

set forth in the summons, the defendant is in default.

3.2 The Plaintiff can ask the court clerk to make a note of that fact in the file, a procedure called entry of default.

3.3 Entry of default means that because the Defendant has failed to appear, the defendant will not be permitted to contest whether he or she is liable to the plaintiff.

3.4 Instead, the only question in dispute is how much the Plaintiff should receive in damages.

### IV. Reservation of Rights:

4.1 I reserve my right not to be compelled to perform under any contract, commercial agreement that I did not enter knowingly, voluntarily, and intentionally. And furthermore, I do not and will not accept the liability of the compelled benefit of any unrevealed contract or commercial agreement.

4.2 I have reserved my rights under the UCC 1-308, formally 1-207, and demand the statutes used in this court be construed in harmony with Common Law.

4.3 The code is complementary to the common law, which remains in force, except where displaced by the code.

4.4 A statute should be construed in harmony with the common law unless there is a clear legislative intent to abrogate the common law.

4.5 The code was written as not to abolish the common law entirely.

4.6 I was not involved with an international maritime contract, so in good faith, I deny that such a contract exists, and demand the court proceed under Common Law Jurisdiction.

4.7 I'm only aware of two jurisdictions the court can operate under as per the Constitution, and those jurisdictions are Common Law, and Admiralty Jurisdiction.

4.8 If the court chooses to proceed under Admiralty Jurisdiction, I' will need the court to inform me where I' can find the rules of procedures for admiralty jurisdiction for my review, to avoid any violation of my due process.

## V. Jurisdiction:

5.1 The Constitution and 28 U.S.C. § 1332 vest federal courts with jurisdiction to hear cases that "arise under" federal law.

5.2 The Constitution vests federal courts with the authority to hear cases "arising under th[e] Constitution [or] the Laws of the United States." U.S. Const. art III, § 2.

5.3 Congress vests federal district courts with subject-matter jurisdiction over cases involving questions of federal law: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

## VI. Admiralty Jurisdiction

6.1 Admiralty law is the law of the sea; the United States' Constitution is the "supreme Law of the Land".

6.2 I have tried to find the law books explaining the admiralty jurisdiction on land and I have not located them, and therefore I'm at an unfair disadvantage in court.

6.3 The rules for sea do not apply to me because I'm not at sea and I did not consent to contract.

## VII. Elements for Common Law:

7.1 Controversy (The listed defendants)

7.2 Specific Claim (wrongful foreclosure)

7.3 Specific Remedy Sought by Claimant (5.5 million dollars)

7.4 Claim Must be Sworn To (Affidavit of Verification attached), and I will verify in open court that all herein be true.

## VIII. Parties:

8.1, Arthur of the family Wittenberg, is a resident of orleans, parish, loisiana.

8.2 Brian Van Couyghen, d/b/a, judge, sits on the bench in SUPERIOR COURT KENT COUNTY STATE OF RHODE ISLAND.

### IX. Detrimental Reliance:

9.1 Detrimental reliance is a legal concept under the law of contracts.

9.2 Ordinarily, a valid contract requires a proper exchange of consideration between the parties.

9.3 The plaintiff alleges facts establishing detrimental reliance.

9.4 The contract providing jurisdiction to Brian Van Couyghen, d/b/a, judge, was not signed by any of the parties and is not filed in the case, and therefore the Plaintiff did not provide consent for Brian Van Couyghen, d/b/a, judge, to be involved in this case.

### X. Legal Prejudice

10.1 Legal prejudice refers to a condition shown by a party that will defeat the action of an opposing party.

10.2 In other words, it is a fact or condition which may defeat the opposing party's case, if the same is established or shown by a party to litigation.

10.3 The Plaintiff provided evidence that he did not, had not, and is not, occupying the property, only protecting the said property as TRUSTEE, of the TRUST, the property was placed in, and the Deed of trust is still in the Beneficiary's name. Moreover, that proves the power of sale was executed by an agent without standing. Brian Van Couyghen, d/b/a, judge, ignored the evidence and this prejudiced the Plaintiff and Plaintiff therefore request and damages both compensatory and punitive as relief for the prejudice suffered.

### XI. The Judge Is In Conflict:

11.1 The Judge in this case has a conflict of interest as both are members of a of the BAR whereby belong to the same professional association.

11.2 The fact Judges and Attorneys always refuse to reveal that he was in fact HEARING a matter a proper hearing or jurisdiction when questioned shows Brian Van Couyghen, d/b/a, judge, acted without proper jurisdiction and that he helping the Defendant in secret but, they did

not want Plaintiff to notice the action.

11.3 This means the Bar Association is, in fact, a secret society.

11.4 If the Judge and Attorney are Freemasons they would be part of the secret society and according to the HANDBOOK OF MASONRY by Ron Anyne, page 183: "You must conceal all the crimes of your brother Mason....and should you be summoned as a witness against a brother Mason be always sure to shield him. It may be perjury to do this, it is true, but you're keeping your obligations." The Judges, alliance with the secret society and the B.A.R. association is a conflict of interest and any decisions must be vacated.

## XII. Count One:

12.1 Violation of the Administrative Procedures Act of 1946.

## XIII. Count Two:

13.1 Obstruction of the Administration of Justice.

## XIIII. Count Three:

14.1 Violation of the 18 USC § 241, Conspiracy Against Rights.

## XV. Count Four:

15.1 18 USC § 242, Deprivation of Rights Under Color of Law.

## XVI. Count Five:

16.1 18 USC § 1505, Obstruction of Justice.

## VXII. Count Six.

17.1 18 USC § 371, Conspiracy to Commit Offense.

## In Conclusion:

By and through his Judgment, Brian Van Couyghen, d/b/a, judge,  unlawfully rendered assistance to the Defendants by allowing the Defendants MOTION  in an ORDER to continue, and chance to evade answering the complaint that was filed in the court.  Brian Van Couyghen, d/b/a, judge,

possessed knowledge of the Defendants failure to comply with the rules, and the MOTION the Defendants, were requesting that was not being heard at that time had no merits and he had a mandatory duty to administer statutes and laws established by the legislature, but maliciously neglected his judicial duties-which is treason. In effect, Brian Van Couyghen, d/b/a, judge, acted outside the scope of his judicial capacity to maliciously neglect Constitutional and statutory rights violations occurring to Plaintiff. Every one of these willful, prejudicial, and illegal acts and omissions favor the Defendants to the detriment of the Plaintiff and have without a doubt left Brian Van Couyghen, d/b/a, judge, impartiality in question. Statute 28 USC § 455expressly forbids a judge to continue under these circumstances. Levies war against them or adheres to their enemies, giving them aid and comfort within the United States, or elsewhere, is guilty of treason… and shall be incapable of holding any office under the United States." Concurrently, Brian Van Couyghen, d/b/a, judge, malfeasance in public office demonstrates his allegiance to the B.A.R. Association and their unlawful designs against democracy in the United States.

Brian Van Couyghen, d/b/a, judge, willfully and knowingly turned a blind eye to the sadistic ritual abuse of Plaintiff by maliciously neglecting his judicial duties. The record clearly reflects his prejudicial disposition toward the Plaintiff in his arbitrary decision making and malicious neglect of his mandatory duty to grant a TRO where the Defendants matter was not being heard.

The authorizing of deliberate deprivations and arbitrary decision-making by Government officials violates basic Constitutional norms. Furthermore, since statutory law is instructive to common law and Brian Van Couyghen, d/b/a, judge, violated several criminal statutes, he demonstrated extrajudicial conduct which will render his judgment void. The plaintiff will move the court for the settlement hearing, and is requesting the Judge to order the defendants to appear to discuss the settlement amount.

August 7, 2023

Respectfully Submitted,

Arthur of the Family Wittenberg,
(Private American National/Non- "U.S. citizen)
C/O
Rural Route Delivery

701 loyola avenue, unit 57867
new orleans, louisians 00000
witt@wittenbergfamily-trust.com
504-451-5770

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been furnished, by USPS 1st Class Certified Mail postage prepaid, this 7th, day of August 2023 to:

Serve through Attorney:

**Thomas William Lyons III**
**STRAUSS, FACTOR, LAING & LYONS**
One Davol Square
Suite 305
Providence, RI 02903

**FLAGSTAR BANK,**
5151 Corporate Drive
Troy, MI 48098

**FLAGSTAR BANK,**
**James K. Ciroli, CFO,**
5151 Corporate Drive
Troy, MI 48098

**Caterine V. Eastwood**
**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**John McNicholas**
**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

Mail by:

**Arthur of the Family Wittenberg,**
(Private American National/Non- "U.S. citizen)

9

| | |
|---|---|
| 06/02/2023 | Motion to Strike |
| 06/15/2023 | Motion Not Scheduled |
| 06/16/2023 | Objection Filed |
| 06/20/2023 | Entry of Appearance |
| 06/20/2023 | Entry of Appearance |
| 07/13/2023 | Miscellaneous Motion Filed |
| 07/13/2023 | Motion for Temporary Restraining Order |
| 07/13/2023 | Memorandum Filed |
| 07/14/2023 | Motion to Appear Pro Hac Vice |
| 07/24/2023 | Omnibus Form |
| 08/01/2023 | Order - Petition for Admission Pro Hac Vice Granted    (Judicial Officer: Van Couyghen, Associate Justice Brian) |
| 08/02/2023 | Motion for Continuance<br>Party:   Plaintiff Arthur of the Wittenberg Family |

# Hearings

| | |
|---|---|
| 07/24/2023 | **Hearing on Motion to Appear Pro Hac Vice**   (2:00 PM)   (Judicial Officer: Van Couyghen, Associate Justice Brian)<br>*Heard and Granted* |
| 08/03/2023 | **Hearing on Motion for Restraining Order**   (10:00 AM)   (Judicial Officer: Van Couyghen, Associate Justice Brian)<br>*Granted/Denied in Part* |
| 08/03/2023 | **Hearing on Motion**   (10:00 AM)   (Judicial Officer: Van Couyghen, Associate Justice Brian)<br>*Continued* |
| 08/03/2023 | **Hearing on Motion for Continuance**   (10:00 AM)   (Judicial Officer: Van Couyghen, Associate Justice Brian)<br>*Heard and Granted* |
| 08/31/2023 | **Preliminary Injunction**   (10:30 AM)   (Judicial Officer: Van Couyghen, Associate Justice Brian) |
| 09/25/2023 | **Hearing on Motion to Dismiss**   (11:00 AM)   (Judicial Officer: McHugh, Associate Justice Kevin F.) |
| 09/25/2023 | **Hearing on Motion to Dismiss**   (11:00 AM)   (Judicial Officer: McHugh, Associate Justice Kevin F.) |
| 09/25/2023 | **Hearing on Motion**   (2:00 PM)   (Judicial Officer: Van Couyghen, Associate Justice Brian) |



# IN THE SUPERIOR COURT KENT COUNTY
# STATE OF RHODE ISLAND

NO.  KC-2023-0303                                                          DIVISION:

### ARTHUR OF THE FAMILY WITTENBERG
701 Loyola Avenue, Unit 57867
New Orleans, LA 70113
*PLANITIFF*

*V.*

### Caterine V. Eastwood
### KORDE & ASSOCIATES, P.C.
900 Chelmsford St. Suite 3102
Lowell, MA 01851

### John McNicholas
### KORDE & ASSOCIATES, P.C.
900 Chelmsford St. Suite 3102
Lowell, MA 01851

### KORDE & ASSOCIATES, P.C.
900 Chelmsford St. Suite 3102
Lowell, MA 01851

### NEW YORK COMMUNITY BANCORP, INC
### 102 Duffy Ave. Hicksville, NY 11801
d/b/a
### FLAGSTAR BANK
5151 Corporate Drive
Troy, MI 48098

### James K. Ciroli, CFO
### FLAGSTAR BANK
5151 Corporate Drive
Troy, MI 48098
*DEFENDANTS*

FILED: _____          _____
                                                           DEPUTY CLERK

## MOTION FOR RECUSAL OF BRIAN VAN COUYGHEN, d/b/a JUDGE
## PURSUANT TO 28 USC Sec. 455
## AND OBJECTION TO THE ORDER HE ISSUED AFTER HE CONTINUED
## A TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION
## HEARING UNTIL AUGUST 31, 2023
["Cujusque Rei Potissima Pars"][The Principle Part Of Everything Is In The Beginning]

i

NOW COMES, the Plaintiff who has formally introduce himself to this court, as the real man, Arthur of The Family Wittenberg, a Private American National/Non "U.S. citizen", Executor, Grantor, Settlor, and Beneficiary, of the Estate of ARTHUR WITTENBERG, one of we the people, and not the artificial entity known as ARTHUR WITTENBERG, who is not an attorney of the BAR, by special appearance, without waiving any rights, defenses, statutory or procedural, before this court to enter this **MOTION FOR RECUSAL OF** Brian Van Couyghen, d/b/a, judge, for interfering with the legal procedures, of this state, and operating outside the legal scope of the law. Brian Van Couyghen, d/b/a, judge, knowingly and willingly, ignored the rules, when he RULED on a matter that he continued til August 31, 2023, where the Plaintiff could have adequately represent his argument and precent documented proof and /or witnesses to substantiate its claim. This court has given an unfair advantage to fellow BAR members, who failed or refused to send out written notification of filing, Motions, or otherwise at anytime, by mailed or any other form of communication to the Plaintiff.  In the HEARING, held in this court on August 3, 2023, Brian Van Couyghen, d/b/a, judge, GRANTED the Plaintiffs, MOTION TO CONTINUE, but in doing so Brian Van Couyghen, d/b/a, judge, included in his ORDER, to the Defendants TEMPORARY RESTRAINING ORDER, which was the very MOTION he himself just continued, and when the Plaintiff, OBJECTED, to the action and pleaded with Brian Van Couyghen, d/b/a, judge, because the Plaintiff has already showed the court the Defendants willingness to tell inconclusive and false statements to the court, through their deceitful practice to deface justice, Brian Van Couyghen, d/b/a, judge, insist his ruling will stand. and in support thereof states

### FACTUAL STATEMENT OF THE CASE

There has, been an on going pattern of a genuine disrespect for the laws and rules that govern this court along with the depravation and violations against the civil rights and the protection provided under the constitution of the United States of America, toward the undersigned Plaintiff, which have not been duly protected by the court, through the deceptive practice, of Defendants, since the inception of the matter, making it nearly impossible for the Plaintiff to receive a fair hearing or trial through this court system. The Plaintiff, in almost every previous motion has complained to the fact that the Defendants will not, and has not, communicated any of their actions to the plaintiff, through any form of communication and it appears as if the court is condoning and allowing such behavior through it's recent action. and

1. This action was commenced in this court on May 2, 2023, by the Plaintiff, in compliance with

the Rhode Island rules of civil procedure. and

2. No ANSWER or APPEARANCE were filed until 4 to 10 days after the required time allowed by the Rhode Island rules of civil procedure. and

3. The Defendants Caterine V. Eastwood, John McNicholas, and the Law Firm of KORDE & ASSOCIATES, P.C., with John McNicholas, as acting council, respond on May 30, 2023, with a MOTION TO DISMISS, which is not proper in this instant case, because John McNicholas, is an employee of the Corporation, and/or artificial entity, and both he and the company (the artificial entity) are named as Defendant, and an artificial entity and/or Corporation, it's employees, or shareholder, cannot represent the Corporation, it would be considered Pro se representation which is not allowed, see R.I. Sup.Ct. R. 10, and Fed Rule 5. and

4. Defendant FLAGSTAR BANK, James K. Ciroli, CFO, council Thomas William Lyons III of STRAUSS, FACTOR, LAING & LYONS, made his APPEARANCE and ANSWER on May 24, 2023, and respond to the Complaint with a MOTION TO DISMISS. and

5. On June 2, 2023, in this court the Plaintiff, filed on record a MOTION TO STRIKE, John McNicholas, PLEADINGS and APPREARANCE, showing Caterine V. Eastwood, John McNicholas, and the Law Firm of KORDE & ASSOCIATES, P.C., (the artificial entity) are in fact all employees of the artificial entity, and cannot represent themselves in this court. Which MOTION is still not recognized or heard to this date by this court. and

6. The Defendants MOTION TO DISMISS, are truly pointless, giving the fact that the Plaintiff has already completed his remedy under equity, and was only seeking the court to have the DEFAULT of the Defendant, FLAGSTAR BANK, James K. Ciroli, CFO, ORDERED. and

7. To this date no MOTIONS filed by the Defendants were sent to the Plaintiff, by mail, email, fax, tex, or any other form of communication until they filed for an Emergency HEARING for a TRO, stating a hypothetical and fabricated harm. and

8. The Plaintiff, once more learned of a motion filed by the Defendants through the Rhode Island case search, this time on July 31, 2023, of the HEARING scheduled for August 3, 2023, the Plaintiff has not received any correspondence from the Attorneys in respect to Motions or

HEARING, filed by phone, text, email or any other forms of communication, which has been the practice of the Defendants throughout, the inception of this instant case. and

9. The Plaintiff, contact Thomas William Lyons III, office by phone to inform them that he did not receive any documentation concerning said MOTION or HEARING, and was told they sent by mail when the motion was filed. and

10. The Plaintiff then checked the spam mail box, to discovered an email from Thomas William Lyons III, dated Monday, July 24, 2023, at 12:37 PM, and not the July 13, 2023, 11 days after the attorney falsely certified he emailed said documents to the court **EXHIBIT A,** a copy of the emails between the Parties. and

11. The MOTION was received by the Plaintiff, form the Defendant only 10 days before the Hearing, with what appears to be the latest MOTION'S filed by the attorney attached, The TRO was dated July 13, 2023, and the affidavit was dated July 7, 2023. (This only goes to show the malicious intent of the Defendants and their willingness to deceive this court.) and

12. The Plaintiff does not reside in the state of Rhode Island, in hope that they would be fair and considerate but that request was not accepted on the part of the Defendants. (This came at no surprise to the Plaintiff.) and

13. The Plaintiff than obtained a very last minute flight to Rhode Island so that he may attend the HEARING, and arrived in Rhode Island, after 1 am, which cost more than $2,000.00 see a copy plane ticket that was purchased that same day **EXHIBIT B** and

14. Brian Van Couyghen, d/b/a, judge, agreed to hear the MOTION FOR CONTINUANCE, filed by the Plaintiff, instead of the Defendants MOTION for a TRO, when he agreed that the Plaintiff did not, was not, and has not, harmed the Defendants in any way, as well as had the same interest in keeping the property in good condition then ORDERED, the matter be continue until August 31, 2023. and

15. During said ORDER, Brian Van Couyghen, d/b/a, judge, decided he would also RULE, on the matter he just continued, and ORDERED, that the Defendant, take possession of the property, change the locks, but could not sale the property until the HEARING on August 31, 2023, was

concluded, stating his reason for this was since the Defendant has title of the property and has been caring for the property and taking care of the bills already. and

16. The Plaintiff pleaded with the Brian Van Couyghen, d/b/a, judge, that the Defendants were not being truthful and if fact did not have legal title, or paying the utilities. He stated this was his RULING and it would only change when and if he changed it. see a copy of the Land and Tax Assessors office record of ownership attached **EXHIBIT C** and the current utility bills attached **EXHIBIT D** and

17. Plaintiff would like to remind Brian Van Couyghen, d/b/a, judge, that he said, he could have the attorneys disbarred if they lied to him, and would do so if any attorney told untruths directly to him in his court room, and the Plaintiff replied, just needed that on the record. As the Trustee of the Trust, the Plaintiff was not in question on who's paying the bills at the property.

It's clear to see that justice is not the objective of this court, In this case Brian Van Couyghen, d/b/a, judge, made the conscious decision, to believe the attorneys as if their statements and testimonies are infallible, even when its been proven that they were no substance to the Defendants claim of harm and the Plaintiff was not living in the property and in fact doesn't live within the state of Rhode Island, which were in the body of the Plaintiffs MOTION FOR CONTINUANCE, then moved to DENY and ROBB the Plaintiff of his rights, by deciding to take a stand, to favor fellow BAR members without a HEARING, to give him the authority to do so and RULED on a matter that have not been properly heard. There is no immunity for a judge ruling without proper subject- Matter Jurisdiction or HEARING on a matter. See: Scheuer v. Rhodes, 416 U.S. 232, 94 S. St. 1683, 1687 (1974) Statutory provisions provide a homeowner has 2-to-4 years to bring their claim for wrongful foreclosure, and the illegal foreclosure sale is now being contested in this court. The fact Brian Van Couyghen, d/b/a, judge, ORDERED to continue the TRO HEARING, knowingly caused injury to the Plaintiff when he ORDERED, the Defendants can change the locks on the property. Brian Van Couyghen, d/b/a, judge, act with deliberate indifference to the law when he willingly, knowingly, intentionally, and unlawfully blocked the Plaintiff, from redress. Brian Van Couyghen, d/b/a, judge, ruled and GRANTED the Defendants MOTION without a proper HEARING or legal consent of, or the authority of the Plaintiff, giving rise to the appearance of a lack of impartiality and conspiracy against rights. The Granting of the change of locks is seen as a PRELIMINARY GRANTING of the requested TRO.

# I. Facts Of The Dispute

1.1  Brian Van Couyghen, d/b/a, judge, act with deliberate indifference with his unlawful action when he GRANTED the Defendants MOTION without a proper HEARING, required by the laws and rules of the state of Rhode Island but instead provided the attorney's and fellow B.A.R. member an unfair advantage when he GRANTED A ORDER for a TRO, without a HEARING on the matter directly after ordering that same Motion for the TRO, be continued til August 31, 2023.

1.2 The Plaintiff was injured when his MOTION FOR CONTINUANCE, was GRANTED, but, Brian Van Couyghen, d/b/a, judge, without a proper HEARING, still ruled on the MOTION FOR TRO, thinking the Plaintiff would not notice this injustice and abuse of authority.

1.3 The unlawful action of Brian Van Couyghen, d/b/a, judge, is blocking the remedy of the Title Dispute that is still in progress with no answer to the complaint provided by the Defendants.

1.4 The result of Brian Van Couyghen, d/b/a, judge, unlawful action have allowed the Defendant to receive an unjust enrichment, when he ruled on the Defendants Motion that have not been heard yet and Brian Van Couyghen, d/b/a, judge, ORDERED, that Motion be moved to August 31, 2023.

1.5  A Judge is required to enforce the rules and consider the "laws, facts and evidence before them" before the Judge can move forward with a case. Brian Van Couyghen, d/b/a, judge, deprived and robbed the Plaintiff of the right to be heard when he pretend to RULE, on the Plaintiff MOTION TO CONTINUE, that he GRANTED, then inserted in his RULING, a factor that had no place in the MOTION TO CONTINUE, he included the Defendants PRELIMINARY INJUNCTION, as part of is ORDER, after the opposing counsel requested, which is not lawful or legal to rule on a contested issue without a proper HEARING. see ORDER attached **EXHIBIT E,** and **EXHIBIT F,** a copy of docket show the MOTION TO CONTINUE, was GRANTED.

## I.<u>Obstruction of The Administration of Justice:</u>

The United States Constitution guarantees an unbiased Judge who will always provide litigants with full protection of ALL RIGHTS.  Therefore, Aggrieved Party respectfully demands Brian

Van Couyghen, d/b/a, judge, recuse himself in light of the objection and notice of claim presented to the court. The fact the Brian Van Couyghen, d/b/a, judge, illegally took sides and overlooked the fact that he just continued the TRO Motion, filed by the Defendant, and in an effort to provide an unfair advantage to fellow B.A.R. members he then gave a ruling favoring fellow BAR members in is ORDER to continue the Defendants MOTION FOR TRO, til August 31, 2023, which is outside of this court jurisdiction.  The Judge cannot hear the above case in a **fair and impartial** manner. ~~see ORDER, EXHIBIT G~~

## II. Disqualification of a Judge:

The law requires the automatic disqualification of Judge's under certain circumstances.  In 1994, the U.S. Supreme Court held that "Disqualification is required if an objective observer would entertain reasonable questions about the judge's impartiality. If a judge's attitude or state of mind leads a detached observer to conclude that a fair and impartial hearing is unlikely, the judge must be disqualified." [Emphasis added]. Liteky v. U.S., 114 S.Ct. 1147, 1162 (1994). Courts have repeatedly held that positive proof of the partiality of a judge is not a requirement, only the appearance of partiality. Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 108 S.Ct. 2194 (1988) (what matters is not the reality of bias or prejudice but its appearance); United States v. Balistrieri, 779 F.2d 1191 (7th Cir. 1985) (Section 455(a) "is directed against the appearance of partiality, whether or not the judge is actually biased.") ("Section 455(a) of the Judicial Code, 28 U.S.C. Â§455(a), is not intended to protect litigants from actual bias in their judge but rather to promote public confidence in the impartiality of the judicial process."). That Court also stated that Section 455(a) "requires a judge to recuse themself in any proceeding in which there impartiality might reasonably be questioned." Taylor v. O'Grady, 888 F.2d 1189 (7th Cir. 1989). In Pfizer Inc. v. Lord, 456 F.2d 532 (8th Cir. 1972), the Court stated that "lt is important that the litigant not only actually receive justice, but that he believes that he has received justice." The Supreme Court has ruled and has reaffirmed the principle that "justice must satisfy the appearance of justice", Levine v. United States, 362 U.S. 610, 80 S.Ct. 1038 (1960), citing Offutt v. United States, 348 U.S. 11, 14, 75 S.Ct. 11, 13 (1954). A judge receiving a bribe from an interested party over which he is presiding, does not give the appearance of justice. "Recusal under Section 455 is self-executing; a party need not file affidavits in support of

recusal and the judge is obligated to recuse themself sua sponte under the stated circumstances." Taylor v. O'Grady, 888 F.2d 1189 (7th Cir. 1989). Further, the judge has a legal duty to disqualify himself even if there is no motion asking for his disqualification. The Seventh Circuit Court of Appeals further stated that "We think that this language [455(a)] imposes a duty on the judge to act sua sponte, even if no motion or affidavit is filed." Balistrieri, at 1202.

Judges do not have discretion not to disqualify themselves. By law, they are bound to follow the law. Should a judge not disqualify themselves as required by law, the judge has given another example of this "appearance of partiality" which, possibly, further disqualifies the judge.

None of the orders issued by any judge who has been disqualified by law are valid. They are void as a matter of law, and are of no legal force or effect. Should a judge not disqualify himself, then the judge is violation of the Due Process Clause of the U.S. Constitution. United States v. Sciuto, 521 F.2d 842, 845 (7th Cir. 1996) ("The right to a tribunal free from bias or prejudice is based, not on section 144, but on the Due Process Clause."). Should a judge issue any order after he/she has been disqualified by law, and if the party has been denied of any of his/her property, then the judge may have been engaged in the Federal Crime of "interference with interstate commerce". The judge has acted in the judge's personal capacity and not in the judge's judicial capacity. The Supreme Court has also held that if a judge wars against the Constitution, or if he acts without jurisdiction, he has engaged in treason to the Constitution. If a judge acts after he has been automatically disqualified by law, then he is acting without jurisdiction, and that suggest that he is then engaging in criminal acts of treason, and may be engaged in extortion and the interference with interstate commerce.

**Wherefore** Brian Van Couyghen, d/b/a, judge, impartiality is now challenged due to his obstruction of the administration of justice in this case Brian Van Couyghen, d/b/a, judge, is allowing an unfair advantage to fellow BAR members evade the Rhode Island rules of Civil Procedure, and allowing a case to move forward without proper due process or proper jurisdiction through a hearing in this case, and without cause leaving the Plaintiff, to suffer undue hardship and theft of the Plaintiffs property due to an unlawful foreclosure and foreclosure sale. The Supreme Court has ruled and has reaffirmed the principle that "justice must satisfy the appearance of justice. Further, the judge has a legal duty to disqualify himselve even if there is

no motion asking for their disqualification. None of the orders issued by any judge who has been disqualified by law are valid. The orders are void as a matter of law, and are of no legal force or effect. The Plaintiff, demands that the orders from Brian Van Couyghen, d/b/a, judge, be vacated, and the Regional Judge preside over the case, and the court to restore the the property back to the Plaintiff until the matter is concluded, and order the Defendants to answer the complaint and return all keys to the property that fit the locks, they may have already changed.

August 7, 2023

Respectfully Submitted,

_____

Arthur of the Family Wittenberg
(Private American National/Non- "U.S. citizen)
C/O
Rural Route Delivery
701 loyola avenue, unit 57867
new orleans, louisians 00000
witt@wittenbergfamily-trust.com
504-451-5770

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been furnished, by USPS 1st Class Certified Mail postage prepaid, this 7th, day of August 2023 to:

   Serve through Attorney:
**Thomas William Lyons III**
**STRAUSS, FACTOR, LAING & LYONS**
One Davol Square
Suite 305
Providence, RI 02903

**FLAGSTAR BANK,**
5151 Corporate Drive
Troy, MI 48098

**FLAGSTAR BANK,**
**James K. Ciroli, CFO,**
5151 Corporate Drive
Troy, MI 48098

**Caterine V. Eastwood**
**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

John McNicholas
**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

Mail by:

Arthur of the Family Wittenberg,
(Private American National/Non- "U.S. citizen)

PLAINTIFF'S
EXHIBIT

_A_
1 of 2

**From:** Dr Wittenberg <witt@wittenbergfamily-trust.com>

**Sent:** Monday, July 31, 2023 5:50 AM

**To:** Tom Lyons <Tlyons@straussfactor.com>

**Subject:** Re: Wittenberg v. Eastland, et al. Hearing on TRO Motion on August 3, 2023

Mr. Lyons,

Unfortunately, the date you chose for a hearing conflicts with my schedule. Maybe you should have contacted me before selecting a date. However, I can be in Rhode Island on the following dates August 22- 24, 2023. Feel free to call me at 504-451-5770

**From:** Tom Lyons <Tlyons@straussfactor.com>

**Sent:** Monday, July 24, 2023 12:37 PM

**To:** Dr Wittenberg <witt@wittenbergfamily-trust.com>

**Subject:** Wittenberg v. Eastland, et al. Hearing on TRO Motion on August 3, 2023

Mr. Wittenberg,

Please see the attached letter and omnibus form respecting a hearing on Flagstar Bank's motion for temporary restraining order which the Kent Superior Court has scheduled for August 3, 2023. I also attach the Motion and supporting materials.




**PLAINTIFF'S EXHIBIT**

*A*

2 of 2

**From:** Asbury, David Mitchell <David.Asbury@troutman.com>
**Sent:** Monday, July 31, 2023 2:33 PM
**To:** Dr Wittenberg <witt@wittenbergfamily-trust.com>
**Cc:** Tom Lyons <Tlyons@straussfactor.com>
**Subject:** RE: Wittenberg v. Eastland, et al. Hearing on TRO Motion on August 3, 2023

Mr. Wittenberg,

We are not willing to coordinate an alternate date. I have already incurred costs with my travel plans to Rhode Island and this is the date which the judge chose and scheduled himself. Furthermore, the property is still unlawfully occupied, and your lawsuit has clouded title. Each day that passes under these conditions causes harm to my client which is exactly why we have requested an emergency hearing on our Motion for Preliminary Injunction and Motion to Dismiss. I intend to attend on Thursday.

Please let me know if you have any questions or would like to discuss further.

Thanks,


**David Mitchell Asbury**
**Attorney**
**troutman pepper**
Direct: 757.687.7757 | Internal: 17-7757



BOARDING PASS
WITTENBERG/ARTHUR                    1 006 213237418 6
GOBEUZ

SILVER/ELITE
DLXXXXXX9646

LAONAOMC

| FLIGHT | DATE | CLASS | ORIGIN | | DEPARTS | SEAT |
| DL2676 | 02AUG | L | WASHINGTON-REAG | 842P | | 10D |

| OPERATED BY | MAIN | DESTINATION | BRD TIME |
| DELTA AIR LINES INC | | DETROIT | 802P | COMF+ |

DEPARTURE GATE B21  **SUBJECT TO CHANGE**

WHEELCHAIR REQUESTED

BAGS
02
DCA231929/PC

---

BOARDING PASS
WITTENBERG/ARTHUR

SILVER/ELITE
DLXXXXXX9646

| FLIGHT | DATE | | SEAT |
| DL2676 | 02AUG | | 10D |

ORIGIN                              COMF+
WASHINGTON-REAG

DESTINATION
DETROIT

OPERATED BY DELTA AIR LINES INC

BAGS
02

---



WITTENBERG/ARTHUR

SEAT      11B

DETROIT

PROVIDENCE



DL0694        02AUG

Operated By:
DELTA AIR LINES INC

---



DL 2676 DTW

8006775889
WITTENBERG/ARTHUR     GOBEUZ

DL 2676 DTW    BAG FEE WAIVED

8006791151
WITTENBERG/ARTHUR     GOBEUZ



PLAINTIFF'S EXHIBIT



RECEIVED

# 24 NINIGRET ST

AUG 0 3 2023

ASSESSOR'S OFFICE

| | | | |
|---|---|---|---|
| **Location** | 24 NINIGRET ST | **Parcel ID** | 319/ 0079/ 0000/ |
| **Account #** | 45656 | **Owner** | MONANTEZ, RAFAEL A |
| **Assessment** | $287,900 | **Internal PID** | 16023 |
| **Building Count** | 1 | | |

## Current Value

| Assessment | |
|---|---|
| **Valuation Year** | **Total** |
| 2023 | $287,900 |

## Parcel Addresses

| Additional Addresses |
|---|
| No Additional Addresses available for this parcel |

## Owner of Record

| | | | | |
|---|---|---|---|---|
| **Owner** | MONANTEZ, RAFAEL A | | **Sale Price** | $234,500 |
| **Co-Owner** | | | **Book & Page** | 8942/0307 |
| **Care Of** | | | **Sale Date** | 11/15/2017 |
| **Address** | 24 NINIGRET ST | | **Instrument** | 00 |
| | WARWICK, RI 02889 | | **Qualified** | Q |

## Ownership History

| Ownership History | | | | |
|---|---|---|---|---|
| **Owner** | **Sale Price** | **Book & Page** | **Instrument** | **Sale Date** |
| MONANTEZ, RAFAEL A | $234,500 | 8942/0307 | 00 | 11/15/2017 |
| VINHATEIRO CYNTHIA A LIFE ESTATE | $0 | 8400/0172 | 04 | 07/02/2015 |
| VINHATEIRO, ANTHONY F | $0 | 0000/0000 | | 01/01/1900 |

## Building Information

### Building 1 : Section 1

**Year Built:** 1950

**Living Area:** 1,080
**Replacement Cost:** $247,311
**Building Percent Good:** 80
**Replacement Cost**
**Less Depreciation:** $197,800



| Building Attributes | |
|---|---|
| **Field** | **Description** |
| Style: | Cape |
| Model | Residential |
| Grade: | Average |
| Stories: | 1.5 |
| Occupancy: | 1 |
| Exterior Wall 1: | Vinyl Siding |
| Exterior Wall 2: | |
| Roof Structure: | Gable |
| Roof Cover: | Asphalt Shingl |
| Interior Wall 1: | Drywall |
| Interior Wall 2: | |
| Interior Flr 1: | Carpet |
| Interior Flr 2 | |
| Heat Fuel: | Gas |
| Heat Type: | Forced Air |
| AC Type: | Central |
| Total Bedrooms | 3 Bedrooms |
| Total Full Baths | 1 |
| Total Half Baths | 1 |
| Total Xtra Fixtrs: | 0 |
| Total Rooms | 6 |
| Bath Style: | Average |
| Kitchen Style: | Average |
| Num Kitchens | |
| Fireplaces | 0 |
| Extra Openings | 0 |
| Gas Fireplaces | 0 |
| Fin Bsmt Area | |
| Fin Bsmt Quality | |
| Num Park | |
| Bsmt Garages | 0 |
| Bedrooms in LL | |
| Cathedral Ceil | No |
| Site Loc | |
| In Law Apt | No |

**Building Photo**



(https://images.vgsi.com/photos/WarwickRIPhotos/\00\06\44\31.JPG)

**Building Layout**



(https://images.vgsi.com/photos/WarwickRIPhotos//Sketches/16023_16023

| Building Sub-Areas (sq ft) | | | Legend |
|---|---|---|---|
| **Code** | **Description** | **Gross Area** | **Living Area** |
| BAS | First Floor | 720 | 720 |
| FHS | Finished Half Story | 720 | 360 |
| FEP | Fin Encl Porch | 164 | 0 |
| FGR | Garage | 308 | 0 |
| UBM | Basement | 720 | 0 |
| WDK | Wood Deck | 50 | 0 |
| | | 2,682 | 1,080 |



## Rhode Island Energy™
a PPL company

**ELECTRIC BILL**

SERVICE FOR
WITTENBERG HOLDING TRUST
24 NINIGRET ST
WARWICK RI 02889

BILLING PERIOD

Jul 5, 2023 to Aug 3, 2023

PAGE **1 of 3**

| ACCOUNT NUMBER | PLEASE PAY BY | AMOUNT DUE |
|---|---|---|
| 38657-81034 | Aug 30, 2023 | **$ 84.28** |

RIEnergy.com
CUSTOMER SERVICE
**1-855-RIE-1101**
CREDIT DEPARTMENT
**1-855-RIE-1104**
GAS EMERGENCIES
**1-800-640-1595**
POWER OUTAGE OR DOWNED LINE
**1-855-RIE-1102**
CORRESPONDENCE ADDRESS
**PO Box 960**
**Northborough, MA 01532-0960**
PAYMENT ADDRESS
**PO BOX 371361**
**PITTSBURGH, PA 15250-7361**

DATE BILL ISSUED
**Aug 4, 2023**

## ACCOUNT BALANCE

| | | |
|---|---|---|
| Previous Balance | | 44.99 |
| Payment Received | No payments have been received during this billing period | - 0.00 |
| **Balance Forward** | | **44.99** |
| Current Charges | | + 39.29 |
| | **Amount Due ▶** | **$ 84.28** |

## SUMMARY OF CURRENT CHARGES

| | DELIVERY SERVICES | SUPPLY SERVICES | OTHER CHARGES/ ADJUSTMENTS | TOTAL |
|---|---|---|---|---|
| Electric Service | 27.17 | 10.55 | | 37.72 |
| Other Charges/Adjustments | | | 1.57 | 1.57 |
| **Total Current Charges** | **$ 27.17** | **$ 10.55** | **$ 1.57** | **$ 39.29** |



➤ During the winter rate season, the customer charge was not collected. Starting April 1, the customer charge is reinstated and will be doubled during the summer rate season to make up for the charge that was not collected during the winter.

✪ Save time and money! Sign up for paperless billing and receive a $ 0.37 credit on your monthly bill. Visit our website to enroll today.

✪ The Energy Charge now includes the Renewable Energy Standard Charge which was previously identified separately on the bill. This charge is collected for the purpose of acquiring a portion of Rhode Island's energy supply from renewable energy resources, as required by Rhode Island General Laws section 39-26-1 .

➤ **What is the Energy Efficiency Charge on my bill?** This charge funds Energy Efficiency programs that can help consumers lower their energy usage and bills, improve comfort in their homes or businesses, and lower pollutants and carbon emissions in our communities. To learn how to take advantage of these programs and your eligibility, please call 1-866-903-2811 or visit rienrgy.com/ri-ee.

**ELECTRIC USAGE HISTORY (kWh)**

| | J A |
| | 23 |

| Daily Averages | Aug 23 |
|---|---|
| kWh | 3.5 |
| Cost | $ 1.25 |



PLAINTIFF'S EXHIBIT 1



← Go to RIEnergy.com

Rhode Island Energy™

⚡ Power Outages     Our Company     Contact Us

Pay Bill     👤 WH ⌄

24 NINIGRET ST WARWICK RI 02...     Acct #3865781034     ⚡ Residential Electricity

Account Dashboard

Pay ⌄

**Billing and usage** ⌃

  Account activity

  **Bill history**

  Paperless billing

  My energy usage

  Home energy analysis

  Submit meter reading

  Ways to Save

My service ⌄

Financial support ⌄

Account settings ⌄

# Bill History

🗎 **View Current Bill**

1 to 3 of 3

| Billing Period | Bill Issue Date | Total Bill Amount | |
|---|---|---|---|
| Jul 5, 2023 - Aug 3, 2023 | Aug 4, 2023 | $94.28 | 🗎 View Bill |
| Jun 1, 2023 - Jul 5, 2023 | Jul 10, 2023 | $44.99 | 🗎 View Bill |
| Jun 1, 2023 - Jul 5, 2023 | Jul 7, 2023 | $1,416.09 | 🗎 View Bill |

1 to 3 of 3



**Warwick Utility Billing**
P.O. Box 981076
BOSTON, MA 02298-1076
Payment information:        (401) 738-2002
Water usage questions:      (401) 738-2008
Sewer usage questions:      (401) 739-4949



PLAINTIFF'S
EXHIBIT
D
3 of 3

**UTILITY BILL**
Customer Copy
Keep this portion for your records

| Customer Name | Service Address | ParcelNumber |
|---|---|---|
| MONTANEZ, RAFAEL A | 24 NINIGRET ST | 319-0079-0000 |

| Bill Number | Bill Date | Account Number - Customer Number | Current Billing Due Date |
|---|---|---|---|
| 1261260 | 06/02/2023 | 12200528500 - 75027 | 08/02/2023 |

| Description | Meter | Previous Read Date | Current Read Date | Previous Meter Reading | Current Meter Reading | Read Code | Usage | Charge |
|---|---|---|---|---|---|---|---|---|
| CONSUMPTION 5/8" METER | 1486390966 | 12/05/2022 | 03/02/2023 | 43100 | 43100 | A | | |
| CUSTOMER CHARGE 5/8" METER | | | | | | | | 17.60 |
| PRCH WATER RATE - 5/8 METER | | | | | | | | |
| RI DWPA - .0748/100 CF | | | | | | | | |
| RI WSIC - .1437/100 CF | | | | | | | | |
| SEWER USAGE - R | | | | | | | | |
| SWR SVC CHG - R | | | | | | | | 31.72 |
| RENEWAL & REPLACEMENT CHG | | | | | | | | |

| HISTORY PERIOD | BILLED USAGE |
|---|---|
| CURR | 0 |
| 12/22 | 0 |
| 09/22 | 0 |
| 06/22 | 0 |
| 03/22 | 0 |
| 12/21 | 0 |
| 09/21 | 0 |
| 06/21 | 0 |
| 04/21 | 0 |
| 12/20 | 0 |
| 09/20 | 0 |
| 06/20 | 0 |
| 03/20 | 0 |

1 cu. ft. equals 7.48 gallons

READ CODE:
A = Actual
E = Estimate
F = Final

| | |
|---|---|
| Previous Balance | 394.56 |
| Less Payments Received | 0.00 |
| Interest | 45.38 |
| Adjustments | 0.00 |
| Total Current Billing | 49.32 |
| Total Amount Due | $489.26 |

THIS BILL REFLECTS PAYMENTS POSTED THROUGH 5/29/23.

※ Detach and return the portion below with your payment ※

**Warwick Utility Billing**
P.O. Box 981076
BOSTON, MA  02298-1076

**UTILITY BILL**
REMIT PORTION
Please write your Bill Number on your check
and enclose this portion of bill with your payment.

| Parcel Number | Bill Date | Bill Number |
|---|---|---|
| 319-0079-0000 | 06/02/2023 | 1261260 |

| Service Address | Account No. - Customer No. | Current Billing Due Date | Amount Due |
|---|---|---|---|
| 24 NINIGRET ST | 12200528500 - 75027 | 08/02/2023 | $489.26 |

AmountRemitted: _____

22485

MONTANEZ, RAFAEL A
24 NINIGRET ST
WARWICK RI 02889-1522

0000604202300126126020000048926O



STATE OF RHODE ISLAND                        SUPERIOR COURT
KENT, SC.

ARTHUR OF THE FAMILY WITTENBERG,
        Plaintiff,

        v.                                   C.A. NO. KC-2023-0303

CATHERINE V. EASTWOOD et al.,
        Defendants.

## ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION

The motion of Defendants Flagstar Bank, N.A., and James K. Ciroli (collectively "Defendants") for preliminary injunction against Plaintiff, having come before Associate Justice Brian Van Couyghen on August 3, 2023, it is hereby

ORDERED

1.  The motion is granted and a preliminary injunction is in effect until further order of the Court.

2.  Plaintiff and anyone associated with Plaintiff, shall not reside at or occupy the property located at 24 Ninigret Street, Warwick, Rhode Island, 02889 ("the Property").

3.  Plaintiff shall not remove any items from the Property or cause any waste or destruction of the Property.

4.  Defendants may change the locks on and may enter the Property.

5.  Defendants may maintain the property.

6.  The matter is continued for further hearing before the Court on August 31, 2023 at 10:00.

7. Any documentary evidence to be presented at the hearing on August 31, 2023, shall be filed with the court no later than August 10, 2023.

By Order:                                    Enter:

_____              _____

Date:

Prepared by:

/s/ Meghan Barry
Meghan Barry, #8437
Strauss, Factor, Laing & Lyons
One Davol Square, Suite 305
Providence, RI 02903
(401) 456-0700
mbarry@straussfactor.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2023, I filed and served this document through the electronic filing system on all persons who have entered an appearance, Catherine Eastwood, ceastwood@kordeassociates.com, John McNicholas, jmcnicholas@kordeassociates.com, and by regular mail and email to Arthur Wittenberg, 701 Loyola Avenue, Unit 57867, New Orleans, LA 70113, and witt@wittenbergfamily-trust.com. The document electronically filed and served is available for Viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.

/s/ Meghan Barry
Meghan Barry

| 06/02/2023 | Motion to Strike |
| 06/15/2023 | Motion Not Scheduled |
| 06/16/2023 | Objection Filed |
| 06/20/2023 | Entry of Appearance |
| 06/20/2023 | Entry of Appearance |
| 07/13/2023 | Miscellaneous Motion Filed |
| 07/13/2023 | Motion for Temporary Restraining Order |
| 07/13/2023 | Memorandum Filed |
| 07/14/2023 | Motion to Appear Pro Hac Vice |
| 07/24/2023 | Omnibus Form |
| 08/01/2023 | Order - Petition for Admission Pro Hac Vice Granted    (Judicial Officer: Van Couyghen, Associate Justice Brian) |
| 08/02/2023 | Motion for Continuance<br>Party:   Plaintiff Arthur of the Wittenberg Family |

## Hearings

**07/24/2023**    **Hearing on Motion to Appear Pro Hac Vice**    (2:00 PM)    (Judicial Officer: Van Couyghen, Associate Justice Brian)
*Heard and Granted*

**08/03/2023**    **Hearing on Motion for Restraining Order**    (10:00 AM)    (Judicial Officer: Van Couyghen, Associate Justice Brian)
*Granted/Denied in Part*

**08/03/2023**    **Hearing on Motion**    (10:00 AM)    (Judicial Officer: Van Couyghen, Associate Justice Brian)
*Continued*

**08/03/2023**    **Hearing on Motion for Continuance**    (10:00 AM)    (Judicial Officer: Van Couyghen, Associate Justice Brian)
*Heard and Granted*

**08/31/2023**    **Preliminary Injunction**    (10:30 AM)    (Judicial Officer: Van Couyghen, Associate Justice Brian)

**09/25/2023**    **Hearing on Motion to Dismiss**    (11:00 AM)    (Judicial Officer: McHugh, Associate Justice Kevin F.)

**09/25/2023**    **Hearing on Motion to Dismiss**    (11:00 AM)    (Judicial Officer: McHugh, Associate Justice Kevin F.)

**09/25/2023**    **Hearing on Motion**    (2:00 PM)    (Judicial Officer: Van Couyghen, Associate Justice Brian)



# IN THE SUPERIOR COURT KENT COUNTY
# STATE OF RHODE ISLAND

NO.  KC-2023-0303                                    DIVISION:

**ARTHUR OF THE FAMILY WITTENBERG**
701 Loyola Avenue, Unit 57867
New Orleans, LA 70113
*PLANITIFF*

*V.*

**Caterine V. Eastwood**
**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**John McNicholas**
**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**NEW YORK COMMUNITY BANCORP, INC**
**102 Duffy Ave. Hicksville, NY 11801**
d/b/a
**FLAGSTAR BANK**
5151 Corporate Drive
Troy, MI 48098

**James K. Ciroli, CFO**
**FLAGSTAR BANK**
5151 Corporate Drive
Troy, MI 48098
*DEFENDANTS*

23 AUG -8 PM 12: 43
KENT SUPERIOR COURT
FILED
CLERK'S OFFICE

FILED: _____          _____
                                                DEPUTY CLERK

# RESPONSE TO DEFENDANTS' MOTION FOR
# TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION
# AND REQUEST FOR EMERGENCY HEARING AND
# MEMORANDUM IN SUPPORT THEREOF

["Cujusque Rei Potissima Pars"][The Principle Part Of Everything Is In The Beginning]

**COMES NOW** the Plaintiff who has formally introduce himself to this court, as Arthur of The Family Wittenberg, a Private American National/Non "U.S. citizen", Executor, Grantor, Settlor, and Beneficiary, of the Estate of ARTHUR WITTENBERG, one of we the people, to provide this court and the Defendants with a response to the MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION AND REQUEST FOR EMERGENCY HEARING AND MEMORANDUM IN SUPPORT THEREOF, filed by the Defendants. The Plaintiff, once more learned through the Rhode Island case search on July 31, 2023, of a HEARING scheduled for August 3, 2023, the Plaintiff has not received any correspondence from the Attorneys in respect to said HEARING, by phone or any other form of communication, which has been the practice of the Defendants throughout, with any MOTIONS filed in this instant case. The Plaintiff, checked the spam mail box, and discovered a email from Thomas William Lyons III, dated Monday, July 24, 2023, at 12:37 PM, **EXHIBIT A,** with attachments of what appears to be the latest MOTION'S filed the attorney, 11 days after the attorney falsely certified he emailed a copy of said MOTIONS to the Plaintiff, and only 10 days before the Hearing. The TRO was dated July 13, 2023, and the affidavit was dated July 7, 2023.

There is, and continue to be a pattern of depravation and violations against the civil rights and the protection provided under the constitution of the United States, toward the undersigned Plaintiff, which have not been duly protected, due to the deceptive practice, of Defendants, since the inception of the matter, making it nearly impossible to receive a fair hearing or trial through this court system. Now the DEFENDANTS are requesting a TRO, with no facts or merits, and without any evidence relevant to the instant case by inserting an out of state attorney who is claiming he represent the Defendant FLAGSTAR BANK, James K. Ciroli, CFO, as well, and suddenly an EMERGENCY HEARING is needed for a case that has been filed for more than 60 days, moreover the Defendants have been requesting this court hear this matter in September 2023, which is questionable. Plaintiff will answer the Defendants Motion, pointing out the many defects and falsehoods. and states

## STATEMENT OF THE CASE

On May 2, 2023 Plaintiff instituted a claim against the Defendants, FLAGSTAR BANK, James K. Ciroli, CFO, Caterine V. Eastwood, John McNicholas, and the Law Firm of KORDE & ASSOCIATES, P.C., wherein, Defendants, have not offered an ANSWER to the Plaintiffs claim but instead attempts to evade or sidestep process in an effort to persuade the court to help them avoid due process by filing a MOTIONS to DISMISS, although Defendants Caterine V.

Eastwood, John McNicholas, and the Law Firm of KORDE & ASSOCIATES, P.C., are barred from pleading due to the fact that a Corporation cannot represent itself without hiring outside council, and when Plaintiff filed a MOTION to be heard on this matter, it has and remains unanswered, yet this same court is HEARING a MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, with no proof of injury and an Affidavit from someone that is not a PARTY to this instant case. Today, FLAGSTAR BANK, James K. Ciroli, CFO, stands before this court requesting a TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION be granted but, the Defendants entire statement and argument are built on fabrications and falsehood without any factual validity, merits or thread of truth and without any evidence to support this erroneous accusation. This is a blatant attempt to deceive and defraud the court, which seems to be an ongoing pattern of the Defendants, this case is based on a title dispute and a wrongful foreclosure on the Defendant part who filed a foreclosure after the passing of Rafael A. Montanez (the "Deceased Beneficiary") of the "24 NINIGRET TRUST". The Defendants claim of irreparable harm, is simply non-existing. According to the legal rules of the state of Rhode Island, there are four element needed for the court to grant a TRO:

Plaintiff will explore Rhode Island RULES 65, and it's elements to expose why the Defendants MOTION is improper, without substance, without cause, without merit, and without any factual standing under law, and should be DENID.

ELEMENTS of RULES 65

(1) that he or she is likely to succeed on the merits of his claims;

(2) that he or she is likely to suffer irreparable harm without preliminary relief;

(3) the balance of equities between the parties support an injunction; and

(4) the injunction is in the public interest.


**ANSWER**

In the **ARGUMENT** of the Defendants petition they stated:


*Page 1*

*"Defendant Flagstar Bank, N.A. ("Flagstar"), and Defendant James K. Ciroli ("Ciroli," collectively as "Defendants"), by and through his undersigned counsel, hereby moves for the issuance of a Temporary Restraining Order and, after hearing thereon, a Preliminary Injunction, pursuant to Rule 65 of the Rhode Island Superior Court Rules of Civil Procedure, directing Plaintiff Arthur of the Family Wittenberg ("Plaintiff"), his successors, agents, affiliates or other associated occupiers to (i) immediately vacate the real estate property located at 24 Ninigret*

Street, Warwick, Rhode Island 02889 (the "Property"),
(ii) cease and desist from providing any alterations to the Property including the removal of fixtures or committing waste to the Property.
In support of this Motion, Defendants rely upon the allegations contained in the Complaint, the Motion to Dismiss and Memorandum in Support, and the attached affidavit of John Vanikiotis attached as Exhibit 1.
Plaintiff's illegal occupation of the Property and his (or his agents) removal of Defendants' door locks have caused and continue to cause Defendants irreparable harm. Accordingly, we request the Court to (i) hold an emergency hearing which consolidates this Motion with Defendants' previously filed Motion to Dismiss, (ii) grant this motion to enjoin Plaintiff from occupying the Property and cease and desist from altering the Property in anyway; (iii) dismiss this action with prejudice, and (iv) such further relief the Court deems necessary". and

In the Defendants FACTUAL AND PROCEDURAL HISTORY the Defendant stated:

*"1. Rafael A. Montanez (the "Decedent" or the "Borrower") acquired title to the real estate and improvements known as 24 Ninigret Street, Warwick, RI 02889 (the "Property") by Warranty Deed dated November 15, 2017 and recorded with the City of Warwick Land Evidence Records (the "LER") on November 15, 2017 in Book 8942, Page 307."*

**ANSWER 1**
The fact that Rafael A. Montanez (the "Deceased Beneficiary") obtained a loan to purchased a home is not what's in question. The matter is rather or not said loan became delinquent and/or in default to any other reason than (the "Deceased Beneficiary") taking off the flesh and passing from this life.

**Defendant stated**:
*2. The Borrower secured a mortgage loan from Homestar Mortgage, Inc. on November 15, 2017 (the "Loan").*

*3. This Loan is evidenced by a Fixed Rate Note in the original principal amount of $234,500.00 dated November 15, 2017, given by Rafael A. Montanez to Homestar Mortgage, Inc. (the "Note"). The Note includes an allonge containing a special indorsement from Homestar Mortgage, Inc., to Flagstar Bank, N.A.1 ("Flagstar"). A true and accurate copy of the Note is attached hereto as Exhibit 2.*

*4. The Note is secured by a mortgage given by Rafael A. Montanez to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Homestar Mortgage, Inc., encumbering the Property in the original principal amount of $234,500.00 dated November 15 2017, and recorded with the LER on that same day in Book 8942, Page 309 (the "Mortgage"). A certified copy of the Mortgage is attached hereto as Exhibit 3.*

## ANSWER 2,3 and 4

A Fixed Rate Note, or a certified copy of a Mortgage, cannot testify to a default nor can a accusation of a default be deemed sufficient enough to have standing, the Defendants need to provide the official Bank Bookkeeping Records to prove there was a default on said loan before Rafael A. Montanez, (the "Deceased Beneficiary") took off the flesh and passed this life on April 20, 2020. The default of the loan is what's in dispute, and the payment to extinguish said loan sent by Arthur of the family Wittenberg directly to FLAGSTAR BANK, James K. Ciroli, CFO, that was received on April 21, 2019 is the subject matter in question, and not the loan.

## Defendant stated:

*"5. Plaintiff Arthur Wittenberg purports to be "unincorporated" and a "Private civilian of the United States" which are terms associated with the "sovereign citizen" and "redemptionist"*
*1 Since its merger with NYCB on December 1, 2022, Flagstar is no longer referred to as Flagstar Bank, N.A., it now operates as a national bank, and is now referred to as Flagstar Bank, N.A.*

PAGE 2 of Defendant motion

*movements. (See Compl.) He purports to be from New Orleans, Louisiana and has no prior connection with the State of Rhode Island."*

## ANSWER 5

The Plaintiff was very clear as to his state status, as I am a Pre March 9, 1933, Private American National, and have no association or affiliation with what the Defendants alleged council refers to as a "sovereign citizen" nor "redemptionist"
The Plaintiff is in fact a state Diplomat of louisiana, as the supporting document was placed into evidence to prove this fact when the complaint was filed, and do not live in the state of Rhode Island. The name of the institution as to what they are call today is irrelevant.

**Defendant states**:

*"6. On or about August 21, 2019, Plaintiff—despite having no relation to the Property, the Borrower, or Flagstar—mailed a check made out to "Flagstar Bank Without Recourse" and for "credit only" in the amount of $234,500.00, the original amount issued under the Note and not the amount due under the Loan at that time. Check attached as Exhibit 4. (Compl. ¶ 4). The check does not request payment to Flagstar but ambiguously requests "Deposit only for credit on account."*

## ANSWER 6

Defendant claims the Plaintiff has no relations to the property when in fact notification of the Trust formed by (the "Deceased Beneficiary"), was sent to FLAGSTAR BANK, On April 18, 2019, informing the Defendant that (the "Decedent Beneficiary") was placing said property into his trust and Arthur of the family Wittenberg is the Trustee. Where Rafael A. Montanez (the "Deceased Beneficiary") place his homestead, the property known as 24 Ninigret Street, Warwick, RI 02889 into a trust he called the "24 NINIGRET TRUST". a copy of the letter that was sent to the Defendant is attached hereto as **EHIBIT A**

**Defendant states**:

*"7. On or about the same date, Plaintiff mailed Defendant James K. Ciroli, "silver coins" with a value of $3.00. September 13, 2019 Correspondence attached as Exhibit 5."*

## ANSWER 7

Silver coins, which was also accompanied by a check in the amount of $234,500.00, in favor of FLAGSTAR, was only the Special Deposit to seal the transaction of the acquisition for the PROMISSORY NOTE, as indicated on the Tender, providing two options for James K. Ciroli, CFO, to exercise. see. (rules of simple contracts), *(RI Rule §6a-3-302; Holder in Due Course), (RI Rule §6a-3-304; Overdue Instrument) and UCC 3-603, 3-603(b), and the Postal Rule,* the contract to Tender stated; **SPECIAL DEPOSIT ONLY, Tender to One of the Accounts of the United States, Without Recourse,** Tender also stated; **YOU HAVE FIVE (5) DAYS TO ACCEPT OR REFUSE THIS CONSTITUTIONAL TENDER IN WRITING! SILENCE WILL BE DEEMED ACCEPTANCE,** and the Defendant refused or failed to apply or respond, and the Plaintiff have been waiting for the return of said property, the Original Promissory Note, which is the Res of the Plaintiff complaint.

**Defendant states:**

*"8. On or about September 13, 2019, Plaintiff provided a correspondence to Defendant James K. Ciroli unilaterally claiming that Flagstar "has accept [sic] payment concerning my good faith TENDER," and the "amount of silver coin have satisfied and extinguish [sic] these obligations" Id. (emphasis original)".*

## ANSWER 8

Defendants alleged council, confirms and admits that correspondence and negotiation between FLAGSTAR BANK, James K. Ciroli, CFO, and the Plaintiff has in deed commenced, as well as noticed the acceptance was completed since September 2019, Defendant FLAGSTAR, James K. Ciroli, CFO, had ample time to renegotiate or refuse Tender but instead remained SILENT, as stated in the TENDER; **YOU HAVE FIVE (5) DAYS TO ACCEPT OR REFUSE THIS CONSTITUTIONAL TENDER IN WRITING! SILENCE WILL BE DEEMED ACCEPTANCE.** Furthermore, the alleged council, admission and confirmation that these negotiations did take place, should prove to this court that the Defendant FLAGSTAR BANK, James K. Ciroli, CFO, has no reason to request a TRO or DISMISSAL due to the fact that they are fully aware of their DEFAULT, and attempting to gain an undue enrichment through this action.

**Defendant states:**

*"9. The Borrower passed this life on April 20, 2020, Upon information and belief, he was domiciled in the State of New Jersey at the time of his death."*

## ANSWER 9

The Defendant knows that the ("Deceased Beneficiary"), passed due to complication of the illness he was hospitalized for, and only fell behind as a result of his taking off the flesh and passing of this life. Moreover, an audit of FLAGSTAR BANK, official accounting records will reflect that the monthly obligation which were agreed to under the terms of the Mortgage Loan, and in fact was current and up to date until Rafael A. Montanez, took off the flesh and pass this life.

**Defendant states:**

*"10. Under the terms of the Note and the Mortgage, the Borrower was obligated to make monthly principal and interest payments together with a monthly escrow payment as computed by the mortgagee sufficient to pay real estate taxes and hazard insurance premiums in connection with the Property through the December 1, 2047, maturity date of the Loan. The Borrower*

*defaulted on his payment obligations."*

## ANSWER 10

This entire statement is almost unbelievable to conceive as to why the Defendants alleged council, thought it would be a good statement to articulate. If the ("deceased Beneficiary"), took off the flesh and pass this life, how then can he, or anyone else to that point continue to fulfill any agreement with FLAGSTAR BANK, or any others. Once more if an audit of FLAGSTAR BANK, official accounting records of this account were examined, it will reflect that the monthly obligation which were agreed to under the terms of the Mortgage Loan, and in fact was current and up to date until Rafael A. Montanez, took off the flesh and pass this life, and that the Defendant activated the death benefit of the mortgage insurance.

PAGE 3 of Defendant motion

**Defendant states:**

*"11. On August 16, 2022, this Court issued an order which declared the Borrower "was in default for failure to make monthly payments as required under the terms of the Mortgage and under the promissory note secured by the Mortgage."  Order attached as Exhibit 6 at ¶ (b).  The Court further held that Flagstar "is the holder of the Mortgage and of the promissory note secured by the Mortgage and entitled to exercise of the Statutory Power of Sale for in paragraph no. 22 of the Mortgage."  Id. at ¶ (c)."*

## ANSWER 11

On August 16, 2022, two years and four months after the ("Deceased Beneficiary"), was no longer with us, the court assumed the attorneys in that case were operating in good faith and not attempting to defraud or deceive the court with false statements and fraudulent documents, to gain illegal possession of a property for personal profit, on a foreclosure case that was uncontested, the court, assumed that the attorneys did complete the remedies prescribed by law. The court was unaware that improper and deficient service was concealed on the part of the attorneys. After the ("Deceased Beneficiary"), took off the flesh and passed this life, on April 20, 2020. Plaintiff do not have a copy of the ORDER, referred to by the alleged council for the Defendant. Said RULING is now being contested therefore, has no relevance until the Title Dispute is adjudicated. Not withstanding the Defendants claim of ownership is simply, not true.

**Defendant states:**

*"12. On April 26, 2023, a foreclosure sale was conducted for the Property where a John Vankiotis, purchased the Property. However, the sale has not closed and there has been no transfer of title to date."*

## ANSWER 12

This statement was purposely misleading, the Defendants alleged council opens with the statement; property was purchased by John Vankiotos, it was not purchased by John Vankiotos, he was the winning bidder at the wrongful foreclosure sale, which is also now being contested, in this court, questioning the methods and integrity of the Defendants and it's alleged attorneys in the sale and this instant case, thus rendering the decision of that case on hold pending the outcome of the Title Dispute. Therefore, any sale concerning said property, cannot be complete without clean title, which can only be decided through the title dispute. Moreover, John Vankiotos, confirmed he did not purchase the property due to the cloud, and the transaction has not closed. Then further confirms he only placed a deposit for the property, NOTE, that is not ownership.

**Defendant states:**

*"13. On or about May 4, 2023, Plaintiff and his associates began to unlawfully occupy the Property claiming he owned it and purchased it with "silver coins." See Ex. 1. Without authorization, Plaintiff removed Defendants' posted notices on the Property and posted the following "notice" on the Property"*

## ANSWER 13

On May 4, 2023, The Affiant John Vankiotos, affirms under oath as TRUE statements, that the Plaintiff and his associates began unlawfully occupying the property located at 24 Ninigret Street, Warwick, RI 02889, he also stated that the Plaintiff expressed he purchased the property with silver. The Affiant John Vankiotos, goes on to further state; with yet more falsehoods that the Plaintiff removed signs from the property, this conversation never took place, and is a out right fabrication or the be blunt (LIES), as well as the statement that the Plaintiff removed signs from the property, which also did not happen, see **EXHIBIT B**, a photo of the property which clearly shows no signs as indicated by The Affiant John Vankiotos, but it does show a improper For Sale sign in the front lawn indicating that the property is listed and on the market For Sale, without the Plaintiffs consent. see a copy of the Police Report dated the same day from someone name Ken Roberson, who claimed that they were a concerned neighbor, but is in fact the person who's name is on the improper yard sign with just the first name (KEN), and the person the

Plaintiff call to remove to the sign from the lawn, **EXHIBIT B2,** the only truth to the Affiant
John Vankiotos, statement is the fact that the Plaintiff, did go to the property on this same day,
and did change the locks, and post notice to the public in the windows of the property informing
the public of the Title Dispute filed in the Kent County Court. also see a photo of the property
showing the notice place in the windows of the property, posting the Title Dispute that was
placed in the windows, as well as a copy of the police report, **EXHIBIT B3**

**Defendant states:**

*"14. Plaintiff filed a Complaint before this Court seeking quiet title of the Property."*

**ANSWER 14**

On May 2, 2023 Plaintiff filed a Complaint to QUIET TITLE AND COLLATERAL ATTACK,
against the Defendants NEW YORK COMMUNITY BANCORP, INC, d/b/a, FLAGSTAR
BANK, James K. Ciroli, CFO, Caterine V. Eastwood, John McNicholas, and the Law office of
KORDE & ASSOCIATES, P.C. Two days later the Plaintiff, secure the property because he
found a suspicious realtor sign in the lawn at the property.

PAGE 4 of Defendant motion

**Defendant states:**

*"15. Defendants filed a Motion to Dismiss the Plaintiff's Complaint on the basis that it lacks any
basis in law and purports a frivolous oft-rejected "sovereign citizen" theory.*

*16. To date, Plaintiff has no ownership interest in the Property whatsoever as a matter of public
record. He has no legal basis to occupy the Property whatsoever. He is attempting to steal the
Property."*

**ANSWER 15 and 16**

Defendant claim that the Motion to Dismiss was filed because the Plaintiff's complaint lacked
any basis in law and it purports a "sovereign citizen" theory, when in fact the rules of simple
contract and negotiable instrument are very clear, notwithstanding that the Plaintiff is the
Trustee, and 20% owner as per the "24 NINIGRET TRUST" established by the ("Deceased
Beneficiary"), Rafael A. Montanez.

**Defendant states:**

*"17. Plaintiff's continued occupation of the Property deprives the third-party purchaser of*

*access to the Property and irreparably harms Defendants as it jeopardizes the foreclosure sale and endangers the value of the Property"*

**ANSWER 17**

Defendant claim that the Plaintiff occupying the property, is yet another falsehood cooked up to defraud or deceive the court with false statements and fraudulent documents, along with the made-up claim of irreparably harms such as the Plaintiff is somehow depriving, the third-party purchaser, who only placed a deposit on the property due to the illegal foreclosure sale. The Defendants said the plaintiff jeopardizes the foreclosure sale and endangers the value of the Property and the Plaintiff is sure the Affiant John Vankiotos, will not be on hand at this HEARING, to be cross-examined, because he and the attorneys has committed perjury by lying to this court.

In the Defendants ARGUMENT they go on in more details as to this so call harm the Plaintiff is causing by protecting his interest in the property, and these *"sovereign citizen" theories, as* the alleged council of NEW YORK COMMUNITY BANCORP, INC, d/b/a, FLAGSTAR BANK, James K. Ciroli, CFO, stated in his petition

**Defendant states:**

ARGUMENT

*"I. Plaintiff's Illegal Occupation and Alterations of the Property is Causing Defendants, Irreparable Harm and Plaintiff Must Be Enjoined.*

*1. Defendants Will Prevail on the Merits. The first step of the preliminary injunction analysis is to consider whether Defendants have shown a reasonable likelihood of success on the merits. Fund for Community Progress, 695 A.2d 6 at 521. Defendants have. As presented in Defendants' Motion to Dismiss and its Memorandum in Support, Plaintiff's cause of action is frivolous. He presents an absurd pseudolaw "vapor money" theory which has been rejected by every court that has ever considered it. He claims he owns the Property because he presented Defendants with silver coins valued at $3.00. This legal theory is absurd and in line with his other frivolous "sovereign citizen" theories. Even if this Court takes the facts in the light most favorable to the Plaintiff, he has not presented any claim to the Property that is recognized by law. He has never had any legal interest to the Property whatsoever. He is a trespasser to the Property as a matter of law and Defendants reserve the right to seek criminal charges against him for his unlawful occupation and alterations. The Complaint fails to state a claim as a matter of law and this*

*Court should grant Defendants' Motion to Dismiss. Accordingly, this factor heavily weighs in favor of enjoining Plaintiff's illegal occupation and alterations. This factor is satisfied"*

**ANSWER**

The Defendant claims and attempts to avoid answering the complaint is not unnoticed, if the attorney would like to testify he should do so under oath, so he can be cross examined and not just spout off statements as though they are facts or factual. These attempts to sidestep DISCOVER and go straight to trial is because the attorney has no way to respond to the Plaintiffs Complaint and knows that once the Banks official Bookkeeping Records, are audit they will reflect and disclose that the monthly obligation which were agreed to upon under the terms of the Mortgage Loan, were in fact current and up to date until Rafael A. Montanez, took off the flesh and passed this life, even if the Defendant wanted to remove the fact that the Plaintiff is the true Holder in Due course, due to the purchasing of the Promissory Note, and remove the Tendering of the NOTE, altogether, they would still be the fact the Mortgage insurance that was on the property would have paid said loan in full, that fact also would be reflected in the Banks official Bookkeeping Records, this fact and the fact that the Plaintiff is not living in the property nor are any alterations being done to the property until the Disputed case is completed. Plaintiff is a Private American, and as such, can only conduct acquisitions in Silver or Gold.

PLAINTIFFS ARGUMENT

Once a light is shown on the elements required for the court to acknowledge and grant this motion for a TRO it is clear to see by the evidence presented by the Defendant in this matter that there is, and never was a chance for the Defendants to succeed on the merits of this claims, with made-up statements and and sworn Affidavits, riddled with lies, in an effort to deceive this court.

1. Not only was the claim for a TRO, non-existing but, the AFFIDAVIT did not have any factual merits as to the claims brought before this court
**thus rendering the first element** (1) that he or she is likely to succeed on the merits of his claims; **for TRO void and/or moot**
 2. The Defendant claim of suffering irreparable harm without preliminary relief;
There is no risk to the property as the home is vacant thus Defendants hypothetical harms are not immediate nor rational.
**thus rendering the second element** (2) that he or she is likely to suffer irreparable harm without preliminary relief; **for TRO void and/or moot**

3. Seeing the home was placed into a Trust and the Plaintiff is in fact the TRUSTEE, gives the Plaintiff legal right to pursue this instant case.

**thus rendering the second element** (3) the balance of equities between the parties support an injunction; **for TRO void and/or moot**

4. Now as to the Defendants claim for being in the public best interest.

It is clear to see from the Police Report, that (Ken) who is now known as Ken Robertson, is the caller, and the same person who's name is displayed on the sign, and person who told the Plaintiff that he and John Purchased the property at the auction but was claiming to have called the Police as a concerned neighbor who is actually conspiring with John and the Defendants attorneys to deceive this court. As the title of the home is in dispute and the mortgage was current and up to date until the ("Deceased Beneficiary"), Rafael A. Montanez, took off the flesh and passed from this life. The foreclosure auction buyer is irrelevant and anon factor to these proceedings, additionally the alleged hypothetical harms are irrational as it is also in the best interest of the trust that the home and the surrounding property are in good condition so again there is no immediate harm to the Defendant.

**thus rendering the fourth and final element** (4) the injunction is in the public interest; **for TRO void and/or moot**

Furthermore, the Plaintiff have completed his remedy years ago and the Defendant is clearly in DEFAULT, as per the Defendants alleged attorneys statements in this MOTIONS pleading NUMBERS 6, 7, and 8, and the fact the Defendant have not yet answered the complaint nor provided testimony from anyone who can speak on the matter with firsthand knowledge only accusations incompetent witness.

WHEREFORE, Seeing that the Plaintiff did complete his DEFAULT remedy and there is no way the Defendant claim for TRO has failed to establish any elements required, therefore Defendant MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, should be DENIED, and a ORDER for SUMMARY JUDGEMENT in favor of the Plaintiffs should be GRANTED and such further relief the Court deems necessary.

Respectfully Submitted, August 3, 2023

Respectfully Submitted,

Arthur of the Family Wittenberg, agent
(Private American National/Non, "U.S. citizen)
C/O

Rural Route Delivery
701 loyola avenue, unit 57867
new orleans, louisiana 00000
witt@wittenbergfamily-trust.com
504-451-5770

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been furnished, by USPS 1st Class Certified
Mail postage prepaid, this 3rd, day of August 2023 to:

Serve through Attorney:

**Thomas William Lyons III**
**STRAUSS, FACTOR, LAING & LYONS**
One Davol Square
Suite 305
Providence, RI 02903

**FLAGSTAR BANK,**
5151 Corporate Drive
Troy, MI 48098

**FLAGSTAR BANK,**
**James K. Ciroli, CFO,**
5151 Corporate Drive
Troy, MI 48098

**Caterine V. Eastwood**
**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**John McNicholas**
**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

Mail by:

**Arthur of the Family Wittenberg,**
(Private American National/Non- U.S. citizen)

PLAINTIFF'S EXHIBIT
4

Rafael A. Montanez
24 Ninigret Street
Warwick, RI 02889

April 18, 2019

FLAGSTAR BANK

James K. Ciroli, CFO.
1515 Corporate Dr.
Troy, MI 48098

Re: LOAN #:  *1709EM021429*

Property Address:  24 Ninigret Street , Warwick, RI  02889

Dear Sirs,

Please be advised that I intend to transfer title to the above referenced property into a revocable, Intervivos Trust that will be named 24 NINIGRET TRUST. The trustee's name is Arthur of the family Wittenberg, whose address is 201 International Circle, suite 230, Hunt Valley, Maryland 21030. Please send all further notices regarding this loan to said address.

As I am sure you are aware, such a transfer is a permissible exception to a "due-on-sale" violation pursuant to the Garn-St.Germain Depositary Institutions Act of 1982 (12 U.S.C. Sec. 1701(d)).

Sincerely,

*Rafael A. Montanez*
Rafael A. Montanez



PLAINTIFF'S
EXHIBIT

B

For Date: 05/04/2023  -  Thursday

| Call Number | Time | Call Reason | Action | Priority |
|---|---|---|---|---|

23-24533        1616      Phone - CHECK CONDITION (EMERGENCY)      Services Rendered 2
        Call Taker:    RAKING - Civilian Ryan A King
     Call Closed By:    SCASTAL - Civilian Steven J Castaldi 05/04/2023 1632
   Location/Address:    [203 8587] 24 NINIGRET ST
      Calling Party:    ROBERTSON, KEN @ ***UNKNOWN*** - WARWICK, RI ██████████
      Involved Party:    WITTENBERG, ARTHUR @ 24 NINIGRET ST - WARWICK, RI 02888 504-451-5770
                          Race: B  Sex: M
              Unit:    P4  Officer Sara L Goes
                        Disp-16:19:29              Arvd-16:23:19   Clrd-16:32:04
              Unit:    P11 Officer Evan P Brown
                        Disp-16:19:40                              Clrd-16:20:54
              Unit:    P5  Officer Ryan M McGarry
                        Disp-16:20:44              Arvd-16:23:14   Clrd-16:32:22
              Unit:    P11 Officer Evan P Brown
                        Disp-16:21:03                              Clrd-16:28:49
         Narrative:    05/04/2023 1618 Civilian Ryan A King
                        NEIGHBOR CALLED RP SAID-SOMEONE ON THE PROPERTY.
                        THINKS THEY WERE TRYING TO GAIN ENTRY TO THE HOUSE.
                        PULLED FOR SALE OFF LAWN.
                        NO DESCRIPTION OF MALE OR VEHICLE HE CAME IN, JUST OUT OF
                        STATE PLATES.
                        NEIGHBOR DID NOT WANT-TO-APPROACH.

         Narrative:    05/04/2023 1619 Civilian Ryan A King
                        ASKED RP TO HAVE NEIGBOR CALL IN WITH MORE INFO BUT RP DID
                        NOT HAVE THE NEIGHBOR'S NUMBER, IT WAS BLOCKED WHEN THEY
                        CALLED.

         Narrative:    05/04/2023 1632 Officer Sara L Goes
                        Male bought the house from the bank and provided paperwork.
                        Nothing ██████████

         Narrative:    05/04/2023 1632 Civilian Steven J Castaldi
                        P5. MALE ID'D SELF AS LISTING AGENT FOR PROPERTY

PLAINTIFF'S
EXHIBIT
B - 2



PLAINTIFF'S
EXHIBIT

B - 3



**Beretta, Dayna**

| | |
|---|---|
| **From:** | Help Desk <HelpDesk@courts.ri.gov> |
| **Sent:** | Monday, July 17, 2023 9:17 AM |
| **To:** | Knight, Tracy |
| **Cc:** | Beretta, Dayna; Coutu, Justin; Keegan, Danielle |
| **Subject:** | Work Order Number 97828 - [[WO#97828]] |

***** Reply to this email to append information to [[WO#97828]] *****

Good Morning Tracy:

We do not provide remote access to documents via the portal to pro se litigants at this time.
They may access the case docket on the public version of the portal without an account, however they would need to retrieve case documents form the court(s) directly.

Thank you.

Michaela R. Deuse
Judicial Technology Center
Rhode Island Supreme Court

Summary: Arthur of the Wittenberg Family Tyler access KC-2023-0303

Requestor: Knight, Tracy
Location: Kent County Superior Court
Department: Rhode Island Supreme Court

Type: Portal
Subtype:
Category:
Priority: 4 - Low
Status: Open

Assigned Technician: Deuse, Michaela
Date Assigned: Monday, July 17, 2023 8:32:26 AM
Do Not Use:

Description:
Friday, July 14, 2023 3:53:23 PM by EmailRequestManagement
Work Order created via E-mail Monitor Policy: Default

From: tknight@courts.ri.gov
To: HelpDesk@courts.ri.gov
CC: dberetta@courts.ri.gov ;jcoutu@courts.ri.gov ;dkeegan@courts.ri.gov
Subject: Arthur of the Wittenberg Family Tyler access KC-2023-0303

Information submitted 7/14/2023 3:53:23 PM by Knight, Tracy :
------------------

Hello,

I was hoping for some clarification regarding Arthur's access to Tyler. I was informed previously from Supreme Court that I should give him the number to J-Tech to secure his access. He came in at 4 PM yesterday saying that he was denied access to his file online and he filed a Motion with us to be heard by Judge Van Couyghen requesting access to Tyler.

1

Although I'm on vacation next week, I thought I would open the conversation up to find out what could be done to grant him access from his home in Louisiana. Maybe we could establish the proper steps for him to be granted this access, or, that he is truly not able to gain access as a Pro Se.

I appreciate your help with this matter,


Tracy Knight
Deputy Clerk
Kent County Superior Court
Rhode Island Superior Court
222 Quaker Lane
Warwick, RI 02886
Phone: 401-822-6900
tknight@courts.ri.gov | www.courts.ri.gov<br< a="">>> Attachment 1: image001.jpg

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/3/2023 4:02 PM
Envelope: 4219389
Reviewer: Shawn D.

Case 1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 253 of 430 PageID #: 447

**STATE OF RHODE ISLAND**                                    **SUPERIOR COURT**
**KENT, SC.**

**ARTHUR OF THE FAMILY WITTENBERG,**
      **Plaintiff,**

    **v.**                                    **C.A. NO. KC-2023-0303**

**CATHERINE V. EASTWOOD et al.,**
      **Defendants.**

### ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION

The motion of Defendants Flagstar Bank, N.A., and James K. Ciroli (collectively "Defendants") for preliminary injunction against Plaintiff, having come before Associate Justice Brian Van Couyghen on August 3, 2023, it is hereby

ORDERED

1. The motion is granted and a preliminary injunction is in effect until further order of the Court.

2. Plaintiff and anyone associated with Plaintiff, shall not reside at or occupy the property located at 24 Ninigret Street, Warwick, Rhode Island, 02889 ("the Property").

3. Plaintiff shall not remove any items from the Property or cause any waste or destruction of the Property.

4. Defendants may change the locks on and may enter the Property.

5. Defendants may maintain the property.

6. The matter is continued for further hearing before the Court on August 31, 2023 at 10:00.

Rejected

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 8/3/2023 4:02 PM
Envelope: 4219389
Reviewer: Shawn D.

23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 254 of 430 PageID #: 448

7. Any documentary evidence to be presented at the hearing on August 31, 2023, shall be filed with the court no later than August 10, 2023.

By Order:                                    Enter:

    rejected

_____        _____

Date:

Prepared by:

/s/ Meghan Barry
Meghan Barry, #8437
Strauss, Factor, Laing & Lyons
One Davol Square, Suite 305
Providence, RI 02903
(401) 456-0700
mbarry@straussfactor.com

# CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2023, I filed and served this document through the electronic filing system on all persons who have entered an appearance, Catherine Eastwood, ceastwood@kordeassociates.com, John McNicholas, jmcnicholas@kordeassociates.com, and by regular mail and email to Arthur Wittenberg, 701 Loyola Avenue, Unit 57867, New Orleans, LA 70113, and witt@wittenbergfamily-trust.com. The document electronically filed and served is available for Viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.

/s/ Meghan Barry
Meghan Barry

LAMAR COUNTY SUPERIOR COURT
FILED & RECORDED IN CLERK'S OFFICE
NOV 13 2018 AT 10:15 AM
BPA BOOK 91 PAGES 829
DEPUTY CLERK

# Declaration of Status of arthur: wittenberg

Original Document (Total of 31 Pages)

## Restoration of Former Status

## From Being a Public "United States" citizen

Federally-owned "U.S. citizen" as of March 9, 1933 and
Taxpayer/Bondman put to Tribute as of January 1, 1939

## To Becoming Once Again

## A Pre-March 9, 1933, Private Citizen of the United States
## Private American National/Non- "U.S. citizen"

## Under Section 1, 14th Amendment;
## Constitution of the United States of America

*"Art thou called being a servant? Care not for it:*
*But if thou mayest be made free, use it rather."*
*I Corinthians 7:21*

**arthur: wittenberg, Louisiana National**
Pre-March 9, 1933, Private Citizen of the United States/
Private American National/Non- "U.S. citizen"
Private Citizen of the Republic of Maryland
Special and Private Resident of the County of Prince Georges
Fort Washington, Maryland
Zip Code Excepted

Georgia, Lamar County
I hereby certify the within and foregoing to be
a true, correct and complete copy of the original
that appears of record in this office
This ____ day of _____ 20__
_____
Deputy Clerk, Lamar Superior Court
CLERK SUPERIOR COURT

Page 1 of 3



**STATE OF RHODE ISLAND JUDICIARY**

## SUPERIOR COURT
### NOTICE

CATERINE EASTWOOD
900 CHELMSFORD ST
LOWELL MA  01851

| **Plaintiff** | **Civil Action Number** |
|---|---|
| Arthur of the Wittenberg Family | KC-2023-0303 |
| v. | Noel Judicial Complex |
| **Defendant** | Kent County |
| CATERINE EASTWOOD | 222 Quaker Lane |
| | Warwick RI  02886 |
| | *(401) 822-6900 |

This case has been scheduled in the court location listed above on **08/03/2023**.  All parties should report to Associate Justice Brian Van Couyghen at **10:00 AM** in Kent Courtroom 4A for **Hearing on Motion on Equal Access.**

If you have any questions regarding this procedure, please contact the Scheduling Office at (401) 822-6923.

**Please note:  Failure to appear may result in the case being dismissed or the party being defaulted.**

| This Notice was generated on 7/24/2023. | /s/ Dayna Beretta |
|---|---|
| | Scheduling Office |

If you need language assistance, please contact the Office of Court Interpreters at (401) 222-8710 or by email at interpreterfeedback@courts.ri.gov before your court appearance.

\* If an accommodation for a disability is necessary, please contact the Superior Court Clerk's Office at the telephone number listed above as soon as possible.  TTY users can contact the Superior Court through Rhode Island Relay at 7-1-1 or 1-800-745-5555 (TTY) to voice number.



**STATE OF RHODE ISLAND JUDICIARY**

# SUPERIOR COURT
### NOTICE

THOMAS W. LYONS III
ONE DAVOL SQUARE
STE 305
PROVIDENCE RI  02903

| Plaintiff | Civil Action Number |
|---|---|
| Arthur of the Wittenberg Family | KC-2023-0303 |
| v. | Noel Judicial Complex |
| **Defendant** | Kent County |
| CATERINE EASTWOOD | 222 Quaker Lane |
|  | Warwick RI  02886 |
|  | *(401) 822-6900 |

This case has been scheduled in the court location listed above on **08/03/2023.**  All parties should report to Associate Justice Brian Van Couyghen at **10:00 AM** in Kent Courtroom 4A for **Hearing on Motion on Equal Access.**

If you have any questions regarding this procedure, please contact the Scheduling Office at (401) 822-6923.

**Please note:  Failure to appear may result in the case being dismissed or the party being defaulted.**

| This Notice was generated on 7/24/2023. | /s/ Dayna Beretta |
|---|---|
|  | Scheduling Office |

If you need language assistance, please contact the Office of Court Interpreters at (401) 222-8710 or by email at interpreterfeedback@courts.ri.gov before your court appearance.

* If an accommodation for a disability is necessary, please contact the Superior Court Clerk's Office at the telephone number listed above as soon as possible.  TTY users can contact the Superior Court through Rhode Island Relay at 7-1-1 or 1-800-745-5555 (TTY) to voice number.



**STATE OF RHODE ISLAND JUDICIARY**

**SUPERIOR COURT**
NOTICE

JOHN S MCNICHOLAS
900 CHELMSFORD ST
STE 3102
LOWELL MA  01851

| **Plaintiff** | **Civil Action Number** |
|---|---|
| Arthur of the Wittenberg Family | KC-2023-0303 |
| v. | Noel Judicial Complex |
| **Defendant** | Kent County |
| CATERINE EASTWOOD | 222 Quaker Lane |
| | Warwick RI  02886 |
| | *(401) 822-6900 |

This case has been scheduled in the court location listed above on **08/03/2023.**  All parties should report to Associate Justice Brian Van Couyghen at **10:00 AM** in Kent Courtroom 4A for **Hearing on Motion on Equal Access.**

If you have any questions regarding this procedure, please contact the Scheduling Office at (401) 822-6923.

**Please note:  Failure to appear may result in the case being dismissed or the party being defaulted.**

| This Notice was generated on 7/24/2023. | /s/ Dayna Beretta |
|---|---|
| | Scheduling Office |

If you need language assistance, please contact the Office of Court Interpreters at (401) 222-8710 or by email at interpreterfeedback@courts.ri.gov before your court appearance.

* If an accommodation for a disability is necessary, please contact the Superior Court Clerk's Office at the telephone number listed above as soon as possible.  TTY users can contact the Superior Court through Rhode Island Relay at 7-1-1 or 1-800-745-5555 (TTY) to voice number.



**STATE OF RHODE ISLAND JUDICIARY**

## SUPERIOR COURT
### NOTICE

Arthur of the Wittenberg Family
701 LOYOLA AVE UNIT 57867
NEW ORLEANS LA  70113

| **Plaintiff** | **Civil Action Number** |
|---|---|
| Arthur of the Wittenberg Family | KC-2023-0303 |
| v. | Noel Judicial Complex |
| **Defendant** | Kent County |
| CATERINE EASTWOOD | 222 Quaker Lane |
| | Warwick RI  02886 |
| | *(401) 822-6900 |

This case has been scheduled in the court location listed above on **08/03/2023**.  All parties should report to Associate Justice Brian Van Couyghen at **10:00 AM** in Kent Courtroom 4A for **Hearing on Motion on Equal Access.**

If you have any questions regarding this procedure, please contact the Scheduling Office at (401) 822-6923.

**Please note:  Failure to appear may result in the case being dismissed or the party being defaulted.**

| This Notice was generated on 7/24/2023. | /s/ Dayna Beretta |
|---|---|
| | Scheduling Office |

If you need language assistance, please contact the Office of Court Interpreters at (401) 222-8710 or by email at <u>interpreterfeedback@courts.ri.gov</u> before your court appearance.

* If an accommodation for a disability is necessary, please contact the Superior Court Clerk's Office at the telephone number listed above as soon as possible.  TTY users can contact the Superior Court through Rhode Island Relay at 7-1-1 or 1-800-745-5555 (TTY) to voice number.



**STATE OF RHODE ISLAND JUDICIARY**

## SUPERIOR COURT
### NOTICE

THOMAS W. LYONS III
ONE DAVOL SQUARE
STE 305
PROVIDENCE RI  02903

| Plaintiff | Civil Action Number |
|---|---|
| Arthur of the Wittenberg Family | KC-2023-0303 |
| v. | Noel Judicial Complex |
| **Defendant** | Kent County |
| CATERINE EASTWOOD | 222 Quaker Lane |
| | Warwick RI  02886 |
| | *(401) 822-6900 |

This case has been scheduled in the court location listed above on **08/03/2023.**  All parties should report to Associate Justice Brian Van Couyghen at **10:00 AM** in Kent Courtroom 4A for **Hearing on Motion for Temporary Restraining Order/Preliminary Injunction**

If you have any questions regarding this procedure, please contact the Scheduling Office at (401) 822-6923.

**Please note:  Failure to appear may result in the case being dismissed or the party being defaulted.**

| This Notice was generated on 7/24/2023. | /s/ Dayna Beretta |
|---|---|
| | Scheduling Office |

If you need language assistance, please contact the Office of Court Interpreters at (401) 222-8710 or by email at interpreterfeedback@courts.ri.gov before your court appearance.

* If an accommodation for a disability is necessary, please contact the Superior Court Clerk's Office at the telephone number listed above as soon as possible.  TTY users can contact the Superior Court through Rhode Island Relay at 7-1-1 or 1-800-745-5555 (TTY) to voice number.



**STATE OF RHODE ISLAND JUDICIARY**

## SUPERIOR COURT
### NOTICE

JOHN S MCNICHOLAS
900 CHELMSFORD ST
STE 3102
LOWELL MA  01851

| Plaintiff | Civil Action Number |
|---|---|
| Arthur of the Wittenberg Family | KC-2023-0303 |
| v. | Noel Judicial Complex |
| **Defendant** | Kent County |
| CATERINE EASTWOOD | 222 Quaker Lane |
| | Warwick RI  02886 |
| | *(401) 822-6900 |

This case has been scheduled in the court location listed above on **08/03/2023.**  All parties should report to Associate Justice Brian Van Couyghen at **10:00 AM** in Kent Courtroom 4A for **Hearing on Motion for Temporary Restraining Order/Preliminary Injunction**

If you have any questions regarding this procedure, please contact the Scheduling Office at (401) 822-6923.

**Please note:  Failure to appear may result in the case being dismissed or the party being defaulted.**

| This Notice was generated on 7/24/2023. | /s/ Dayna Beretta |
|---|---|
| | Scheduling Office |

If you need language assistance, please contact the Office of Court Interpreters at (401) 222-8710 or by email at interpreterfeedback@courts.ri.gov before your court appearance.

* If an accommodation for a disability is necessary, please contact the Superior Court Clerk's Office at the telephone number listed above as soon as possible.  TTY users can contact the Superior Court through Rhode Island Relay at 7-1-1 or 1-800-745-5555 (TTY) to voice number.



**STATE OF RHODE ISLAND JUDICIARY**

**SUPERIOR COURT**
NOTICE

Arthur of the Wittenberg Family
701 LOYOLA AVE UNIT 57867
NEW ORLEANS LA  70113

| **Plaintiff** | **Civil Action Number** |
|---|---|
| Arthur of the Wittenberg Family | KC-2023-0303 |
| v. | Noel Judicial Complex |
| **Defendant** | Kent County |
| CATERINE EASTWOOD | 222 Quaker Lane |
| | Warwick RI  02886 |
| | *(401) 822-6900 |

This case has been scheduled in the court location listed above on **08/03/2023**.  All parties should report to Associate Justice Brian Van Couyghen at **10:00 AM** in Kent Courtroom 4A for **Hearing on Motion for Temporary Restraining Order/Preliminary Injunction**

If you have any questions regarding this procedure, please contact the Scheduling Office at (401) 822-6923.

**Please note:  Failure to appear may result in the case being dismissed or the party being defaulted.**

| This Notice was generated on 7/24/2023. | /s/ Dayna Beretta |
|---|---|
| | Scheduling Office |

If you need language assistance, please contact the Office of Court Interpreters at (401) 222-8710 or by email at interpreterfeedback@courts.ri.gov before your court appearance.

* If an accommodation for a disability is necessary, please contact the Superior Court Clerk's Office at the telephone number listed above as soon as possible.  TTY users can contact the Superior Court through Rhode Island Relay at 7-1-1 or 1-800-745-5555 (TTY) to voice number.



**STATE OF RHODE ISLAND JUDICIARY**

# SUPERIOR COURT
### NOTICE

CATERINE EASTWOOD
900 CHELMSFORD ST
LOWELL MA  01851

| **Plaintiff** | **Civil Action Number** |
|---|---|
| Arthur of the Wittenberg Family | KC-2023-0303 |
| v. | Noel Judicial Complex |
| **Defendant** | Kent County |
| CATERINE EASTWOOD | 222 Quaker Lane |
| | Warwick RI  02886 |
| | *(401) 822-6900 |

This case has been scheduled in the court location listed above on **08/03/2023.**  All parties should report to Associate Justice Brian Van Couyghen at **10:00 AM** in Kent Courtroom 4A for **Hearing on Motion for Temporary Restraining Order/Preliminary Injunction.**

If you have any questions regarding this procedure, please contact the Scheduling Office at (401) 822-6923.

**Please note:  Failure to appear may result in the case being dismissed or the party being defaulted.**

| This Notice was generated on 7/24/2023. | /s/ Dayna Beretta |
|---|---|
| | Scheduling Office |

If you need language assistance, please contact the Office of Court Interpreters at (401) 222-8710 or by email at interpreterfeedback@courts.ri.gov before your court appearance.

* If an accommodation for a disability is necessary, please contact the Superior Court Clerk's Office at the telephone number listed above as soon as possible.  TTY users can contact the Superior Court through Rhode Island Relay at 7-1-1 or 1-800-745-5555 (TTY) to voice number.

# IN THE SUPERIOR COURT KENT COUNTY
# STATE OF RHODE ISLAND

NO.  KC-2023-0303                                           DIVISION:

**ARTHUR OF THE FAMILY WITTENBERG**
701 Loyola Avenue, Unit 57867
New Orleans, LA 70113
*PLANITIFF*

*V.*

**Caterine V. Eastwood**
**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**John McNicholas**
**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**NEW YORK COMMUNITY BANCORP, INC**
**102 Duffy Ave. Hicksville, NY 11801**
d/b/a
**FLAGSTAR BANK**
5151 Corporate Drive
Troy, MI 48098

**James K. Ciroli, CFO**
**FLAGSTAR BANK**
5151 Corporate Drive
Troy, MI 48098
*DEFENDANTS*

## MOTION FOR CONTINUANCE
["Cujusque Rei Potissima Pars"][The Principle Part Of Everything Is In The Beginning]

NOW COME PLAINTIFF, Arthur of the family Wittenberg, a Private American National/Non- "U.S. citizen", hereby special appearance, who is not a BAR attorney, and is without an attorney, never being re-presented by an attorney, and without waiving assistance of

counsel, do so without waiving any rights, defenses, statutory or procedural rights, without prejudice and with all rights reserved including UCC 1-308, in dealing with this court, in pro per, sui juris (NOT PRO SE), to enter this MOTION FOR CONTINUANCE, and states

## STATEMENT OF FACTS

There is, and continue to be a pattern of depravation and violations against the civil rights and the protection provided under the constitution of the United States, toward the undersigned Plaintiff, which have not been duly protected, due to the deceptive practice, of Defendants, since the inception of the matter, making it nearly impossible to receive a fair hearing or trial through this court system. Now the DEFENDANTS are requesting a TRO, with no facts or merits, and without any evidence relevant to the instant case by inserting an out of state attorney who claiming he represent the Defendant FLAGSTAR BANK, James K. Ciroli, CFO, as well, and suddenly an EMERGENCY HEARING is needed for a case that has been filed for more than 60 days, moreover the Defendants have been requesting this court hear this matter in September 2023, which is questionable.

Plaintiff Arthur of the family Wittenberg, a Private American National/Non- "U.S. citizen", once more learned through the Rhode Island case search on July 31, 2023, of a HEARING scheduled for August 3, 2023, the Plaintiff has not received any correspondence from the Attorneys in respect to said HEARING, by phone or any other form of communication, which has been the practice of the Defendants throughout, with any MOTIONS filed in this instant case. The Plaintiff, checked the spam mail box, and discover an email from Thomas William Lyons III, dated Monday, July 24, 2023, 12:37 PM, **EXHIBIT A,** with attachments of what appears to be the latest MOTION'S filed the attorney, 11 days after the attorney falsely certified he emailed a copy of said MOTIONS to the Plaintiff. The TRO was dated July 13, 2023, and the affidavit was dated July 7, 2023.

The Plaintiff has expressed in multiple motions the deliberate indifference to the rules and laws of this state that governs the court, and the unscrupulous actions and deceitful practice of the Defendants in this instant case. The Plaintiff responded to said email with a call to Thomas William Lyons III, and left a message with the office receptionist, giving Thomas William Lyons III, alternative dates because Plaintiff has other obligations on that date, the dates were: August 22-25, 2023, and September 16-18, 2023, After Plaintiff spoke with the Defendant office, a follow up email was sent to Thomas William Lyons III. At this time the Plaintiff moves this Honorable Court to enter an Order continuing this action until Monday, August 7, 2023, and in support therefor states:

Plaintiff Arthur of the Family Wittenberg Plaintiff, respectfully moves this Court to enter an Order continuing this action until Monday August 7, 2023, so that he may appear to adequately

defend his position and in support therefore state Rhode Island: Pursuant to RI Rule 32

1. The Plaintiff, is an out of state litigant and cannot appear on this date due to prior obligations.

2. Plaintiff does not reside in the state of Rhode Island.

3. The Plaintiff, does not, do not, and has not, occupied 24 Ninigret Street, Warwick, Rhode Island 02889 (the property) at anytime.

4. Plaintiff complaint is a title dispute, which Challenge the Defendant illegal foreclosure sale that was based on defrauding the court.

5. Plaintiff has the maximum reasonable likelihood of prevailing on the merits of this cause.

6. Plaintiff is not filing this motion for any reason to delay these proceedings unjustly nor in any way to prejudice the Defendants, in fact has request more the once that this instant be set for trial.( to date there is still no judge assigned to this matter).

7. This cause should be continued in the interest of justice.
WHEREFORE Arthur of the Family Wittenberg Plaintiff, moves this Court to enter an Order continuing this action until the date first appearing above and for such other and further relief as the Court may deem reasonable and just under the circumstances.

Respectfully Submitted,

**Arthur of the Family Wittenberg,**
(Private American National/Non- "U.S citizen)
C/O
Rural Route Delivery
701 loyola avenue, unit 57867
new orleans, louisians 00000
witt@wittenbergfamily-trust.com
504-451-5770

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been furnished, by USPS 1st Class Certified Mail postage prepaid, this 2nd, day of August 2023 to:

      Serve through Attorney:

*Exhibit A*

*Page 1 of 3*

**From:** Dr Wittenberg <witt@wittenbergfamily-trust.com>
**Sent:** Monday, July 31, 2023 5:50 AM
**To:** Tom Lyons <Tlyons@straussfactor.com>
**Subject:** Re: Wittenberg v. Eastland, et al. Hearing on TRO Motion on August 3, 2023

Mr. Lyons,

Unfortunately, the date you chose for a hearing conflicts with my schedule. Maybe you should have contacted me before selecting a date. However, I can be in Rhode Island on the following dates August 22- 24, 2023. Feel free to call me at 504-451-5770

**From:** Tom Lyons <Tlyons@straussfactor.com>
**Sent:** Monday, July 24, 2023 12:37 PM
**To:** Dr Wittenberg <witt@wittenbergfamily-trust.com>
**Subject:** Wittenberg v. Eastland, et al. Hearing on TRO Motion on August 3, 2023

Mr. Wittenberg,

Please see the attached letter and omnibus form respecting a hearing on Flagstar Bank's motion for temporary restraining order which the Kent Superior Court has scheduled for August 3, 2023.  I also attach the Motion and supporting materials.

*Exhibit A*
*Page 2of 3*

**From:** Tom Lyons <Tlyons@straussfactor.com>
**Sent:** Monday, July 31, 2023 9:02 AM
**To:** Dr Wittenberg <witt@wittenbergfamily-trust.com>
**Cc:** Asbury, David Mitchell <David.Asbury@troutman.com>
**Subject:** RE: Wittenberg v. Eastland, et al. Hearing on TRO Motion on August 3, 2023

CAUTION: This message came from outside the firm. DO NOT click links or open attachments unless you recognize this sender (look at the actual email address) and confirm the content is safe.

Mr. Wittenberg,

I did not pick the hearing date, the court did after instructing me to file the motion, first. I understand it may be the only date Judge Van Couyghen has available. Flagstar's national counsel, David Asbury, whom I am copying on this email, is making arrangements to travel from out of state for the hearing. I suggest you communicate with him about whether Flagstar is willing to change the hearing date, which may depend on whether there is a judge available to hear the motions on those dates.

Tom Lyons

...

*Exhibit 4*
*Page 3 of 3*

Wittenberg v. Eastland, et al. Hearing on TRO Motion on August 3, 2023

**From:** Asbury, David Mitchell <David.Asbury@troutman.com>
**Sent:** Monday, July 31, 2023 2:33 PM
**To:** Dr Wittenberg <witt@wittenbergfamily-trust.com>
**Cc:** Tom Lyons <Tlyons@straussfactor.com>
**Subject:** RE: Wittenberg v. Eastland, et al. Hearing on TRO Motion on August 3, 2023

Mr. Wittenberg,

We are not willing to coordinate an alternate date.  I have already incurred costs with my travel plans to Rhode Island and this is the date which the judge chose and scheduled himself.  Furthermore, the property is still unlawfully occupied, and your lawsuit has clouded title.  Each day that passes under these conditions causes harm to my client which is exactly why we have requested an emergency hearing on our Motion for Preliminary Injunction and Motion to Dismiss.  I intend to attend on Thursday.

Please let me know if you have any questions or would like to discuss further.

Thanks,


**David Mitchell Asbury**
**Attorney**
**troutman pepper**
Direct: 757.687.7757 | Internal: 17-7757

# IN THE SUPERIOR COURT KENT COUNTY
# STATE OF RHODE ISLAND

NO.  KC-2023-0303                                    DIVISION:

**ARTHUR OF THE FAMILY WITTENBERG**
701 Loyola Avenue, Unit 57867
New Orleans, LA 70113
*PLANITIFF*

*V.*

**Caterine V. Eastwood**
**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**John McNicholas**
**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**NEW YORK COMMUNITY BANCORP, INC**
**102 Duffy Ave. Hicksville, NY 11801**
d/b/a
**FLAGSTAR BANK**
5151 Corporate Drive
Troy, MI 48098

**James K. Ciroli, CFO**
**FLAGSTAR BANK**
5151 Corporate Drive
Troy, MI 48098
*DEFENDANTS*

KENT SUPERIOR COURT
FILED
CLERK'S OFFICE
23 AUG 2 AM 11: 09

## ORDER OF THE COURT

Upon consideration of the Plaintiffs, **MOTION FOR CONTINUANCE**, having been filed, it is hereby determined on this _____ day of August 2023, by the Superior Court Kent County State of Rhode Island.

**Thomas William Lyons III**
**STRAUSS, FACTOR, LAING & LYONS**
One Davol Square
Suite 305
Providence, RI 02903

**FLAGSTAR BANK,**
5151 Corporate Drive
Troy, MI 48098

**FLAGSTAR BANK,**
**James K. Ciroli, CFO,**
5151 Corporate Drive
Troy, MI 48098

**Caterine V. Eastwood**
**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**John McNicholas**
**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851


Mail by:


**Arthur of the Family Wittenberg,**
(Private American National/Non- "U.S. citizen)
C/O
Rural Route Delivery
701 loyola avenue, unit 57867
new orleans, louisians 00000

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 7/24/2023 5:01 PM
Envelope: 4204243
Reviewer: Shawn D.

# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT
## OMNIBUS CALENDAR ASSIGNMENT FORM

☐ **Providence/Bristol County**  ☐ **Kent County**  ☐ **Washington County**  ☐ **Newport County**

|  | CASE NUMBER |
|---|---|
| VS. | |

## CALENDAR TYPE MUST BE SELECTED FOR SCHEDULING PURPOSES
☐ FORMAL SPECIAL CAUSE CALENDAR  ☐ BUSINESS CALENDAR  ☐ DISPOSITIVE MOTION CALENDAR

## FORMAL SPECIAL CAUSE AND BUSINESS CALENDAR

☐ AGENCY APPEAL
☐ ASSESSMENT OF DAMAGES
☐ APPOINTMENT OF A SPECIAL MASTER
☐ CONFIRM ARBITRATION
☐ DECLARATORY JUDGMENT
☐ ENTRY OF JUDGMENT
☐ EVIDENTIARY HEARING
☐ FIRST AND FINAL REPORT
☐ FORECLOSURE OF RIGHT OF REDEMPTION
☐ FRIENDLY SUIT
☐ APPOINTMENT OF PERMANENT RECEIVER
☐ MOTION TO ATTACH
☐ MOTION FOR ATTORNEYS FEES
☐ MOTION TO COMPEL RECEIVER
☐ MOTION TO DEFAULT
☐ MOTION FOR ENTRY OF FINAL JUDGMENT
☐ MECHANIC'S LIEN
☐ MOTION FOR APPROVAL
☐ MANDATORY INJUNCTION
☐ MOTION TO ADJUDGE IN CONTEMPT
☐ OTHER FORMAL MATTER (EXPLAIN) _____
_____
☐ OTHER BUSINESS MATTER (EXPLAIN) _____
_____

☐ MOTION FOR PROTECTIVE ORDER
☐ MOTION TO RECONSIDER
☐ ORAL PROOF OF CLAIM
☐ PETITION TO ALLOW SECURED CLAIM
☐ PETITION TO APPOINT TEMPORARY RECEIVER
☐ PROOF OF CLAIM
☐ PETITION TO ENFORCE
☐ PETITION FOR INSTRUCTIONS
☐ PRELIMINARY INJUNCTION
☐ APPOINTMENT OF PERMANENT SPECIAL MASTER
☐ PETITION TO RECLAIM
☐ PARTITION PROCEEDINGS
☐ PETITION TO SELL
☐ RECEIVERSHIP PROCEEDINGS
☐ SHOW CAUSE HEARING
☐ SUPPLEMENTARY PROCEEDINGS
☐ TITLE PROCEEDINGS
☐ TEMPORARY RESTRAINING ORDER
☐ TRUSTEE PROCEEDINGS
☐ VACATE ARBITRATION
☐ WRIT OF MANDAMUS
☐ WRIT OF REPLEVIN

**If you require witnesses, state the estimated time frame of said hearing and attach a witness list and expected testimony to this form.**

## DISPOSITIVE MOTION CALENDAR

☐ MOTION TO DISMISS, UNDER RULE 12
☐ MOTION FOR ENTRY OF JUDGMENT ON PLEADINGS
☐ OTHER DISPOSITIVE MOTION: (EXPLAIN) _____
_____

☐ MOTION FOR PARTIAL SUMMARY JUDGMENT
☐ MOTION FOR SUMMARY JUDGMENT

**HEARING DATE:** | **APPROVED BY:**

**Failure to fill out this form properly may result in your hearing date not being approved.**

| Signature of Attorney or Self-represented Litigant /s/ _____ | Address: |
|---|---|
| Rhode Island Bar Number: | Office Telephone Number: | Date: |

Superior-37 (revised May 2023)

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 7/24/2023 3:01 PM
Envelope: 4204243
Reviewer: Shawn D.

1:23-cv-00490-MSM-PAS     Document 5     Filed 11/21/23     Page 273 of 430 PageID
#: 467

**STATE OF RHODE ISLAND**                                    **SUPERIOR COURT**
**KENT, SC.**

**ARTHUR OF THE FAMILY WITTENBERG,**
       **Plaintiff,**

    **v.**                                              **C.A. NO. KC-2023-0303**

**CATHERINE V. EASTWOOD et al.,**
       **Defendants.**

ORDER GRANTING MOTION FOR ADMISSION PRO HAC VICE

The motion of Defendants Flagstar Bank, N.A., and James K. Ciroli for the admission pro

hac vice of David M. Asbury having come before Associate Justice Brian Van Couyghen on July

24, 2023, it is hereby

    ORDERED

    The motion is granted.

By Order:                                              Enter:

                                                        /s/ Dayna Beretta
                                                        Deputy Clerk I
               /s/ Brian Van Couyghen
               Associate Justice                                       August 1, 2023

_____          _____

Date:

Prepared by:

/s/ Thomas W. Lyons
Thomas W. Lyons, #2946
Strauss, Factor, Laing & Lyons
One Davol Square, Suite 305
Providence, RI 02903
(401) 456-0700
tlyons@straussfactor.com

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 7/24/2023 3:01 PM
Envelope: 4204243
Reviewer: Shawn D.

Case 1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 274 of 430 PageID #: 468

CERTIFICATION OF SERVICE

I hereby certify that on July 24, 2023, I filed and served this document through the electronic filing system on all persons who have entered an appearance, including Arthur Wittenberg, 701 Loyola Avenue, Unit 57867, New Orleans, LA 70113. The document electronically filed and served is available for Viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.

/s/ Thomas W. Lyons
Thomas W. Lyons

**STATE OF RHODE ISLAND**                              _____ **COURT**

KENT COUNTY                , SC

ARTHUR OF THE FAMILY WITTENBERG

                                                    :
                                                    :
           **v.**                                   :           **C.A. No.** KC-2023-0303
                                                    :
FLAGSTAR BANK, FSB, et al.                           :
                                                    :

## CLIENT CERTIFICATION

I, _____, certify that:

1. I am the plaintiff/defendant or an authorized representative of a corporate or business entity which is the plaintiff/defendant in this case;

2. I am aware that Attorney _____ is not a member of the Rhode Island bar, but that he/she has applied for permission to appear in this case on my behalf;

3. I am also aware that, if Attorney _____ is permitted to appear in this case, I will also be required to engage as co-counsel and pay for the services of a lawyer who is a member of the Rhode Island bar;

4. I am also aware that the Rhode Island lawyer engaged must be fully prepared to assume complete responsibility for the case at any time, and may be required to conduct the trial/hearing/appeal in this case on my behalf (or on behalf of the corporate or business entity);

5. Having been advised of the matters set forth above, I support the request of Attorney _____ to be permitted to appear in this case on my behalf (or on behalf of the corporate or business entity), in accordance with the rules of this Court and of the Supreme Court of the State of Rhode Island.


_____          *Jennifer M. Stout*
Witness                                   _____
                                          Signature

                                          _____
                                          Print Name

                                          _____
                                          Date


Supreme-8 (revised March 2013)

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 7/14/2023 3:41 PM
Envelope: 4192564
Reviewer: David B.

3-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 276 of 430 PageID
#: 470

STATE OF RHODE ISLAND

Kent County      , SC

                   Superior      COURT

Arthur of the Family Wittenberg     :

                         :

       v.                  :         C.A. No. KC-2023-0303

                         :

Flagstar Bank, FSB, et al.        :

                      Hearing: July 24 2023

## MISCELLANEOUS PETITION FOR ADMISSION PRO HAC VICE
### SUPREME COURT ARTICLE II, RULE 9(A)

     Thomas W. Lyons            hereby requests that    David M. Asbury

                Petitioner

be admitted pro hac vice in the above-case/agency proceeding as counsel with local associate

counsel identified below, on the following grounds (*Please check appropriate grounds and*

*provide specifics as noted*):

☑ The case/agency proceeding involves the following complex areas of the law, in which pro

hac vice counsel concentrates: (*Petitioner shall specify the area of law at issue and the basis*

*upon which s/he certifies that the pro hac vice counsel concentrates in said area, including past*

*cases in this or any other jurisdiction. Detailed information about past cases, including docket*

*sheets, must be provided. Attach additional pages if needed.*)

Soverign Citizen Theories that although are widely rejected by courts are complex in
their own pseudolaw movements.  Consumer litigation involving debt collection and
mortgages.

☐ Pro hac vice counsel's long-standing representation of the client: (*Petitioner shall specify all*

*facts to support the long-standing attorney-client relationship at issue, including dates and*

*extent of the representation. Detailed information about past cases, including docket sheets,*

*must be provided. Attach additional pages if needed.*)

Supreme-6 (revised February 2013)

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 7/14/2023 3:41 PM
Envelope: 4192564
Reviewer: David B.

3-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 277 of 430 PageID
#: 471

☐ The local bar lacks experience in the field involved: (*Petitioner shall specify all facts to support the claim that the local bar lacks the expertise necessary to competently handle this case. Attach additional pages if needed.*)

☐ The case/agency proceeding involves complex legal questions under the law of a foreign jurisdiction with which pro hac vice counsel is familiar: (*Petitioner shall specify all facts to support the claim that the case/agency proceeding involves the existence of legal questions involving the law of a foreign jurisdiction with which pro hac vice counsel is familiar and the basis for that familiarity. Detailed information about past cases, including docket sheets, must be provided. Attach additional pages if needed.*)

☐ The case/agency proceeding requires extensive discovery in a foreign jurisdiction convenient to pro hac vice counsel: (*Petitioner shall specify all facts to support the need for extensive discovery proceedings in a foreign jurisdiction with which pro hac vice counsel is familiar. Detailed information about past cases, including docket sheets, must be provided. Attach additional pages if needed.*)

☐ It is a criminal case, and pro hac vice counsel is defendant's counsel of choice.

Supreme-6 (revised February 2013)

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 7/14/2023 3:41 PM
Envelope: 4192564
Reviewer: David B.

3-cv-00490-MSM-PAS   Document 5   Filed 11/21/23   Page 278 of 430 PageID #: 472

☐ Other: *(Petitioner shall specify all other facts to support a finding of good cause. Attach additional pages if needed.)*

**I hereby represent that I am a member in good standing of the bar of the State of Rhode Island and that I am actively engaged in the practice of law out of an office located in this state.**

_____
Signature

Thomas W. Lyons, Bar No. 2946
_____
Print Name and R.I. Bar No.

Attorney for:  Flagstar Bank, FSB
_____

Dated:  7/14/23
_____

/s/ David M. Asbury
_____
Signature Pro Hac Vice Counsel/Applicant

**CERTIFICATE OF SERVICE**

I, _____, hereby certify that a true copy of the within petition for admission pro hac vice with accompanying attorney and client certifications were sent postage prepaid to Arthur of the Family Wittenberg, Pro Se, 701 Loyola Ave, Unit 57867 New Orleans, LA 70113 ,  on this ___ day of ___July___  20 23 .

_____

Supreme-6 (revised February 2013)

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 7/14/2023 3:41 PM
Envelope: 4192564
Reviewer: David B.

3-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 279 of 430 PageID
#: 473

STATE OF RHODE ISLAND                                    Superior COURT

Kent County                          , SC

Arthur of the Family Wittenberg              :
                                             :
            v.                               :          C.A. No. KC-2023-0303
                                             :
Flagstar Bank, FSB, et al.                   :
                                             :

## ATTORNEY CERTIFICATION FOR ADMISSION PRO HAC VICE
### SUPREME COURT ARTICLE II, RULE 9(A)

☑  I certify that I am a member in good standing of the bar of the following State(s) without any restriction on my eligibility to practice, and that I understand my obligation to notify this Court immediately of any change to my status in this respect. (*Attach additional pages if needed.*)

| Jurisdiction | Dates of Admission | Bar Number | Current Status |
|---|---|---|---|
| Virginia Supreme Court | June 4, 2007 | 74306 | Active |
| West Virginia State Court | June 24, 2010 | 11277 | Active |
| New York State Court | January 10, 2004 | 4207288 | Active |
| District of Columbia | March 18, 2011 | 99879 | Active |
| See attached* | | | |

☑  I certify that I am not currently disbarred or suspended in any court.

☐  Below is a complete list of all matters in which I have been sanctioned or disciplined. (*Attach additional pages if needed.*)

| Jurisdiction/Authority | Caption/Case Number | Nature of Allegations | Action Taken |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

Supreme-5 (revised March 2017)

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 7/14/2023 3:41 PM
Envelope: 4192564
Reviewer: David B.

3-cv-00490-MSM-PAS     Document 5     Filed 11/21/23     Page 280 of 430 PageID
#: 474

☐ The following is a complete and accurate list of *all* proceedings in which I have applied for pro hac vice admission pursuant to Article II, Rule 9(a) of the Supreme Court Rules on the Admission to Practice Law. (*Attach additional pages if needed. Attach docket sheets for all cases listed below and copies of all court orders pertaining to your admission pro hac vice.*)

| Court Filed | Case Name/Number | Date Filed | Admission Granted? |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

☑ I have read and certify that the Miscellaneous Petition for Admission Pro Hac Vice filed by local counsel with this certification contains true and accurate information regarding my experience which provides the basis for my admission pro hac vice.

☑ I have read, acknowledge, and agree to observe and to be bound by the local rules and orders of this Court, including the Rules of Professional Conduct of the Rhode Island Supreme Court, as the standard of conduct for all attorneys appearing before it.

☑ I acknowledge that if specially admitted to appear in the above-entitled matter that I will be subject to the disciplinary procedures of the Rhode Island Supreme Court. I hereby authorize the disciplinary authorities of the bar of the State(s) listed above to release any information concerning my practice in said State(s) pursuant to the request of the Disciplinary Counsel of the Rhode Island Supreme Court.

☑ For purposes of this case I have associated with local associate counsel identified below, and have read, acknowledge, and will observe the requirements of this Court respecting the participation of local associate counsel, recognizing that failure to do so may result in my being disqualified, either upon the Court's motion or motion of other parties in the case.

Supreme-5 (revised March 2017)

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 7/14/2023 3:41 PM
Envelope: 4192564
Reviewer: David B.

1:23-cv-00490-MSM-PAS     Document 5     Filed 11/21/23     Page 281 of 430 PageID #: 475

/s/ David M. Asbury
_____
Signature

David M. Asbury
_____
Print Name

Troutman Pepper Hamilton Sanders, LLP
_____
Firm Name

222 Central Park Ave, Ste 2000, Virginia Beach, VA 23462
_____
Business Address


## CERTIFICATION OF LOCAL ASSOCIATE COUNSEL

I certify that I have read and join in the foregoing Certification, and acknowledge and agree to observe the requirements of this Court as related to the participation and responsibilities of local associate counsel.

_____
Signature

Thomas W. Lyons
_____
Print Name

2946
_____
Rhode Island Bar Number.

Strauss, Factor, Laing & Lyons
_____
Firm Name

One Davol Sq., #305, Providence, RI 02903
_____
Business Address


Supreme-5 (revised March 2017)

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 7/13/2023 4:48 PM
Envelope: 4191113
Reviewer: Lindsay Z.

Case 1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 282 of 430 PageID #: 476

STATE OF RHODE ISLAND                          Hearing:
KENT, SC.                                                      SUPERIOR COURT

ARTHUR OF THE FAMILY WITTENBERG,

      Plaintiff,

      v.                                                      C.A. NO. KC-2023-0303

CATHERINE V. EASTWOOD et al.,

      Defendants.


## DEFENDANTS' MEMORANUDUM IN SUPPORT OF THEIR MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION AND <u>REQUEST FOR EMERGENCY HEARING</u>

Defendant Flagstar Bank, N.A. ("Flagstar"), and Defendant James K. Ciroli ("Ciroli," collectively as "Defendants"), by and through his undersigned counsel, hereby moves for the issuance of a Temporary Restraining Order and, after hearing thereon, a Preliminary Injunction, pursuant to Rule 65 of the Rhode Island Superior Court Rules of Civil Procedure, directing Plaintiff Arthur of the Family Wittenberg ("Plaintiff"), his successors, agents, affiliates or other associated occupiers to (i) immediately vacate the real estate property located at 24 Ninigret Street, Warwick, Rhode Island 02889 (the "Property"), (ii) cease and desist from providing any alterations to the Property including the removal of fixtures or committing waste to the Property.

In support of this Motion, Defendants rely upon the allegations contained in the Complaint, the Motion to Dismiss and Memorandum in Support, and the attached affidavit of John Vanikiotis attached as **<u>Exhibit 1</u>**. Plaintiff's illegal occupation of the Property and his (or his agents) removal of Defendants' door locks have caused and continue to cause Defendants irreparable harm. Accordingly, we request the Court to (i) hold an emergency hearing which consolidates this Motion with Defendants' previously filed Motion to Dismiss, (ii) grant this motion to enjoin Plaintiff from occupying the Property and cease and desist from altering the Property in anyway; (iii) dismiss this action with prejudice, and (iv) such further relief the Court deems necessary.

1

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 7/13/2023 4:48 PM
Envelope: 4191113
Reviewer: Lindsay Z.

3-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 283 of 430 PageID
#: 477

**FACTUAL AND PROCEDURAL HISTORY**

1.      Rafael A. Montanez (the "Decedent" or the "Borrower") acquired title to the real estate and improvements known as 24 Ninigret Street, Warwick, RI 02889 (the "Property") by Warranty Deed dated November 15, 2017 and recorded with the City of Warwick Land Evidence Records (the "LER") on November 15, 2017 in Book 8942, Page 307.

2.      The Borrower secured a mortgage loan from Homestar Mortgage, Inc. on November 15, 2017 (the "Loan").

3.      This Loan is evidenced by a Fixed Rate Note in the original principal amount of $234,500.00 dated November 15, 2017, given by Rafael A. Montanez to Homestar Mortgage, Inc. (the "Note"). The Note includes an allonge containing a special indorsement from Homestar Mortgage, Inc., to Flagstar Bank, N.A.[1] ("Flagstar"). A true and accurate copy of the Note is attached hereto as **Exhibit 2**.

4.      The Note is secured by a mortgage given by Rafael A. Montanez to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Homestar Mortgage, Inc., encumbering the Property in the original principal amount of $234,500.00 dated November 152017, and recorded with the LER on that same day in Book 8942, Page 309 (the "Mortgage"). A certified copy of the Mortgage is attached hereto as **Exhibit 3**.

5.      Plaintiff Arthur Wittenberg purports to be "unincorporated" and a "Private civilian of the United States" which are terms associated with the "sovereign citizen" and "redemptionist"

---

[1] Since its merger with NYCB on December 1, 2022, Flagstar is no longer referred to as Flagstar Bank, N.A., it now operates as a national bank, and is now referred to as Flagstar Bank, N.A.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 7/13/2023 4:48 PM
Envelope: 4191113
Reviewer: Lindsay Z.

3-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 284 of 430 PageID
#: 478

movements.  (*See* Compl.)  He purports to be from New Orleans, Louisiana and has no prior

connection with the State of Rhode Island.

6.      On or about August 21, 2019, Plaintiff—despite having no relation to the Property,

the Borrower, or Flagstar—mailed a check made out to "Flagstar Bank Without Recourse" and for

"credit only" in the amount of $234,500.00, the original amount issued under the Note and not the

amount due under the Loan at that time.  Check attached as **<u>Exhibit 4</u>**. (Compl. ¶ 4).  The check

does not request payment to Flagstar but ambiguously requests "Deposit only for credit on

account."

7.      On or about the same date, Plaintiff mailed Defendant James K. Ciroli, "silver

coins" with a value of $3.00.  September 13, 2019 Correspondence attached as **<u>Exhibit 5</u>**.

8.      On or about September 13, 2019, Plaintiff provided a correspondence to Defendant

James K. Ciroli unilaterally claiming that Flagstar "has accept [*sic*] payment concerning my good

faith TENDER," and the "**<u>amount of silver</u>** coin have satisfied and extinguish [*sic*] these

obligations" *Id*. (emphasis original).

9.      The Borrower passed this life on April 20, 2020.  Upon information and belief, he

was domiciled in the State of New Jersey at the time of his death.

10.     Under the terms of the Note and the Mortgage, the Borrower was obligated to make

monthly principal and interest payments together with a monthly escrow payment as computed by

the mortgagee sufficient to pay real estate taxes and hazard insurance premiums in connection with

the Property through the December 1, 2047 maturity date of the Loan.  The Borrower defaulted on

his payment obligations.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 7/13/2023 4:48 PM
Envelope: 4191113
Reviewer: Lindsay Z.

11.     On August 16, 2022, this Court issued an order which declared the Borrower "was in default for failure to make monthly payments as required under the terms of the Mortgage and under the promissory note secured by the Mortgage."  Order attached as **Exhibit 6** at ¶ (b).  The Court further held that Flagstar "is the holder of the Mortgage and of the promissory note secured by the Mortgage and entitled to exercise of the Statutory Power of Sale for in paragraph no. 22 of the Mortgage."  *Id.* at ¶ (c).

12.     On April 26, 2023, a foreclosure sale was conducted for the Property where a John Vankiotis purchased the Property.  However, the sale has not closed and there has been no transfer of title to date.

13.     On or about May 4, 2023, Plaintiff and his associates began to unlawfully occupy the Property claiming he owned it and purchased it with "silver coins."  *See* **Ex. 1**.  Without authorization, Plaintiff removed Defendants' posted notices on the Property and posted the following "notice" on the Property:



14.     Plaintiff filed a Complaint before this Court seeking quiet title of the Property.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 7/13/2023 4:48 PM
Envelope: 4191113
Reviewer: Lindsay Z.

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 286 of 430 PageID
#: 480

15.    Defendants filed a Motion to Dismiss the Plaintiff's Complaint on the basis that it lacks any basis in law and purports a frivolous oft-rejected "sovereign citizen" theory.

16.    To date, Plaintiff has no ownership interest in the Property whatsoever as a matter of public record.  He has no legal basis to occupy the Property whatsoever.  He is attempting to steal the Property.

17.    Plaintiff's continued occupation of the Property deprives the third-party purchaser of access to the Property and irreparably harms Defendants as it jeopardizes the foreclosure sale and endangers the value of the Property.

## **STANDARD OF REVIEW**

Rule 65(a)(2) provides that:

> "An application for a preliminary injunction shall be heard on evidence or affidavits or both at the discretion of the court. Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application." Super. R. Civ. P. 65(a)(2).

Consolidation under Rule 65(a)(2) "is a flexible procedure that 'may be raised by the parties or on the court's own motion.'" *Richards v. Halder*, 853 A.2d 1206, 1211 (R.I. 2004) (quoting *Oster v. Restrepo*, 448 A.2d 1268, 1270 (R.I. 1982)). "'[T]he decision whether or not to consolidate the hearing for preliminary relief with a trial on the merits is left to the sound discretion of the trial justice [who] may order consolidation and advancement in any appropriate manner as long as his order protects the parties' rights to a full hearing on the merits.'" *Id.* (quoting *Oster*, 448 A.2d at 1270).  Importantly, "parties are not prejudiced if they have received adequate notice and sufficient time to prepare for consolidation and

advancement." *Id.* (citing *Pucino v. Uttley*, 785 A.2d 183, 188 n.1 (R.I. 2001)); *see also Capital Video Corp. v. Bevilacqua*, 2023 R.I. Super. LEXIS 32, *7-8.

Typically, in reviewing a request for a preliminary injunction under Rule 65 of the Superior Court Rules of Civil Procedure, the Superior Court applies a four-factor test and "determine[s] whether the moving party (1) has a reasonable likelihood of success on the merits, (2) will suffer irreparable harm without the requested injunctive relief, (3) has the balance of the equities, including the possible hardships to each party and to the public interest, tip in its favor, and (4) has shown that the issuance of a preliminary injunction will preserve the status quo." *Iggy's Doughboys, Inc. v. Giroux*, 729 A.2d 701, 705 (R.I. 1999). Further, "the decision to grant a preliminary injunction [under Rule 65] rests within the sound discretion of the hearing justice" and will not be overturned "if the party requesting the preliminary injunction at least has made out a prima facie case." *Id.* (citing *The Fund for Community Progress v. United Way of Southeastern New England*, 695 A.2d 517, 521 (R.I. 1997) and *DiLibero v. Swenson*, 593 A.2d 42, 44 (R.I. 1991)). The moving party is not required to establish a "certainty of success." *DiDonato v. Kennedy*, 822 A.2d 179, 181 (R.I. 2003) (quoting *Fund for Community Progress*, 695 A.2d at 521); *see also State v. BTTR, LLC*, 2023 R.I. Super. LEXIS 29, *5-6. Here all four factors favor the granting of this motion.

## **ARGUMENT**

**I.**    **Plaintiff's Illegal Occupation and Alterations of the Property is Causing Defendants Irreparable Harm and Plaintiff Must Be Enjoined.**

1.    Defendants Will Prevail on the Merits.

The first step of the preliminary injunction analysis is to consider whether Defendants have shown a reasonable likelihood of success on the merits. *Fund for Community Progress*, 695 A.2d

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 7/13/2023 4:48 PM
Envelope: 4191113
Reviewer: Lindsay Z.

3-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 288 of 430 PageID #: 482

at 521. Defendants have.  As presented in Defendants' Motion to Dismiss and its Memorandum in Support, Plaintiff's cause of action is frivolous.  He presents an absurd pseudolaw "vapor money" theory which has been rejected by every court that has ever considered it.  He claims he owns the Property because he presented Defendants with silver coins valued at $3.00.  This legal theory is absurd and in line with his other frivolous "sovereign citizen" theories.  Even if this Court takes the facts in the light most favorable to the Plaintiff, he has not presented any claim to the Property that is recognized by law.  He has *never* had any legal interest to the Property whatsoever.  He is a trespasser to the Property as a matter of law and Defendants reserve the right to seek criminal charges against him for his unlawful occupation and alterations.  The Complaint fails to state a claim as a matter of law and this Court should grant Defendants' Motion to Dismiss.  Accordingly, this factor heavily weighs in favor of enjoining Plaintiff's illegal occupation and alterations.  This factor is satisfied.

      2.     <u>Plaintiff's Illegal Occupation Causes Defendants Irreparable Harm</u>.

"The moving party seeking a preliminary injunction must demonstrate that it stands to suffer some irreparable harm that is presently threatened or imminent and for which no adequate legal remedy exists to restore that plaintiff to its rightful position." *Fund for Community Progress*, 695 A.2d at 521; *but see Town of North Kingstown v. International Association of Firefighters, Local 1651, AFL-CIO*, 65 A.3d 480, 482 (R.I. 2013) (holding that where a strong showing is made on likelihood of success on the merits, the moving party "need not make as strong a showing of irreparable harm").

Here, Plaintiff has (a) replaced the locks to the Property purchased by Defendants (b) taken down the Defendants' notices/postings and replaced them with his own; (c) placed his own family

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 7/13/2023 4:48 PM
Envelope: 4191113
Reviewer: Lindsay Z.

1:23-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 289 of 430 PageID #: 483

members and/or associates in the property as occupants and (d) denied the purchaser of the Property. **Ex. 1**. All of this of course, without a shred of any documentation to support his claim of ownership. His erratic behavior may lead to complaints or even lawsuits by neighbors. Plaintiff's actions improperly clouds the title to the Property jeopardizing the closing of the foreclosure sale which has taken place. **Ex. 1** ¶ 18 ("Given the uncertainty and obstruction caused by this occupation, I am hesitant not proceeding with the closing of the sale unless and until Arthur Wittenberg and his associates are removed from the Property."). Defendants have already returned the deposit of Mr. John Vanikoiotis who fears he may be charged for the electricity, water, and other utilities. Furthermore, Plaintiff's occupation and alterations may lower the fair market value of the property and deprive Defendants of the value of their lien. Accordingly, if this Court fails to enjoin Plaintiff and other occupiers, then Defendants may never recover the amounts they are legally entitled to through the foreclosure sale. This factor is satisfied.

3.    <u>Balancing of the Equities Favors Defendants</u>.

"Having found a likelihood of success [on the merits] and an immediate irreparable injury, the trial justice should next consider the equities of the case by examining the hardship to the moving party if the injunction is denied, the hardship to the opposing party if the injunction is granted and the public interest in denying or granting the requested relief." *Fund for Community Progress*, 695 A.2d at 521. Here, the value of Defendants' lien on the Property is irreparably damaged if the pending foreclosure sale does not close. This would cause Defendants to expend an unknown amount of time and expenses to re-sell the property. Moreover, the value of the Property may suffer permanently due to any alterations Plaintiff conducts to the Property. If Plaintiff commits waste or other alterations, the Property could become unmarketable. The

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 7/13/2023 4:48 PM
Envelope: 4191113
Reviewer: Lindsay Z.

3-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 290 of 430 PageID
#: 484

occupation also harms the third-party purchaser, John Banikiotis, and denies him his rights to the Property. Whereas the Plaintiff—who again has no interest in the Property whatsoever—shall not be harmed by vacating the Property. His complaint claims that he resides in Louisiana and therefore has a residence. An order instructing the Plaintiff to vacate the Property until resolution of this lawsuit would not harm him in anyway other than he would be required to reside at his resident other than the Property. Accordingly, this factor weighs in favor of issuing an injunction and is satisfied.

4.    <u>Granting a Preliminary Injunction will Preserve the Status Quo.</u>

"In considering the equities, the hearing justice should bear in mind that 'the office of a preliminary injunction is not ordinarily to achieve a final and formal determination of the rights of the parties or of the merits of the controversy, but is merely to hold matters approximately in status quo, and in the meantime to prevent the doing of any acts whereby the rights in question may be irreparably injured or endangered.'" *Fund for Community Progress*, 695 A.2d at 521 (quoting *Coolbeth v. Berberian*, 112 R.I. 558, 564, 313 A.2d 656, 659 (1974)).

Here, Plaintiff's lawsuit attempts to grant him quiet title to the Property when no other documentation supports his claim whatsoever. He has not provided—and cannot provide—any documentation that he has any rights to occupy or alter the Property. Enjoining his occupation and alteration of the Property will maintain the Property's status quo until this Court reaches a resolution on the merits. Accordingly, this factor weighs in favor of granting the Motion for a Preliminary Injunction.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 7/13/2023 4:48 PM
Envelope: 4191113
Reviewer: Lindsay Z.

3-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 291 of 430 PageID #: 485

## CONCLUSION

In conclusion, Defendants have shown a reasonable likelihood of success on the merits. Further, the other three factors of irreparable harm, the balancing of the equities, and the status quo, dilatate that a preliminary injunction is appropriate. Plaintiff and any other occupiers should be enjoined from altering the Property and instructed to vacate the Property immediately.

Defendants Accordingly, we request the Court to (i) hold an emergency hearing which consolidates this Motion with Defendants' previously filed Motion to Dismiss, (ii) grant this motion to enjoin Plaintiff from occupying the Property and cease and desist from altering the Property in anyway; (iii) dismiss this action with prejudice, (iv) sanction Plaintiff for his frivolous and vexatious lawsuit; (v) award Defendants with their attorney fees in costs and (vi) such further relief the Court deems necessary.

Respectfully submitted,

**FLAGSTAR BANK, N.A. and**
**JAMES K. CIROLI**

By: */s/ Thomas W Lyons*
Thomas W. Lyons
STRAUSS, FACTOR, LAING & LYONS
One Davol Square, Suite 305
Providence, RI 02903
(401) 456-0700
tlyons@straussfactor.com

David M. Asbury (Pro Hac Vice Pending)
TROUTMAN PEPPER
HAMILTON SANDERS LLP
222 Central Park Avenue,
Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7757
Facsimile: (757) 687-7500
david.asbury@troutman.com

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 7/13/2023 4:48 PM
Envelope: 4191113
Reviewer: Lindsay Z.

1:23-cv-00490-MSM-PAS     Document 5     Filed 11/21/23     Page 292 of 430 PageID
#: 486

## CERTIFICATION OF SERVICE

I hereby certify that on July 13, 2023, I filed and served this document through the electronic filing system on all persons who have entered an appearance, including Arthur Wittenberg, 701 Loyola Avenue, Unit 57867, New Orleans, LA 70113.   The document electronically filed and served is available for Viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.

*/s/ Thomas W. Lyons*
Thomas W. Lyons

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 7/13/2023 4:48 PM
Envelope: 4191113
Reviewer: Lindsay Z.

STATE OF RHODE ISLAND                    Hearing:  September 25, 2023
KENT, SC.                                    SUPERIOR COURT

**ARTHUR OF THE FAMILY WITTENBERG,**

      **Plaintiff,**

   **v.**                              **C.A. NO. KC-2023-0303**

**CATHERINE V. EASTWOOD et al.,**

      **Defendants.**

### AFFIDAVIT OF JOHN VANIKIOTIS

    I, John Vanikiotis, Esquire being first duly cautioned and sworn upon oath state:

    1.    I am over 18 years of age and am making this affidavit based upon personal knowledge.  I am competent to testify to the matters stated in this affidavit.

    2.    In April 2023, I agreed to purchase the property located at 24 Ninigret Avenue, Warwick, Rhode Island (the "Property") at a foreclosure sale.  In doing so, I had placed a deposit to purchase the Property.  I have also purchased hazard insurance for the Property.  However, the sale has not closed as of yet and I do not currently have title to the Property.

    3.    On or about May 4, 2023, I received a phone call from a neighbor who told me that people were changing the locks on the Property, breaking in and damaging it.

    4.    I placed a phone call to the Warwick Police Department and informed them that trespassers were on the Property.

    5.    I arrived at the Property, and I was informed that the police officers visited the Property but have left the Property prior to my arrival.

    6.    A man, who I now know as Arthur Wittenberg was located at the Property with one other person.  He claimed he owns the Property after filing documentation with a court.  He

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 7/13/2023 4:48 PM
Envelope: 4191113
Reviewer: Lindsay Z.

3-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 294 of 430 PageID
#: 488

claimed he purchased the Property with "silver coins." He showed me court documents but did

not permit me to take pictures and claimed that "everyone is getting served."

7.      I represented that I had purchased the Property at the foreclosure sale and attempted

to show him my paperwork, but he refused to acknowledge it.

8.      He did not permit me to enter the Property.

9.      I witnessed him taking personal property out of the Property.

10.     The Property previously had locks and notices on it which I understood to be from

the foreclosing lender's asset management company.

11.     The Property locks were changed, and the bank's notice was replaced with the

following notice:



12.     Mr. Wittenberg placed a "For Sale" sign in the front yard of the Property which

stated it was "For Sale by Owner" and had his phone number listed on the sign.

13.     I witnessed his vehicle at the Property which did not have a state-issued plate but

instead contained a sign substantially similar to the following:

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 7/13/2023 4:48 PM
Envelope: 4191113
Reviewer: Lindsay Z.

3-CV-00490-MSM-PAS     Document 5     Filed 11/21/23     Page 295 of 430 PageID #: 489

**LAWFULLY**

NO DRIVER LICENSE OR INSURANCE REQUIRED

# PRIVATE

NOT FOR COMMERCE USE - PRIVATE MODE OF TRAVEL

PEACE ON EARTH, GOOD WILL TOWARDS MEN

14.    Upon information and belief, Arthur Wittenberg and his associates continue to occupy the Property.

15.    Due to the occupation, I am denied any access to the Property despite that I have agreed to purchase the Property at foreclosure, issued a deposit and purchased hazard insurance.

16.    I worry that his occupation and alterations to the Property will damage the Property and substantially effect the value of the Property.

17.    I worry that I will be charged with any electricity, water, or other utilities that the occupiers accrue from their occupation of the Property.

18.     Given the uncertainty and obstruction caused by this occupation, I am hesitant not proceeding with the closing of the sale unless and until Arthur Wittenberg and his associates are removed from the Property.

_____
John Vanikiotis

Sworn to me and subscribed in my presence this 7th day of July, 2023.

_____
Notary Public #

My Commission Expires:

**Debora M. D'Alessandro**
Notary Public
State of Rhode Island
My Comm. Expires: 8/6/2026

3

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 7/13/2023 4:48 PM
Envelope: 4191113
Reviewer: Lindsay Z.

1:23-cv-00490-MSM-PAS     Document 5     Filed 11/21/23     Page 296 of 430 PageID
#: 490

**STATE OF RHODE ISLAND**           **Hearing:**
**KENT, SC.**                      **SUPERIOR COURT**

**ARTHUR OF THE FAMILY WITTENBERG,**

      **Plaintiff,**

    **v.**                     **C.A. NO. KC-2023-0303**

**CATHERINE V. EASTWOOD et al.,**

      **Defendants.**

### DEFENDANTS' MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION AND REQUEST FOR EMERGENCY HEARING

Defendant Flagstar Bank, N.A. ("Flagstar"), and Defendant James K. Ciroli ("Ciroli," collectively as "Defendants"), by and through his undersigned counsel, hereby moves for the issuance of a Temporary Restraining Order and, after hearing thereon, a Preliminary Injunction, pursuant to Rule 65 of the Rhode Island Superior Court Rules of Civil Procedure, directing Plaintiff Arthur of the Family Wittenberg ("Plaintiff"), his successors, agents, affiliates or other associated occupiers to (i) immediately vacate the real estate property located at 24 Ninigret Street, Warwick, Rhode Island 02889 (the "Property"), (ii) cease and desist from providing any alterations to the Property including the removal of fixtures or committing waste to the Property. In support of this Motion, Defendants rely upon the allegations contained in the Complaint, the Memorandum in Support, and the affidavit of John Vanikiotis.

                     **FLAGSTAR BANK, N.A. and**
                     **JAMES K. CIROLI**

                     By: */s/ Thomas W Lyons*
                     Thomas W. Lyons
                     STRAUSS, FACTOR, LAING & LYONS
                     One Davol Square, Suite 305
                     Providence, RI 02903
                     (401) 456-0700
                     tlyons@straussfactor.com

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 7/13/2023 4:48 PM
Envelope: 4191113
Reviewer: Lindsay Z.

David M. Asbury (Pro Hac Vice Pending)
TROUTMAN PEPPER
HAMILTON SANDERS LLP
222 Central Park Avenue,
Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7757
Facsimile: (757) 687-7500
david.asbury@troutman.com

## CERTIFICATION OF SERVICE

I hereby certify that on July 13, 2023, I filed and served this document through the electronic filing system on all persons who have entered an appearance, including Arthur Wittenberg, 701 Loyola Avenue, Unit 57867, New Orleans, LA 70113. The document electronically filed and served is available for Viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.

*/s/ Thomas W. Lyons*
Thomas W. Lyons

# IN THE SUPERIOR COURT KENT COUNTY
# STATE OF RHODE ISLAND

NO.  KC-2023-0303                                           DIVISION:

**ARTHUR OF THE FAMILY WITTENBERG**
701 Loyola Avenue, Unit 57867
New Orleans, LA 70113
*PLAINTIFF*

*V.*

**Caterine V. Eastwood**
**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**John McNicholas**
**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**NEW YORK COMMUNITY BANCORP, INC**
**102 Duffy Ave. Hicksville, NY 11801**
d/b/a
**FLAGSTAR BANK**
5151 Corporate Drive
Troy, MI 48098

**James K. Ciroli, CFO**
**FLAGSTAR BANK**
5151 Corporate Drive
Troy, MI 48098
*DEFENDANTS*

## PLAINTIFF MOTION FOR EQUAL ACCESS
["Cujusque Rei Potissima Pars"][The Principle Part Of Everything Is In The Beginning]

NOW COMES, the Plaintiff who will formally introduce himself to this court, I am Arthur of The Family Wittenberg, a Private American National/Non- "U.S. citizen", Executor, Grantor, Settlor, and Beneficiary, of the Estate of ARTHUR WITTENBERG, hereby

special appearance proceeding in a Common Law Court of Constitutional Due Process [under Article III of the Constitution of the United States for America, and the common law] … a neutral judge, Plaintiff/ Defendant adversarial system, which means the court cannot impose the same standard upon me as are imposed on a licensed attorney, and now Plaintiff issue this **MOTION FOR EQUAL ACCESS**, to provide equal access to case files online. Plaintiff for the fourth time since the inception of this civil action had to fly from Louisiana to Rhode Island, to retrieve copies of documents filed by Defendants in this instant matter. The Plaintiff have not received any mail from the Defendants or the court, Plaintiff have communicated by phone with Thomas William Lyons III, of STRAUSS, FACTOR, LAING & LYONS, to acknowledge his appearance on the docket and request a copy of the MOTION/s, be emailed directly to him(*the plaintiff*), to date the Plaintiff have not received any notices from any of the Defendants including Catherine V. Eastwood, John McNicholas, or the law office of KORDE & ASSOCIATES, P.C., by mail or any other form of communications, to inform the Plaintiff of any filings, placed on the courts record. To date the Plaintiff still has to learned of a motions filed by Defendants from reading the Rhode Island case docket but, cannot access or read said documents. and states

1.  Plaintiff contact the Help Desk of the Rhode Island Case Search to inform them that Plaintiff is a litigant and ongoing civil action before the court.

2.  Plaintiff on several occasions by phone and email, informed the Rhode Island Judicial Network, that filed documents were unavailable for Plaintiff to review, copy or download.

3.  On Friday, June 30, 2023, the Rhode Island Judicial Network, finally issued a work order, Work Order Number 97468 - [[WO#97468]]

4.  On Saturday, June 31, 2023, Plaintiff was informed by the Rhode Island Judicial Network *"Accounts are only created for Attorneys in Active Status licensed to practice law in the State of Rhode Island and approved State and Federal Agencies per Rhode Island Supreme Court Executive Order 2014-06. You may use the public version of the portal without an account to perform docket inquiries. Select "Smart Search" to utilize the public version of the portal without an account."*

This action alone place the Plaintiff, with a disadvantage due to the decision to deny access to Case files, whereby the Plaintiff cannot competently defend its legal rights and/or position in this court because it appears that this court is not nutral but, is providing an unfair advantage to

fellow BAR members through this action.

WHEREFORE, Plaintiff DEMAND, this court ORDER, access be granted to online documents filed in this instant case, to provide an even playing field to all Parties, it is also requested that the court ORDER the Defendants to use first class certified mail, to inform the Plaintiff of any filing they may enter on court record, and any and all other relieve the court deem appropriate.

July 6, 2023

Respectfully Submitted,

Arthur of the Family Wittenberg;
(Private American National/Non- "U.S. citizen)
C/O
Rural Route Delivery
701 loyola avenue, unit 57867
new orleans, louisians 00000
witt@wittenbergfamily-trust.com
504-451-5770

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been furnished, by USPS 1st Class Certified Mail postage prepaid, this 6th day of June 2023 to:

Serve through Attorney:

**Thomas William Lyons III**
**STRAUSS, FACTOR, LAING & LYONS**
One Davol Square
Suite 305
Providence, RI 02903

**FLAGSTAR BANK,**
5151 Corporate Drive
Troy, MI 48098

**FLAGSTAR BANK,**
**James K. Ciroli, CFO,**
5151 Corporate Drive
Troy, MI 48098

**Caterine V. Eastwood**
**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

John McNicholas
**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

Mail by:

**Arthur of the Family Wittenberg;**
(Private American National/Non- "U.S. citizen)
C/O
Rural Route Delivery
701 loyola avenue, unit 57867
new orleans, louisians 00000

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 6/20/2023 10:30 AM
Envelope: 4157333
Reviewer: Lindsay Z.

# STATE OF RHODE ISLAND

**KENT, SS.**

**SUPERIOR COURT**

Arthur of the Family Wittenberg,

      Plaintiff,

v.

Catherine V. Eastwood,
John McNicholas, Korde & Associates, P.C.,
New York Community Bankcorp, Inc., d/b/a
Flagstar Bank, and James K. Ciroli,

      Defendants.

**CASE No. KC-2023-0303**

## NOTICE OF APPEARANCE OF JOHN S. MCNICHOLAS

Please enter my appearance on behalf of the Defendants, Catherine V. Eastwood, John

McNicholas and Korde and Associates, P.C. in the above referenced matter.

Dated:  June 20, 2023

Respectfully submitted,
Catherine V. Eastwood,
John McNicholas, and
KORDE & ASSOCIATES, P.C.,
By their attorney,

/s/ *John S. McNicholas*
John S. McNicholas, Esq., RIB # 8732
Korde & Associates, P.C.
900 Chelmsford Street, Suite 3102
Lowell, MA 01851
(978) 256-1500, ext. 26203
jmcnicholas@kordeassociates.com

*Arthur of the Family Wittenberg*
*v.*
*Korde & Associates, Et al.*

Page **1** of **2**

*Docket # KC-2023-0303*

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 6/20/2023 10:30 AM
Envelope: 4157333
Reviewer: Lindsay Z.

## CERTIFICATE OF SERVICE

I, John S. McNicholas, Esq., hereby certify that on June 20, 2023, I caused the within Notice of Appearance of John S. McNicholas to be filed through the electronic filing system on all parties registered therein to receive notice in this case.

Thomas W. Lyons, Esq.
tlyons@straussfactor.com

*The document electronically filed and served is available for viewing and/or downloading from the Court's Electronic Filing System.*

I also caused a true copy of the foregoing pleading to be sent via regular mail this 20th day of June 2023 to the following:

Arthur of the Family Wittenberg
701 Loyola Avenue Unit 57867
New Orleans, LA 70113

/s/ *John S. McNicholas*
John S. McNicholas, Esq., RIB # 8732

*Arthur of the Family Wittenberg*
*v.*                                    Page **2** of **2**
*Korde & Associates, Et al.*                                    *Docket # KC-2023-0303*

# STATE OF RHODE ISLAND

**KENT, SS.**                                                    **SUPERIOR COURT**

Arthur of the Family Wittenberg,

      Plaintiff,

v.

Catherine V. Eastwood,                                    **CASE No. KC-2023-0303**
John McNicholas, Korde & Associates, P.C.,
New York Community Bankcorp, Inc., d/b/a
Flagstar Bank, and James K. Ciroli,

      Defendants.

## <u>NOTICE OF APPEARANCE OF CATHERINE V. EASTWOOD</u>

Please enter my appearance on behalf of the Defendants, Catherine V. Eastwood, John McNicholas and Korde and Associates, P.C. in the above referenced matter.

Dated:  June 20, 2023                    Respectfully submitted,
                                         Catherine V. Eastwood,
                                         John McNicholas, and
                                         KORDE & ASSOCIATES, P.C.,
                                         By their attorneys,


                                         /s/ Catherine V. Eastwood
                                         Catherine V. Eastwood, Esq., RIB # 6406
                                         Korde & Associates, P.C.
                                         900 Chelmsford Street, Suite 3102
                                         Lowell, MA 01851
                                         (978) 256-1500, ext. 26222
                                         ceastwood@kordeassociates.com

*Arthur of the Family Wittenberg*
*v.*                                    Page **1** of **2**
*Korde & Associates, Et al.*                            *Docket # KC-2023-0303*

## <u>CERTIFICATE OF SERVICE</u>

I, Catherine V. Eastwood, Esq., hereby certify that on June 20, 2023, I caused the within Notice of Appearance of Catherine V. Eastwood to be filed through the electronic filing system on all parties registered therein to receive notice in this case.

Thomas Lyons, Esq.
tlyons@straussfactor.com

*The document electronically filed and served is available for viewing and/or downloading from the Court's Electronic Filing System.*

I also caused a true copy of the foregoing pleading to be sent via regular mail this 20th day of June 2023 to the following:

Arthur of the Family Wittenberg
701 Loyola Avenue Unit 57867
New Orleans, LA 70113

/s/ Catherine V. Eastwood
Catherine V. Eastwood, Esq., RIB # 6406

*Arthur of the Family Wittenberg*
*v.*                    Page **2** of **2**
*Korde & Associates, Et al.*                    *Docket # KC-2023-0303*

# IN THE SUPERIOR COURT KENT COUNTY
# STATE OF RHODE ISLAND

NO.  KC-2023-0303                                    DIVISION:

### ARTHUR OF THE FAMILY WITTENBERG
701 Loyola Avenue, Unit 57867
New Orleans, LA 70113
*PLANITIFF*

*V.*

### Caterine V. Eastwood
### KORDE & ASSOCIATES, P.C.
900 Chelmsford St. Suite 3102
Lowell, MA 01851

### John McNicholas
### KORDE & ASSOCIATES, P.C.
900 Chelmsford St. Suite 3102
Lowell, MA 01851

### KORDE & ASSOCIATES, P.C.
900 Chelmsford St. Suite 3102
Lowell, MA 01851

### NEW YORK COMMUNITY BANCORP, INC
### 102 Duffy Ave. Hicksville, NY 11801
d/b/a
### FLAGSTAR BANK
5151 Corporate Drive
Troy, MI 48098

### James K. Ciroli, CFO
### FLAGSTAR BANK
5151 Corporate Drive
Troy, MI 48098
*DEFENDANTS*

# AMENDED RESPONSE AND OBJECTION TO
# DEFENDANTS MOTION TO DISMISS
["Cujusque Rei Potissima Pars"][The Principle Part Of Everything Is In The Beginning]

NOW COMES, the Plaintiff who will formally introduce himself to this court, I am Arthur of The Family Wittenberg, a Private American National/Non- "U.S. citizen",

KENT SUPERIOR COURT
FILED
CLERK'S OFFICE
23 JUN 16 PM 3:41

Executor, Grantor, Settlor, and Beneficiary, of the Estate of ARTHUR WITTENBERG, hereby special appearance proceeding in a Common Law Court of Constitutional Due Process [under Article III of the Constitution of the United States for America, and the common law] ... a neutral judge, Plaintiff/ Defendant adversarial system, which means the court cannot impose the same standard upon me as are imposed on a licensed attorney, to issue this **AMENDED OBJECTION TO DEFENDANTS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**, which the Plaintiff learned of, from reading the Rhode Island case docket. The Plaintiff, contact Thomas William Lyons III, of STRAUSS, FACTOR, LAING & LYONS, by phone to acknowledge his appearance on the docket and request a copy of the MOTION/s, be emailed directly to him(*the plaintiff*), to date the Plaintiff have not received any notices from the Defendants or their attorneys by mail or any other form of communications, to inform the Plaintiff's of the appearance of counsel or any filings, placed on the courts record, MOREOVER from reading the court records it seems as if Catherine V. Eastwood, John McNicholas, and the law office of KORDE & ASSOCIATES, P.C., does not have an attorney of record filed, in this instant case, and that John McNicholas, is still attempting to file an answer on their behalf, which is not permissible by law because they are named PARTIES as Defendants in this instant case. Therefore, since the Plaintiff, did not get a copy of the MOTION, from the Defendants, the Plaintiff, came back to Rhode Island to stain a copy from the Clerks Office, and now after reading the Defendants reply and seeing the evidence attached, Plaintiff now enters this AMENDED RESPONSE to the Defendants, MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED, and states:

## STATEMENT OF THE CASE

PLAINTIFF, Arthur of the family Wittenberg, a Private American National/Non- "U.S. citizen", filed a **COMPLAINT TO QUIET TITLE AND COLLATERAL ATTACK**, against the above named Defendants in this matter. PLAINTIFF, traveled from Louisiana to Rhode Island to file a Lis Pendens, and Declaration of Default and Acceptance, against the Defendant, FLAGSTAR BANK, James K. Ciroli, CFO, in the County Records Office of Warwick, Plaintiff notice a claim for Judgement filed by KORDE & ASSOCIATES, P.C., on the same property, after researching the Clerk of Court records PLAINTIFF learned of a action of Foreclosure on the physical collateral filed by Caterine V. Eastwood, and John McNicolas, from the Law Firm of KORDE & ASSOCIATES, P.C., it was due to this fact the Plaintiff files the Complaint to protect it's interest. Arthur of the family Wittenberg, stands to suffer irreparable harm through the actions of the Defendants, if they are not withdrawn. Upon seeing the MOTION filed by the DEFENDANTS, FLAGSTAR BANK, James K. Ciroli, CFO, filed by their attorney of record Thomas William

Lyons III, of STRAUSS, FACTOR, LAING & LYONS and DEFENDANTS, KORDE & ASSOCIATES, P.C., CATHERINE V. EASTWOOD, AND JOHN MCNICHOLAS, which was signed by John McNicholas, himself. this is not allowed, A Corporation cannot represent itself in court, because it is an artificial entity, and would be considered (PRO SE), therefore it cannot represent itself. The attorneys and the Law Firm of KORDE & ASSOCIATES, P.C., must be represented by outside counsel. From what can be seen, it seems as if all the Defendants are making the same claim using the same fraudulent, evidence use to obtain and wrongful foreclosure in an attempt to gain illegal possession of the physical property known as; 24 Ninigret Street, Warwick, RI 02889. Neither of the Defendants make any assertions to the claim filed by the Plaintiff, being false or without merit, and failed or refused to offered any defense to the statements within the Plaintiffs Complaint instead all the Defendants, are attempting submit the same fraudulent documents as evidence into this mater and bypass due process of law and discovery all together by referring to the same fraudulent documents they presented to the court in another matter filed in this court CASE No: KC-2021-0181, to obtain a wrongful foreclosure attempting to gain illegal possession of the physical property known as: 24 Ninigret Street, Warwick, RI 02889. The simple FACT that they Defendants acknowledge the Plaintiff check, clearly shows there is a genuine dispute with the Defendant false foreclosure claim. The Defendants claim of NO CAUSE OF ACTION, has no factual merits and is a sad attempt to evade providing this court with an answer or defense for the Plaintiffs Complaint, because there is nothing that the Defendants could state to rebut the Plaintiffs Complaint. From reading the response filed by the Defendants, It appears as if the Defendant FLAGSTAR BANK, James K. Ciroli, CFO, council Thomas William Lyons III, of STRAUSS, FACTOR, LAING & LYONS, Caterine V. Eastwood, John McNicolas, and the Law Firm, KORDE & ASSOCIATES, P.C., wishes to skip due process of law and go straight to the discovery portion of litigation. This court is not a forum for cute tricks nor a stage for clever use of word magic or smoke and mirrors to evade responding to lawful requests pursuant to the rules that control this court. The elements of the MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED, will only apply when one is looking with a very broad brush and not with the law in pursuit of justice. The appearance of justice is not justice, neither is everything legal, lawful. In this case the attorney implies that the elements of a proper Claim are not present in the Complaint and therefore, the Plaintiffs claim must be dismissed, when in fact Council is attempting to go straight to trial in the instant matter before the court and bypass the rules and laws of due process, if council wishes to testify then we should have a hearing where council can be sworn in and cross examined. The Defendants MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED, cannot stand and should not be allowed by law when it robs someone of the right to be heard and from facing their accuser, more so in this matter where there are a plethora of legal offenses, because the policy of the rules

and laws are to allow cases to proceed if the plaintiff has any reasonable chance of obtaining relief. The Defendants are trying to hide that they were in fact committing Realestate Deed fraud to gain illegal possession of the physical collateral known as; 24 Ninigret Street, Warwick, RI 02889, and NOW after obtaining a copy of the Defendants pleadings in their response from the court and having read through them, the Plaintiff, will answer with more clarity the Defendants MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED, showing the many defects and errors of the Defendants claim. and in further support therefor states

## Standing Must Be Proven To Show A Claim/ Cause of Action

In order to file a case in court, litigants must have "standing" to sue. To have standing, Supreme Court doctrine requires that parties have an "injury in fact." This injury must be specific and concrete - rather the speculative and abstract. Standing requires the violation of a legal right that causes damage. "A plaintiff must allege personal injury fairly traceable to the Defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." <u>Allen v. Wright</u>, 468 U.S. 737, 751 (1984). Rule 12 (b) (6) motion argues that, based only on what is said in the complaint, the plaintiff could not possibly be entitled to relief. and

## What Is A "Claim" or Cause of Action

1. Under the Federal Rules of Civil Procedure, Rule 8(a), it is defined, as having three elements
    (a) A short and plane statement of the grounds that provides jurisdiction to the court
    (b) A short and plane statement of the claim showing that the pleader is entitled to relief
    (c) A damage for judgment for the relief the pleader seeks

2. What this means is that a complaint must contain statements that support the court's jurisdiction (for example, that the case is brought to enforce constitutional rights under 42 U.S.C. § 1983), allegations of fact that support each claim that is being made, and a request for relief.

3. The policy behind these rules is to simplify pleading and not to put up technical barriers to relief.

4. In the matter the most important (element), of Rule 8(a) for purposes of dismissal pursuant Rule 12(b)(6) Order is the second part: (B) "a short and plain statement of the claim.

5. This means a short and plain statement of facts that make up the claim; such as stated in the Plaintiffs' Complaint titled **AMENDED COMPLAINT TO QUIET TITLE AND COLLATERAL ATTACK** For example:

**As appears in complaint**

*"PLAINTIFF, while looking to file a Declaration of Default and Acceptance, against the Defendant, FLAGSTAR BANK, James K. Ciroli, CFO, in the County Records Office of Warwick, Plaintiff notice a claim for Judgement filed by KORDE & ASSOCIATES, P.C., on the same property, after researching the Clerk of Court records PLAINTIFF learned of an action of Foreclosure on the physical collateral filed by **Caterine V. Eastwood**, from the Law Firm of KORDE & ASSOCIATES, P.C., it is to this fact the Plaintiff files this complaint to protect it's interest. Arthur of the family Wittenberg, stands to suffer irreparable harm through the actions of the Defendants, are not withdrawn, seeing Defendant, has no claim to said original Promissory Note and Arthur of the family Wittenberg, has provided this court with real evidence to support a true legal claim for ownership interest of the original (Promissory Note), attached to the loan instrument number 1709EM021429, associated with the physical property known as; 24 Ninigret Street, Warwick, RI 02889, seeing the debt owed to **FLAGSTAR BANK,** has been satisfied in full Therefore, the need to remove any person(s), take possession of or sell the physical property in satisfaction of the debt to **FLAGSTAR BANK,** is not, does not, and/or no longer exists."* and

**4.**

*"On 21 April 2019, Plaintiff, Arthur of the Family Wittenberg, issued lawful Tender with silver coins and a check in the amount of $234,500, to extinguish the debt associated with loan instrument number 1709EM021429, and release of (the collateral) the physical property located in Kent County, known as; 24 Ninigret Street, Warwick, RI 02889, attached to the original Promissory Note, which is the Res of this petition in compliance with; RI rules of Simple Contract, (RI Rule §6a-3-302; Holder in Due Course), (RI Rule §6a-3-304; Overdue Instrument) and UCC 3-603, a copy confirming delivery of the payment received via certified U.S. Express Mail by the Defendant, **FLAGSTAR BANK, James K. Ciroli, CFO,** is attached hereto as **(Exhibit B)"** Plaintiff further states.*

Thus, satisfying the first element for a claim;

**(a) A short and plane statement of the grounds that provides jurisdiction to the court.** and

Plaintiff further states.

Not only did the Plaintiff describe what happened in a short plain statement of the grounds that provides jurisdiction to the court, the Plaintiff even supported the statement with evidence to support the claim. The statement is extremely obvious and should stand without question, if payment was issued to satisfy said debt, then it is impossible for any loan to be in default. The fact that Plaintiff provide copies of the tender, check, and the receipt of payment mail which council acknowledged and agrees too, provides concrete proof that the Defendant received payment and therefore the claim of foreclosure must be fraudulent, and if the Defendants continue the Plaintiff will suffer irreparable harm through the actions of the Defendants.


**As appears in complaint**

3.

"*Defendant, Caterine V. Eastwood, and John McNicholes of KORDE & ASSOCIATES, P.C., are hereby claiming to be representing FLAGSTAR BANK, James K. Ciroli, CFO, in a case filed in this court CASE No: KC-2021-0181, and is attempting to commit Realestate Deed fraud to gain illegal possession of the physical collateral known as; 24 Ninigret Street, Warwick, RI 02889. This court is not a forum for cute tricks nor a stage for clever use of smoke and mirrors, word magic to evade responding to lawful discovery pursuant to the rules that control this court.*" and

5.

"*Plaintiff, Arthur of the family Wittenberg, is the true holder of the subject property; (the original Promissory Note), with the physical collateral (the property) attached which is recorded in the Land Records office for Kent County, State of Connecticut as; 24 Ninigret Street, Warwick, RI 02889. The subject property (the Promissory Note), whereas Defendant is being denied by the Plaintiff, from exercising his rights as the current and true holder in due course of the original Promissory Note, and the Plaintiff has failed or refused to release the property In direct violation of (RI Rule §6a-3-302; Holder in Due Course), (RI Rule §6a-3-304; Overdue Instrument) and UCC 3-603(b) "If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument and the tender is refused, there is discharge, to the extent of the amount of the tender, of the obligation of an endorser or accommodation party having a right of recourse with respect to the obligation to which the tender relates", and the Plaintiff has hereby exhausted all administrative remedies. copies of the Plaintiff, demonstrating his due diligence and DEFAULT NOTICE recorded on public record is attached hereto (**EXHIBIT C**)*" and

As appears in complaint

## COUNT I:
## CONSPIRACY

*"The Defendants have conspired and recorded various fraudulent documents on public record including an unlawful foreclosure which constitutes the elements of real estate deed fraud"* and

As appears in complaint

## COUNT II:
## REAL ESTATE DEED FRAUD

*Defendants have intentionally, negligently and willfully, taken illegal actions which have caused the Plaintiffs severe emotional distress. The attack on the Plaintiff's property using a statute that is not a valid law is in fact fraud on the court".* and

As appears in complaint

## COUNT III:
## SLANDER OF TITLE

*"The Defendants have conspired and recorded various fraudulent documents on public record including an unlawful foreclosure.* and

As appears in complaint

## COUNT IV:
## FILING FALSE PUBLC RECORDS

*"Furthermore, the Defendants have conspired and recorded various fraudulent documents on public record including an unlawful foreclosure which constitutes the elements real estate deed fraud and has also conspired and published recorded various documents including an unlawful foreclosure in the public which constitutes slander of title, and the Defendants have intentionally, negligently and willfully, taken illegal actions which have caused the Plaintiffs severe emotional distress. The attack on the Plaintiff's property using a statute that is not a valid law is in fact fraud on the court. The fact that the Defendants filed a Civil action in this court against the occupants of the physical property, (the collateral) known as; 24 Ninigret Street, Warwick, RI 02889, located in Kent County, make's it very clear that they are attempting to take illegal possession of the Plaintiffs property."*

**As appears in complaint**

# INJURY

*"Defendants FLAGSTAR BANK, James K. Ciroli, CFO, Caterine V. Eastwood, and the law office of KORDE & ASSOCIATES, P.C, has conspired to impede the Plaintiffs of his rights to said property as the true and bona fide Holder in Due Course, and is blocking the Plaintiff from performing his duties as such".*

Thus, satisfying the second element for a claim.

**(b) A short and plane statement of the claim showing that the pleader is entitled to relief.** and Plaintiff further states.

**As appears in complaint**

# DAMAGES:

*"Plaintiff should be awarded resulting damages to be fully proved at the time of trial."*

The Defendants are claiming not to understand the above statement, **refers to** (the return of the physical property, (the collateral) known as; 24 Ninigret Street, Warwick, RI 02889, located in Kent County). Even with the name of the instant matter being self-explanatory ***COMPLAINT TO QUIET TITLE AND COLLATERAL ATTACK.***

Thus, satisfying the third and final element for a claim;

**(c) A damage for judgment for the relief the pleader seeks**

The Defendants claim of FAILURE TO STATE A CLAIM UPON WHICH REFIEF MAY BE GRANTED, falls extremely short of it's accusation, every required element needed for the Plaintiff to bring a claim against the Defendants are within the body of the Complaint. It is clear to see that the defendant are acting with deliberate indifference, and it appears as if the Defendant are looking to the court for assistance, to evade and/or sidestep answering the complaint with the weakest defense under law, Rule 12(b)(6). The Plaintiff has demonstrated the elements of the claim, count by count to prove to this court that the DEFENDANTS are trying to delay and stall for time, which is why they asked for a HEARING, on the MOTION TO DISMISS to be heard more than 100 days after the filing of the Plaintiffs complaint, which the Plaintiff strictly OBJECT to this delay, ON RECORD FOR THE COURT, and states that the Plaintiff stands ready to defend its position in this INSTANT CASE during trail now. The Plaintiff is ready, willing and able to certify every statement and present evidence and witnesses

to substantiate this claim at this present moment.

## OBJECTION

The Plaintiff states for the record this OBJECTION on the grounds that the attorney is attempting to as part of the proceedings on the MOTION TO DISMISS under Rule 12(b)(6), enter matters outside the pleading and are in fact presented to the court, in a effort to have the motion treated as one for summary judgment. A motion for summary judgment is governed under local and federal Rule 56, of the federal civil rules of procedure, and the Plaintiff are and should be allowed to comply with Rule 56. It is very clear to see all the elements needed to State a Claim and/or Cause of Action, in fact do exist, as required by law, thus making the MOTION filed by the Defendants, MOOT. Further, it shows this court that the Defendants are trying to use this court as a forum for cute tricks, and a stage for clever use of smoke and mirrors, word magic, and/or wordsmithing, to evade responding to a lawful COMPLAINT, pursuant to the rules that control this court.

## CONCLUSION

Therefore, seeing the Defendants has attempted to included factual material along with a Rule 12(b)(6) motion. If this court allows the Defendants council to ad as part of the proceedings on the MOTION TO DISMISS under Rule 12(b)(6), matters outside to their pleading and are in fact presented to the court, in a effort to have the motion treated as one for summary judgment. Then the Plaintiffs request the motion for summary judgment be in fact governed by Rule 56, of the federal civil rules of procedure, and the Plaintiff be allowed to comply with Rule 56, and this court must allow you additional time for the Plaintiff to respond to a motion for summary judgment.

**WHEREFORE,** having set forth the various elements of a cause of action against all the Defendants, the Plaintiff, moves that this court **ORDER** the Defendants to answer the complaint within 7 days to avoid this court from being out of compliance with the governing rules, further with the attorneys admission of the clients and other Defendants participation in the illegal act, when they acknowledged receipt of the tenders and check, the Plaintiffs DEMAND the Defendants Motion be DENIED, and this Honorable Court, issue in favor of the Plaintiff, a DEMAND FOR DEFAULT PURSUANT RULE 56 (C)(2)(3)(4), for the following relief:

1. The Action of unlawful detainer of the physical property be hereby VACATED; all at

Defendant sole cost

2. The court void the foreclosure judgment; all at Defendant sole cost.

3. This court void the foreclosure sale process.

4. That the Plaintiff be awarded the return of the physical property and have all Public Record reflect said judgement and consequential damages to be fully proved at the time of trial

5. That the Court grant any other relief that may be just or equitable

June 16, 2023

Respectfully Submitted,

Arthur of the Family Wittenberg,
(Private American National/Non- "U.S. citizen)
C/O
Rural Route Delivery
701 loyola avenue, unit 57867
new orleans, louisiana 00000
witt@wittenbergfamily-trust.com
504-451-5770

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been furnished, by USPS 1st Class Certified Mail postage prepaid, this 1st, day of June 2023 to:

   Serve through Attorney:


**Thomas William Lyons III**
**STRAUSS, FACTOR, LAING & LYONS**
One Davol Square
Suite 305
Providence, RI 02903

**FLAGSTAR BANK,**
5151 Corporate Drive
Troy, MI 48098

**FLAGSTAR BANK,**
**James K. Ciroli, CFO,**
5151 Corporate Drive
Troy, MI 48098

**Caterine V. Eastwood**
**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102

Lowell, MA 01851

**John McNicholas**
**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

Mail by:

**Arthur of the Family Wittenberg,**
(Private American National) Non- "U.S. citizen)
C/O
Rural Route Delivery
701 loyola avenue, unit 57867
new orleans, louisians 00000

# IN THE SUPERIOR COURT KENT COUNTY
# STATE OF RHODE ISLAND

NO.  KC-2023-0303                              DIVISION:

**ARTHUR OF THE FAMILY WITTENBERG**
701 Loyola Avenue, Unit 57867
New Orleans, LA 70113
*PLANITIFF*

*V.*

**Caterine V. Eastwood**
**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**John McNicholas**
**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**NEW YORK COMMUNITY BANCORP, INC**
**102 Duffy Ave. Hicksville, NY 11801**
d/b/a
**FLAGSTAR BANK**
5151 Corporate Drive
Troy, MI 48098

**James K. Ciroli, CFO**
**FLAGSTAR BANK**
5151 Corporate Drive
Troy, MI 48098
*DEFENDANTS*

23 JUN -1 PM 3: 58

KENT SUPERIOR COURT
FILED
CLERK'S OFFICE

# DEMAND TO STRIKE DEFENDANT'S JOHN McNICHOLAS "APPEARANCE AND PLEADINGS" FROM THE RECORD, A CORPORATION CANNOT REPRESENT IT'S SELF IN COURT

[ "Cujusque Rei Potissima Pars"][The Principle Part Of Everything Is In The Beginning]

NOW COME PLAINTIFF, Arthur of the family Wittenberg, a Private American

National/Non- "U.S. citizen", hereby special appearance, without waiving any rights, defenses, statutory or procedural and Demands the court to strike the "Notice of Appearance" filed in this case by John S. McNicolas, from the court record because a corporation cannot represent it's self in court. See **EXHIBIT A** a copy of the motion showing the attorney is an agent in law firm listed in the Complaint and motion for sanctions. In Federal Courts, the Local Rule 5(b) states: An "entity may not appear without counsel admitted to the bar of this court." The relevant case law also states that a corporation or LLC must be represented by a lawyer in court. See *Harrison v. Wahatoyas, L.L.C.*, 253 F.3d 552, 556 (10th Cir. 2001) (citing *Flora Constr. Co. v. Fireman's Fund Ins. Co.*, 307 F.2d 413, 414 (10th Cir. 1962)). *See Tal v. Hogan*, 453 F.3d 1244, 1254 & n.8 (10th Cir. 2006), ("It is well established that LLCs must be represented by counsel in order to proceed before this court.") (citing *Roscoe v. United States*, 134 F. App'x 226 (10th Cir. Apr. 29, 2005) (LLC cannot proceed pro se)). A corporation cannot appear by any means other than by an agent and thus it is impossible for a corporation to appear personally in. see: Laskowitz v. Shellenberger, 107 F. Supp. 397 (S. D. Cal. 1952). The traditional rationale for the view that only an attorney may represent a corporation in court is that a corporation is an artificial person created by law and, being such, cannot act as a natural person in presenting its own case. See: Paradise v. Nowlin, supra n. 2. See also Note, Appointment of Counsel for a Defaulting Corporation in a Criminal Proceeding, 1960 Duke L. J. 649 (1960.) court. A recent decision, Remole Soil Service, Inc. v. Benson, has reiterated the view that corporations cannot appear in court in propria persona. " nor may a layman in charge of a corporation take assignments of the corporation's claims and appear pro se. See: 6 Black, op. cit. supra n. 3, at 1364; meaning to appear for himself.

### No Circumventing The Rule:

The courts do not permit an entity to circumvent the rule through an assignment—even if the assignment would otherwise be valid! In other words, a corporation or other entity cannot simply assign its claims to an individual (and presumingly its liability on claims) to an individual to avoid the requirement of obtaining counsel to litigate the claims. See, e.g., Global E business Servs. v. Interactive Broker LLC, 2017 U.S. Dist. LEXIS 22916 (N.D. Cal. 2017) (an individual plaintiff affiliated with a corporation may not circumvent this rule through a purported assignment of interest from the corporation to the individual); Bischoff v. Waldorf, 660 F. Supp. 2d 815 (E.D. Mich. 2009) (despite assignment of trademark claims to individual plaintiff from corporation, attorney required to litigate claims). This rule is limited to situations in which the individual has an affiliation with the entity.

**Conclusion:**

A lawsuit TO QUIET TITLE AND COLLATERAL ATTACK was filed by the Plaintiff, which forced the Defendants, to retain an attorney to represent the corporation and the attorneys in this court. The law firm and the attorneys was included in the Complaint as Defendants, and the demand for sanctions so is inappropriate for an agent with an affiliation with the corporation to represent the corporation or the other attorneys in court. The response and so called appearance of John S. McNicolas, in this case must be stricken from the record. In this case the attorney is an officer of the corporation and therefore would be considered pro-se representation, which is prohibited by law. A corporate officer cannot answer for a corporation or represent a corporation in litigation and therefore the response and so called appearance in this case should be stricken from the record. The plaintiff moves the court to strike the attorneys response and so called appearance and any other document's the attorney filed in the case. The plaintiff filed a lawsuit TO QUIET TITLE AND COLLATERAL ATTACK, in this Court whereby the Local Rule 5(b) states: An "entity may not appear without counsel admitted to the bar of this court." The relevant case law also states that a corporation or LLC must be represented by a lawyer in court.

A corporation cannot appear by any means other than by an agent and thus it is impossible for a corporation to appear personally. The traditional rationale for the view that only an attorney may represent a corporation in court is that a corporation is an artificial person created by law and, being such, cannot act as a natural person in presenting its own case. A corporation cannot appear in court in propria persona. " nor may a layman in charge of a corporation take assignments of the corporation's claims and appear pro se. The courts do not permit an entity to circumvent the rule through an assignment—even if the assignment would otherwise be valid! In other words, a corporation or other entity cannot simply assign its claims to an individual (and presumably its liability on claims) to an individual to avoid the requirement of obtaining counsel to litigate the claims. An individual defendant affiliated with a corporation may not circumvent this rule through a purported assignment of interest from the corporation to the individual. The court has no option but to strike the notice of appearance and the documents filed in the case to avoid violating the Federal Courts, the Local Rule 5(b).  June 1, 2023

Respectfully Submitted,

Arthur of the Family Wittenberg,
701 Loyola Avenue, Unit 57867
New Orleans, LA 70113
witt@wittenbergfamily-trust.com
504-451-5770

Notarized by
DN



Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/26/2023 2:31 PM
Envelope: 4126617
Reviewer: Danielle K.

HEARING DATE: SEPTEMBER 25, 2023
HEARING TIME: 2:00PM

PLAINTIFF'S
EXHIBIT

**STATE OF RHODE ISLAND**

KENT, SS.                                                                      SUPERIOR COURT

Arthur of the Family Wittenberg,

      Plaintiff,

v.

Catherine V. Eastwood,                              CASE No. KC-2023-0303
John McNicholas, Korde & Associates, P.C,
New York Community Bankcorp, Inc., d/b/a
Flagstar Bank, and James K. Ciroli,

      Defendants.

**MOTION OF DEFENDANTS, KORDE & ASSOCIATES, P.C., CATHERINE V. EASTWOOD AND JOHN S. MCNICHOLAS TO DISMISS AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

Defendants Korde & Associates, P.C. ("Korde"), Catherine V. Eastwood (Eastwood) and John S. McNicholas ("McNicholas") (collectively, the "Moving Defendants"), both attorneys with Korde, move to dismiss Plaintiff's Amended Complaint pursuant to Superior Court Rule 12(b)(6) for failure to state a claim against the Moving Defendants upon which relief may be granted. As grounds, the Moving Defendants refer the Court to their Memorandum of Law filed herewith.

*Arthur of the Family Wittenberg*
   *v.*                                                        Page 1 of 2
*Korde & Associates, Et al.*

*Docket # KC-2023-0303*

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/26/2023 2:31 PM
Envelope: 4126617
Reviewer: Danielle K.

Case 1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 321 of 430 PageID #: 515



Dated:  May 26, 2023

Respectfully submitted,
Catherine V. Eastwood,
John McNicholas, and
KORDE & ASSOCIATES, P.C.,
By its attorney,

/s/ John S. McNicholas
John S. McNicholas, Esq., RIB # 8732
Korde & Associates, P.C.
900 Chelmsford Street, Suite 3102
Lowell, MA 01851
(978) 256-1500, ext. 26203
jmcnicholas@kordeassociates.com

## CERTIFICATE OF SERVICE

I, John S. McNicholas, Esq., hereby certify that on May 26, 2023, I caused the within Motion to Dismiss Plaintiff's Amended Complaint to be filed through the electronic filing system on all parties registered therein to receive notice in this case.

*The document electronically filed and served is available for viewing and/or downloading from the Court's Electronic Filing System.*

I also caused a true copy of the foregoing pleading to be sent via regular mail and certified mail this 26th day of May 2023 to the following:

Arthur of the Family Wittenberg
701 Loyola Avenue Unit 57867
New Orleans, LA 70113
witt@wittenbergfamily-trust.com

/s/ John S. McNicholas
John S. McNicholas, Esq., RIB # 8732

*Arthur of the Family Wittenberg*
*v.*                                                Page 2 of 2
*Korde & Associates, Et al.*                                    *Docket #.KC-2023-0303*

# CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been furnished, by USPS 1st Class Certified Mail postage prepaid, this 1st, day of June 2023 to:

Serve through Attorney:

**Thomas William Lyons III**
**STRAUSS, FACTOR, LAING & LYONS**
One Davol Square
Suite 305
Providence, RI 02903

**FLAGSTAR BANK,**
5151 Corporate Drive
Troy, MI 48098

**FLAGSTAR BANK,**
**James K. Ciroli, CFO,**
5151 Corporate Drive
Troy, MI 48098

**Caterine V. Eastwood**
**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**John McNicholas**
**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

# IN THE SUPERIOR COURT KENT COUNTY STATE OF RHODE ISLAND

NO.  KC-2023-0303                                    DIVISION:

**ARTHUR OF THE FAMILY WITTENBERG**
701 Loyola Avenue, Unit 57867
New Orleans, LA 70113
*PLANITIFF*

*V.*

**Caterine V. Eastwood**
**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**John McNicholas**
**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**NEW YORK COMMUNITY BANCORP, INC**
**102 Duffy Ave. Hicksville, NY 11801**
d/b/a
**FLAGSTAR BANK**
5151 Corporate Drive
Troy, MI 48098

**James K. Ciroli, CFO**
**FLAGSTAR BANK**
5151 Corporate Drive
Troy, MI 48098
*DEFENDANTS*

## ORDER OF THE COURT

This matter comes before the court on the plaintiff's NOTICE OF HEARING, and the NOTICE OF HEARING, having been reviewed and fully advised.

The Court Hereby Grants The Plaintiffs, NOTICE OF HEARING:

The Court grants and ORDER to the Plaintiffs, request in the above captioned matter:

on this_____ day of June 2023


_____,

Judge,
SUPERIOR COURT KENT COUNTY STATE OF RHODE ISLAND

Please provide copies to:

**Thomas William Lyons III**
**STRAUSS, FACTOR, LAING & LYONS**
One Davol Square
Suite 305
Providence, RI 02903

**FLAGSTAR BANK,**
5151 Corporate Drive
Troy, MI 48098

**FLAGSTAR BANK,**
**James K. Ciroli, CFO,**
5151 Corporate Drive
Troy, MI 48098

**Caterine V. Eastwood**
**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**John McNicholas**
**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

# IN THE SUPERIOR COURT KENT COUNTY
# STATE OF RHODE ISLAND

NO.  KC-2023-0303                                 DIVISION:

### ARTHUR OF THE FAMILY WITTENBERG
701 Loyola Avenue, Unit 57867
New Orleans, LA 70113
*PLANITIFF*

*V.*

### Caterine V. Eastwood
### KORDE & ASSOCIATES, P.C.
900 Chelmsford St. Suite 3102
Lowell, MA 01851

### John McNicholas
### KORDE & ASSOCIATES, P.C.
900 Chelmsford St. Suite 3102
Lowell, MA 01851

### KORDE & ASSOCIATES, P.C.
900 Chelmsford St. Suite 3102
Lowell, MA 01851

### NEW YORK COMMUNITY BANCORP, INC
### 102 Duffy Ave. Hicksville, NY 11801
d/b/a
### FLAGSTAR BANK
5151 Corporate Drive
Troy, MI 48098

### James K. Ciroli, CFO
### FLAGSTAR BANK
5151 Corporate Drive
Troy, MI 48098
*DEFENDANTS*

KENT SUPERIOR COURT
FILED
CLERK'S OFFICE
23 JUN -1 PM 3: 58

# OBJECTION TO HEARING DATE SET BY DEFENDANT
# AND NOTICE OF HEARING

["Cujusque Rei Potissima Pars"][The Principle Part Of Everything Is In The Beginning]

NOW COME PLAINTIFF, Arthur of the family Wittenberg, a Private American National/Non-
"U.S. citizen", hereby special appearance, without waiving any rights, defenses, statutory or

procedural to enter this OBJECTION to the date the Defendants set for a HEARING on the instant case. The Defendants are requesting a date that's more than 120 days, from the ANSWER, they submitted to the court on the Complaint filed against them. Seeing the Defendants, filed a MOTION TO DISMISS, they should be ready to defend Motion soon than later. Plaintiff strongly OBJECTS to this date because he is an out of state Plaintiff and this date conflicts with other court dates and now offer this NOTICE OF HEARING.

## NOTICE OF HEARING

NOW COME PLAINTIFF, Arthur of the family Wittenberg, a Private American National/Non-"U.S. citizen", hereby special appearance, gives notice he will call up to be heard before this court located on 222 Quaker Ln., Warwick, Rhode Island 02886, the Kent County Courthouse, at 10:00 a.m. on 22 June 2023, to hear the Defendants FLAGSTAR BANK, James K. Ciroli, CFO, MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH REFIEF MAY BE GRANTED.

TIME RESERVED is 15 minutes.
GOVERN YOURSELVES ACCORDINGLY. June 1, 2023

Respectfully Submitted,

Arthur of the Family Wittenberg
701 Loyola Avenue, Unit 57867
New Orleans, LA 70113
witt@wittenbergfamily-trust.com
504-451-5770

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been furnished, by USPS 1st Class Certified Mail postage prepaid, this 1st, day of June 2023 to:

Serve through Attorney:
**Thomas William Lyons III**
**STRAUSS, FACTOR, LAING & LYONS**
One Davol Square
Suite 305
Providence, RI 02903

**FLAGSTAR BANK,**
5151 Corporate Drive

Troy, MI 48098

**FLAGSTAR BANK,**
**James K. Ciroli, CFO,**
5151 Corporate Drive
Troy, MI 48098

**Caterine V. Eastwood**
**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**John McNicholas**
**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

# STATE OF RHODE ISLAND
# COUNTY OF PROVIDENCE

BEFORE ME personally appeared Arthur of the family Wittenberg Plaintiff who, being by me first duly sworn and identified in accordance with Rhode Island law executed the foregoing in my presence.

_____
Notary Public

# IN THE SUPERIOR COURT KENT COUNTY
# STATE OF RHODE ISLAND

NO.  KC-2023-0303                          DIVISION:

### ARTHUR OF THE FAMILY WITTENBERG
701 Loyola Avenue, Unit 57867
New Orleans, LA 70113
*PLANITIFF*

*V.*

### Caterine V. Eastwood
### KORDE & ASSOCIATES, P.C.
900 Chelmsford St. Suite 3102
Lowell, MA 01851

### John McNicholes
### KORDE & ASSOCIATES, P.C.
900 Chelmsford St. Suite 3102
Lowell, MA 01851

### KORDE & ASSOCIATES, P.C.
900 Chelmsford St. Suite 3102
Lowell, MA 01851

### NEW YORK COMMUNITY BANCORP, INC
### 102 Duffy Ave. Hicksville, NY 11801
d/b/a
### FLAGSTAR BANK
5151 Corporate Drive
Troy, MI 48098

### James K. Ciroli, CFO
### FLAGSTAR BANK
5151 Corporate Drive
Troy, MI 48098
*DEFENDANTS*

KENT SUPERIOR COURT
FILED
CLERK'S OFFICE
23 JUN -1  PH 3: 58

# RESPONSE AND OBJECTION TO DEFENDANTS MOTION TO DISMISS
["Cujusque Rei Potissima Pars"][The Principle Part Of Everything Is In The Beginning]

       NOW COME PLAINTIFF, Arthur of the family Wittenberg, a Private American National/Non- "U.S. citizen", hereby special appearance proceeding in a Common Law Court of Constitutional Due Process [under Article III of the Constitution of the United States for

America, and the common law] … a neutral judge, Plaintiff/ Defendant adversarial system, which means the court cannot impose the same standard upon me as are imposed on a licensed attorney, to issue this **OBJECTION TO DEFENDANTS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**, which the Plaintiff learned of, from reading the Rhode Island case docket. The Plaintiff, contact Thomas William Lyons III, of STRAUSS, FACTOR, LAING & LYONS, to acknowledge his appearance on the docket and request a copy of the MOTION/s, be emailed to him directly, to date the Plaintiff have not received any notices from the Defendants or their attorneys by mail or any other form of communications, to inform the Plaintiff's of the appearance of counsel or any filings, placed on the courts record, MOREOVER from reading the court records it seems as if Catherine V. Eastwood, John McNicholes, and the law office of KORDE & ASSOCIATES, P.C., does not have an attorney of record filed, in this instant case, and that John McNicholas, is attempting to file an answer on their behalf, which is not permissible by law because they are named PARTIES as Defendants in this instant case. Therefore, since the Plaintiff, did not get a copy of the MOTION, from the Defendants, the Plaintiff, came back to Rhode Island to stain a copy from the Clerks Office, and now enters this RESPONSE to the Defendants, MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH REFIEF MAY BE GRANTED, Rule 12(b)(6), the root of the Defendants claim. and states:

## Statement of The Case

PLAINTIFF, Arthur of the family Wittenberg, a Private American National/Non- "U.S. citizen", filed a **COMPLAINT TO QUIET TITLE AND COLLATERAL ATTACK,** against the above named Defendants in this matter. PLAINTIFF, traveled to Rhode Island to file a Lis Pendens, and Declaration of Default and Acceptance, against the Defendant, FLAGSTAR BANK, James K. Ciroli, CFO, in the County Records Office of Warwick, Plaintiff notice a claim for Judgement filed by KORDE & ASSOCIATES, P.C., on the same property, after researching the Clerk of Court records PLAINTIFF learned of a action of Foreclosure on the physical collateral filed by Caterine V. Eastwood, and John McNicolas, from the Law Firm of KORDE & ASSOCIATES, P.C., it was due to this fact the Plaintiff files the Complaint to protect it's interest. Arthur of the family Wittenberg, stands to suffer irreparable harm through the actions of the Defendants, if they are not withdrawn. Upon seeing the MOTION filed by the DEFENDANTS, FLAGSTAR BANK, James K. Ciroli, CFO, filed by their attorney of record Thomas William Lyons III, of STRAUSS, FACTOR, LAING & LYONS and DEFENDANTS, KORDE & ASSOCIATES, P.C., CATHERINE V. EASTWOOD, AND JOHN MCNICHOLAS, which was signed by John McNicholas, himself. this is not allowed, A Corporation cannot represent itself in court, because it is an artificial entity, and would be considered (PRO SE), therefore it cannot represent itself. The attorneys and the Law Firm of KORDE & ASSOCIATES, P.C., must be represent by outside

counsel. From what can be seen, it seems as if all the Defendants are making the same claim using the same fraudulent, evidence use to obtain and illegal foreclosure in an attempt to gain illegal possession of the physical property known as; 24 Ninigret Street, Warwick, RI 02889, neither of the Defendants made any assertions to the claim filed by the Plaintiff, as to the claim being false and without merit, or offered any defense to the statement within the Plaintiffs Complaint instead all the Defendants, referred to the Plaintiff check, which in this matter clearly shows there is a genuine dispute with the Defendant false foreclosure claim. The Defendants claim of NO CAUSE OF ACTION, has no factual merits and is a sad attempt to evade providing this court with an answer or defense for the Plaintiffs Complaint, because there is nothing that could be stated to rebut the Plaintiffs Complaint. The Defendants are trying to hide that they were in fact that they have commit Realestate Deed fraud to gain illegal possession of the physical collateral known as; 24 Ninigret Street, Warwick, RI 02889. The Plaintiff, will answer this MOTION on a point by point bases Point by point basis to show the mini defects and errors of the Defendants claim to dismiss. and states

## Standing Must Be Proven To Show A Claim/ Cause of Action

In order to file a case in court, litigants must have "standing" to sue. To have standing, Supreme Court doctrine requires that parties have an "injury in fact." This injury must be specific and concrete - rather the speculative and abstract. Standing requires the violation of a legal right that causes damage. "A plaintiff must allege personal injury fairly traceable to the Defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Allen v. Wright, 468 U.S. 737, 751 (1984)

## What Is A "Claim" or Cause of Action

1. Under the Federal Rules of Civil Procedure, Rule 8(a), it is defined, as having three elements
    (a) A short and plane statement of the grounds that provides jurisdiction to the court
    (b) A short and plane statement of the claim showing that the pleader is entitled to relief
    (c) A damage for judgment for the relief the pleader seeks

2. What this means is that a complaint must contain statements that support the court's jurisdiction (for example, that the case is brought to enforce constitutional rights under 42 U.S.C. § 1983), allegations of fact that support each claim that is being made, and a request for relief.

3. The policy behind these rules is to simplify pleading and not to put up technical barriers to re-

lief.

4. In the matter the most important part (element), of Rule 8(a) for purposes of dismissal pursuant Rule 12(b)(6) Order is the second part: (B) "a short and plain statement of the claim.

5. This means a short and plain statement of facts that make up the claim; such as stated in the Plaintiffs' Complaint titled **AMENDED COMPLAINT TO QUIET TITLE AND COLLATERAL ATTACK** For example:

**As Stated in the Plaintiffs Complaint:**

# COMPLAINT

At all times material to this lawsuit, FLAGSTAR BANK,  James K. Ciroli, CFO,  KORDE & ASSOCIATES, P.C, and Caterine V. Eastwood, registered to do business in the State of Rhode Island, and in this matter FLAGSTAR BANK, James K. Ciroli, CFO, has failed or refused to remove the debt that continue to cloud the property, (the Plaintiff's Original unaltered Promissory Note), which is attached to loan Instrument Number: 1709EM021429, associated with the physical collateral known as: 24 Ninigret Street, Warwick, RI 02889, FLAGSTAR BANK,  James K. Ciroli, CFO, stands without clean hand and has refused or failed to comply with the Uniform Commercial Codes for the United States of America namely Discharge and Release pursuant to UCC § 3-603(b), and UCC § 3-601, Discharge and Effect of Discharge, and is in Default to the Plaintiff and Defendant has refused or failed to comply with the local General Statutes Title 42a, Article 3, Part 3 Enforcement of Instruments, Section 42a-3-302, Holder in Due Course, Section 42a-3-303, Value and Consideration, Section 42a-3-304, Overdue Instrument, and Section 42a-3-306, Claim to an Instrument, and other acts stated in the Rhode Island General Laws, namely; §11-41-4, (Obtaining Property by false pretenses or personation, furthermore in this matter the Plaintiff will prove the **Defendants FLAGSTAR BANK, James K. Ciroli, CFO, Caterine V. Eastwood, and the law office of KORDE & ASSOCIATES, P.C, has conspired to impede the Plaintiffs of his rights to said property as the true and bona fide Holder in Due Course, and is blocking the Plaintiff from performing his duties as such**. Furthermore, the Defendants have **conspired and recorded various fraudulent documents** on public record including an unlawful foreclosure which constitutes the elements **real estate deed fraud** and has also conspired and published recorded various documents including an unlawful foreclosure in the public which constitutes **slander of title,** and the Defendants have intentionally, negligently and willfully, taken illegal actions which have caused the Plaintiffs severe emotional distress. The attack on the Plaintiff's property using a statute that is not a valid law is in fact fraud on the court. The fact that the Defendants filed a Civil action in this court against the occupants of the physical property, (the collateral) known as; 24 Ninigret Street, Warwick, RI 02889, located in

Kent County, make's it very clear that they are attempting to take illegal possession of the Plaintiffs property shows an illegal intent to cause distress, the **Plaintiff should be awarded resulting damages to be fully proved at the time of trial.**

WHEREFORE, Plaintiff, orders that:

1. The action of the Defendants claim of foreclosure be stayed pending the outcome of this matter,
2. The Action of unlawful detainer of the physical property be and is hereby set aside, Stayed, or cancelled; all at Defendant sole cost;
3. A Hearing to be set to clear and/or Quiet this cloud
4. For all other reasonable and equitable relief.

The Defendants claim of FAILURE TO STATE A CLAIM UPON WHICH REFIEF MAY BE GRANTED, falls extremely short of it's accusation, every required element needed for the Plaintiff to bring his claim against the Defendants are within the body of the Complaint. It is clear to see that the defendant are acting with deliberate indifference to the rules and laws, and and appears as if the Defendant are looking to the court for assistance, to evade and/or sidestep answering the complaint with the weakest defense under law, Rule 12(b)(6). The Plaintiff will show the elements of the claim, count by count to prove to this court that the DEFENDANTS are trying to delay and stall for time, which is why they asked for a HEARING, on the MOTION to be heard almost a full 120 days after the filing of the Plaintiffs complaint, which the Plaintiff strictly OBJECT to this delay, ON RECORD FOR THE COURT, and states that the Plaintiff stands ready to defend its position in this INSTANT CASE during trail now. The Plaintiff is ready, willing and able to certify every statement and present evidence and witnesses to substantiate this claim at this present moment.

## COUNT I:
## CONSPIRACY

**As Stated in the Plaintiffs Complaint:**

*"The Defendants have conspired and recorded various fraudulent documents on public record including an unlawful foreclosure which constitutes the elements real estate deed fraud"*

## COUNT II:
## REAL ESTATE DEED FRAUD

**As Stated in the Plaintiffs Complaint:**

*"Defendants have intentionally, negligently and willfully, taken illegal actions which have caused the Plaintiffs severe emotional distress. The attack on the Plaintiff's property using a statute that is not a valid law is in fact fraud on the court".*

## COUNT III:
## SLENDER OF TITLE

**As Stated in the Plaintiffs Complaint:**

*"The Defendants have conspired and recorded various fraudulent documents on public record including an unlawful foreclosure*

## COUNT IV:
## FILING FALSE PUBLC RECORDS

**As Stated in the Plaintiffs Complaint:**

*"Furthermore, the Defendants have conspired and recorded various fraudulent documents on public record including an unlawful foreclosure which constitutes the elements real estate deed fraud and has also conspired and published recorded various documents including an unlawful foreclosure in the public which constitutes slander of title, and the Defendants have intentionally, negligently and willfully, taken illegal actions which have caused the Plaintiffs severe emotional distress. The attack on the Plaintiff's property using a statute that is not a valid law is in fact fraud on the court. The fact that the Defendants filed a Civil action in this court against the occupants of the physical property, (the collateral) known as; 24 Ninigret Street, Warwick, RI 02889, located in Kent County, make's it very clear that they are attempting to take illegal possession of the Plaintiffs property"*

## INJURY

**As Stated in the Plaintiffs Complaint:**

*"Defendants FLAGSTAR BANK, James K. Ciroli, CFO, Caterine V. Eastwood, and the law office of KORDE & ASSOCIATES, P.C, has conspired to impede the Plaintiffs of his rights to said property as the true and bona fide Holder in Due Course, and is blocking the Plaintiff from performing his duties as such".*

## DAMAGES:

**As Stated in the Plaintiffs Complaint:**

*"Plaintiff should be awarded resulting damages to be fully proved at the time of trial."*

The Defendants are claiming not to understand the above statement (the return of the physical property, (the collateral) known as; 24 Ninigret Street, Warwick, RI 02889, located in Kent County).

It is very clear to see all the elements needed to State a Claim and/or Cause of Action, in fact do exist, as required by law, thus making the MOTION filed by the Defendants, MOOT. Further, it shows this court that the Defendants are trying to use this court as a forum for cute tricks, and a stage for clever use of smoke and mirrors, word magic, and/or wordsmithing, to evade responding to lawful COMPLAINT, pursuant to the rules that control this court.

   **WHEREFORE**, having set forth the various causes of action, the Plaintiffs objects and demand that the Defendants Motion be DENIED, and this Honorable Court, issue an ORDER, for the Defendants to ANSWER THE COMPLAINT or for this court GRANT the Plaintiffs a DEFAULT JUDGEMENT, PURSUANT TO RULE 56 (C)(2)(3)(4), for the following relief:

1. The Action of unlawful detainer of the physical property be hereby VACATED; all at Defendant sole cost

2. The court void the foreclosure judgment; all at Defendant sole cost.

3. This court void the foreclosure sale process.

4. That the Plaintiff be awarded the return of the physical property on Public Record and consequential damages to be fully proved at the time of trial

5. That the Court grant any other relief that may be just or equitable

June 1, 2023

Respectfully Submitted,

Arthur of the Family Wittenberg,
701 Loyola Avenue, Unit 57867
New Orleans, LA 70113
witt@wittenbergfamily-trust.com
504-451-5770

Notarized by DN

DANIELLE KEEGAN
NOTARY
PUBLIC
STATE OF RHODE ISLAND

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing has been furnished, by USPS 1st Class Certified Mail postage prepaid, this 1st, day of June 2023 to:

Serve through Attorney:

**Thomas William Lyons III**
**STRAUSS, FACTOR, LAING & LYONS**
One Davol Square
Suite 305
Providence, RI 02903

**FLAGSTAR BANK,**
5151 Corporate Drive
Troy, MI 48098

**FLAGSTAR BANK,**
**James K. Ciroli, CFO,**
5151 Corporate Drive
Troy, MI 48098

**Caterine V. Eastwood**
**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**John McNicholas**
**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

STATE OF RHODE ISLAND AND  PROVIDENCE PLANTATIONS

## ENTRY OF APPEARANCE

| COURT | COUNTY |
|---|---|
| ☐ Supreme Court | ☐ Providence/Bristol County or Sixth Division |
| ☑ Superior Court | ☐ Washington County or Fourth Division |
| ☐ Family Court | ☑ Kent County or Third Division |
| ☐ District Court | ☐ Newport County or Second Division |

| State of Rhode Island <br> **v.** <br> ~~Defendant~~ *Plaintiff* | Case Number <br> KC-23-0303 <br> **Bureau of Criminal Identification Number** |
|---|---|

| Attorney Court Appointed  ☐ Yes    ☐ No |
|---|

I hereby enter my appearance for the ~~Defendant~~ *Plaintiff, myself*

| Name of ~~the Attorney~~ <br> *ARTHUR - of the family WITTENBERG* | Rhode Island Bar Number: |
|---|---|
| Signature of ~~the Attorney~~ <br> /s/ *[signature]* | Date: <br> 5/30/2023 |
| Address: | |
| Telephone Number: | Date: |

## CERTIFICATE OF SERVICE

I hereby certify that, on the _____ day of _____, _____:

☐ I filed and served this document through the electronic filing system to the following:

_____

The document electronically filed and served is available for viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.

☐ I served this document through the electronic filing system to the following:

_____

The document electronically served is available for viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.

☐ I mailed or ☐ hand-delivered this document to the attorney for the opposing party and/or the opposing party if self-represented, whose name is _____ at the following address _____

/s/ _____
Name

CC-CR-5 (revised October 2017)

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/26/2023 2:51 PM
Envelope: 4126671
Reviewer: Danielle K.

Case 1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 337 of 430 PageID #: 531

# EXHIBIT

# 3

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/26/2023 2:51 PM
Envelope: 4126671
Reviewer: Danielle K.

EXHIBIT B

KENT SUPERIOR COURT
FILED
CLERK'S OFFICE

23 MAY -2 AM 11: 13

5077

ARTHUR WITTENBERG
4700 ALLEN ST
NEW ORLEANS LA 70122

August 21, 2019

Pay to the Order of   FLAGSTAR Bank With Recourse   $ 234,500.00

Deposit only for credit on account   Dollars

Capital One

Fullerworth Stapleton

6-10

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/26/2023 2:51 PM
Envelope: 4126671
Reviewer: Danielle K.

# EXHIBIT

# 4

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/26/2023 2:51 PM
Envelope: 4126671
Reviewer: Danielle K

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 340 of 430 PageID
#: 534

EXHIBIT "B"

*Arthur Wittenberg* (unincorporated).
Private civilian of the United States.
Heir to the decedent's legal estate.
c/o suite two three zero international circle - two zero one, hunt valley, maryland.
nondomestic, nonresident, noncommercial.

EE 284 086 750 US

**To:**   James K. Ciroli, CFO
FLAGSTAR BANK
5151 Corporate Drive, Troy, MI 48098

**Re:**   AW09261963.EJ88274937US.001 Trust (Trust "Res" *"PROMISSORY NOTE AND SECURITY
AGREEMENT, - INSTRUMENT NUMBER 1709EM021429, PRINCIPAL AMOUNT OF
$234,500.00, IN FAVOR OF FLAGSTAR BANK, JAMES K. CIROLI.*

Dear James K. Ciroli,

On 8/21/2019 and 8/30/2019, Lawful TENDER of ($3.00) silver coins in payment of the above referenced debt
that complied with Article I, Section 10 of the Constitution of the united States of America was received by
you. Said TENDER was to **extinguish** one of the accounts of the United States.

It is now 9/13/2019, and FLAGSTAR BANK, has not returned TENDER. Therefore, it is understood TENDER has
been accepted and the **amount of silver coin** have satisfied and extinguish these obligations, and I await the
updated statements reflecting a ($0.00 balance) and the release of the liens that continues to encumber my
property.

FLAGSTAR BANK, has accept payment concerning my good faith TENDER,

(mark and impression)

_____
*Wittenberg, Arthur,* payor, & surety, Attorney In Fact.

cc:
Jovita Carranza, Treasurer
**Department of the Treasury**
1500 Pennsylvania Ave., N.W.
Washington, D.C. 20220

Certified Mail Number: 7018 3090 0001 3436 2793

1-10

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/26/2023 2:51 PM
Envelope: 4126679
Reviewer: Danielle K.

Case 1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 341 of 430 PageID #: 535

Filed in Kent County Superior Court
Submitting: 2/24/2021 4:29 PM
Envelope: 2977600
Reviewer: Lindsay Z.

# EXHIBIT

# 2

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 2/24/2021 4:29 PM
Envelope: 2977600
Reviewer: Danielle K.

CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 342 of 430 PageID #: 536

INST: 00017046  Bk: 8942  Pg: 309

CERTIFIED TRUE COPY
Of Orisinal Filed In This Office

Date: 11-19-2020    Time: 11.15

Book: 8942___  Page: 309___

Document Type: mortgage
Attest:

Warwick City Clerk
City of Warwick, RI

Prepared By:

HOMESTAR MORTGAGE INC.
220 SMITH STREET
PROVIDENCE, RI 02908
(401) 454-3300

After Recording Return To:
FLAGSTAR BANK
5151 CORPORATE DRIVE
TROY, MI 48098
(800) 945-7700

---

[Space Above This Line For Recording Data]

## MORTGAGE



MONTANEZ
Loan #:
MIN:
MERS Phone: 1-888-679-6377
PIN:
Case #:

# NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE VETERANS ADMINISTRATION OR ITS AUTHORIZED AGENT.

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated NOVEMBER 15, 2017, together with all Riders to this document.

(B) "Borrower" is RAFAEL A MONTANEZ, SINGLE MAN. Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is HOMESTAR MORTGAGE INC.. Lender is a CORPORATION organized and existing under the laws of RHODE ISLAND. Lender's address is 220 SMITH STREET, PROVIDENCE, RI 02908.

RHODE ISLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
⊕ 348.34                     Page 1 of 15                     Form 3040 1/01 (rev. 10/16)
                                                              Modified for VA

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/23/2023 2:21 PM
Envelope: 4126682
Reviewer: Lindsay Z.

cv-00490-MSM-PAS   Document 5   Filed 11/21/23   Page 343 of 430 PageID #: 537

INST: 00017046  Bk: 8942  Ps: 310

(E) "Note" means the promissory note signed by Borrower and dated **NOVEMBER 15, 2017**. The Note states that Borrower owes Lender **TWO HUNDRED THIRTY-FOUR THOUSAND FIVE HUNDRED AND 00/100** Dollars (U.S. **$234,500.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **DECEMBER 1, 2047**.

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ Second Home Rider
☐ Balloon Rider ☐ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ Biweekly Payment Rider ☐ Other(s) [specify]
☒ VA Rider

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

RHODE ISLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
  348.34                Page 2 of 15                     Form 3040 1/01 (rev. 10/16)
                                                    Modified for VA

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/26/2023 2:51 PM
Envelope: 4128674
Reviewer: Danielle M.
CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 344 of 430 PageID
#: 538

Filed in Kent County Superior Court
Submitted: 3/26/2021 4:29 PM
Envelope: 2977600
Reviewer: Lindsay Z.

INST: 00017046 Bk: 8942 Pg: 311

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with Mortgage Covenants upon the Statutory Condition and with the Statutory Power of Sale, the following described property located in the COUNTY of KENT:

which currently has the address of 24 NINIGRET STREET, WARWICK, RI 02889 ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial

RHODE ISLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
348.34                    Page 3 of 15                    Form 3040 1/01 (rev. 10/16)
                                                          Modified for VA

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/23/2023 2:51 PM
Envelope: 4136727
Reviewer: Lindsay Z.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 11/24/2021 4:29 PM
Envelope: 2977600
Reviewer: Lindsay Z.

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 345 of 430 PageID #: 539

INST: 00017046  Bk: 8942  Ps: 312

payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to

RHODE ISLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
⟨logo⟩ 348.34                                    Page 4 of 15

Form 3040 1/01 (rev. 10/16)
Modified for VA

INST: 00017046  Bk: 8942  Ps:  313

apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower

RHODE ISLAND—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
348.34                                                Page 5 of 15                           Form 3040 1/01 (rev. 10/16)
                                                                                            Modified for VA

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/26/2023 2:51 PM
Envelope: 4126674
Reviewer: Danielle V.

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 347 of 430 PageID #: 541

Filed in Kent County Superior Court
Submitted: 12/20/2021 4:29 PM
Envelope: 2977600
Reviewer: Lindsay Z.

INST: 00017046 Bk: 8942 Pg: 314

to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/28/2023 2:51 PM
Envelope: 4128670
Reviewer: Daniel a.

Filed in Kent County Superior Court
Submitted: 11/28/2021 4:29 PM
Envelope: 2977600
Reviewer: Lindsay Z.

INST: 00017046  Bk: 8942  Pg: 315

under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

RHODE ISLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
348.34                                    Page 7 of 15                    Form 3040 1/01 (rev. 10/16)
                                                                          Modified for VA

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/28/2023 2:21 PM
Envelope: 4126670
Reviewer: Lindsay Z.

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 349 of 430 PageID #: 543

INST: 00017046 Bk: 8942 Ps: 316

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage

RHODE ISLAND—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
348.34                                   Page 8 of 15                          Form 3040 1/01 (rev. 10/16)
                                                                                          Modified for VA

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 11/28/2023 2:51 PM
Envelope: 4428070
Reviewer: Daniel W.

1:23-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 350 of 430 PageID #: 544

Filed in Kent County Superior Court
Submitted: 2/24/2021 4:29 PM
Envelope: 2977600
Reviewer: Lindsay Z.

INST: 00017046 Bk: 8942 Ps: 317

Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned

RHODE ISLAND—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
348.34                                    Page 9 of 15                          Form 3040 1/01 (rev. 10/16)
                                                                               Modified for VA

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/26/2023 2:51 PM
Envelope: 4126670
Reviewer: Lindsay Z.

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 351 of 430 PageID #: 545

INST: 00017046  Bk= 8942  Pg= 318

and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless

RHODE ISLAND—Single Family—Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**
⬧ 348.34                                      Page 10 of 15                                      Form 3040 1/01 (rev. 10/16)
                                                                                                Modified for VA

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/26/2023 2:51 PM
Envelope: 4126827
Reviewer: Lindsay Z.

1:23-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 352 of 430 PageID #: 546

INST: 00017046 Bk: 8942 Pg: 319

Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys'

RHODE ISLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
⬤ 348.34                                   Page 11 of 15                        Form 3040 1/01 (rev. 10/16)
                                                                                Modified for VA

INST: 00017046  Bk: 8942  Pg: 320

fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of

RHODE ISLAND—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
348.34                                        Page 12 of 15                          Form 3040 1/01 (rev. 10/16)
                                                                                      Modified for VA

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/26/2023 2:51 PM
Envelope: 4126670
Reviewer: Lindsay Z.

2:23-cv-00490-MSM-PAS   Document 5   Filed 11/21/23   Page 354 of 430 PageID #: 548

INST: 00017046 Bk: 8942 Ps: 321

the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument shall become null and void. Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **No Outstanding Automatic Orders in Domestic Relations Cases.** Borrower hereby represents and warrants to Lender that either (a) there is no outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against any Borrower relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation or (b) there is an outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against a Borrower relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation, and the other party that is subject to such order has consented to, or the court which issued the automatic order has issued another order authorizing, such Borrower's execution of the Note and this Security Instrument.

25. **Homestead Estate.** If Borrower heretofore has acquired or hereafter acquires an estate of

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/26/2023 2:31 PM
Envelope: 4126570
Reviewer: Lindsay Z.

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 355 of 430 PageID #: 549

INST: 00017046 Bk: 8942 Ps: 322

homestead in the Property, Borrower hereby agrees, to the greatest extent permitted by Applicable Law, that such homestead estate is subordinated in all respects to this Security Instrument and the amount due under the Note and to all renewals, extensions and modifications of this Security Instrument or the Note, and that said homestead estate is subject to all of the rights of Lender under this Security Instrument and the Note and all renewals, extensions and modifications of this Security Instrument and the Note, and is subordinate to the lien evidenced by this Security Instrument, and all renewals, extensions and modifications of this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

- BORROWER -  RAFAEL A MONTANEZ   - DATE -

[Space Below This Line For Acknowledgment]

STATE OF RHODE ISLAND

COUNTY OF KENT

On this 15TH day of NOVEMBER, 2017, before me, the undersigned notary public, personally appeared RAFAEL A MONTANEZ, SINGLE MAN, personally known to the notary or proved to the notary through satisfactory evidence of identification, which was _____, to be the person whose name is signed on the preceding or attached document, and acknowledged to the notary that (he) (she) (they) signed it voluntarily for its stated purpose.

Notary Public

(Printed Name)

My Commission Expires: _____

CARMINE J. D'ELLENA
NOTARY PUBLIC
State of Rhode Island
My Commission Expires
July 4, 2021

RHODE ISLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
348.34                                  Page 14 of 15                    Form 3040 1/01 (rev. 10/16)
                                                                          Modified for VA

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 11/28/2023 2:31 PM
Envelope: 4428679
Reviewer: Danielle K.

CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 356 of 430 PageID #: 550

INST: 00017046  Bk: 8942  Pg: 323

MORTGAGE LOAN ORIGINATOR DAVID JOHN JOHANSEN
NATIONWIDE MORTGAGE LICENSING SYSTEM AND REGISTRY IDENTIFICATION NUMBER 22078
MORTGAGE LOAN ORIGINATION COMPANY HOMESTAR MORTGAGE, INC.
NATIONWIDE MORTGAGE LICENSING SYSTEM AND REGISTRY IDENTIFICATION NUMBER 2340
MORTGAGE LOAN ORIGINATOR (CREDITOR) DAVID JOHN JOHANSEN
NATIONWIDE MORTGAGE LICENSING SYSTEM AND REGISTRY IDENTIFICATION NUMBER
MORTGAGE LOAN ORIGINATION COMPANY (CREDITOR) HOMESTAR MORTGAGE INC.
NATIONWIDE MORTGAGE LICENSING SYSTEM AND REGISTRY IDENTIFICATION NUMBER

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 9/22/2023 2:41 PM
Envelope: 4268307
Reviewer: Danielle K.

1:23-cv-00490-MSM-PAS     Document 5     Filed 11/21/23     Page 357 of 430 PageID #: 551

INST: 00017046 Bk: 8942 Ps: 324

EXHIBIT "A"

That certain tract or parcel of land, with all the buildings and improvements thereon, situated on the southerly side of Ninigret Street, in the City of Warwick, in the State of Rhode Island, comprising the whole of lot 65 (sixty-five) and the westerly twenty-six (26) feet in width by the entire depth of lot 64 (sixty-four) on that plat entitled "Ralph M. Hoxsie Plat Warwick, R.I. Owned by Ralph M. Hoxsie Walter J. Grady, Engr. August, 1928" which plat is recorded in the office of the City Clerk in said City of Warwick in Plat Book 9 at page 20 and on Plat Card 366.

PROPERTY ADDRESS:
(FOR REFERENCE PURPOSES ONLY)
24 Ninigret Street
Warwick, RI
Plat 319, Lot 79

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/26/2023 2:21 PM
Envelope: 4126071
Reviewer: Danielle K.

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 358 of 430 PageID #: 552

Filed in Kent County Superior Court
Submitted: 2/24/2021 4:29 PM
Envelope: 2977600
Reviewer: Lindsay Z.

INST: 00017046  Bk: 8942  Pg:  325

## V.A. GUARANTEED LOAN AND ASSUMPTION POLICY RIDER

# NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

MONTANEZ
Loan #:
MIN:
Case #:

THIS V.A. GUARANTEED LOAN AND ASSUMPTION POLICY RIDER is made this 15TH day of NOVEMBER, 2017, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Deed to Secure Debt (herein "Security Instrument") dated of even date herewith, given by the undersigned (herein "Borrower") to secure Borrower's Note to HOMESTAR MORTGAGE INC. (herein "Lender") and covering the property described in the Security Instrument and located at 24 NINIGRET STREET, WARWICK, RI 02889 (Property Address).

V.A. GUARANTEED LOAN COVENANT: In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:
If the indebtedness secured hereby be guaranteed or insured under Title 38, United States Code, such Title and Regulations issued thereunder and in effect on the date hereof shall govern the rights, duties and liabilities of Borrower and Lender. Any provisions of the Security Instrument or other instruments executed in connection with said indebtedness which are inconsistent with said

VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER
53.22                                    Page 1 of 3

INST: 00017046  Bk: 8942  Pg:  326

Title or Regulations, including, but not limited to, the provision for payment of any sum in connection with prepayment of the secured indebtedness and the provision that the Lender may accelerate payment of the secured indebtedness pursuant to Covenant 18 of the Security Instrument, are hereby amended or negated to the extent necessary to conform such instruments to said Title or Regulations.

**LATE CHARGE:** At Lender's option, Borrower will pay a "late charge" not exceeding **FOUR** percent (**4.000%**) of the overdue payment when paid more than **FIFTEEN** (**15**) days after the due date thereof to cover the extra expense involved in handling delinquent payments, but such "late charge" shall not be payable out of the proceeds of any sale made to satisfy the indebtedness secured hereby, unless such proceeds are sufficient to discharge the entire indebtedness and all proper costs and expenses secured hereby.

**GUARANTY:** Should the Department of Veterans Affairs fail or refuse to issue its guaranty in full amount within 60 days from the date that this loan would normally become eligible for such guaranty committed upon by the Department of Veterans Affairs under the provisions of Title 38 of the U.S. Code "Veterans Benefits," the Mortgagee may declare the indebtedness hereby secured at once due and payable and may foreclose immediately or may exercise any other rights hereunder or take any other proper action as by law provided.

**TRANSFER OF THE PROPERTY:** This loan may be declared immediately due and payable upon transfer of the property securing such loan to any transferee, unless the acceptability of the assumption of the loan is established pursuant to Section 3714 of Chapter 37, Title 38, United States Code.

An authorized transfer ("assumption") of the property shall also be subject to additional covenants and agreements as set forth below:

(a) ASSUMPTION FUNDING FEE: A fee equal to one half of one percent (0.50%) of the balance of this loan as of the date of transfer of the property shall be payable at the time of transfer to the loan holder or its authorized agent, as trustee for the Department of Veterans Affairs. If the assumer fails to pay this fee at the time of transfer, the fee shall constitute an additional debt to that already secured by this instrument, shall bear interest at the rate herein provided, and, at the option of the payee of the indebtedness hereby secured or any transferee thereof, shall be immediately due and payable. This fee is automatically waived if the assumer is exempt under the provisions of 38 U.S.C. 3729 (c).

(b) ASSUMPTION PROCESSING CHARGE: Upon application for approval to allow assumption and transfer of this loan, a processing fee may be charged by the loan holder or its authorized agent for determining the creditworthiness of the assumer and subsequently revising the holder's ownership records when an approved transfer is completed. The amount of this charge shall not exceed the maximum established by the Department of Veterans Affairs for a loan to which Section 3714 of Chapter 37, Title 38, United States Code applies.

(c) ASSUMPTION INDEMNITY LIABILITY: If this obligation is assumed, then the assumer hereby agrees to assume all of the obligations of the veteran under the terms of the instruments creating and securing the loan. The assumer further agrees to indemnify the Department of Veterans Affairs to the extent of any claim payment arising from the guaranty or

**VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER**
53.22                                    Page 2 of 3

INST: 00017046 Bk: 8942 Pg: 327

insurance of the indebtedness created by this instrument.

IN WITNESS WHEREOF, Borrower(s) has executed this V.A. Guaranteed Loan and Assumption
Policy Rider.

- BORROWER - RAFAEL A MONTANEZ - DATE -

**VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER**
53.22                              Page 3 of 3

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/26/2023 2:51 PM
Envelope: 4126571
Reviewer: Danielle K.

CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 361 of 430 PageID #: 555

INST: 00017046 Bk: 8942 Pg: 328

EXHIBIT "A"

That certain tract or parcel of land, with all the buildings and improvements thereon, situated on the southerly side of Ninigret Street, in the City of Warwick, in the State of Rhode Island, comprising the whole of lot 65 (sixty-five) and the westerly twenty-six (26) feet in width by the entire depth of lot 64 (sixty-four) on that plat entitled "Ralph M. Hoxsie Plat Warwick, R.I. Owned by Ralph  M. Hoxsie Walter J. Grady, Engr. August, 1928" which plat is recorded in the office of the City Clerk in said City of Warwick in Plat Book 9 at page 20 and on Plat Card 366.

PROPERTY ADDRESS:
(FOR REFERENCE PURPOSES ONLY)
24 Ninigret Street
Warwick, RI
Plat 319, Lot 79

RECORDED
Nov 15,2017 10:59A
Judy Wild, City Clerk
City of Warwick, RI

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 2023-09-13 2:51 PM
Envelope: 4426674
Reviewer: Danielle K.

1:23-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 362 of 430 PageID
#: 556

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 12-22/2021 4:29 PM
Envelope: 2977600
Reviewer: Lindsay Z.

# EXHIBIT

# 1

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 11/20/2023 2:51 PM
Envelope: 4426674
Reviewer: Danielle R.

CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 363 of 430 PageID #: 557

Filed in Kent County Superior Court
Submitted: 2/24/2021 4:29 PM
Envelope: 2977600
Reviewer: Lindsay Z.

Allonge to Note

Loan Number: ████████████

Borrower(s): Rafael A. Montanez

Address: 24 Ninigret Street
Warwick, RI 02889

Note Date: 11/15/2017

Loan Amount: $234,500.00

PAY TO THE ORDER OF
FLAGSTAR BANK, FSB
WITHOUT RECOURSE

Company Name: Homestar Mortgage, Inc.

By: _Pamela J. DiLorenzo_ (signature)

Printed Name: Pamela J. DiLorenzo

Title: Vice President

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/22/2023 2:41 PM
Envelope: 4129671
Reviewer: Danielle A.

Filed in Kent County Superior Court
Submitted: 12/30/2021 4:29 PM
Envelope: 2977600
Reviewer: Lindsay Z.

## NOTE



MONTANTE
Loan #:
MIN:
Case #

# NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

NOVEMBER 15, 2017     EAST GREENWICH,     RHODE ISLAND
[Date]                [City]                [State]

24 NINIGRET STREET, WARWICK, RI 02889
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $234,500.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is HOMESTAR MORTGAGE INC.. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 3.750%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on JANUARY 1, 2018. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on DECEMBER 1, 2047, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 220 SMITH STREET, PROVIDENCE, RI 02908 or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $1,086.01.

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I

MULTISTATE FIXED RATE NOTE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
58.44                                 Page 1 of 4                    Form 3200 1/01 Modified for VA

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/26/2023 2:51 PM
Envelope: 12807
Reviewer: Danielle R.

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 365 of 430 PageID #: 559

Filed in Kent County Superior Court
Submitted: 5/26/2021 4:29 PM
Envelope: 2977600
Reviewer: Lindsay Z.

may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. A partial Prepayment must be in an amount not less than the next monthly principal payment or $100, whichever is less. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. A full Prepayment will be credited on the date received by the Note Holder and no interest will be charged after that date. A partial Prepayment will be credited by the next payment due date or 30 days after the Prepayment is received by the Note Holder, whichever is earlier. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 4.000% of my overdue payment, unless such amount exceeds the maximum amount allowed by applicable state law, in which case the Lender may collect the maximum amount allowed by such law. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if

MULTISTATE FIXED RATE NOTE–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

⬛ 58.44                                      Page 2 of 4                     Form 3200    1/01 Modified for VA

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 6/26/2023 2:51 PM
Envelope: 4428637
Reviewer: Danielle T.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 2/22/2021 4:29 PM
Envelope: 2977600
Reviewer: Lindsay Z.

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 366 of 430 PageID #: 560

I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

    If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

    I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

    This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

    If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

- BORROWER - RAFAEL A MONTANEZ - DATE

*[Sign Original Only]*

MULTISTATE FIXED RATE NOTE–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
   58.44                        Page 3 of 4                      Form 3200  1/01 Modified for VA

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/22/2023 2:31 PM
Envelope: 4126774
Reviewer: Danielle N.

1:23-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 367 of 430 PageID
#: 561

Filed in Kent County Superior Court
Submitted: 12/30/2021 4:29 PM
Envelope: 2977600
Reviewer: Lindsay Z.

MORTGAGE LOAN ORIGINATOR DAVID JOHN JOHANSEN
NATIONWIDE MORTGAGE LICENSING SYSTEM AND REGISTRY IDENTIFICATION NUMBER 22078
MORTGAGE LOAN ORIGINATION COMPANY HOMESTAR MORTGAGE, INC.
NATIONWIDE MORTGAGE LICENSING SYSTEM AND REGISTRY IDENTIFICATION NUMBER 2340
MORTGAGE LOAN ORIGINATOR (CREDITOR) DAVID JOHN JOHANSEN
NATIONWIDE MORTGAGE LICENSING SYSTEM AND REGISTRY IDENTIFICATION NUMBER
MORTGAGE LOAN ORIGINATION COMPANY (CREDITOR) HOMESTAR MORTGAGE INC.
NATIONWIDE MORTGAGE LICENSING SYSTEM AND REGISTRY IDENTIFICATION NUMBER

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
58.44                                       Page 4 of 4                          Form 3200   1/01 Modified for VA

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/26/2023 2:51 PM
Envelope: 4126671
Reviewer: Danielle K.

# EXHIBIT

# 5

INST: 00012794 Bk:10205 Ps: 316

## STATE OF RHODE ISLAND

KENT, SS.                                    SUPERIOR COURT
                                        CASE NO. KC-2021-0181

Flagstar Bank, FSB,

      Plaintiff,

v.

Annette Montanez a/k/a Annette Montanez
Gonzalez as Heir of the Estate of Rafael A.
Montanez; Ashley Montanez as Heir of the
Estate of Rafael A. Montanez; Alexandria
Montanez as Heir of the Estate of Rafael A.
Montanez; Anthony Santapaola and all unknown
heirs or legal representatives of the Estate of
Rafael A. Montanez,

      Defendants.

## JUDGMENT

After consideration of (a) the Stipulation of the Parties Consenting to Entry of Judgment

for Plaintiff signed by counsel for the Plaintiff, Flagstar Bank, FSB, and signed and

acknowledged by the pro se Defendants, Annette Montanez a/k/a Annette Montanez Gonzalez

and Anthony Santapaola and (b) the Plaintiff's Motion for Entry of Default Judgment as to the

remaining Defendants, Ashley Montanez, Alexandria Montanez and All Unknown Heirs or

Legal Representatives of the Estate of Rafael A. Montanez, the Court enters Judgment as

follows:

    (a) Pursuant to R.I Gen. Laws §§ 9-30-1 and 9-30-4(1) the Court hereby declares that

        Annette Montanez a/k/a Annette Montanez Gonzalez, Ashley Montanez, and

        Alexandria Montanez are the sole heirs at law of the late Rafael A. Montanez and the

        sole owners of the right of redemption under the mortgage given by said Rafael A.

TRUE COPY ATTEST

*Danielle Keegan*

DANIELLE KEEGAN, CLERK
KENT COUNTY SUPERIOR COURT

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/26/2023 2:51 PM
Envelope: 4126671
Reviewer: Danielle K.

Case Number: KC-2021-0181
Filed in Kent County Superior Court
Submitted: 7/1/2022 2:31 PM
Envelope: 3694550
Reviewer: Elizabeth M.

Case 1:23-cv-00490-MSM-PAS     Document 5     Filed 11/21/23     Page 370 of 430 PageID #: 564

INST: 00012794  Bk:10205  Pg:  317

Montanez to Mortgage Electronic Registration Systems, Inc. as Nominee for Homestar Mortgage, Inc. in the original principal amount of $234,500.00 dated November 15, 2017 and recorded with the City of Warwick Land Evidence Records in Book 8942, Page 309 (the "Mortgage"). The Mortgage encumbers the real property known as 24 Ninigret Street, Warwick, Rhode Island (the "Property"). The Defendant, Anthony Santapaoloa is _not_ an heir at law of the late Rafael A. Montanez;

(b) Pursuant to R.I. Gen. Laws § 9-30-1, the Court declares that a default has occurred by the Borrower named in the Mortgage for failure to make monthly payments as required under the terms of the Mortgage and under the promissory note secured by the Mortgage; and

(c) Pursuant to R.I. Gen. Laws § 9-30-1, the Court declares that the Plaintiff, Flagstar Bank, FSB, is the holder of the Mortgage and of the promissory note secured by the Mortgage and entitled to exercise the default remedies provided for in the Mortgage, including exercise of the Statutory Power of Sale as provided for in paragraph no. 22 of the Mortgage.

Date: 8-16-22          So Ordered, Enter

Hon. Brian Van Couyghen
Associate Justice

Order
ENTERED BY:

Deanna L. Beretta
Clerk of Court    8-16-22

TRUE COPY ATTEST

Danielle Keegan

DANIELLE KEEGAN, CLERK
KENT COUNTY SUPERIOR COURT

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/26/2023 2:51 PM
Envelope: 4126671
Reviewer: Danielle K.

Case 1:23-cv-00490-MSM-PAS     Document 5     Filed 11/21/23     Page 371 of 430 PageID
#: 565

Case Number: KC-2021-0181
Filed in Kent County Superior Court
Submitted: 7/1/2022 2:31 PM
Envelope: 3694550
Reviewer: Elizabeth M.

INST:  00012794  Bk:10205  Ps:   318

Prepared by:

/s/ Catherine V. Eastwood
Catherine V. Eastwood, Esq.
RI# 6406
Korde & Associates, P.C.
900 Chelmsford Street, Suite 3102
Lowell, MA 01851
(978)-256-1500 (ext. 26222)
ceastwood@kordeassociates.com

## CERTIFICATE OF SERVICE

I, Catherine V. Eastwood, Esq., hereby certify that on July 1, 2022, I caused the
aforementioned Judgment to be filed through the electronic filing system with electronic service
completed on all parties registered therein to receive notice in this case.

*The document electronically filed and served is available for viewing and/or downloading
from the Rhode Island Judiciary's Electronic Filing System.*

I also caused these documents to be mailed to the following via first class mail:

Annette Montanez
1042 Greenturf Road,
Spring Hill, FL 34608

Alexandria Montanez
7243 67th Street, Apt. 1L
Glendale, NY 11385

Anthony Santapaola
262 Park Avenue
Williston Park, NY 11596

Ashley Montanez
723 Hudson Avenue
Peekskill, NY 10566

/s/  Catherine V. Eastwood
Catherine V. Eastwood, Esq., RIB # 6406

RECORDED
Sep 06,2022 01:16P
Lynn D'Abrosca
City Clerk
City of Warwick, RI

TRUE COPY ATTEST
*Danielle Keegan*
DANIELLE KEEGAN, CLERK
KENT COUNTY SUPERIOR COURT

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/26/2023 2:31 PM
Envelope: 4126617
Reviewer: Danielle K.

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 372 of 430 PageID #: 566

HEARING DATE: SEPTEMBER 25, 2023
HEARING TIME: 2:00PM

## STATE OF RHODE ISLAND

**KENT, SS.**

**SUPERIOR COURT**

Arthur of the Family Wittenberg,

     Plaintiff,

v.

Catherine V. Eastwood,
John McNicholas, Korde & Associates, P.C,
New York Community Bankcorp, Inc., d/b/a
Flagstar Bank, and James K. Ciroli,

     Defendants.

**CASE No. KC-2023-0303**

## MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANTS, KORDE & ASSOCIATES, P.C., CATHERINE V. EASTWOOD AND JOHN S. MCNICHOLAS TO DISMISS AMENDED COMPLAINT FOR FAILURE TO STATE A <u>CLAIM UPON WHICH RELIEF MAY BE GRANTED</u>

Defendants Korde & Associates, P.C. ("Korde"), Catherine V. Eastwood (Eastwood) and

John S. McNicholas ("McNicholas") (collectively, the "Moving Defendants"), both attorneys

with Korde, move to dismiss Plaintiff's Amended Complaint pursuant to Superior Court Rule

12(b)(6) for failure to state a claim against the Moving Defendants upon which relief may be

granted.

<u>Standard of Review</u>

The "sole function of a motion to dismiss is to test the sufficiency of the complaint."

*Narragansett Elec. Co. v. Minardi,* 21 A.3d 274, 277 (R.I. 2011) (quoting *Laurence v. Sollitto,*

788 A.2d 455, 456 (R.I. 2002). The court must "assume the allegations contained in the

complaint are true, and examine the facts in the light most favorable to the nonmoving party."

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/26/2023 2:31 PM
Envelope: 4126617
Reviewer: Danielle K.

3-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 373 of 430 PageID #: 567

*A.F. Lusi Constr., Inc. v. R.I. Convention Ctr. Auth.*, 934 A.2d 791, 795 (R.I. 2007) (citations

omitted).

Generally, the pleading must give fair and adequate notice of the plaintiff's claim, but

need not contain a "high degree of factual specificity." *Hyatt v. Village House Convalescent*

*Home, Inc.*, 880 A.2d 821, 824 (R.I. 2005). However, where, as in the instant proceeding, the

Plaintiff's claims against the Moving Defendants sound in fraud, Super. R. Civ. P. 9(b) applies

and requires the Plaintiff to adhere to the heightened pleading standard of stating his claims with

particularity. *Americans United for Life v. Legions of Christ N. Am., Inc.*, Case No. PC-2016-

2900, Decision dated Jan. 4, 2017 (R.I. Super 2017) (citing Super. R. Civ. P. 9 (b) requiring "[i]n

all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated

with particularity"). Where fraud is alleged, the Amended Complaint must provide "fair and

*specific (emphasis added)* notice of the alleged fraud." *Women's Dev. Corp. v. City of Central*

*Falls*, 764 A.2d 151, 161 (R.I. 2001). "The standard of particularity requires specification of the

time, place and content of the alleged false representations." *Americans United, supra* at pg. 21

(citing *R.I. Res. Recovery,* 2011 WL 1936012, slip op. at 11-12; *Feinstein v. Resolution Trust*

*Corp.*, 942 F.2d 34, 42-43 (1st Cir. 1991)(stating that it is not enough for the plaintiff to "chant

the statutory mantra, and leave the identification of the predicate act to the time of trial") (further

citations omitted).

<u>Argument</u>

The core allegation contained in Plaintiff's Amended Complaint is that on April 21, 2019,

Plaintiff tendered "silver coins and a check" to the Defendants, New York Community Bancorp.,

Inc. d/b/a Flagstar Bank[1] (hereinafter "Flagstar") and James F. Ciroli, alleged CFO of Flagstar, in

---

[1] Technically, Flagstar Bank, N.A. is a subsidiary bank of New York Community Bancorp., Inc.

*Arthur of the Family Wittenberg*
*v.*                                                    **Page 2 of 6**
*Korde & Associates, Et al.*                                        *Docket # KC-2023-0303*

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/26/2023 2:31 PM
Envelope: 4126617
Reviewer: Danielle K.

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 374 of 430 PageID #: 568

April of 2019 "to extinguish the debt associated with" a particular loan number designated in such complaint and "release of (the collateral) the physical property located in Kent County known as 24 Ninigret Street, Warwick RI" (the "Property"), presumably referring to a particular mortgage instrument that secures the debt (Am. Compt., pg. 3, ¶ 4).

*The Complaint Fails to Plead Fraud with the Particularity*
*Required By Superior Court Rule 9(b)*

On page 3; (¶ 3), the Amended Complaint alleges that the Moving Defendants are "attempting to commit Realestate [sic.] Deed fraud" to gain possession of the Property (Am. Compl., pg. 3, ¶ 3).

Generalized allegations of fraud continue on page 4 of the Amended Complaint, as supplemented by an allegation of "conspiracy" amongst Flagstar and the Moving Defendants "to impede the Plaintiffs [sic.] of his rights to said property as the true and bona fide Holder in due Course" (presumably referring to the promissory note evidencing the debt/obligation at issue); "record[] various fraudulent documents on public [sic] record including an unlawful foreclosure which constitutes the elements of real estate deed fraud and to "publish[] record[] [sic.] various documents including an unlawful foreclosure in the public which constitute slander of title …"

The foregoing generalized allegations of "Realestate [sic.] Deed fraud" and recording "various fraudulent documents" simply are not sufficient to meet the Plaintiff's obligation of detailing *with particularity (emphasis added)* the circumstances constituting the alleged fraud as required by Super. R. Civ. P. 9(b). The degree of particularity required under Rule 9(b) was addressed by the court in *Rhode Island Recovery Corp. v. Brien,* pg. 54:

> "[Plaintiff's] fraud Count against the [Defendants] fails to detail with particularity the circumstances constituting the fraud (citing Rule 9(b). This Court directed [Plaintiff] to specify 'which Defendants actually made the false representations, how the representations were made, what the actual representations were, when the representation were made, and to whom at [the Plaintiff] the false representations were made… Yet, [Plaintiff] has

only stated that [Defendants] made misrepresentations that they were selling at a reasonable price and failed to disclose the easement [citation to complaint omitted]. There is no indication how, when, or to whom the misrepresentation of value was made. The pleading fails to meet the Rule 9(b) standard of particularity and cannot withstand this motion to dismiss."

Plaintiff's Amended Complaint in this case is likewise devoid of any detailed, factual predicates describing the circumstances constituting the alleged fraud. The Amended Complaint fails to specify, inter alia, which of the several Defendants in this case made the false representation or representations and most importantly what representation or representations were made that are/were allegedly false. In this case, Plaintiff also fails to identify, specifically, what documents were allegedly "fraudulent" and when such documents were allegedly "published" or "recorded."

Accordingly, the Amended Complaint fails to give the Moving Defendants "fair and *specific* notice of alleged fraud" and must be dismissed for failure to meet the heightened pleading requirements for asserting fraud required under Rule 9(b). See *Women's Dev. Corp., supra,* at 161.

As attorneys for FlagStar, the Moving Defendants owe no duty to the Plaintiff as a nonclient and adverse party. See *Toste Farm Corp. v. Hadbury, Inc.,* 798 A.2d 901, 907 (RI 2002). While fraud is a well-settled exception to the privity requirement that historically bars nonclient recovery for attorney malfeasance (see *Nisenzon v. Sadowski,* 689 A.2d 1037, 1046 n. 12 (1997), as set forth above, Plaintiff has failed to plead fraud against the Moving Defendants with the specificity required by Super. Ct. Rule 9(b).

*The Slander of Title Claim is Defective Because It Fails to Apprise The Moving Defendants of The Content of the Allegedly False Statement Uttered or Published*

Relatedly, Plaintiff alleges that the Moving Defendants along with Flagstar and Ciroli "recorded various documents including an unlawful foreclosure in the public [sic.] [records?]

*Arthur of the Family Wittenberg*
*v.*                                    Page **4** of **6**
*Korde & Associates, Et al.*                                    *Docket # KC-2023-0303*

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/26/2023 2:31 PM
Envelope: 4126617
Reviewer: Danielle K.

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 376 of 430 PageID
#: 570

which constitute slander of title. "To prevail in a slander of title action, a plaintiff must prove

…," inter alia, "(1) that the alleged wrongdoer uttered or published a false statement about the

plaintiff's ownership of real estate; (2) that the uttering or publishing was malicious; and (3) that

the plaintiff suffered a pecuniary loss."." *Estate of James F. Rossi v. Kassandra Claire*

*Properties, LLC* , C.A. No. WC-2017-0252, Decision dated February 8, 2021, pg. 13 quoting

*Carrozza v. Voccola,* 90 A.3d 142, 151 (R.I. 2014). Here again the Moving Defendants and the

Court are left to intuit the content of the alleged false statements and which of the several

Defendants allegedly made the false statement. Plaintiff's conclusory allegation of slander of

title fails to satisfy even the "fair and adequate notice" standard.

*Plaintiff's Civil Conspiracy Claim Fails Because Plaintiff Has Failed*
*To Plead a Valid, Underlying Intentional Tort Theory*

Finally, Plaintiff's allegations of a civil conspiracy fail as a matter of law as against the

Moving Defendants because a "civil conspiracy is not an independent basis of liability" but

instead "'requires a valid underlying intentional tory theory.'" *Read & Lundy, Inc. v. Washington*

*Trust Co. of Westerly,* 840 A.2d 1099, 1102 (R.I. 2004) (quoting *Guilbeault v. R.J. Reynolds*

*Tobacco Co.,* 84 F.Supp. 2d 263, 268 (D.R.I. 2000). Here, Plaintiff's conspiracy claim

necessarily fails because he has failed to adequately plead any underlying intentional tory theory

that can withstand the instant motion to dismiss.

WHEREFORE, the Moving Defendants, Korde & Associates, P.C, Catherine V.

Eastwood, Esq. and John S. McNicholas, Esq. respectfully move the Court to dismiss Plaintiff's

Amended Complaint as against the Moving Defendants and to grant such further relief as the

Court deems just.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/26/2023 2:31 PM
Envelope: 4126617
Reviewer: Danielle K.

3-cv-00490-MSM-PAS   Document 5   Filed 11/21/23   Page 377 of 430 PageID #: 571

Dated: May 26, 2023

Respectfully submitted,
Catherine V. Eastwood,
John McNicholas, and
KORDE & ASSOCIATES, P.C.,
By its attorney,


/s/ *John S. McNicholas*
John S. McNicholas, Esq., RIB # 8732
Korde & Associates, P.C.
900 Chelmsford Street, Suite 3102
Lowell, MA 01851
(978) 256-1500, ext. 26203
jmcnicholas@kordeassociates.com

## CERTIFICATE OF SERVICE

I, John S. McNicholas, Esq., hereby certify that on May 26, 2023, I caused the within Memorandum of Law in Support of the Moving Defendants' Motion to Dismiss Plaintiff's Amended Complaint to be filed through the electronic filing system on all parties registered therein to receive notice in this case.

*The document electronically filed and served is available for viewing and/or downloading from the Court's Electronic Filing System.*

I also caused a true copy of the foregoing pleading to be sent via regular mail and certified mail this 26th day of May 2023 to the following:

Arthur of the Family Wittenberg
701 Loyola Avenue Unit 57867
New Orleans, LA 70113
witt@wittenbergfamily-trust.com


/s/ *John S. McNicholas*
John S. McNicholas, Esq., RIB # 8732

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/26/2023 2:31 PM
Envelope: 4126617
Reviewer: Danielle K.

HEARING DATE:  SEPTEMBER 25, 2023
HEARING TIME: 2:00PM

# STATE OF RHODE ISLAND

**KENT, SS.**                                                    **SUPERIOR COURT**

Arthur of the Family Wittenberg,

       Plaintiff,

v.

Catherine V. Eastwood,
John McNicholas, Korde & Associates, P.C.,
New York Community Bankcorp, Inc., d/b/a
Flagstar Bank, and James K. Ciroli,

       Defendants.

**CASE No. KC-2023-0303**

### MOTION OF DEFENDANTS, KORDE & ASSOCIATES, P.C., CATHERINE V. EASTWOOD AND JOHN S. MCNICHOLAS TO DISMISS AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Defendants Korde & Associates, P.C. ("Korde"), Catherine V. Eastwood (Eastwood) and

John S. McNicholas ("McNicholas") (collectively, the "Moving Defendants"), both attorneys

with Korde, move to dismiss Plaintiff's Amended Complaint pursuant to Superior Court Rule

12(b)(6) for failure to state a claim against the Moving Defendants upon which relief may be

granted.  As grounds, the Moving Defendants refer the Court to their Memorandum of Law filed

herewith.

*Arthur of the Family Wittenberg*
*v.*                                    Page **1** of **2**
*Korde & Associates, Et al.*                                    *Docket # KC-2023-0303*

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/26/2023 2:31 PM
Envelope: 4126617
Reviewer: Danielle K.

Case 1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 379 of 430 PageID #: 573

Dated:  May 26, 2023

Respectfully submitted,
Catherine V. Eastwood,
John McNicholas, and
KORDE & ASSOCIATES, P.C.,
By its attorney,


/s/ *John S. McNicholas*_____
John S. McNicholas, Esq., RIB # 8732
Korde & Associates, P.C.
900 Chelmsford Street, Suite 3102
Lowell, MA 01851
(978) 256-1500, ext. 26203
jmcnicholas@kordeassociates.com


## CERTIFICATE OF SERVICE

I, John S. McNicholas, Esq., hereby certify that on May 26, 2023, I caused the within Motion to Dismiss Plaintiff's Amended Complaint to be filed through the electronic filing system on all parties registered therein to receive notice in this case.

*The document electronically filed and served is available for viewing and/or downloading from the Court's Electronic Filing System.*

I also caused a true copy of the foregoing pleading to be sent via regular mail and certified mail this 26th day of May 2023 to the following:


Arthur of the Family Wittenberg
701 Loyola Avenue Unit 57867
New Orleans, LA 70113
witt@wittenbergfamily-trust.com


/s/ *John S. McNicholas*_____
John S. McNicholas, Esq., RIB # 8732


*Arthur of the Family Wittenberg*
*v.*                                    Page **2** of **2**
*Korde & Associates, Et al.*                                    *Docket # KC-2023-0303*

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/26/2023 2:26 PM
Envelope: 4126602
Reviewer: Andrew D.

1:23-cv-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 380 of 430 PageID #: 574



# STATE OF RHODE ISLAND

## SUPERIOR COURT

## OMNIBUS CALENDAR ASSIGNMENT FORM

| ☐ **Providence/Bristol County** | ☑ **Kent County** | ☐ **Washington County** | ☐ **Newport County** |
|---|---|---|---|

| | **CASE NUMBER** |
|---|---|
| Arthur of the Family Wittenberg | KC-2023-0303 |
| VS. | |
| Catherine V. Eastwood, John McNicholas, Korde & Associates, P.C., et al. | |

## CALENDAR TYPE MUST BE SELECTED FOR SCHEDULING PURPOSES
☐ FORMAL SPECIAL CAUSE CALENDAR ☐ BUSINESS CALENDAR ☑ DISPOSITIVE MOTION CALENDAR

### FORMAL SPECIAL CAUSE AND BUSINESS CALENDAR

| | |
|---|---|
| ☐ AGENCY APPEAL | ☐ MOTION FOR PROTECTIVE ORDER |
| ☐ ASSESSMENT OF DAMAGES | ☐ MOTION TO RECONSIDER |
| ☐ APPOINTMENT OF A SPECIAL MASTER | ☐ ORAL PROOF OF CLAIM |
| ☐ CONFIRM ARBITRATION | ☐ PETITION TO ALLOW SECURED CLAIM |
| ☐ DECLARATORY JUDGMENT | ☐ PETITION TO APPOINT TEMPORARY RECEIVER |
| ☐ ENTRY OF JUDGMENT | ☐ PROOF OF CLAIM |
| ☐ EVIDENTIARY HEARING | ☐ PETITION TO ENFORCE |
| ☐ FIRST AND FINAL REPORT | ☐ PETITION FOR INSTRUCTIONS |
| ☐ FORECLOSURE OF RIGHT OF REDEMPTION | ☐ PRELIMINARY INJUNCTION |
| ☐ FRIENDLY SUIT | ☐ APPOINTMENT OF PERMANENT SPECIAL MASTER |
| ☐ APPOINTMENT OF PERMANENT RECEIVER | ☐ PETITION TO RECLAIM |
| ☐ MOTION TO ATTACH | ☐ PARTITION PROCEEDINGS |
| ☐ MOTION FOR ATTORNEYS FEES | ☐ PETITION TO SELL |
| ☐ MOTION TO COMPEL RECEIVER | ☐ RECEIVERSHIP PROCEEDINGS |
| ☐ MOTION TO DEFAULT | ☐ SHOW CAUSE HEARING |
| ☐ MOTION FOR ENTRY OF FINAL JUDGMENT | ☐ SUPPLEMENTARY PROCEEDINGS |
| ☐ MECHANIC'S LIEN | ☐ TITLE PROCEEDINGS |
| ☐ MOTION FOR APPROVAL | ☐ TEMPORARY RESTRAINING ORDER |
| ☐ MANDATORY INJUNCTION | ☐ TRUSTEE PROCEEDINGS |
| ☐ MOTION TO ADJUDGE IN CONTEMPT | ☐ VACATE ARBITRATION |
| ☐ OTHER FORMAL MATTER (EXPLAIN) _____ | ☐ WRIT OF MANDAMUS |
| _____ | ☐ WRIT OF REPLEVIN |
| ☐ OTHER BUSINESS MATTER (EXPLAIN) _____ | |
| _____ | |

**If you require witnesses, state the estimated time frame of said hearing and attach a witness list and expected testimony to this form.**

### DISPOSITIVE MOTION CALENDAR

| | |
|---|---|
| ☑ MOTION TO DISMISS, UNDER RULE 12 | ☐ MOTION FOR PARTIAL SUMMARY JUDGMENT |
| ☐ MOTION FOR ENTRY OF JUDGMENT ON PLEADINGS | |
| ☐ OTHER DISPOSITIVE MOTION: (EXPLAIN) _____ | ☐ MOTION FOR SUMMARY JUDGMENT |

| **HEARING DATE**: September 25, 2023 at 2pm in person | **APPROVED BY**: Dayna Beretta |
|---|---|

**Failure to fill out this form properly may result in your hearing date not being approved.**

| Signature of Attorney or Self-represented Litigant | Address: |
|---|---|
| /s/ John S. McNicholas | 900 Chelmsford St., Ste. 3102, Lowell, MA 01851 |

| Rhode Island Bar Number: 8732 | Office Telephone Number: 978-256-1500 | Date: May 26, 2023 |
|---|---|---|

Superior-37 (revised June 2020)

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/26/2023 12:33:13 PM
Envelope: 4126223
Reviewer: Lindsay Z.

1:23-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 381 of 430 PageID
#: 575

# STATE OF RHODE ISLAND JUDICIARY

### SUPERIOR COURT

## OMNIBUS CALENDAR ASSIGNMENT FORM

| ☐ **Providence/Bristol County** | ☐ **Kent County** | ☐ **Washington County** | ☐ **Newport County** |
| --- | --- | --- | --- |

| Arthur of the Family Wittenberg | CASE NUMBER KC-2023-0303 |
| --- | --- |
| VS. Catherine V. Eastwood, et al. | |

## CALENDAR TYPE MUST BE SELECTED FOR SCHEDULING PURPOSES
☐ FORMAL SPECIAL CAUSE CALENDAR  ☐ BUSINESS CALENDAR  ☐ DISPOSITIVE MOTION CALENDAR

## FORMAL SPECIAL CAUSE AND BUSINESS CALENDAR

| | |
| --- | --- |
| ☐ AGENCY APPEAL | ☐ MOTION FOR PROTECTIVE ORDER |
| ☐ ASSESSMENT OF DAMAGES | ☐ MOTION TO RECONSIDER |
| ☐ APPOINTMENT OF A SPECIAL MASTER | ☐ ORAL PROOF OF CLAIM |
| ☐ CONFIRM ARBITRATION | ☐ PETITION TO ALLOW SECURED CLAIM |
| ☐ DECLARATORY JUDGMENT | ☐ PETITION TO APPOINT TEMPORARY RECEIVER |
| ☐ ENTRY OF JUDGMENT | ☐ PROOF OF CLAIM |
| ☐ EVIDENTIARY HEARING | ☐ PETITION TO ENFORCE |
| ☐ FIRST AND FINAL REPORT | ☐ PETITION FOR INSTRUCTIONS |
| ☐ FORECLOSURE OF RIGHT OF REDEMPTION | ☐ PRELIMINARY INJUNCTION |
| ☐ FRIENDLY SUIT | ☐ APPOINTMENT OF PERMANENT SPECIAL MASTER |
| ☐ APPOINTMENT OF PERMANENT RECEIVER | ☐ PETITION TO RECLAIM |
| ☐ MOTION TO ATTACH | ☐ PARTITION PROCEEDINGS |
| ☐ MOTION FOR ATTORNEYS FEES | ☐ PETITION TO SELL |
| ☐ MOTION TO COMPEL RECEIVER | ☐ RECEIVERSHIP PROCEEDINGS |
| ☐ MOTION TO DEFAULT | ☐ SHOW CAUSE HEARING |
| ☐ MOTION FOR ENTRY OF FINAL JUDGMENT | ☐ SUPPLEMENTARY PROCEEDINGS |
| ☐ MECHANIC'S LIEN | ☐ TITLE PROCEEDINGS |
| ☐ MOTION FOR APPROVAL | ☐ TEMPORARY RESTRAINING ORDER |
| ☐ MANDATORY INJUNCTION | ☐ TRUSTEE PROCEEDINGS |
| ☐ MOTION TO ADJUDGE IN CONTEMPT | ☐ VACATE ARBITRATION |
| ☐ OTHER FORMAL MATTER (EXPLAIN) _____ | ☐ WRIT OF MANDAMUS |
| _____ | ☐ WRIT OF REPLEVIN |
| ☐ OTHER BUSINESS MATTER (EXPLAIN) _____ | |

**If you require witnesses, state the estimated time frame of said hearing and attach a witness list and expected testimony to this form.**

## DISPOSITIVE MOTION CALENDAR

| | |
| --- | --- |
| ☒ MOTION TO DISMISS, UNDER RULE 12 | ☐ MOTION FOR PARTIAL SUMMARY JUDGMENT |
| ☐ MOTION FOR ENTRY OF JUDGMENT ON PLEADINGS | |
| ☐ OTHER DISPOSITIVE MOTION: (EXPLAIN) _____ | ☐ MOTION FOR SUMMARY JUDGMENT |
| _____ | |

| **HEARING DATE**: September 25, 2023 | **APPROVED BY** /s/ Dayna Beretta, Deputy Clerk I |
| --- | --- |

**Failure to fill out this form properly may result in your hearing date not being approved.**

| Signature of Attorney or Self-represented Litigant /s/ Thomas W. Lyons | Address: One Davol Sqr., Ste. 305, Providence, RI 02903 |
| --- | --- |
| Rhode Island Bar Number: 2946 | Office Telephone Number: | Date: |

Superior-37 (revised May 2023)

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/26/2023 12:39 PM
Envelope: 4126223
Reviewer: Lindsay Z.

-CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 382 of 430 PageID #: 576

STATE OF RHODE ISLAND                    Hearing: September 25, 2023
KENT, SC.                                        SUPERIOR COURT

**ARTHUR OF THE FAMILY WITTENBERG,**

     **Plaintiff,**

     **v.**                                      **C.A. NO. KC-2023-0303**

**CATHERINE V. EASTWOOD et al.,**

     **Defendants.**

**DEFENDANTS FLAGSTAR BANK, FSB'S and JAMES K. CIROLI'S MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS AND SANCTIONS**

Defendant Flagstar Bank, FSB ("Flagstar"), and Defendant James K. Ciroli ("Ciroli," collectively as "Defendants"), by counsel, submit this Memorandum in Support of its Motion for Judgment to Dismiss and Sanctions (the "Motion") pursuant to R.I. Super. R. Civ. P. 12(b)(6) and R.I. Super. R. Civ. P. 11 and against the Amended Complaint (the "Complaint") of Plaintiff Arthur of the Family Wittenberg ("Plaintiff"). For the reasons set forth below, Flagstar's Motion should be granted, and Plaintiff's Complaint should be dismissed with prejudice.

## INTRODUCTION

The entirety of Plaintiff's Complaint is based on pseudolaw "sovereign citizen" or "redemptionist" theories. The Complaint should be rejected outright for its improper purpose to harass Defendants and steal a house. It is the latest "sovereign citizen" attempt in filing claims to commit theft of real estate property and harass public officials.[1] Indeed, Plaintiff himself has no ownership interest in the subject property whatsoever and was never a party or even related to a party to the subject mortgage loan. He is a stranger.

---

[1] Goode, Erica (August 23, 2013). "In Paper War, Flood of Liens Is the Weapon". The New York Times. Archived from the original on August 24, 2013. Retrieved August 24, 2013.

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/26/2023 12:39 PM
Envelope: 4126223
Reviewer: Lindsay Z.

CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 383 of 430 PageID
#: 577

Accordingly, this Court should "join the chorus of federal courts that have rejected" the same pseudolaw theories Plaintiff presents here. *See, e.g.*, *Winsey v. Nationstar Mortg. LLC*, 2017 U.S. Dist. LEXIS 100731, *9, 2017 WL 2812700 (M. D. Fla. June 29, 2017). Indeed, not only should this Court dismiss the Plaintiff's claims with prejudice, but it should also sanction Plaintiff for his improper purpose to defraud the Court and commit theft of the subject property.[2]

## FACTUAL BACKGROUND[3]

1.    Rafael A. Montanez (the "Decedent" or the "Borrower") acquired title to the real estate and improvements known as 24 Ninigret Street, Warwick, RI 02889 (the "Property") by Warranty Deed dated November 15, 2017 and recorded with the City of Warwick Land Evidence Records (the "LER") on November 15, 2017 in Book 8942, Page 307.

2.    The Borrower secured a mortgage loan from Homestar Mortgage, Inc. on November 15, 2017 (the "Loan").

---

[2]Upon information and belief, Plaintiff—or acquaintances of Plaintiff—are currently trespassing and unlawfully occupy the Property. Defendants intend to inform law enforcement accordingly and reserve the right to file an unlawful detainer action.

[3] Flagstar does not concede that the facts alleged by Plaintiff are accurate; however, they are accepted as true for the purpose of this motion, except as directly refuted by exhibits attached or otherwise integral to the pleadings. *See* R.I. Super. R. Civ. P. Rule 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a party thereof for all purposes."); *Bowen Court Associates v. Ernst & Young, LLP*, 818 A.2d 721, 725-26 ("[A] motion justice may properly consider and refer to such documents in deciding a Rule 12(b)(6) motion."); *see also Chase v. Nationwide Mutual Fire Insurance Company*, 160 A.3d 970, 973 (R.I. 2017) (finding that there is "a narrow exception 'for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint'" when considering documents in deciding on a motion brought under Rule 12(b)(6) or Rule 12(c)). A document is considered "integral to the pleadings" when it is "absolutely central" to the pleadings. *Fudge v. Penthouse Intern., Ltd.*, 840 F.2d 1012, 1015 (1st Cir. 1988).

2

3.      This Loan is evidenced by a Fixed Rate Note in the original principal amount of $234,500.00 dated November 15, 2017, given by Rafael A. Montanez to Homestar Mortgage, Inc. (the "Note"). The Note includes an allonge containing a special indorsement from Homestar Mortgage, Inc., to Flagstar Bank, FSB ("Flagstar"). A true and accurate copy of the Note is attached hereto as <u>Exhibit 1</u>.

4.      The Note is secured by a mortgage given by Rafael A. Montanez to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Homestar Mortgage, Inc., encumbering the Property in the original principal amount of $234,500.00 dated November 15, 2017, and recorded with the LER on that same day in Book 8942, Page 309 (the "Mortgage"). A certified copy of the Mortgage is attached hereto as <u>Exhibit 2</u>.

5.      Plaintiff Arthur Wittenberg purports to be "unincorporated" and a "Private civilian of the United States" which are terms associated with the "sovereign citizen" and "redemptionist" movements. He purports to be from New Orleans, Louisiana and has no connection with the State of Rhode Island.

6.      On or about August 21, 2019,[4] Plaintiff—despite having no relation to the Property, the Borrower, or Flagstar—mailed a check made out to "Flagstar Bank Without Recourse" and for "credit only" in the amount of $234,500.00, the original amount issued under the Note and not the amount due under the Loan at that time. Check attached as <u>Exhibit 3</u>. (Compl. ¶ 4). The Check does not request payment to Flagstar but ambiguously requests "Deposit only for credit on account."

---

[4] Flagstar is still investigating, however upon information and belief, the check and "promissory note" were not provided to Defendants in 2019 and believe Plaintiff forged the dates provided herein. Flagstar only accepts these dates as true for the purpose of this Motion and reserves the right to dispute these dates.

3

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/26/2023 12:39 PM
Envelope: 4126223
Reviewer: Lindsay Z.

CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 385 of 430 PageID
#: 579

7.      On or about the same date, Plaintiff mailed Defendant James K. Ciroli, "silver coins" with a value of $3.00.  September 13, 2019 Correspondence attached as <u>Exhibit 4</u>.

8.      On or about September 13, 2019, Plaintiff provided a correspondence to Defendant James K. Ciroli unilaterally claiming that Flagstar "has accept [*sic*] payment concerning my good faith TENDER," and the "**amount of silver** coin have satisfied and extinguish [*sic*] these obligations" *Id*. (emphasis original).

9.      The Borrower passed this life on April 20, 2020. Upon information and belief, he was domiciled in the State of New Jersey at the time of his death.

10.     Under the terms of the Note and the Mortgage, the Borrower was obligated to make monthly principal and interest payments together with a monthly escrow payment as computed by the mortgagee sufficient to pay real estate taxes and hazard insurance premiums in connection with the Property through the December 1, 2047 maturity date of the Loan.  The Borrower defaulted on his payment obligations.

11.     On August 16, 2022, this Court issued an order which declared the Borrower "was in default for failure to make monthly payments as required under the terms of the Mortgage and under the promissory note secured by the Mortgage."  Order attached as <u>Exhibit 5</u> at ¶ (b).  The Court further held that Flagstar "is the holder of the Mortgage and of the promissory note secured by the Mortgage and entitled to exercise of the Statutory Power of Sale for in paragraph no. 22 of the Mortgage."  *Id*. at ¶ (c).

12.     On April 26, 2023, a foreclosure sale was conducted for the Property where a third-party purchased the Property.  However, the sale has not closed and there has been no transfer of title to date.

4

13.     To date, Plaintiff has no ownership interest in the Property whatsoever as a matter of public record.

## **LEGAL STANDARD**

"When ruling on a motion to dismiss pursuant to Rule 12(b)(6) this Court applies the same standard as the hearing justice[]—namely, that the motion 'should be granted only when it is clear beyond a reasonable doubt that the plaintiff would not be entitled to relief under any set of facts that could be proven in support of the claim.'" *Id.* (citations omitted).

"Ordinarily, when ruling on a motion to dismiss brought under Rule 12(b)(6) or Rule 12(c), 'a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment. There is, however, a narrow exception "for documents the authenticity of which are not disputed by the parties; *for official public records*; *for documents central to plaintiffs' claim*; or for documents sufficiently referred to in the Complaint.'" *Chase v. Nationwide Mutual Fire Insurance Company*, 160 A.3d 970, 973 (R.I. 2017) (emphasis added) (citations omitted). Moreover, Rule 10(c) of the Rhode Island Superior Court Rules of Civil Procedure stipulates that "[a] copy of any written instrument which is an exhibit *to a pleading* is a part thereof for all purposes." R.I. Super. R. Civ. P. Rule 10(c) (emphasis added). The Superior Court of Rhode Island has noted that the policy behind Rule 10(c) "is that review of an reliance on such documents on a motion to dismiss is permissible because their inclusion in the pleadings affords the opposing party notice and an opportunity to respond." *Parking Co., L.P. v. Rhode Island Airport Corp.*, 2005 WL 419827, *2 n.6 (Super. Ct. of R.I. 2005). "Thus, a motion justice may properly consider and refer to such documents in deciding a Rule 12(b)(6) motion." *Bowen Court Associates v. Ernst & Young, LLP*, 818 A.2d 721, 725-26 (R.I. 2003).

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/26/2023 12:39 PM
Envelope: 4126223
Reviewer: Lindsay Z.

CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 387 of 430 PageID #: 581

## ARGUMENT

**I.    Plaintiff's "Sovereign Citizen" Allegations are Frivolous Pseudolaw.**

The best the Defendants can discern is that the Plaintiff brings this action under "Sovereign Citizen" or "Redemptionist" theories which have been routinely rejected by all American courts which it has been presented.  Specifically, the Plaintiff believes he has legal claim to the Property because he provided $3.00 of silver coins and a "promissory note" consisting of "vapor money" which Flagstar must accept to extinguish the balance.  These theories have been routinely rejected by the courts and should likewise be rejected here. *See McLaughlin v. CitiMortgage, Inc.*, 726 F. Supp 2d 201, 212-213, (D. Conn. June 11, 2010); *see also McLehan v. Mortg. Elec. Registration Sys.*, No. 08-12565, 2009 U.S. Dist. LEXIS 46280, 2009 WL 1542929, at *2 (E.D. Mich. June 2, 2009) ("The vapor money theory, however, and 'similar arguments have been rejected by federal courts across the country.'") (citations omitted).

The "vapor money" and "unlawful money" theories appear to be tenets or corollaries to the above-described "Redemptionist" theory.  The "vapor money" theory states that "any debt based upon a loan of credit rather than legal tender is unenforceable." *Andrews v. Select Portfolio Servicing, Inc.*, No. 09CV2437, 2010 U.S. Dist. LEXIS 27865, 2010 WL 1176667, at *3 (D. Md. Mar. 24, 2010). For its part, the "unlawful money" theory holds that "the issuance of 'credit' . . . violate[s] Article 1, Section 10 of the United States Constitution, which purportedly 'requires a state to accept and recognize only gold and silver coin as legal tender.'" *Buckley v. Bayrock Mortg. Corp.*, No. 09CV1387, 2010 U.S. Dist. LEXIS 10636, 2010 WL 476673, at *8 (N.D. Ga. Jan. 12. 2010) (quoting *Rudd v. Keybank, N.A.*, No. 2:05CV0523, 2006 U.S. Dist. LEXIS 5357, 2006 WL 212096, at *5 (S.D. Ohio Jan. 25, 2006)).

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/26/2023 12:39 PM
Envelope: 4126223
Reviewer: Lindsay Z.

CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 388 of 430 PageID
#: 582

The essence of the "vapor money" theory is that promissory notes (and similar instruments) are the equivalent of "money" that citizens literally "create" with their signatures. *See, e.g.*, *Demmler v. Bank One N.A.*, No. 2:05CV322, 2006 U.S. Dist. LEXIS 9409, 2006 WL 640499, at *3 (S.D. Ohio Mar. 9, 2006). Further, Plaintiff appears to be presenting an equally pseudolaw "promissory note" theory which purports that they themselves can unilaterally create "vapor money" by issuing a "promissory note" or check "for credit only." They believe they can force creditors to accept their "vapor money" as full payment. This theory—as all redemptionist theories—is frivolous. This Court should "join[] the chorus of [] federal courts that have rejected similar arguments." *Winsey v. Nationstar Mortg. LLC*, 2017 U.S. Dist. LEXIS 100731, *9, 2017 WL 2812700 (M. D. Fla. June 29, 2017) (rejecting "promissory note" theory); *see also Heyns v. U.S. Bank N.A.*, 2020 U.S. Dist. LEXIS 90124 (E. D. Va. Feb. 25, 2020) (same).

Here, this mechanism for the creation of "money" is what Plaintiff means when he claims to have issued "lawful Tender" to extinguish the debt. He is not alleging that he provided payment for debt's balance. He is alleging that his $3.00 of silver coins and a "credit only" check constitute a "promissory note" which created "vapor money" to satisfy the debt. This is evident by an examination of the check Plaintiff provided in his pleading. On the check, he crossed out "pay to the order to" and replaced it with "credit only" and wrote "Deposit only for credit on account." This was his attempt to distinguish what he perceives to be "legal tender" (i.e. gold and silver coins) and attempt to create "vapor money" to satisfy the Loan. He even wrote "without recourse" so that he could not be charged a fee when the check inevitably bounced. By providing a check for "credit only" Plaintiff failed to allege that he made an actual payment to the Loan.

Further, Plaintiff alleges he provided silver coins with a value of $3.00. **Ex. 4** (attached to Plaintiff's Complaint as Exhibit B). He claims that the silver coins somehow were "accepted and

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/26/2023 12:39 PM
Envelope: 4126223
Reviewer: Lindsay Z.

CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 389 of 430 PageID
#: 583

the amount of silver coin have satisfied and extinguish" the obligations of the Loan. *Id*. Then he issued a correspondence saying as such where he called it a "Promissory Note and Security Agreement." *Id*. He claims this document satisfies the debt as a matter of law. It does not. This argument to self-satisfy a debt by drafted papers which say so congruently with silver coins has no basis in law. Just as many courts have across the country have, this legal theory should be rejected here. Plaintiff has failed to state a claim that he is entitled to judgment under such "sovereign citizen" theories.

Finally, Plaintiff alleges that Defendants violated the various provisions of the Uniform Commercial Code (the "UCC"). Plaintiff makes passing references to UCC § 3-302, 3-304, and 3-306, which pertains to a bank's responsibility for late return of an item deposited. Each of Plaintiff's UCC claims appear to be based on the "promissory note" that he unilaterally created. Thus, Plaintiff cannot state a plausible claim for relief under the UCC or analogous provisions of state law. *See Heyns*, 2020 U.S. Dist. LEXIS 90124, *11-12 (rejecting exact same UCC arguments made here). Accordingly, Plaintiff's UCC claims must be dismissed with prejudice for failure to state a claim.

## II.    Plaintiff Lacks Standing as he has no Interest in the Property.

Even if this Court somehow accepted Plaintiff's absurd theories, he still lacks standing to request title to the Property because he has no interest in the Property whatsoever. Indeed, his Complaint fails to allege that he has any interest in the Property other than through his frivolous "vapor money" theory.

Justiciability requires that two components be present. *N & M Properties, LLC v. Town of West Warwick*, 964 A.2d 1141, 1145 (R.I. 2009). First, a plaintiff needs the requisite standing to bring suit. *Id*. Second, the plaintiff also must have "some legal hypothesis which will entitle the

8

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/26/2023 12:39 PM
Envelope: 4126223
Reviewer: Lindsay Z.

CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 390 of 430 PageID
#: 584

plaintiff to real and articulable relief." *Id*. (quoting *Bowen v. Mollis*, 945 A.2d 314, 317 (R.I. 2008)). "The question is whether the person whose standing is challenged has alleged an injury in fact resulting from the challenged statute." *Id*. (quoting *Rhode Island Ophthalmological Society v. Cannon*, 113 R.I. 16, 26, 317 A.2d 124, 129 (1974)). "If he [or she] has, he [or she] satisfies the requirement of standing." *Id*. (quoting Cannon, 113 R.I. at 26, 317 A.2d at 129).

The Decedent Rafael A. Montanez still holds title to the Property unless and until transfer is recorded as a result of a pending foreclosure sale. This is a matter of public record as he received title by Warranty Deed dated November 15, 2017 and recorded with the City of Warwick Land Evidence Records (the "LER") on November 15, 2017 in Book 8942, Page 307. Furthermore, this Court has already held that Flagstar's lien on the Property was valid and enforceable last year. **Ex. 5**. In contrast, Plaintiff has made no allegation that he has any ownership interest in the Property in his Complaint. There is no public record which would even hint that he has title. At best, he claims that he has presented "real evidence to support a true legal claim for ownership interest" and the "true holder" due to the "Promissory Note." These allegations are nothing more than legal conclusions based on his frivolous theories.

Here, Plaintiff has suffered no injury-in-fact. Even if Flagstar was somehow obligated to apply his silver coins valued at $3.00, and even if those silver coins and/or the "promissory note" satisfied the whole debt, then the Plaintiff would *still* not be the owner of the Property. He would still be unable to claim the relief he seeks. At best, he would have voluntarily paid off the mortgage for another party, the true owner of the property, the Decedent's Estate. Outside of a foreclosure sale, Flagstar does not have the ability to sell or transfer the Property to Plaintiff even if it had wanted to sell it to him.

Accordingly, this Court should take judicial notice of the public record, find that Plaintiff has no interest in the property and therefore has not suffered any injury-in-fact with respect to the Property. He lacks standing to seek the relief he desires and cannot receive quiet title to the Property under any legal theory he presented. The Complaint therefore fails to state a claim upon relief that can be granted and must be dismissed as a matter of law.

### III.    Plaintiff Must be Sanctioned to Deter Further Attempts to Steal Property and Harass Defendants.

Rule 11 sanctions are applicable where an attorney, or other party signing the complaint, has failed to conduct a reasonable and objective inquiry into the validity of a claim, or where said attorney or other party **files frivolous or vexatious lawsuits**. *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987) (emphasis added); Fed. R. Civ. P. 11, Advisory Committee Note (1983 amendment) (hereinafter "Advisory Committee Note"). Rule 11 was substantially changed in 1983 so as to mandate courts to impose sanctions - either by motion of a party or sua sponte - where a violation has occurred. Sanctions may be imposed as either a deterrent to filing frivolous lawsuits or to compensate the opposing side who is forced to defend such a suit. *See, e.g. Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763, 100 S. Ct. 2455, 2462, 65 L. Ed. 2d 488 (1980); *Anderson v. Beatrice Foods Co.*, 900 F.2d 388, 394 (1st Cir. 1990); Advisory Committee Note.

A party appearing *pro se* (or *pro per, sui juris* as Plaintiff styles himself) is not immune from Rule 11 sanctions. *Haines v. Kerner*, 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *Petrarca v. Picerne*, 1991 R.I. Super. LEXIS 157 (Providence Dec. 9, 1991). However, courts may take into consideration when imposing sanctions against a pro se litigant the fact that he or she is appearing without counsel. *See, Id.* Yet, as one Rhode Island court has noted, pro se filings do not serve as an "impenetrable shield, for one acting pro se has no license to harass others, clog

the judicial machinery with meritless litigation, and abuse already over-loaded court dockets." *Id*.

(quoting *Farguson v. MBANK Houston, N.A*., 808 F.2d 358, 359 (5th Cir. 1986)).

Trial courts are given wide discretion in tailoring an appropriate sanction to the particular

facts of a case. *Anderson*, 900 F.2d at 394; *Muthig v. Brant Point Nantucket, Inc*., 838 F.2d 600,

603 (1st Cir. 1988). A trial court should, when fashioning an appropriate sanction, determine the

purpose to be achieved in imposing the sanction. *See, Anderson*, 900 F.2d at 395. So long as the

court selects an appropriate sanction there is virtually no limit on judicial creativity. *Anderson*, 900

F.2d at 394.

Sanctions are warranted here because Plaintiff brought this action under frivolous and

vexatious legal theories and for the improper purpose of defrauding the Court and Flagstar in order

to steal real estate property. He further brought this suit in an improper attempt to void Flagstar's

lawful lien depriving them of a value of over $300,000.00 and enrich himself with title to the

Property. This Complaint was not brought in good faith as no reasonable person could ever believe

the "sovereign citizen" theories brought within it. At best, this Complaint was brought to harass

Defendants and stall proceedings while Plaintiff (or his acquaintances) unlawfully occupy the

Property. The Plaintiff has harassed and continues to harass Defendants in this matter and this

Court should not entertain such improper claims which would only encourage future improper

filings. Defendants respectfully request an award of its attorney fees and costs in defending this

action. Defendants further request this Court to require Plaintiff to deposit a sum of One Thousand

($1,000.00) Dollars with the Registry of Court should he attempt to file any future complaint,

petition, motion, appeal, or other claim with respect to Defendants. *Petrarca*, 1991 R.I. Super.

LEXIS 157 (ordering similar sanction of $500.00 deposit.).

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/26/2023 12:39 PM
Envelope: 4126223
Reviewer: Lindsay Z.

CV-00490-MSM-PAS    Document 5    Filed 11/21/23    Page 393 of 430 PageID #: 587

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendant Flagstar Bank, FSB ("Flagstar"), and

Defendant James K. Ciroli ("Ciroli," collectively as "Defendants"), respectfully requests that the

Court grant its Motion to Dismiss, dismiss Plaintiff's Complaint with prejudice, grant Defendants

an award for attorney fees and costs, an order requiring Plaintiff to file a deposit for future filings,

and grant Defendants such other and further relief as may be appropriate.

Dated: May 26, 2023

Respectfully submitted,

**FLAGSTAR BANK, FSB and**
**JAMES K. CIROLI**

By: */s/ Thomas W. Lyons*

Thomas W. Lyons
STRAUSS, FACTOR, LAING & LYONS
One Davol Square, Suite 305
Providence, RI 02903
(401) 456-0700
tlyons@straussfactor.com

David M. Asbury (Pro Hoc Vice Pending)
TROUTMAN PEPPER
HAMILTON SANDERS LLP
222 Central Park Avenue,
Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7757
Facsimile: (757) 687-7500
david.asbury@troutman.com

### CERTIFICATION OF SERVICE

I hereby certify that on May 26, 2023, I filed and served this document through the
electronic filing system on all persons who have entered an appearance, including Arthur
Wittenberg, 701 Loyola Avenue, Unit 57867, New Orleans, LA 70113. The document
electronically filed and served is available for Viewing and/or downloading from the Rhode Island
Judiciary's Electronic Filing System.

*/s/ Thomas W. Lyons*
Thomas W. Lyons

12

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/26/2023 12:39 PM
Envelope: 4126223
Reviewer: Lindsay Z.

**STATE OF RHODE ISLAND**                    Hearing:  September 25, 2023
**KENT, SC.**                                          **SUPERIOR COURT**

**ARTHUR OF THE FAMILY WITTENBERG,**

       **Plaintiff,**

    **v.**                                              **C.A. NO. KC-2023-0303**

**CATHERINE V. EASTWOOD et al.,**

       **Defendants.**

### MOTION TO DISMISS OF DEFENDANTS
### FLAGSTAR BANK FSB AND JAMES K. CIROLI

Pursuant to Super.R.Civ.P. 12(b)(6), Defendants Flagstar Bank FSB and James K. Ciroli hereby move to dismiss Plaintiff's Amended Complaint on the grounds it fails to state a claim upon which relief may be granted.  Defendants rely upon the accompanying memorandum of law in support of this motion.

                        **FLAGSTAR BANK, FSB and**
                        **JAMES K. CIROLI**

                        By: */s/ Thomas W. Lyons*

                        Thomas W. Lyons
                        STRAUSS, FACTOR, LAING & LYONS
                        One Davol Square, Suite 305
                        Providence, RI  02903
                        (401) 456-0700
                        tlyons@straussfactor.com

                        David M. Asbury (Pro Hoc Vice Pending)
                        TROUTMAN PEPPER
                        HAMILTON SANDERS LLP
                        222 Central Park Avenue,
                        Suite 2000
                        Virginia Beach, Virginia 23462
                        Telephone: (757) 687-7757
                        Facsimile: (757) 687-7500
                        david.asbury@troutman.com

CERTIFICATION OF SERVICE

I hereby certify that on May 26, 2023, I filed and served this document through the electronic filing system on all persons who have entered an appearance, including Arthur Wittenberg, 701 Loyola Avenue, Unit 57867, New Orleans, LA 70113. The document electronically filed and served is available for Viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.

*/s/ Thomas W. Lyons*
Thomas W. Lyons

Case Number: KC-2023-0303
Filed in Kent County Superior Court
Submitted: 5/26/2023 11:59 AM
Envelope: 4126104
Reviewer: Lindsay Z.

STATE OF RHODE ISLAND                           SUPERIOR COURT
KENT, SC.

**ARTHUR OF THE FAMILY WITTENBERG,**
       **Plaintiff,**

    **v.**                                   **C.A. NO. KC-2023-0303**

**CATHERINE V. EASTWOOD et al.,**
       **Defendants.**

### ENTRY OF APPEARANCE

      I hereby enter my appearance for the Defendants Flagstar Bank FSB and James K. Ciroli.

                      By: */s/ Thomas W. Lyons*

                      Thomas W. Lyons
                      STRAUSS, FACTOR, LAING & LYONS
                      One Davol Square, Suite 305
                      Providence, RI  02903
                      (401) 456-0700
                      tlyons@straussfactor.com

### CERTIFICATION OF SERVICE

    I hereby certify that on May 26, 2023, I filed and served this document through the electronic filing system on all persons who have entered an appearance. The document electronically filed and served is available for Viewing and/or downloading from the Rhode Island Judiciary's Electronic Filing System.

                      */s/ Thomas W. Lyons*
                      Thomas W. Lyons



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

## SUMMONS

| | |
|---|---|
| | **Civil Action File Number**<br>KC-2023-0303 |
| **Plaintiff**<br>ARTHUR WITTENBERG<br>v.<br>CATERINE EASTWOOD et al.<br>**Defendant** | **Attorney for the Plaintiff or the Plaintiff**<br>Arthur Wittenberg |
| | **Address of the Plaintiff's Attorney or the Plaintiff**<br>701 LOYOLA AVE UNIT 57867<br>NEW ORLEANS LA  70113 |
| Noel Judicial Complex<br>Kent County<br>222 Quaker Lane<br>Warwick RI  02886<br>(401) 822-6900 | **Address of the Defendant**<br>5151 Corporate Drive<br>Troy MI  48098 |

**TO THE DEFENDANT, New York Community Bancorp, INC d/b/a Flagstar Bank:**

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon the Plaintiff's attorney, whose address is listed above, an answer to the complaint which is herewith served upon you within twenty (20) days after service of this Summons upon you, exclusive of the day of service.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  Your answer must also be filed with the court.

As provided in Rule 13(a) of the Superior Court Rules of Civil Procedure, unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation, or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

| | |
|---|---|
| This Summons was generated on 5/3/2023. | /s/ Danielle Keegan<br>Clerk |

Witness the seal/watermark of the Superior Court



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

| | |
|---|---|
| **Plaintiff**<br>ARTHUR WITTENBERG<br> v.<br>CATERINE EASTWOOD et al.<br>**Defendant** | **Civil Action File Number**<br>KC-2023-0303 |

## PROOF OF SERVICE

I hereby certify that on the date below I served a copy of this Summons, complaint, Language Assistance Notice, and all other required documents received herewith upon the Defendant, New York Community Bancorp, INC d/b/a Flagstar Bank, by delivering or leaving said papers in the following manner:

☐ With the Defendant personally.

☐ At the Defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person of suitable age and discretion _____
Address of dwelling house or usual place of abode _____
_____
Age _____
Relationship to the Defendant _____

☐ With an agent authorized by appointment or by law to receive service of process.
Name of authorized agent _____
If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.
_____

☐ With a guardian or conservator of the Defendant.
Name  of person and designation _____

☐ By delivering said papers to the attorney general or an assistant attorney general if serving the state.

☐ Upon a public corporation, body, or authority by delivering said papers to any officer, director, or manager.
 Name  of person and designation _____

Page I of 2

SC-CMS-I (revised November 2022)



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

Upon a private corporation, domestic or foreign:

☐ By delivering said papers to an officer or a managing or general agent.
   Name of person and designation _____

☐ By leaving said papers at the office of the corporation with a person employed therein.
   Name of person and designation _____

☐ By delivering said papers to an agent authorized by appointment or by law to receive service of process.
   Name of authorized agent _____
   If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.

   _____

☐ I was unable to make service after the following reasonable attempts: _____
_____
_____

| SERVICE DATE: ___/___/___ | SERVICE FEE $ _____ |
| Month   Day   Year | |

Signature of SHERIFF or DEPUTY SHERIFF or CONSTABLE

SIGNATURE OF PERSON OTHER THAN A SHERIFF or DEPUTY SHERIFF or CONSTABLE MUST BE NOTARIZED.

_____

 Signature

State of _____

County of _____

   On this _____ day of _____, 20____, before me, the undersigned notary public, personally appeared _____ ☐ personally known to the notary or ☐ proved to the notary through satisfactory evidence of identification, which was _____, to be the person who signed above in my presence, and who swore or affirmed to the notary that the contents of the document are truthful to the best of his or her knowledge.

Notary Public: _____
My commission expires: _____
Notary identification number: _____

SC-CMS-I (revised November 2022)

# IN THE SUPERIOR COURT KENT COUNTY
# STATE OF RHODE ISLAND

NO.  KC-2023-0303                          DIVISION:

**ARTHUR OF THE FAMILY WITTENBERG**
701 Loyola Avenue, Unit 57867
New Orleans, LA 70113
*PLANITIFF*

*V.*

**Caterine V. Eastwood**
**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**John McNicholes**
**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**NEW YORK COMMUNITY BANCORP, INC**
**102 Duffy Ave. Hicksville, NY 11801**
d/b/a
**FLAGSTAR BANK**
5151 Corporate Drive
Troy, MI 48098

**James K. Ciroli, CFO**
**FLAGSTAR BANK**
5151 Corporate Drive
Troy, MI 48098
*DEFENDANTS*

KENT SUPERIOR COURT
FILED
CLERK'S OFFICE
23 MAY -3 PM 2: 18

# AMENDED COMPLAINT TO QUIET TITLE
# AND COLLATERAL ATTACK

NOW COME PLAINTIFF, Arthur of the family Wittenberg, a Private American National/Non-"U.S. citizen", hereby special appearance, a copy of the Plaintiff's State status is attached hereto

as (**Exhibit A**), who is not a BAR attorney, and stands with clean hands without an attorney, having never been re-presented by an attorney, and without waiving assistance of counsel, do so without waiving any rights, defenses, statutory or procedural rights, without prejudice and with all rights reserved including UCC 1-308, in dealing with this court, <u>in pro per</u>, <u>sui juris</u> (NOT PRO SE), to proceed in Pro Per, means that the court cannot impose the same standard upon me as are imposed on a licensed attorney. This court will treat me as my own attorney, differently from what it would treat the Parties as the defendant. This court will recognize that a government fiction cannot harm a real State Citizen. Arthur of the family Wittenberg, a Private American National/Non- "U.S. citizen", moves this Court in Proper Person, and who with respect represents; PLAINTIFF, while looking to file a Declaration of Default and Acceptance, against the Defendant, FLAGSTAR BANK, James K. Ciroli, CFO, in the County Records Office of Warwick, Plaintiff notice a claim for Judgement filed by KORDE & ASSOCIATES, P.C., on the same property, after researching the Clerk of Court records PLAINTIFF learned of a cation of Foreclosure on the physical collateral filed by **Caterine V. Eastwood,** from the Law Firm of KORDE & ASSOCIATES, P.C., it is to this fact the Plaintiff files this complaint to protect it's interest. Arthur of the family Wittenberg, stands to suffer irreparable harm through the actions of the Defendants, are not withdrawn, seeing Defendant, has no claim to said original Promissory Note and Arthur of the family Wittenberg, has provided this court with real evidence to support a true legal claim for ownership interest of the original (Promissory Note), attached to the loan instrument number 1709EM021429, associated with the physical property known as; 24 Ninigret Street, Warwick, RI 02889, seeing the debt owed to **FLAGSTAR BANK,** has been satisfied in full Therefore, the need to remove any person(s), take possession of or sell the physical property in satisfaction of the debt to **FLAGSTAR BANK,** is not, does not, and/or no longer exists.

**1.**

**FLAGSTAR BANK, James K. Ciroli, CFO,** a banking association organized and incorporated under the laws of the State of Rhode Island, having a principal place of business within said state.

**2.**

**KORDE & ASSOCIATES, P.C.,** a legal representation firm organized and incorporated under the laws of the State of Rhode Island, having a principal place of business within said state.

**3.**

Defendant, Caterine V. Eastwood, and John McNicholes of KORDE & ASSOCIATES, P.C., are hereby claiming to be representing FLAGSTAR BANK, James K. Ciroli, CFO, in a case filed in this court CASE No: KC-2021-0181, and is attempting to commit Realestate Deed fraud to gain illegal possession of the physical collateral known as; 24 Ninigret Street, Warwick, RI 02889. This court is not a forum for cute tricks nor a stage for clever use of smoke and mirrors, word magic to evade responding to lawful discovery pursuant to the rules that control this court.

**4.**

On 21 April 2019, Plaintiff, Arthur of the Family Wittenberg, issued lawful Tender with silver coins and a check in the amount of $234,500, to extinguish the debt associated with loan instrument number 1709EM021429, and release of (the collateral) the physical property located in Kent County, known as; 24 Ninigret Street, Warwick, RI 02889, attached to the original Promissory Note, which is the Res of this petition in compliance with; RI rules of Simple Contract, (RI Rule §6a-3-302; Holder in Due Course), (RI Rule §6a-3-304; Overdue Instrument) and UCC 3-603, a copy confirming delivery of the payment received via certified U.S. Express Mail by the Defendant, **FLAGSTAR BANK, James K. Ciroli, CFO,** is attached hereto as **(Exhibit B)**

**5.**

Plaintiff, Arthur of the family Wittenberg, is the true holder of the subject property; (the original Promissory Note), with the physical collateral (the property) attached which is recorded in the Land Records office for Kent County, State of Connecticut as; 24 Ninigret Street, Warwick, RI 02889. The subject property (the Promissory Note), whereas Defendant is being denied by the Plaintiff, from exercising his rights as the current and true holder in due course of the original Promissory Note, and the Plaintiff has failed or refused to release the property In direct violation of (RI Rule §6a-3-302; Holder in Due Course), (RI Rule §6a-3-304; Overdue Instrument) and UCC 3-603(b) *"If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument and the tender is refused, there is discharge, to the extent of the amount of the tender, of the obligation of an endorser or accommodation party having a right of recourse with respect to the obligation to which the tender relates"*, and the Plaintiff has hereby exhausted all administrative remedies. copies of the Plaintiff, demonstrating his due diligence and DEFAULT NOTICE recorded on public record is attached hereto **(EXHIBIT C)**

# COMPLAINT

At all times material to this lawsuit, **FLAGSTAR BANK,  James K. Ciroli, CFO,  KORDE & ASSOCIATES, P.C,** and **Caterine V. Eastwood,** registered to do business in the State of Rhode Island, and in this matter **FLAGSTAR BANK, James K. Ciroli, CFO,** has failed or refused to remove the debt that continue to cloud the property, (**the Plaintiff's Original unaltered Promissory Note**), which is attached to loan Instrument Number: 1709EM021429, associated with the physical collateral known as: 24 Ninigret Street, Warwick, RI 02889, FLAGSTAR BANK,  James K. Ciroli, CFO, stands without clean hand and has refused or failed to comply with the Uniform Commercial Codes for the United States of America namely Discharge and Release pursuant to UCC § 3-603(b), and UCC § 3-601, Discharge and Effect of Discharge, and is in Default to the Plaintiff and Defendant has refused or failed to comply with the local General Statutes Title 42a, Article 3, Part 3 Enforcement of Instruments, Section 42a-3-302, Holder in Due Course, Section 42a-3-303, Value and Consideration, Section 42a-3-304, Overdue Instrument, and Section 42a-3-306, Claim to an Instrument, and other acts stated in the Rhode Island General Laws, namely; §11-41-4, (Obtaining Property by false pretenses or personation, furthermore in this matter the Plaintiff will prove the Defendants **FLAGSTAR BANK, James K. Ciroli, CFO, Caterine V. Eastwood,** and the law office of **KORDE & ASSOCIATES, P.C,** has conspired to impede the Plaintiffs of his rights to said property as the true and bona fide Holder in Due Course, and is blocking the Plaintiff from performing his duties as such. Furthermore, the Defendants have conspired  and recorded various fraudulent documents on public record including an unlawful foreclosure which constitutes the elements real estate deed fraud and has also conspired and published  recorded various documents including an unlawful foreclosure in the public which constitutes slander of title, and the Defendants have intentionally, negligently and willfully, taken illegal actions which have caused the Plaintiffs severe emotional distress. The attack on the Plaintiff's property using a statute that is not a valid law is in fact fraud on the court. The fact that the Defendants filed a Civil action in this court against the occupants of the physical property, (the collateral) known as; 24 Ninigret Street, Warwick, RI 02889, located in Kent County, make's it very clear that they are attempting to take illegal possession of the Plaintiffs property shows an illegal intent to cause distress, the Plaintiff should be awarded

resulting damages to be fully proved at the time of trial.

      **WHEREFORE,** Plaintiff, orders that:

1.    The action of the Defendants claim of foreclosure be stayed pending the outcome of this matter,

2.    The Action of unlawful detainer of the physical property be and is hereby set aside, Stayed, or cancelled; all at Defendant sole cost;

3.    A Hearing to be set to clear and/or Quiet this cloud

4.    For all other reasonable and equitable relief.

Respectfully Submitted,

Arthur of the Family Wittenberg,
701 Loyola Avenue, Unit 57867
New Orleans, LA 70113
witt@wittenbergfamily-trust.com
504-451-5770

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been furnished, by USPS 1st Class Certified Mail postage prepaid, this 1st, day of May 2023 to:

    Serve:

**NEW YORK COMMUNITY BANCORP, INC**
d/b/a **FLAGSTAR BANK,**
5151 Corporate Drive
Troy, MI 48098

**FLAGSTAR BANK,**
**James K. Ciroli, CFO,**
5151 Corporate Drive
Troy, MI 48098

**Caterine V. Eastwood**
**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

NOV 13 2018   FILED & RECORDED IN CLERK'S OFFICE
AT 10:154 M
BPA BOOK 91 PAGES 829
DEPUTY CLERK

# Declaration of Status of arthur: wittenberg

Original Document (Total of 31 Pages)

## Restoration of Former Status

## From Being a Public "United States" citizen

Federally-owned "U.S. citizen" as of March 9, 1933 and
Taxpayer/Bondman put to Tribute as of January 1, 1939

## To Becoming Once Again

## A Pre-March 9, 1933, Private Citizen of the United States
## Private American National/Non- "U.S. citizen"

## Under Section 1, 14th Amendment;
## Constitution of the United States of America

*"Art thou called being a servant? Care not for it:*
*But if thou mayest be made free, use it rather."*
*I Corinthians 7:21*

KENT SUPERIOR COURT
FILED
CLERK'S OFFICE
23 MAY -2 AM 10: 39

**arthur: wittenberg, Louisiana National**
Pre-March 9, 1933, Private Citizen of the United States/
Private American National/Non- "U.S. citizen"
Private Citizen of the Republic of Maryland
Special and Private Resident of the County of Prince Georges
Fort Washington, Maryland
Zip Code Excepted

Georgia, Lamar County
I hereby certify the within and foregoing to be
a true, correct and complete copy of the original
that appears of record in this office.
This ___ day of ___
Deputy Clerk, Lamar Superior Court

**Page 1 of 3**

6 - 9

EXHIBIT B

KENT SUPERIOR COURT
FILED
CLERK'S OFFICE

23 MAY -2  AM 10: 40

ARTHUR WITTENBERG
4700 ALLEN ST
NEW ORLEANS LA 70122
E-J 982 874 9371 US

5077

65-7190/2550

Pay to the
Order of   FLAGSTAR Bank Loffer Revenue      | $ 234,500. ⁰⁰

_____ Dollars

Capital One

For Arthur L Clapton

⑈: 2550 7⅃⅃⅁ 0135 ⅃⅃ ⅃⅃⅃⅃ ⅃0  0 5077

8 - 9

EXHIBIT B

KENT SUPERIOR COURT
FILED
CLERK'S OFFICE
'23 MAY -2 AM 10: 40

UNITED STATES POSTAL SERVICE®

PRIORITY MAIL EXPRESS®

**CUSTOMER USE ONLY**

FROM: (PLEASE PRINT) PHONE (504) 931-3270

Winemere Family Trust
Dr. Arthur Wittenberg
201 St. Charles Ave Suite 2500
New Orleans, LA 70170

**DELIVERY OPTIONS (Customer Use Only)**
☐ SIGNATURE REQUIRED
☐ No Saturday Delivery
☐ Sunday/Holiday Delivery Required

TO: (PLEASE PRINT) PHONE ( )

James K. Ciroli, CFO
Flagstar Bank
5151 Corporate Dr.
Troy, MI
ZIP + 4® 4 8 0 9 8

☐ PEEL FROM THIS CORNER

**PRIORITY MAIL EXPRESS®**

EJ 882 874 937 US

PO ZIP Code 21220
Date Accepted 8/8/19
Time Accepted 11:25 AM
Scheduled Delivery Date 8/21/19
Postage $ 21.10
Insurance Fee $ 10.35
Return Receipt Fee $
Total Postage & Fees $ 31.45
Weight 5 lbs

LABEL 11-B, MAY 2021 PSN 7690-02-000-9996

Screen Shot 2023-05-01 at 2.30.23 PM.png

5/1/23, 2:42 PM



*Arthur Wittenberg* (unincorporated).
Private civilian of the United States.
Heir to the decedent's legal estate.
c/o suite two three zero international circle - two zero one, hunt valley, maryland.
nondomestic, nonresident, noncommercial.

====================================
**EE 284 086 750 US**
====================================

KENT SUPERIOR COURT
FILED
CLERK'S OFFICE
23 MAY -2  AM 10: 39

**To:**   James K. Ciroli, CFO
FLAGSTAR BANK
5151 Corporate Drive, Troy, MI 48098

**Re:**   **AW09261963.EJ88274937US.001 Trust** (Trust "Res") *"PROMISSORY NOTE AND SECURITY AGREEMENT, - INSTRUMENT NUMBER 1709EM021429, PRINCIPAL AMOUNT OF $234,500.00, IN FAVOR OF FLAGSTAR BANK, JAMES K. CIROLI.*

Dear James K. Ciroli,

On 8/21/2019 and 8/30/2019, Lawful TENDER of ($3.00) silver coins in payment of the above referenced debt that complied with Article I, Section 10 of the Constitution of the united States of America was received by you. Said TENDER was to **extinguish** one of the accounts of the United States.

It is now 9/13/2019, and FLAGSTAR BANK, has not returned TENDER. Therefore, it is understood TENDER has been accepted and the **amount of silver coin** have satisfied and extinguish these obligations, and I await the updated statements reflecting a ($0.00 balance) and the release of the liens that continues to encumber my property.

FLAGSTAR BANK, has accept payment concerning my good faith TENDER,

(mark and impression)     ================================
*Wittenberg, Arthur*, payor, & surety, Attorney In Fact.

**cc:**
Jovita Carranza, Treasurer
**Department of the Treasury**
1500 Pennsylvania Ave., N.W.
Washington, D.C. 20220

Certified Mail Number: 7018 3090 0001 3436 2793

9 - 9

BOOK:        PAGE:

————————————[Space Above This Line For Recording Data]————————————

STATE OF RHODE ISLAND          )
                               ) ss:
COUNTY OF PROVIDENCE           )

ON May 1, 2023, before me, ~~ARTHUR WITTENBERG~~ *Kellie Mixon* (?), a notary public in and for said state personally appeared Arthur of the family Wittenberg, personally known to me (or proved to me based upon satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same in his signature on the instrument the person or entity on behalf of which they acted, executed the instrument.

Witness my hand and official seal

*Kellie Mixon*
NOTARY PUBLIC
My commission expires 06-07-2026

[NOTARY SEAL]

Instrument Number: 1709EM021429

BE IT KNOWN that on this 1st day, of May in the year of our Lord 2023, FLAGSTAR BANK, James K. Ciroli, CFO, whose corporate office is located at: 5151 Corporate Drive, Troy, MI 48098 stands without clean hands and has failed or refused to comply with the Universal Commercial Codes for the United States of America, namely Discharge and Release pursuant to UCC § 3-603(b), and UCC § 3-601, Discharge and Effect of Discharge, and is in Default. This is to notify by public record that I hereby certify that on 8/21/2019, 8/30/2019, and 9/13/2020 a Lawful TENDER of silver coins in payment of OPEN LINE OF CREDIT-INSTRUMENT NUMBER 1709EM021429, IN FAVOR OF FLAGSTAR BANK, James K. Ciroli, CFO, for one of the accounts of the united States of America. I hereby declare by my Honor and under my Authority as one of "we the people" and under the laws of the United States of America that FLAGSTAR BANK, James K. Ciroli, CFO, failed or refused to apply said tender to the above account and is in DEFAULT. Arthur of the family Wittenberg, in care of RFD, saint charles avenue – two zero one, suit two five zero zero new orleans, louisiana zip exempt, has completed and exhausted the administrative remedies to stand with clean hands in compliance with and/or pursuant to UCC §3-303 Value and Consideration, 3-603 Tender of Payment, supported with

exhibits, and Declare that Arthur of the family Wittenberg has exhausted all administrative remedies, and stands in Acceptance pursuant to UCC 3-302 Holder In Due Course.

*Arthur Wittenberg* (unincorporated).
Private civilian of the United States.
Heir to the decedent's legal estate.

—— Legal Description ——

That certain track or parcel of land, with all the buildings and improvements thereon, situated on the southerly side of Ninigret Street, in the city of Warwick, in the state of Rhode Island, comprising the whole of Lot 65 (sixty five) and the Westerly twenty-six (26) feet in width by the entire depth of the lot 64 (sixty four) on that plat entitled "Ralph M. Hoxsie, Walter J. Grady, Edgar August, 1928" which plat is recorded in the office of the city clerk in San city of Warwick in Plat Book 9 at 20 and on Plat Card 366.

PROPERTY ADDRESS:
24 Ninigret Street
Warwick, RI
Plat 319, Lot 79

# IN THE SUPERIOR COURT KENT COUNTY
# STATE OF RHODE ISLAND

NO. KC - 2023 - 0303                    DIVISION:

**ARTHUR OF THE FAMILY WITTENBERG**
701 Loyola Avenue, Unit 57867
New Orleans, LA 70113
*PLANITIFF*

*V.*

**Caterine V. Eastwood**
**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**John McNicholes**
**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**FLAGSTAR BANK**
5151 Corporate Drive
Troy, MI 48098

**James K. Ciroli, CFO**
**FLAGSTAR BANK**
5151 Corporate Drive
Troy, MI 48098
*DEFENDANTS*

KENT SUPERIOR COURT
FILED
CLERK'S OFFICE
23 MAY -2 AM 10: 39

# COMPLAINT TO QUIET TITLE
# AND COLLATERAL ATTACK

NOW COME PLAINTIFF, Arthur of the family Wittenberg, a Private American National/Non-
"U.S. citizen", hereby special appearance, a copy of the Plaintiff's State status is attached hereto

1-9

as **(Exhibit A)**, who is not a BAR attorney, and stands with clean hands without an attorney, having never been re-presented by an attorney, and without waiving assistance of counsel, do so without waiving any rights, defenses, statutory or procedural rights, without prejudice and with all rights reserved including UCC 1-308, in dealing with this court, <u>in pro per</u>, <u>sui juris</u> (NOT PRO SE), to proceed in Pro Per, means that the court cannot impose the same standard upon me as are imposed on a licensed attorney. This court will treat me as my own attorney, differently from what it would treat the Parties as the defendant. This court will recognize that a government fiction cannot harm a real State Citizen. Arthur of the family Wittenberg, a Private American National/Non- "U.S. citizen", moves this Court in Proper Person, and who with respect represents; PLAINTIFF, while looking to file a Declaration of Default and Acceptance, against the Defendant, FLAGSTAR BANK, James K. Ciroli, CFO, in the County Records Office of Warwick, Plaintiff notice a claim for Judgement filed by KORDE & ASSOCIATES, P.C., on the same property, after researching the Clerk of Court records PLAINTIFF learned of a cation of Foreclosure on the physical collateral filed by **Caterine V. Eastwood,** from the Law Firm of KORDE & ASSOCIATES, P.C., it is to this fact the Plaintiff files this complaint to protect it's interest. Arthur of the family Wittenberg, stands to suffer irreparable harm through the actions of the Defendants, are not withdrawn, seeing Defendant, has no claim to said original Promissory Note and Arthur of the family Wittenberg, has provided this court with real evidence to support a true legal claim for ownership interest of the original (Promissory Note), attached to the loan instrument number 1709EM021429, associated with the physical property known as; 24 Ninigret Street, Warwick, RI 02889, seeing the debt owed to **FLAGSTAR BANK,** has been satisfied in full Therefore, the need to remove any person(s), take possession of or sell the physical property in satisfaction of the debt to **FLAGSTAR BANK,** is not, does not, and/or no longer exists.

**1.**

**FLAGSTAR BANK, James K. Ciroli, CFO,** a banking association organized and incorporated under the laws of the State of Rhode Island, having a principal place of business within said state.

**2.**

**KORDE & ASSOCIATES, P.C.,** a legal representation firm organized and incorporated under the laws of the State of Rhode Island, having a principal place of business within said state.

**3.**

Defendant, Caterine V. Eastwood, and John McNicholes of KORDE & ASSOCIATES, P.C., are hereby claiming to be representing FLAGSTAR BANK, James K. Ciroli, CFO, in a case filed in this court CASE No: KC-2021-0181, and is attempting to commit Realestate Deed fraud to gain illegal possession of the physical collateral known as; 24 Ninigret Street, Warwick, RI 02889. This court is not a forum for cute tricks nor a stage for clever use of smoke and mirrors, word magic to evade responding to lawful discovery pursuant to the rules that control this court.

**4.**

On 21 April 2019, Plaintiff, Arthur of the Family Wittenberg, issued lawful Tender with silver coins and a check in the amount of $234,500, to extinguish the debt associated with loan instrument number 1709EM021429, and release of (the collateral) the physical property located in Kent County, known as; 24 Ninigret Street, Warwick, RI 02889, attached to the original Promissory Note, which is the Res of this petition in compliance with; RI rules of Simple Contract, (RI Rule §6a-3-302; Holder in Due Course), (RI Rule §6a-3-304; Overdue Instrument) and UCC 3-603, a copy confirming delivery of the payment received via certified U.S. Express Mail by the Defendant, **FLAGSTAR BANK, James K. Ciroli, CFO,** is attached hereto as **(Exhibit B)**

5.

Plaintiff, Arthur of the family Wittenberg, is the true holder of the subject property; (the original Promissory Note), with the physical collateral (the property) attached which is recorded in the Land Records office for Kent County, State of Connecticut as; 24 Ninigret Street, Warwick, RI 02889. The subject property (the Promissory Note), whereas Defendant is being denied by the Plaintiff, from exercising his rights as the current and true holder in due course of the original Promissory Note, and the Plaintiff has failed or refused to release the property In direct violation of (RI Rule §6a-3-302; Holder in Due Course), (RI Rule §6a-3-304; Overdue Instrument) and UCC 3-603(b) *"If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument and the tender is refused, there is discharge, to the extent of the amount of the tender, of the obligation of an endorser or accommodation party having a right of recourse with respect to the obligation to which the tender relates"*, and the Plaintiff has hereby exhausted all administrative remedies. copies of the Plaintiff, demonstrating his due diligence and DEFAULT NOTICE recorded on public record is attached hereto **(EXHIBIT C)**

# COMPLAINT

At all times material to this lawsuit, **FLAGSTAR BANK, James K. Ciroli, CFO, KORDE & ASSOCIATES, P.C,** and **Caterine V. Eastwood,** registered to do business in the State of Rhode Island, and in this matter **FLAGSTAR BANK, James K. Ciroli, CFO,** has failed or refused to remove the debt that continue to cloud the property, **(the Plaintiff's Original unaltered Promissory Note),** which is attached to loan Instrument Number: 1709EM021429, associated with the physical collateral known as: 24 Ninigret Street, Warwick, RI 02889, FLAGSTAR BANK, James K. Ciroli, CFO, stands without clean hand and has refused or failed to comply with the Uniform Commercial Codes for the United States of America namely Discharge and Release pursuant to UCC § 3-603(b), and UCC § 3-601, Discharge and Effect of Discharge, and is in Default to the Plaintiff and Defendant has refused or failed to comply with the local General Statutes Title 42a, Article 3, Part 3 Enforcement of Instruments, Section 42a-3-302, Holder in Due Course, Section 42a-3-303, Value and Consideration, Section 42a-3-304, Overdue Instrument, and Section 42a-3-306, Claim to an Instrument, and other acts stated in the Rhode Island General Laws, namely; §11-41-4, (Obtaining Property by false pretenses or personation, furthermore in this matter the Plaintiff will prove the Defendants **FLAGSTAR BANK, James K. Ciroli, CFO, Caterine V. Eastwood,** and the law office of **KORDE & ASSOCIATES, P.C,** has conspired to impede the Plaintiffs of his rights to said property as the true and bona fide Holder in Due Course, and is blocking the Plaintiff from performing his duties as such. Furthermore, the Defendants have conspired and recorded various fraudulent documents on public record including an unlawful foreclosure which constitutes the elements real estate deed fraud and has also conspired and published recorded various documents including an unlawful foreclosure in the public which constitutes slander of title, and the Defendants have intentionally, negligently and willfully, taken illegal actions which have caused the Plaintiffs severe emotional distress. The attack on the Plaintiff's property using a statute that is not a valid law is in fact fraud on the court. The fact that the Defendants filed a Civil action in this court against the occupants of the physical property, (the collateral) known as; 24 Ninigret Street, Warwick, RI 02889, located in Kent County, make's it very clear that they are attempting to take illegal possession of the Plaintiffs property shows an illegal intent to cause distress, the Plaintiff should be awarded

resulting damages to be fully proved at the time of trial.

      **WHEREFORE,** Plaintiff, orders that:

1.     The action of the Defendants claim of foreclosure be stayed pending the outcome of this matter,

2.     The Action of unlawful detainer of the physical property be and is hereby set aside, Stayed, or cancelled; all at Defendant sole cost;

3.     A Hearing to be set to clear and/or Quiet this cloud

4.     For all other reasonable and equitable relief.

Respectfully Submitted,

_Arthur of the Family Wittenberg,_
701 Loyola Avenue, Unit 57867
New Orleans, LA 70113
witt@wittenbergfamily-trust.com
504-451-5770

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been furnished, by USPS 1st Class Certified Mail postage prepaid, this 1st, day of May 2023 to:

    Serve:

**FLAGSTAR BANK,**
5151 Corporate Drive
Troy, MI 48098

**FLAGSTAR BANK,**
**James K. Ciroli, CFO,**
5151 Corporate Drive
Troy, MI 48098

**Caterine V. Eastwood**
**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851

**KORDE & ASSOCIATES, P.C.**
900 Chelmsford St. Suite 3102
Lowell, MA 01851



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

## SUMMONS

| | Civil Action File Number |
| --- | --- |
| | KC-2023-0303 |
| **Plaintiff**<br>ARTHUR WITTENBERG<br>v.<br>CATERINE EASTWOOD et al.<br>**Defendant** | **Attorney for the Plaintiff or the Plaintiff**<br>Arthur Wittenberg |
| | **Address of the Plaintiff's Attorney or the Plaintiff**<br>701 LOYOLA AVE UNIT 57867<br>NEW ORLEANS LA 70113 |
| Noel Judicial Complex<br>Kent County<br>222 Quaker Lane<br>Warwick RI 02886<br>(401) 822-6900 | **Address of the Defendant**<br>5151 CORPORATE DR<br>TROY MI 48098 |

**TO THE DEFENDANT, JAMES CIROLI, CFO:**

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon the Plaintiff's attorney, whose address is listed above, an answer to the complaint which is herewith served upon you within twenty (20) days after service of this Summons upon you, exclusive of the day of service.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Your answer must also be filed with the court.

As provided in Rule 13(a) of the Superior Court Rules of Civil Procedure, unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation, or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

| This Summons was generated on 5/2/2023. | /s/ Danielle Keegan<br>Clerk |
| --- | --- |

Witness the seal/watermark of the Superior Court

SC-CMS-1 (revised November 2022)



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

| Plaintiff | Civil Action File Number |
|---|---|
| ARTHUR WITTENBERG | KC-2023-0303 |
| v. | |
| CATERINE EASTWOOD et al. | |
| **Defendant** | |

## PROOF OF SERVICE

I hereby certify that on the date below I served a copy of this Summons, complaint, Language Assistance Notice, and all other required documents received herewith upon the Defendant, JAMES CIROLI, CFO, by delivering or leaving said papers in the following manner:

☐ With the Defendant personally.

☐ At the Defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person of suitable age and discretion _____
Address of dwelling house or usual place of abode _____
_____
Age _____
Relationship to the Defendant _____

☐ With an agent authorized by appointment or by law to receive service of process.
Name of authorized agent _____
If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.
_____

☐ With a guardian or conservator of the Defendant.
Name of person and designation _____

☐ By delivering said papers to the attorney general or an assistant attorney general if serving the state.

☐ Upon a public corporation, body, or authority by delivering said papers to any officer, director, or manager.
Name of person and designation _____

Page I of 2

SC-CMS-I (revised November 2022)



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

Upon a private corporation, domestic or foreign:

☐ By delivering said papers to an officer or a managing or general agent.
   Name of person and designation _____

☐ By leaving said papers at the office of the corporation with a person employed therein.
   Name of person and designation _____

☐ By delivering said papers to an agent authorized by appointment or by law to receive service of process.
   Name of authorized agent _____
   If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.
   _____

☐ I was unable to make service after the following reasonable attempts: _____
_____

SERVICE DATE: ____/____/____          SERVICE FEE $ _____
              Month   Day   Year

Signature of SHERIFF or DEPUTY SHERIFF or CONSTABLE

SIGNATURE OF PERSON OTHER THAN A SHERIFF or DEPUTY SHERIFF or CONSTABLE MUST BE NOTARIZED.

_____
 Signature

State of _____
County of _____

   On this _____ day of _____, 20____, before me, the undersigned notary public, personally appeared _____ ☐ personally known to the notary or ☐ proved to the notary through satisfactory evidence of identification, which was _____, to be the person who signed above in my presence, and who swore or affirmed to the notary that the contents of the document are truthful to the best of his or her knowledge.

                              Notary Public: _____
                              My commission expires: _____
                              Notary identification number: _____

Page 2 of 2

SC-CMS-I (revised November 2022)



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

## SUMMONS

| | |
|---|---|
| | **Civil Action File Number**<br>KC-2023-0303 |
| **Plaintiff**<br>ARTHUR WITTENBERG<br> v.<br>CATERINE EASTWOOD et al.<br>**Defendant** | **Attorney for the Plaintiff or the Plaintiff**<br>Arthur Wittenberg |
| | **Address of the Plaintiff's Attorney or the Plaintiff**<br>701 LOYOLA AVE UNIT 57867<br>NEW ORLEANS LA  70113 |
| Noel Judicial Complex<br>Kent County<br>222 Quaker Lane<br>Warwick RI  02886<br>(401) 822-6900 | **Address of the Defendant**<br>900 CHELMSFORD ST<br>LOWELL MA  01851 |

**TO THE DEFENDANT, CATERINE EASTWOOD:**

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon the Plaintiff's attorney, whose address is listed above, an answer to the complaint which is herewith served upon you within twenty (20) days after service of this Summons upon you, exclusive of the day of service.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  Your answer must also be filed with the court.

As provided in Rule 13(a) of the Superior Court Rules of Civil Procedure, unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation, or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

| | |
|---|---|
| This Summons was generated on 5/2/2023. | /s/ Danielle Keegan<br>Clerk |

Witness the seal/watermark of the Superior Court

SC-CMS-1 (revised November 2022)



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

| Plaintiff<br>ARTHUR WITTENBERG<br> v.<br>CATERINE EASTWOOD et al.<br>**Defendant** | **Civil Action File Number**<br>KC-2023-0303 |
|---|---|

### PROOF OF SERVICE

I hereby certify that on the date below I served a copy of this Summons, complaint, Language Assistance Notice, and all other required documents received herewith upon the Defendant, CATERINE EASTWOOD, by delivering or leaving said papers in the following manner:

☐ With the Defendant personally.

☐ At the Defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person of suitable age and discretion _____
Address of dwelling house or usual place of abode _____
_____
Age _____
Relationship to the Defendant _____

☐ With an agent authorized by appointment or by law to receive service of process.
Name of authorized agent _____
If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.
_____

☐ With a guardian or conservator of the Defendant.
Name  of person and designation _____

☐ By delivering said papers to the attorney general or an assistant attorney general if serving the state.

☐ Upon a public corporation, body, or authority by delivering said papers to any officer, director, or manager.
Name  of person and designation _____

Page I of 2



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

Upon a private corporation, domestic or foreign:
☐ By delivering said papers to an officer or a managing or general agent.
   Name of person and designation _____
☐ By leaving said papers at the office of the corporation with a person employed therein.
   Name of person and designation _____
☐ By delivering said papers to an agent authorized by appointment or by law to receive service of process.
Name of authorized agent _____
If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.

_____

☐ I was unable to make service after the following reasonable attempts: _____
_____

| SERVICE DATE: _____ / _____ / _____ | SERVICE FEE $ _____ |
| Month    Day    Year | |

Signature of SHERIFF or DEPUTY SHERIFF or CONSTABLE

SIGNATURE OF PERSON OTHER THAN A SHERIFF or DEPUTY SHERIFF or CONSTABLE MUST BE NOTARIZED.

_____
 Signature

State of _____
County of _____

On this _____ day of _____, 20_____, before me, the undersigned notary public, personally appeared _____ ☐ personally known to the notary or ☐ proved to the notary through satisfactory evidence of identification, which was _____, to be the person who signed above in my presence, and who swore or affirmed to the notary that the contents of the document are truthful to the best of his or her knowledge.

Notary Public: _____
My commission expires: _____
Notary identification number: _____

Page 2 of 2

SC-CMS-I (revised November 2022)



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

## SUMMONS

| | |
|---|---|
| | **Civil Action File Number**<br>KC-2023-0303 |
| **Plaintiff**<br>ARTHUR WITTENBERG<br>v.<br>CATERINE EASTWOOD et al.<br>**Defendant** | **Attorney for the Plaintiff or the Plaintiff**<br>Arthur Wittenberg |
| | **Address of the Plaintiff's Attorney or the Plaintiff**<br>701 LOYOLA AVE UNIT 57867<br>NEW ORLEANS LA 70113 |
| Noel Judicial Complex<br>Kent County<br>222 Quaker Lane<br>Warwick RI 02886<br>(401) 822-6900 | **Address of the Defendant**<br>900 CHELMSFORD ST<br>LOWELL MA 01851 |

**TO THE DEFENDANT, JOHN MCNICHOLES:**

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon the Plaintiff's attorney, whose address is listed above, an answer to the complaint which is herewith served upon you within twenty (20) days after service of this Summons upon you, exclusive of the day of service.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Your answer must also be filed with the court.

As provided in Rule 13(a) of the Superior Court Rules of Civil Procedure, unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation, or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

| | |
|---|---|
| This Summons was generated on 5/2/2023. | /s/ Danielle Keegan<br>Clerk |

Witness the seal/watermark of the Superior Court

SC-CMS-1 (revised November 2022)



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

| Plaintiff<br>ARTHUR WITTENBERG<br> v.<br>CATERINE EASTWOOD et al.<br>**Defendant** | **Civil Action File Number**<br>KC-2023-0303 |
|---|---|

### PROOF OF SERVICE

I hereby certify that on the date below I served a copy of this Summons, complaint, Language Assistance Notice, and all other required documents received herewith upon the Defendant, JOHN MCNICHOLES, by delivering or leaving said papers in the following manner:

☐ With the Defendant personally.

☐ At the Defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person of suitable age and discretion _____
Address of dwelling house or usual place of abode _____
_____
Age _____
Relationship to the Defendant _____

☐ With an agent authorized by appointment or by law to receive service of process.
Name of authorized agent _____
If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.
_____

☐ With a guardian or conservator of the Defendant.
Name of person and designation _____

☐ By delivering said papers to the attorney general or an assistant attorney general if serving the state.

☐ Upon a public corporation, body, or authority by delivering said papers to any officer, director, or manager.
Name of person and designation _____

Page I of 2

SC-CMS-I (revised November 2022)



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

Upon a private corporation, domestic or foreign:

☐ By delivering said papers to an officer or a managing or general agent.

   Name of person and designation _____

☐ By leaving said papers at the office of the corporation with a person employed therein.

   Name of person and designation _____

☐ By delivering said papers to an agent authorized by appointment or by law to receive service of process.

Name of authorized agent _____

If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.

_____

☐ I was unable to make service after the following reasonable attempts: _____

_____

SERVICE DATE: _____/_____/_____      SERVICE FEE $ _____

          Month  Day   Year

Signature of SHERIFF or DEPUTY SHERIFF or CONSTABLE

SIGNATURE OF PERSON OTHER THAN A SHERIFF or DEPUTY SHERIFF or CONSTABLE MUST BE NOTARIZED.

_____

 Signature

State of _____

County of _____

   On this _____ day of _____, 20_____, before me, the undersigned notary public, personally appeared _____ ☐ personally known to the notary or ☐ proved to the notary through satisfactory evidence of identification, which was _____, to be the person who signed above in my presence, and who swore or affirmed to the notary that the contents of the document are truthful to the best of his or her knowledge.

                    Notary Public: _____

                    My commission expires: _____

                    Notary identification number: _____

SC-CMS-I (revised November 2022)



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

## SUMMONS

| | |
|---|---|
| | **Civil Action File Number**<br>KC-2023-0303 |
| **Plaintiff**<br>ARTHUR WITTENBERG<br>v.<br>CATERINE EASTWOOD et al.<br>**Defendant** | **Attorney for the Plaintiff or the Plaintiff**<br>Arthur Wittenberg |
| | **Address of the Plaintiff's Attorney or the Plaintiff**<br>701 LOYOLA AVE UNIT 57867<br>NEW ORLEANS LA 70113 |
| Noel Judicial Complex<br>Kent County<br>222 Quaker Lane<br>Warwick RI 02886<br>(401) 822-6900 | **Address of the Defendant**<br>5151 Corporate Drive<br>Troy MI 48098 |

**TO THE DEFENDANT, Flagstar Bank:**

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon the Plaintiff's attorney, whose address is listed above, an answer to the complaint which is herewith served upon you within twenty (20) days after service of this Summons upon you, exclusive of the day of service.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Your answer must also be filed with the court.

As provided in Rule 13(a) of the Superior Court Rules of Civil Procedure, unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation, or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

| | |
|---|---|
| This Summons was generated on 5/2/2023. | /s/ Danielle Keegan<br>Clerk |

Witness the seal/watermark of the Superior Court

SC-CMS-1 (revised November 2022)



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

| | |
|---|---|
| **Plaintiff**<br>ARTHUR WITTENBERG<br> v.<br>CATERINE EASTWOOD et al.<br>**Defendant** | **Civil Action File Number**<br>KC-2023-0303 |

## PROOF OF SERVICE

I hereby certify that on the date below I served a copy of this Summons, complaint, Language Assistance Notice, and all other required documents received herewith upon the Defendant, Flagstar Bank, by delivering or leaving said papers in the following manner:

☐ With the Defendant personally.

☐ At the Defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person of suitable age and discretion _____
Address of dwelling house or usual place of abode _____
_____
Age _____
Relationship to the Defendant _____

☐ With an agent authorized by appointment or by law to receive service of process.
Name of authorized agent _____
If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.
_____

☐ With a guardian or conservator of the Defendant.
Name  of person and designation _____

☐ By delivering said papers to the attorney general or an assistant attorney general if serving the state.

☐ Upon a public corporation, body, or authority by delivering said papers to any officer, director, or manager.
 Name  of person and designation _____

Page I of 2

SC-CMS-I (revised November 2022)



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

Upon a private corporation, domestic or foreign:

☐ By delivering said papers to an officer or a managing or general agent.
  Name of person and designation _____

☐ By leaving said papers at the office of the corporation with a person employed therein.
  Name of person and designation _____

☐ By delivering said papers to an agent authorized by appointment or by law to receive service of process.
  Name of authorized agent _____
  If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.
  _____

☐ I was unable to make service after the following reasonable attempts: _____
_____
_____

SERVICE DATE: ____/____/____          SERVICE FEE $ _____
                Month  Day   Year

Signature of SHERIFF or DEPUTY SHERIFF or CONSTABLE

SIGNATURE OF PERSON OTHER THAN A SHERIFF or DEPUTY SHERIFF or CONSTABLE MUST BE NOTARIZED.

_____
 Signature

State of _____
County of _____

    On this _____ day of _____, 20____, before me, the undersigned notary public, personally appeared _____ ☐ personally known to the notary or ☐ proved to the notary through satisfactory evidence of identification, which was _____, to be the person who signed above in my presence, and who swore or affirmed to the notary that the contents of the document are truthful to the best of his or her knowledge.

                    Notary Public: _____
                    My commission expires: _____
                    Notary identification number: _____

Page 2 of 2

SC-CMS-I (revised November 2022)



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

## SUMMONS

| | |
|---|---|
| | **Civil Action File Number**<br>KC-2023-0303 |
| **Plaintiff**<br>ARTHUR WITTENBERG<br>v.<br>CATERINE EASTWOOD et al.<br>**Defendant** | **Attorney for the Plaintiff or the Plaintiff**<br>Arthur Wittenberg |
| | **Address of the Plaintiff's Attorney or the Plaintiff**<br>701 LOYOLA AVE UNIT 57867<br>NEW ORLEANS LA 70113 |
| Noel Judicial Complex<br>Kent County<br>222 Quaker Lane<br>Warwick RI 02886<br>(401) 822-6900 | **Address of the Defendant**<br>900 CHELMSFORD ST<br>STE 3102<br>LOWELL MA 01851 |

**TO THE DEFENDANT, KORDE & ASSOCIATES, P.C.:**

   The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon the Plaintiff's attorney, whose address is listed above, an answer to the complaint which is herewith served upon you within twenty (20) days after service of this Summons upon you, exclusive of the day of service.

   If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Your answer must also be filed with the court.

   As provided in Rule 13(a) of the Superior Court Rules of Civil Procedure, unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation, or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

| | |
|---|---|
| This Summons was generated on 5/2/2023. | /s/ Danielle Keegan<br>Clerk |

Witness the seal/watermark of the Superior Court

SC-CMS-1 (revised November 2022)



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

| | |
|---|---|
| **Plaintiff**<br>ARTHUR WITTENBERG<br> v.<br>CATERINE EASTWOOD et al.<br>**Defendant** | **Civil Action File Number**<br>KC-2023-0303 |

## PROOF OF SERVICE

I hereby certify that on the date below I served a copy of this Summons, complaint, Language Assistance Notice, and all other required documents received herewith upon the Defendant, KORDE & ASSOCIATES, P.C., by delivering or leaving said papers in the following manner:

☐ With the Defendant personally.

☐ At the Defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person of suitable age and discretion _____
Address of dwelling house or usual place of abode _____
_____
Age _____
Relationship to the Defendant _____

☐ With an agent authorized by appointment or by law to receive service of process.
Name of authorized agent _____
If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.
_____

☐ With a guardian or conservator of the Defendant.
Name of person and designation _____

☐ By delivering said papers to the attorney general or an assistant attorney general if serving the state.

☐ Upon a public corporation, body, or authority by delivering said papers to any officer, director, or manager.
Name of person and designation _____

Page 1 of 2



# STATE OF RHODE ISLAND JUDICIARY

## SUPERIOR COURT

Upon a private corporation, domestic or foreign:
☐ By delivering said papers to an officer or a managing or general agent.
Name of person and designation _____
☐ By leaving said papers at the office of the corporation with a person employed therein.
Name of person and designation _____
☐ By delivering said papers to an agent authorized by appointment or by law to receive service of process.
Name of authorized agent _____
If the agent is one designated by statute to receive service, further notice as required by statute was given as noted below.
_____

☐ I was unable to make service after the following reasonable attempts: _____
_____

SERVICE DATE: _____ / _____ / _____          SERVICE FEE $ _____
              Month  Day   Year

Signature of SHERIFF or DEPUTY SHERIFF or CONSTABLE

SIGNATURE OF PERSON OTHER THAN A SHERIFF or DEPUTY SHERIFF or CONSTABLE MUST BE NOTARIZED.

_____
 Signature

State of _____
County of _____

    On this _____ day of _____, 20____, before me, the undersigned notary public, personally appeared _____ ☐ personally known to the notary or ☐ proved to the notary through satisfactory evidence of identification, which was _____, to be the person who signed above in my presence, and who swore or affirmed to the notary that the contents of the document are truthful to the best of his or her knowledge.

                              Notary Public: _____
                              My commission expires: _____
                              Notary identification number: _____

Page 2 of 2

SC-CMS-I (revised November 2022)